D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br><u>et al.</u>,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO
11 U.S.C. §§ 361, 362 AND 363; AND (III) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") file

this Motion (the "**Motion**") for entry of an interim order (the "**Interim Order**"),[2] in substantially

the form attached hereto as <u>Exhibit A</u>, and following a final hearing on the Motion (the "**Final**

**Hearing**") entry of a final order (the "**Final Order**"), (a) authorizing the Debtors to use

Prepetition Collateral, including, without limitation, Cash Collateral on an interim basis pursuant

to Section 363(c) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

[2]     Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order.

"**Bankruptcy Code**"); (b) approving pursuant to Section 361 of the Bankruptcy Code the form of adequate protection to be provided to the Prepetition Secured Parties; (c) vacating the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order; (d) waiving any applicable stay and providing for the immediate effectiveness of the Interim Order; (e) prescribing the form and manner of notice and scheduling the Final Hearing to consider entry of the Final Order; and (f) granting related relief. The facts and circumstances supporting this Motion are set forth in the Declaration of Jeff Hunter, Manager, Executive Vice President and Chief Financial Officer of EBG Holdings LLC, in Support of Chapter 11 Petitions and First Day Pleadings (the "**First Day Declaration**"), filed concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Cases**").

2.      The First Lien Agent and certain First Lien Lenders holding a majority of the First Lien Obligations (the "**Consenting First Lien Lenders**") have agreed to permit the Debtors to use the Prepetition Collateral, including, without limitation, the Cash Collateral, subject to the entry and the terms of the Interim Order and the Final Order, as applicable. Such agreement evidences the First Lien Agent's and Consenting First Lien Lenders' recognition of the fact that the Debtors lack sufficient unencumbered funds with which to operate their business on an ongoing basis during the Cases.

## Concise Statement of the Material Terms of the Interim Order

3.     In accordance with Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the following summarizes the material provisions of the Interim Order and the location of such provisions therein:[3]

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| **Parties with an Interest in the Prepetition Collateral, including, without limitation, the Cash Collateral:** | The parties with an interest in the Prepetition Collateral, include, without limitation, the Cash Collateral, include (a) the First Lien Secured Parties and (b) the Second Lien Secured Parties. | ¶ D(i)-(iv), pp. 4-8 |
| **Use of Prepetition Collateral, including, without limitation, the Cash Collateral/ Budget:** | The Prepetition Collateral, including, without limitation, the Cash Collateral, is to be used for the orderly continuation of the operation of the businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operation needs. | ¶ E, p. 12 |
|  | An 32 week cash flow budget (as may be amended from time to time with the consent of the Consenting First Lien Lenders, the "**Approved Budget**"),[4] attached as <u>Exhibit A</u> to the Interim Order, reflects the Debtors' weekly projected aggregate cash receipts, operating expenses and disbursements, capital expenditures and unrestricted cash on hand. The Debtors' use of Cash Collateral is subject to and governed by the Approved Budget. | ¶ 3, p. 15 |
|  | For each 4-week period set forth in the Approved Budget, tested every fourth week by reference to the Variance Report (which report (a) the Debtors must provide to the First Lien Agent and (b) compares the Debtors' actual performance with the Budget), the Debtors' aggregate operating expenses and disbursements (excluding professional fees and fuel expenses) cannot exceed 115% of the aggregate amount budgeted for each such 4-week period pursuant to the Approved Budget. Further, the aggregate amount of Capital Expenditures made (or committed to be made) by the Debtors during the period between the Petition Date and March 31, 2011 cannot exceed $17,500,000. | ¶ 3(a), p. 15 |
| **Termination:** | Upon the occurrence of an Event of Default, the consensual use of Cash Collateral and the Debtors' right to use Prepetition Collateral other than | ¶ 3(b), pp. 16-18 |

---

[3]    The summary of the Interim Order is qualified in all respects by reference to the Interim Order, and to the extent of any inconsistency between the Motion and the Interim Order, the Interim Order shall govern.

[4]    The Approved Budget is an operating budget which was prepared by the Debtors' management team in consultation with and subject to the approval of certain of the First Lien Lenders. Certain non-ordinary course expenditures reflected in the Approved Budget remain subject to consideration by the board of managers and, if appropriate, will be brought by separate motion for approval by this Court and subject to the reservations of all parties in interest.

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| | in the ordinary course automatically terminates. Notwithstanding the foregoing, the consensual use of Cash Collateral under the Interim Order will terminate on June 18, 2011 (unless extended by consent of the Consenting First Lien Lenders). | |
| **Events of Default:** | Each of the following events constitutes an event of default (collectively, the "**Events of Default**") unless waived by the requisite number of Consenting First Lien Lenders: | ¶ 3(b), pp. 16-18 |
| | (i) the failure to obtain the Final Order on or within thirty-five (35) days after the Petition Date; | |
| | (ii) the incurrence or payment by the Debtors of expenses other than in accordance with the Approved Budget or any violation of the Budget Covenants (each a "**Budget Default**"); | |
| | (iii) entry of an order by the Court invalidating, disallowing or limiting in any respect, as applicable, either (A) the enforceability, priority, or validity of the First Priority Liens securing the First Lien Obligations or (B) any of the First Lien Obligations; | |
| | (iv) subject to certain delineated exceptions, the incurrence after the Petition Date of indebtedness that is (A) secured by a security interest, mortgage or other lien on all or any portion of the Prepetition Collateral which is equal or senior to any security interest, mortgage or other lien of the First Lien Agent and the First Lien Secured Parties, as applicable, or (B) entitled to priority administrative status which is equal or senior to that granted to such parties; | |
| | (v) the entry of a final order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a lien on or security interest in any Prepetition Collateral in excess of $1,000,000 or (B) with respect to any lien on or the granting of any lien on any Prepetition Collateral to any state or local environmental or regulatory agency or authority (in each case with a value in excess of $1,000,000), which in either case would have a material adverse effect on the Debtors' business, operations, property, assets, or condition; | |
| | (vi) reversal, vacatur, or modification (without consent of the First Lien Agent and the Consenting First Lien Lenders) of the Interim Order; | |
| | (vii) the entry by the Court of an order, or the filing by the Debtors of a motion which seeks entry of an order, (A) dismissing any of the Cases, (B) converting any of the Cases to cases under chapter 7 of the Bankruptcy Code or (C) appointing a trustee or examiner with the expanded powers to operate the Debtors' businesses pursuant to Section 1104 of the Bankruptcy Code in any of the Cases; | |
| | (viii) any material breach by the Debtors of any obligations, representations, warranties or covenants in the Interim Order, which material breach is not cured on or within five (5) Business Days after written notice of such breach is given to the Debtors or, if applicable, within the cure period provided for under the Interim Order; and | |
| | (ix) the failure to pay interest, fees or professional fees, costs and | |

4

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| | expenses when and as provided for under the Interim Order. | |
| **Adequate Protection; Effect of Adequate Protection on Existing Liens:** | (A) <u>Adequate Protection Replacement Liens</u>. To the extent of Diminution in Value (as defined in the Interim Order), the First Lien Secured Parties and Second Lien Secured Parties, as applicable, will be granted replacement Liens upon all property of the Debtors, now existing or hereinafter acquired and all proceeds ("**Avoidance Action Proceeds**") of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("**Avoidance Actions**") (solely upon entry of the Final Order), rights under section 506(c) of the Bankruptcy Code (solely upon entry of the Final Order), all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "**Adequate Protection Collateral**" and such adequate protection replacement liens, the "**Adequate Protection Replacement Liens**"). The Adequate Protection Replacement Liens will be subject and subordinate only to (i) any security interest or lien granted pursuant to Sections 364(c)(2), 364(c)(3), and/or 364(d)(1) in connection with any DIP Financing (ii) the Carve-Out (as defined below) and (iii) with respect to the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties, the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties. | ¶ 4(a), p. 19 |
| | (B) <u>Adequate Protection Super-Priority Claims</u>. To the extent of Diminution in Value, the First Lien Secured Parties will be granted allowed super-priority administrative claims (the "**Adequate Protection Super-Priority Claims**"), junior only to (i) any superpriority administrative claims granted pursuant to Section 364(c)(1) of the Bankruptcy Code in connection with any DIP Financing and (ii) the Carve-Out. | ¶ 4(b), p. 21 |
| | (C) <u>Interest, Professional Fees and Information</u>. As further adequate protection, and in consideration, and as a requirement, for obtaining the consent of the First Lien Agent and Consenting First Lien Lenders to the entry of the Interim Order and the Debtors consensual use of the Prepetition Collateral, including, without limitation, the Cash Collateral, the Debtors will (i) within three (3) Business Days of the date of entry of the Interim Order pay to the First Lien Agent for prompt distribution to the First Lien Lenders, Revolving Credit Lenders and Synthetic L/C Lenders, as applicable, a cash amount equal to $5,175,420.63, (ii) on a monthly basis pay to the First Lien Agent for prompt distribution to (A) the First Lien Lenders, interest on the unpaid principal amount of the Loans outstanding under the First Lien Credit Agreement equal to (I) with respect to such payments on August 31, 2010 and September 30, 2010, the Eurodollar Rate for the applicable Interest Period then in effect for such Loans plus 4.25% and (II) with respect to all other such payments, the Base Rate set at the beginning of such applicable month plus 3.25%, (B) the Revolving Credit Lenders, a | ¶ 4(c), p. 21 |

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| | fee equal to 2.375% on the daily amount of the Revolving Credit-Linked Deposits of such Revolving Credit Lenders less the principal amount of Revolving Credit Loans held thereby and (C) the Synthetic L/C Lenders, a fee equal to 2.375% on the average daily amount of the Synthetic L/C Deposits of such Synthetic L/C Lenders; (iii) timely pay in cash all reasonable out of pocket fees, costs and expenses of the First Lien Agent and its professionals, Wachtell, Lipton, Rosen & Katz and Capstone Advisory Group, LLC, on a regular monthly basis during the Cases, whether accrued prepetition or postpetition and without further notice, motion or application to, order of, or hearing before, this Court, and (iv) deliver to the First Lien Agent all information, reports, documents and other material that it may reasonably request. | |
| **Carve-Out:** | The Interim Order includes a "Carve Out" from the liens and claims granted therein in favor of several parties as follows:<br><br>Specifically, "**Carve-Out**" means (i) statutory fees payable to the Clerk of the Court and to the United States Trustee; (ii) all reasonable and documented unpaid fees, costs, disbursements and expenses of professionals retained by the Debtors (collectively, the "**Debtors' Professionals**") that are incurred and earned prior to the First Lien Agent's delivery of a Carve-Out Trigger Notice, are allowed by the Court and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors; (iii) all reasonable and documented unpaid fees and expenses of professionals retained by the Committee (collectively, the "**Committee's Professionals**") and all reasonable unpaid expenses of the members of any Committee ("**Committee Members**") that are incurred and earned prior to the delivery by the First Lien Agent's delivery of a Carve-Out Trigger Notice, are allowed by the Court and remain unpaid after application of any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $1,500,000, (the "**Committee Professionals Carve-Out Cap**"); (iv) all reasonable and documented unpaid fees, costs, disbursements and expenses of the Debtors' Professionals that are incurred and earned on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice, that are allowed by the Court and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount not to exceed $2,000,000, split among them on a pro rata basis in accordance with the amount budgeted for each such Debtor Professional in the Approved Budget (the "**Debtors' Professionals Carve-Out Cap**"); (v) all reasonable and documented unpaid fees and expenses of the Committee Professionals that are incurred on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice, are allowed by the Court and remain unpaid after application of any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount not to exceed $250,000 (the "**Committee Professionals Post Carve-Out Cap**" and together with the Debtors' Professionals Carve-Out Cap and Committee Professionals Carve-Out Cap, the "**Carve-Out Cap**") and (vi) in the event of a conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code, the payment of fees and expenses incurred by a trustee and any professional retained by such trustee in | ¶ 7, p. 29<br><br>¶ 7(a), p. 29 |

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| | the aggregate amount not to exceed $100,000.<br><br>The term "**Carve-Out Trigger Notice**" means a written notice delivered by the First Lien Agent to the Debtors' lead counsel, the U.S. Trustee, counsel for the Second Lien Secured Parties, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default. | ¶ 7(b), p. 30 |
| **Validity Enforceability and Perfection of Prepetition Liens and Validity, Enforceability and Amount of Prepetition Obligations; Releases:** | A description of these provisions is set forth in Paragraph 4 of the Motion as part of the required disclosure of certain provisions pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2 | ¶ D, pp. 4-12 |
| **Waiver of Rights Under 506(c):** | A description of this provision is set forth in Paragraph 4 of the Motion as part of the required disclosure of certain provisions pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2. | ¶ 8, p. 31 |
| **Restriction on Use of Proceeds** | No Adequate Protection Collateral, Cash Collateral (including any prepetition retainers funded by any or all of the Prepetition Secured Parties), Prepetition Collateral, or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Cases or any Successor Case, or any other person, party or entity to (a) subject to limited exceptions, request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code Section 364(c) or (d), or otherwise; (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the First Lien Secured Parties and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses, any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code, in each case, with respect to the First Lien Secured Parties; (ii) any so-called "lender liability" claims and causes of action with respect to the First Lien Secured Parties; (iii) any action with respect to the validity, enforceability, priority and extent of the First Lien Obligations, or the validity, extent, perfection and priority of the First Priority Liens or the Adequate Protection Replacement Liens (or the value of any of the Prepetition Collateral or Adequate Protection Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the First Priority Liens, the Adequate Protection Replacement Liens or the other Prepetition Secured Parties' Adequate Protection; and/or (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the First Lien Agent and First Lien Secured Parties hereunder or the Prepetition Documents; provided, however, up to | ¶ 14, p. 35 |

NY\1675328.17

| Material Term | Summary of Material Term | Provision |
|---|---|---|
| | $50,000 in the aggregate of the Committee Professionals Carve-Out Cap and Committee Professionals Post Carve-Out Cap, any Adequate Protection Collateral, any Prepetition Collateral or any Cash Collateral may be used by the Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity and priority of the First Lien Obligations, the First Priority Liens or any other claims against the First Lien Secured Parties so long as such investigation occurs within 60 days after entry of the Final Order. | |

## Summary of Provisions to be Highlighted Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2

4.     Bankruptcy Rule 4001(b) and Local Rule 4001-2 require that certain provisions contained in the Interim Order be highlighted for the Court and parties in interest. The Debtors believe that the following provisions may be required to be identified in accordance with such rules and that such provisions are justified and necessary in the context and circumstances of these Cases.

(a) <u>Binding the Estate to Validity, Perfection and Amount of Prepetition Obligations.</u> Although the Interim Order includes certain stipulations and releases by the Debtors related to the validity enforceability and perfection of Prepetition Liens and validity, enforceability and amount of the Prepetition Obligations, the Interim Order reserves until sixty (60) days after the date of entry of the Final Order the rights of any party to bring (i) a contested matter or adversary proceeding challenging the admissions, stipulations, findings or releases included in the Debtors' Stipulations; or (ii) a contested matter or adversary proceeding against any or all of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations. (Interim Order, ¶¶ D(vi), (vii) and (viii), pp. 9-12). As this provision affords parties in interest the requisite investigation period contemplated under the Local Rules, the Debtors respectfully submit that it complies with the Bankruptcy Rules and the Local Rules.

(b) <u>Section 506(c) Waiver.</u> The Interim Order provides that, subject to the entry of the Final Order, no costs or expenses of administration of the Cases or any Successor Case will be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Adequate Protection Collateral, the Prepetition Collateral, and the Cash Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the First Lien Agent and the Consenting First Lien Lenders. (Interim Order, ¶ 8, p. 32). The proposed waiver of the estate's rights will be effective only after notice to parties in interest and entry of the Final Order granting such relief. Thus, the Debtors believe that parties in interest will have sufficient notice of this provision prior to the Final Hearing and the Debtors are simply disclosing such provision out of an abundance of caution.

8

(c) <u>Liens on Avoidance Actions.</u> Included among the Adequate Protection Replacement Liens granted to the First Lien Secured Parties and the Second Lien Secured Parties, as applicable, are replacement Liens on Avoidance Action Proceeds. (Interim Order, ¶4(a), pp. 19-20). The granting of these replacement Liens will be effective only after notice to parties in interest and entry of the Final Order granting such relief. Thus, the Debtors believe that parties in interest will have sufficient notice of this provision prior to the Final Hearing and the Debtors are simply disclosing such provision out of an abundance of caution.

(d) <u>Certain Aspects of Carve Out</u>. The Carve Out provides for payment of all reasonable and documented unpaid fees, costs, disbursements and expenses of the Debtors' Professionals that are (i) incurred and earned <u>prior to</u> the First Lien Agent's delivery of a Carve-Out Trigger Notice, and (ii) allowed by the Court and remain after application of any retainers and any available funds remaining in the Debtors' estates for such creditors. Although these amounts are not subject to any cap, the Committee's Professionals and Committee Members are subjected to a cap of $1,500,000 for similar fees during such period. For the period <u>on or after</u> the delivery by the First Lien Agent of a Carve-Out Trigger Notice, the Debtors' Professionals are subjected to a cap in an aggregate amount of $2,000,000 for all reasonable and documented incurred and earned fees, costs, disbursements and expenses that are allowed by the Court and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors. The Committee Members and Committee Professionals are subjected to a cap for similar fees during the same period of $250,000 (Interim Order, ¶ 7(a), pp. 29-31). The Debtors believe the foregoing disparities between the amounts of such fees, costs, disbursements and expenses of the Debtors' Professionals on the one hand and the Committee Members and Committee Professionals on the other, reasonably reflect the likely allocation of fees among these respective professionals during the applicable time period and, thus, are appropriate in the context of these Cases.

(e) <u>Certain Events of Default</u>. As set forth in the summary table above, one of the Events of Default is the filing by the Debtors of a motion which seeks entry of an order (i) dismissing any of the Cases, (ii) converting any of the Cases to cases under chapter 7 of the Bankruptcy Code or (iii) appointing a trustee or examiner with the expanded powers to operate the Debtors' businesses pursuant to section 1104 of the Bankruptcy Code in any of the Cases. (Interim Order, ¶ 3(b), pp. 17-18). Given the extraordinary nature of the relief that is being sought pursuant to each of the foregoing motions, and that parties in interest will have sufficient notice of this provision prior to the Final Hearing, the Debtors submit that the foregoing is reasonable under the circumstances of these Cases and the Debtors are simply disclosing such provision out of an abundance of caution.

### **Certification of Budget Pursuant to Local Bankruptcy Rule 4001-2(h)**

5.     As noted in the summary table above, the Debtors' access to Cash Collateral will be subject to the Budget. The Debtors believe that the Budget will be adequate, considering all

9

available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

**Background**

### A.  General Background

6.     The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these Cases.

7.     A description of the Debtors' business, the reasons for commencing these Cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the First Day Declaration filed contemporaneously with this Motion. However, certain facts directly related to the Debtors' prepetition secured obligations warrant further description here.

### B.  The Debtors' Prepetition Secured Obligations

8.     The First Lien Credit Facility. Pursuant to that certain First Lien Credit and Guaranty Agreement dated as of December 21, 2006 (the "**First Lien Credit Agreement**") among, *inter alia*, Boston Generating, LLC (the "**Borrower**"), certain other Debtors as guarantors (the "**Guarantors**"), the lenders party thereto (collectively, "**First Lien Lenders**"), the Fronting Bank, the Synthetic Issuing Bank and Credit Suisse AG, Cayman Islands Branch (formerly known as Credit Suisse, Cayman Islands Branch) ("**CS**"), as administrative agent for the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank and collateral agent for the First Lien Secured Parties (as defined in the Intercreditor Agreement (as defined below)) (CS, in such capacity, the "**First Lien Agent**"), the First Lien Agent, the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank agreed to extend certain loans to, and issue

10

synthetic letters of credit for the account of, the Borrower. The First Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the First Lien Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "**First Lien Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the First Lien Credit Agreement (including, without limitation, the Obligations) or any other First Lien Document (including, without limitation, any First Lien Hedge Agreement and any First Lien Commodity Hedge and Power Sale Agreement) are collectively referred to herein as the "**First Lien Obligations**."

9. <u>Second Lien Credit Facility</u>. Pursuant to that certain Second Lien Credit and Guaranty Agreement dated as of December 21, 2006 (the "**Second Lien Credit Agreement**"), among, *inter alia*, the Borrower, the Guarantors, the lenders party thereto (collectively, "**Second Lien Lenders**") and Wilmington Trust FSB ("*WT*"), as administrative agent for the Second Lien Lenders and Second Lien Collateral Agent for the Second Lien Secured Parties (as defined in the Intercreditor Agreement) (the Second Lien Secured Parties and First Lien Secured Parties collectively, the "**Prepetition Secured Parties**") (WT, in such capacity, the "**Second Lien Agent**"), the Second Lien Agent and the Second Lien Lenders agreed to extend certain loans to the Borrower. The Second Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Second Lien Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "**Second Lien Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the Second Lien Credit Agreement (including, without limitation, the Obligations (as defined in the

Second Lien Credit Agreement)) or any other Second Lien Document are collectively referred to herein as the "**Second Lien Obligations**" and, together with the First Lien Obligations, the "**Prepetition Obligations**."

10.     First Priority Liens and First Lien Collateral. Pursuant to the First Lien Collateral Documents (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**First Lien Collateral Documents**") other than the First Lien Pledge Agreement (as defined below), by and between each of the Debtors (other than EBG Holdings LLC ("**EBG**")) and the First Lien Agent, each Debtor (other than EBG) granted to the First Lien Agent, for the benefit of the First Lien Secured Parties, to secure the First Lien Obligations, a valid, binding, enforceable and perfected first priority continuing security interest (the "**Guarantor First Priority Liens**") in substantially all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising. Pursuant to the First Lien Pledge Agreement, dated as of December 21, 2006 (the "**First Lien Pledge Agreement**"), between EBG and the First Lien Agent, EBG granted to the First Lien Agent for the benefit of the First Lien Secured Parties, to secure the First Lien Obligations, a valid, binding, enforceable and perfected first priority continuing security interest (the "**EBG First Priority Lien**" and, together with the Guarantor First Priority Liens, the "**First Priority Liens**") in 100% of the membership interests of the Borrower, all rights and benefits under the LLC Agreement (as defined in the First Lien Pledge Agreement), the Tender Offer Payment Account (as defined in the First Lien Pledge Agreement), all amounts deposited or held therein from time to time, all investments from time to time purchased with

12

funds therein or otherwise delivered thereto or held therein and all certificates, instruments or other documents evidencing such and all proceeds of any of the foregoing. All collateral granted or pledged by the Debtors pursuant to any First Lien Collateral Document (including, without limitation, the First Lien Pledge Agreement) or any other First Lien Document, including, without limitation, the Collateral, and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "**First Lien Collateral**."

11.    Second Priority Liens and Second Lien Collateral.  Pursuant to the Second Lien Collateral Documents (as defined in the Second Lien Credit Agreement) (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**Second Lien Collateral Documents**") other than the Second Lien Pledge Agreement (as defined below), by and between each of the Debtors (other than EBG) and the Second Lien Agent, each Debtor (other than EBG) granted to the Second Lien Agent, for the benefit of the Second Lien Secured Parties, to secure the Second Lien Obligations, a valid, binding, enforceable and perfected second priority continuing security interest (the "**Guarantor Second Priority Liens**") in substantially all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising.  Pursuant to the Second Lien Pledge Agreement, dated as of December 21, 2006 (the "**Second Lien Pledge Agreement**"), between EBG and the Second Lien Agent, EBG granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties, to secure the Second Lien Obligations, a valid, binding, enforceable and perfected second priority continuing security interest (the "**EBG Second Priority Lien**" and, together with the Guarantor Second Priority Liens, the "**Second**

**Priority Liens**" and, together with the First Priority Liens, the "**Prepetition Liens**") in 100% of the membership interests of the Borrower, all rights and benefits under the LLC Agreement (as defined in the Second Lien Pledge Agreement), the Tender Offer Payment Account (as defined in the Second Lien Pledge Agreement), all amounts deposited or held therein from time to time, all investments from time to time purchased with funds therein or otherwise delivered thereto or held therein and all certificates, instruments or other documents evidencing such and all proceeds of any of the foregoing. All collateral granted or pledged by the Debtors pursuant to any Second Lien Collateral Document (including, without limitation, the Second Lien Pledge Agreement) or any other Second Lien Document, including, without limitation, the Collateral (as defined in the Second Lien Credit Agreement), and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "**Second Lien Collateral**" and, together with the First Lien Collateral, the "**Prepetition Collateral**."

12.     Intercreditor Agreement. Pursuant to the Collateral Agency and Intercreditor Agreement, dated as of December 21, 2006 (the "**Intercreditor Agreement**" and, together with the First Lien Documents and the Second Lien Documents, the "**Prepetition Documents**"), among the Debtors, the First Lien Agent, the Second Lien Agent and Credit Suisse Energy LLC, as First Lien Commodity Hedge Counterparty (as defined in the Intercreditor Agreement), (I) the Second Priority Liens are subject and subordinate on the terms contained in the Intercreditor Agreement to the First Priority Liens, (II) until the Discharge of First Lien Obligations (as defined in the Intercreditor Agreement) the Second Lien Agent and Second Lien Secured Parties have agreed not to (a) exercise or seek to exercise (subject to section 3.1(a)(i) of the Intercreditor Agreement) any rights or remedies with respect to any Prepetition Collateral, (b) contest, protest or object to any exercise by the First Lien Agent or any First Lien Secured Party of any rights or

14

remedies relating to the Prepetition Collateral, (c) assert, or otherwise claim the benefit of, any appraisal, valuation or other similar right that may otherwise be available under applicable law with respect to the Prepetition Collateral, (d) oppose or otherwise contest any claim by the First Lien Agent or any First Lien Secured Party or (e) challenge the validity, enforceability, perfection or priority of the liens held by the First Lien Agent or any First Lien Secured Party, (III) the Second Lien Agent and Second Lien Secured Parties have agreed (subject to sections 3.1(a), 3.1(g) and 6.3(b) of the Intercreditor Agreement) not to take any action that would hinder any exercise of remedies under the First Lien Documents or is otherwise prohibited under the Intercreditor Agreement, including any sale, lease, exchange, transfer or other disposition of Prepetition Collateral, (IV) until the Discharge of First Lien Obligations, the First Lien Agent has (subject to sections 3.1(a)(i) and 6.2 of the Intercreditor Agreement) the exclusive right to enforce rights, exercise remedies and make determinations regarding the release, sale or disposition of or restrictions with respect to the Prepetition Collateral without any consultation with or the consent of the Second Lien Agent or any Second Lien Secured Party and (V) the Second Lien Agent and Second Lien Secured Parties have agreed not to object to the Interim Order in their respective capacities as secured creditors. A true and correct copy of the Intercreditor Agreement is attached hereto as <u>Exhibit B</u>.

  13. <u>Amounts Owed under Prepetition Documents</u>. As of the Petition Date, the Debtors were indebted (i) to the First Lien Secured Parties pursuant to the First Lien Documents, in respect of loans made and synthetic letters of credit issued by the First Lien Agent, the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank, in the aggregate principal amount of not less than $1,279,450,000, *plus* all accrued or, subject to Section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon, any additional obligations

NY\1675328.17

arising under any First Lien Hedge Agreement (as defined in the Intercreditor Agreement) or any First Lien Commodity Hedge and Power Sale Agreement (as defined in the Intercreditor Agreement) and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Documents) due under the First Lien Credit Agreement and the other First Lien Documents and (ii) to the Second Lien Secured Parties pursuant to the Second Lien Documents, in respect of loans made by the Second Lien Agent and Second Lien Lenders in the aggregate principal amount of not less than $350,000,000, *plus* all accrued and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Documents) due under the Second Lien Credit Agreement and the other Second Lien Documents as of the Petition Date.

## Jurisdiction

14.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. No request for the appointment of a trustee or examiner has been made in these Cases (as defined below) and no official statutory committees have been appointed or designated by the Office of the United States Trustee.

15.     The statutory bases for the relief requested herein are Sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

NY\1675328.17

## Relief Requested

16. By this motion, the Debtors request entry of the Interim Order and the Final Order (a) authorizing the Debtors to use Prepetition Collateral, including, without limitation Cash Collateral, in which the Prepetition Secured Parties have a Lien or other interest, whether existing on the Petition Date, arising pursuant to the Interim Order or otherwise; (b) granting, as of the Petition Date and in accordance with the relative priorities set forth in the Interim Order, certain adequate protection to the Prepetition Secured Parties; (c) vacating the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and subject in all respects to the Debtors' rights as set forth in the Interim Order; (d) waiving any applicable stay and providing for the immediate effectiveness of the Interim Order, (e) scheduling the Final Hearing on the Motion on a date that is within thirty-five (35) days of the Petition Date at which time the Court will consider entry of the Final Order, acceptable in form and substance to the First Lien Agent and the Consenting First Lien Lenders; and (f) prescribing the form and manner of notice of such hearing.

## The Debtors' Urgent Need to Use the Prepetition Collateral (Including, Without Limitation, the Cash Collateral

17. Currently, the Debtors lack sufficient unencumbered funds with which to operate their business on an ongoing basis. The Debtors thus have an immediate postpetition need for the use of the Prepetition Collateral, including, without limitation, the Cash Collateral, and hereby request authority to use such Prepetition Collateral, including, without limitation, such Cash Collateral, for the orderly continuation of the operation of the businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operation needs.

17

18.     As noted above, the Consenting First Lien Lenders have consented to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, in exchange for the Debtors' provision of the Prepetition Secured Parties' Adequate Protection. This consent was the result of good faith, arms' length negotiations between the First Lien Agent and the Debtors.

19.     Further, as noted above, pursuant to the Intercreditor Agreement, the Second Lien Agent and the Second Lien Secured Parties are prohibited from objecting to the use of Cash Collateral. (Intercreditor Agreement, Section 6.1).  The Intercreditor Agreement further prohibits the Second Lien Agent and the Second Lien Secured Parties from contesting any request by the First Lien Secured Parties for adequate protection. (Intercreditor Agreement, Section 6.3).  These prohibitions were the result of good faith, arms' length negotiations between the First Lien Agent and the Second Lien Agent and are provisions which are routinely enforced by the courts.  <u>See Ion Media Networks, Inc. v. Cyrus Select Opportunities (In re Ion Media Networks, Inc.)</u>, 419 B.R. 585, 595 (Bankr. S.D.N.Y. Nov. 24, 2009) (giving effect to plain language of intercreditor agreement prohibiting junior lender from challenging liens and objecting to plan confirmation, where agreement was product of sophisticated negotiations and court determined that upholding plain language of "unambiguous intercreditor agreements" reinforces general principles of public policy).

20.     Absent authorization to use the Prepetition Collateral, including, without limitation, the Cash Collateral, the Debtors all but certainly will be unable to sustain their businesses and, as a result, will have to terminate their operations and liquidate their assets, all to the material detriment of all parties in interest.

NY\1675328.17

## Basis for Relief

I.    **The Debtors' Request to Use the Prepetition Collateral, Including, Without Limitation, the Cash Collateral and the Proposed Adequate Protection Should be Approved.**

21.    The Debtors' use of property of their estates is governed by Section 363 of the Bankruptcy Code, which provides in pertinent part, as follows:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

22.    Section 363(c)(2)(A) of the Bankruptcy Code permits a debtor in possession to use cash collateral with the consent of the secured party. Section 363(e) of the Bankruptcy Code requires that the debtor adequately protect the secured creditor's interest in property to be used by the debtor from the diminution in value of such secured creditor's interest resulting from the debtor's use of the property during the chapter 11 case.

23.    What constitutes sufficient adequate protection is decided on a case-by-case basis. See In re Columbia Gas Sys., Inc., 1992 WL 79323 at *2 (Bankr. D. Del. Feb. 18, 1992); see also In re Martin, 761 F.2d 472 (8th Cir. 1985); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Realty Sw. Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992). As noted above, the concept of adequate protection under the Bankruptcy Code is designed to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Hubbard Power & Light, 202 B.R. 680 (Bankr. E.D.N.Y. 1996). Adequate protection can come in various forms,

19

including payment of certain fees and expenses, payment of interest and/or the granting of replacement liens and administrative claims.

24.     As summarized in the table above and detailed in the Interim Order, to protect against the Prepetition Secured Parties' respective interests in the Prepetition Collateral and the Diminution in Value resulting from the Debtors' use, sale or lease of the Prepetition Collateral (including Cash Collateral), the subordination of the Prepetition Liens to the Carve-Out and the imposition of the automatic stay, the Debtors propose to (a) provide the First Lien Lenders with three primary forms of adequate protection, and (b) provide the Second Lien Lenders with one primary form of adequate protection.[5]

25.     First, to the extent of Diminution in Value, the First Lien Agent and Second Lien Agent, as applicable, for the benefit of the First Lien Secured Parties and Second Lien Secured Parties, respectively, will be granted Adequate Protection Replacement Liens on the Adequate Protection Collateral. Notably, the Adequate Protection Replacement Liens on such Adequate Protection Collateral will be subject and subordinate only to (a) any security interest or lien granted pursuant to Sections 364(c)(2), 364(c)(3) and/or 364(d)(1) of the Bankruptcy Code in connection with any DIP Financing (b) the Carve-Out and (c) with respect to the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties only, the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties.[6]

---

[5]     The Debtors believe that the proposed forms of adequate protection are reasonable and sufficient to protect the interests of the Prepetition Secured Parties. However, subject to the terms of the Intercreditor Agreement, any Prepetition Secured Party may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request.

[6]     For the avoidance of doubt, the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties will be subordinated to the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties on the same basis as the Second Priority Liens are subordinated to the First Priority Liens.

NY\1675328.17

26.     Second, to the extent of Diminution in Value, the First Lien Secured Parties will be granted Adequate Protection Super-Priority Claims pursuant to Section 507(b) of the Bankruptcy Code, junior only to (a) any superpriority administrative claims granted pursuant to Section 364(c)(1) of the Bankruptcy Code in connection with any DIP Financing and (b) the Carve-Out. Notably, the Adequate Protection Super-Priority Claims against each Debtor will be against each Debtor on a joint and several basis.

27.     Third, the Debtors will (i) within three (3) Business Days of the date of entry of the Interim Order pay to the First Lien Agent for prompt distribution to the First Lien Lenders, Revolving Credit Lenders and Synthetic L/C Lenders, as applicable, a cash amount equal to $5,175,420.63, (ii) on the last day of each calendar month commencing after the date of entry of the Interim Order pay to the First Lien Agent for prompt distribution to (A) the First Lien Lenders, interest on the unpaid principal amount of the Loans outstanding under the First Lien Credit Agreement pursuant to a designated calculation,[7] (B) the Revolving Credit Lenders, a fee equal to 2.375% on the daily amount of the Revolving Credit-Linked Deposits of such Revolving Credit Lenders less the principal amount of Revolving Credit Loans held thereby and (C) the Synthetic L/C Lenders, a fee equal to 2.375% on the average daily amount of the Synthetic L/C Deposits of such Synthetic L/C Lenders,[8] (iii) timely pay in cash all reasonable out of pocket fees, costs and expenses of the First Lien Agent and its professionals, Wachtell, Lipton, Rosen & Katz and Capstone Advisory Group, LLC, on a regular monthly basis during the Cases, whether accrued prepetition or postpetition and without further notice, motion or application to, order of,

---

[7]     The calculation with respect to such payments on August 31, 2010 and September 30, 2010 is the Eurodollar Rate for the applicable Interest Period then in effect for such Loans plus 4.25% and the calculation with respect to all other such payments is the Base Rate set at the beginning of such applicable month plus 3.25%,

[8]     It is understood, with respect to any payment made pursuant to clause "(ii)" that on August 31, 2010, such payment amount shall not include the amount of interest or fees accrued prior to the Petition Date.

or hearing before, this Court, and (iv) deliver to the First Lien Agent all information, reports, documents and other material that it may reasonably request, either directly or through its professionals.[9]

28.     In light of the foregoing, the Debtors submit--and the Consenting First Lien Lenders agree--that the adequate protection to be provided for the benefit of the Prepetition Secured Parties is appropriate. Indeed, the Debtors' provision of the Prepetition Secured Parties' Adequate Protection is necessary and appropriate under the circumstances of these Cases to ensure the Debtors are able to continue using the Prepetition Collateral, including, without limitation, the Cash Collateral, for the benefit of all parties in interest. Accordingly, the adequate protection proposed herein and in the Interim Order is fair and reasonable and sufficient to satisfy the requirements of Sections 363(c)(2) and (e) of the Bankruptcy Code.

29.     Moreover, courts in this district have granted similar relief in other recent chapter 11 cases. See, e.g., In re Charter Commc'ns, Inc., Case No. 09-11435 (Bankr. S.D.N.Y. Mar. 30, 2009); In re BH S&B Holdings, LLC, Case No. 08-14604 (Bankr. S.D.N.Y. Jan. 8, 2009); In re Bally Total Fitness of Greater New York, Inc., Case No. 08-14818 (Bankr. S.D.N.Y. Jan. 8, 2009); In re PLVTZ, Inc., Case No. 07-13532 (Bankr. S.D.N.Y. Nov. 9, 2007).[10]

## II.     The Automatic Stay Should be Modified on a Limited Basis.

30.     The relief requested contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to grant the Adequate Protection Liens and to incur all liabilities and obligations to the Prepetition Secured Parties under the Interim Order. It further

---

[9]      The Interim Order provides that all interest, fees and professional fees and expenses (in each case, as described above) paid pursuant to the Interim Order will be subject to recharacterization and reapplication pursuant to further order of the Court if and to the extent the First Lien Obligations are determined by the Court to be undersecured.

[10]     Because of the voluminous nature of the orders cited herein, these orders are not attached to the Motion. Copies of these orders, however, are available on request of the Debtors' proposed counsel.

22

proposes a modification of the stay to permit the First Lien Secured Parties to exercise the following remedies immediately upon the occurrence and during the continuance of an Event of Default: (a) declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral, including Cash Collateral derived solely from the proceeds of Adequate Protection Collateral, and to use Prepetition Collateral other than in the ordinary course (any such declaration, a "**Termination Declaration**" and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the "**Termination Declaration Date**"); (b) reduce any claim to judgment; and/or (c) take any other action permitted by law.

31.     Stay modifications of this kind are ordinary and standard features of secured parties' consents to use Cash Collateral and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

## III.     The Debtors' Interim Use of Cash Collateral Should be Approved.

32.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

33.     Absent use of the Prepetition Collateral, including, without limitation, the Cash Collateral, the Debtors will simply be unable to operate their businesses.  The Debtors will not be able to fund their payroll obligations or satisfy the ordinary course of business obligations that are necessary for operations to continue uninterrupted.  The failure to satisfy these obligations will result in an immediate shut-down of the Debtors' businesses and a concomitant destruction

NY\1675328.17

in value to the Debtors' estates and the recoveries of all parties in interest. These circumstances, without question, will cause immediate and irreparable harm to the Debtors' estates.

34. Based upon the foregoing, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rules 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis. Accordingly, the Debtors seek immediate authority to use the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to the terms and conditions in the Interim Order to prevent immediate and irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

## Request for Final Hearing

35. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that this Court set a date for the Final Hearing that is as soon as practicable, but in no event later than thirty-five (35) days following the entry of the Interim Order, and fix the time and date for parties to file objections to the Motion in advance of such Final Hearing.

## Request for Waiver of Stay

36. By this Motion, the Debtors seek a waiver of any stay of the effectiveness of the Interim Order. As set forth above, immediate use of the Prepetition Collateral, including, without limitation, the Cash Collateral, is essential to prevent potentially irreparable damage to the Debtors' operations and value.

## Motion Practice

37. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

NY\1675328.17

## Notice

38.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee, (b) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions, (c) counsel to the administrative agent for the lenders under the Debtors' prepetition first lien credit facility, (d) counsel to the administrative agent for the lenders under the Debtors' prepetition second lien credit facility, (e) counsel to the administrative agent for the lenders under the Debtors' prepetition unsecured mezzanine credit facility, (f) the Internal Revenue Service, (g) the Federal Energy Regulatory Commission, and (h) the Environmental Protection Agency.  In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances and that Local Rule 9013-1(b) has been satisfied.

39.     A copy of the Motion is available on the Court's website: http://www.nysb.uscourts.gov/.  Additional copies of the Motion are available on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc. at www.bgrestructuring.com or can be requested by calling 1-866-454-3498.

## No Prior Request

40.     No previous request for the relief sought herein has been made to this Court or any other court.

NY\1675328.17

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  August 18, 2010
New York, New York

Respectfully Submitted,

/s/ D. J. Baker
D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

NY\1675328.17