D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Joint Administration Requested |

**DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 329 OF THE BANKRUPTCY CODE, FED. R. BANKR. P. 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1 AUTHORIZING THE EMPLOYMENT AND RETENTION OF LATHAM & WATKINS LLP AS BANKRUPTCY COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") file this application (the "**Application**") for entry of an order pursuant to Sections 327(a) and 329 of title 11 of the United States Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York, in substantially the form attached hereto as Exhibit A, authorizing the employment and retention of Latham & Watkins LLP ("**L&W**"), *nunc pro tunc* to the Petition Date (as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

NY\1658197.19

defined below), as the Debtors' bankruptcy counsel. In support of this Application, the Debtors rely on the Affidavit of D.J. Baker, as a member of L&W (the "**Baker Affidavit**"), annexed hereto as <u>Exhibit B</u>. In further support of the Application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases (as defined below), and no official statutory committees have been appointed or designated by the Office of the United States Trustee.

2. The statutory bases for the relief requested herein are Sections 327(a) and 329 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## Background

3. On August 18, 2010 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are operating their business and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. A description of the Debtors' business, the reasons for commencing these Chapter 11 Cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 (including the facts and circumstances supporting this Application) are set forth in the

2

Declaration of Jeff Hunter, Manager, Executive Vice President and Chief Financial Officer of EBG Holdings LLC, in Support of Chapter 11 Petitions and First Day Pleadings (the "**First Day Declaration**") filed on the Petition Date.

### Relief Requested

5. The Debtors seek the entry of an order pursuant to Sections 327(a) and 329 of the Bankruptcy Code authorizing each of them to employ and retain L&W, *nunc pro tunc* to the Petition Date, in accordance with the provisions of the Engagement Letter (as defined below), this Application, and the proposed order submitted herewith, as the Debtors' bankruptcy counsel under a general retainer to perform the legal services that will be necessary during these Chapter 11 Cases, as more fully described herein.

### Basis for Relief Requested

6. In April of this year, the Debtors approached L&W regarding representing them in connection with their restructuring efforts. On or about April 30, 2010, L&W provided an engagement letter (the "**Engagement Letter**") to the Debtors, which was ultimately entered into as of May 5, 2010. A copy of the Engagement Letter is attached to the Baker Affidavit as Annex 5. Additionally, L&W has periodically represented former affiliated entities of the Debtors, under prior corporate ownership, since October 1997.

7. Since entering into the Engagement Letter, the Debtors and L&W have worked closely in an effort to respond to the Debtors' financial circumstances, including negotiations concerning the Debtors' restructuring options with the Debtors' major creditors and potential strategic partners, the preparation of documents related to these Chapter 11 Cases, and other related matters. In doing so, L&W has become uniquely familiar with the Debtors' business affairs and many of the potential legal issues that might arise in the context of these Chapter 11

Cases. L&W has provided advice and assisted the Debtors in all aspects of their restructuring efforts.

8. The Debtors selected L&W as their restructuring counsel because of, among other things, L&W's knowledge of the Debtors' businesses and financial affairs and L&W's recognized expertise in the field of creditors' rights, business reorganizations and sales under chapter 11 of the Bankruptcy Code. L&W possesses extensive experience and knowledge practicing before bankruptcy courts. L&W has been involved in virtually every major chapter 11 case filed in the United States during the last decade, and has represented numerous debtors in their bankruptcy matters, including, without limitation, Accuride Corporation, American Classic Voyages, Assisted Living Concepts, Inc., AT&T Latin America, Bally Total Fitness Corporation, Btf Cfi Inc., Consolidated Freightways, Cricket Communications, Inc. Inc., Dayton Superior Corporation, DVI, Eddie Bauer Holdings, Inc., Leap Wireless International, Inc., NEC Holdings Corp., Regent Communications, Inc., Spansion Inc., Spring Air Partners—North America and United Australia Pacific, Inc. Accordingly, the Debtors believe that L&W is well-qualified to represent them in these Chapter 11 Cases and that such representation is critical to the Debtors' efforts to restructure their businesses.

## Scope of Services

9. The Debtors desire to employ L&W under a general retainer because of, among other reasons, the nature of the legal services that will be required in connection with these Chapter 11 Cases. To engage alternative counsel at this stage of the Debtors' restructuring would be tremendously disruptive and derail the possibility of the Debtors' emergence on the quick timetable necessary for a successful reorganization or successful sale.

10. The services of legal counsel are necessary to enable the Debtors to execute faithfully their duties as debtors in possession. Subject to further order of this Court, L&W will be required to render various services to the Debtors, including, without limitation, the following:

    a. advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their business and properties;

    b. attending meetings and negotiating with representatives of creditors, interest holders and other parties in interest;

    c. taking all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the estates;

    d. preparing motions, applications, answers, orders, reports and papers necessary to the administration of the Debtors' estates;

    e. taking necessary action on behalf of the Debtors to negotiate, prepare and obtain approval of a disclosure statement and confirmation of a plan of reorganization or plan of liquidation;

    f. advising the Debtors in connection with any potential sale of assets and taking necessary action to guide the Debtors through a potential sale of their assets in the Bankruptcy Court;

    g. appearing before this Court or any Appellate Courts and protecting the interests of the Debtors' estates before those Courts and the United States Trustee; and

    h. performing all other necessary legal services for the Debtors in connection with these Chapter 11 Cases, including, without limitation, (i) analyzing the Debtors' leases and executory contracts and the assumption or assignment thereof and (ii) advising on corporate, litigation, environmental, finance and other legal matters.

11. The Debtors anticipate filing an application to retain Anderson Kill & Olick, P.C. ("**AK**") as conflicts counsel. Because L&W and AK will have a well-defined role, each counsel

will not duplicate the services they provide to the Debtors. L&W and AK will coordinate their work to ensure that legal services provided to the Debtors by each firm are not duplicative.

12. It is necessary for the Debtors to employ attorneys under a general retainer to render the foregoing professional services. Subject to approval of this Application, L&W has confirmed its desire and willingness to act in these Chapter 11 Cases and render the necessary professional services as attorneys for the Debtors.

13. The Debtors also intend to file applications to employ other professionals. L&W has advised the Debtors that it intends to monitor carefully and coordinate with the other professionals retained by the Debtors in these Chapter 11 Cases and will clearly delineate their respective duties so as to prevent duplication of effort. Efficient coordination of efforts of the Debtors' attorneys and other professionals will greatly add to the effective administration of these Chapter 11 Cases.

## L&W's Disinterestedness

14. As set forth in the Baker Affidavit, L&W has in the past represented, currently represents, and likely in the future will represent certain parties in interest in these Chapter 11, but only in matters wholly unrelated to the Debtors, these Chapter 11 Cases, and such entities' claims against or interests in the Debtors.

15. To the best of the Debtors' knowledge, and except as otherwise set forth in the Application and in the accompanying Baker Affidavit, the members of, counsel to, and associates of L&W (a) do not have any connection with any of the Debtors, their affiliates, their creditors, or any other party in interest, or their respective attorneys and accountants, the United States Trustee for the Southern District of New York or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of New York

or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the estates.

16. The Debtors understand that L&W will continue to conduct periodic conflicts analyses to determine whether it is performing or has performed services for any significant parties in interest in these Chapter 11 Cases and will promptly update the Baker Affidavit to disclose any material developments regarding the Debtors or any other pertinent relationships that come to L&W's attention.

### Professional Compensation

17. L&W's hourly rates are set at a level designed to fairly compensate L&W for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. In the event that L&W's rates increase, the Debtors will file a notice detailing the new rate structure and will serve such notice on the Notice Parties (as defined below).

18. Consistent with L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services. It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

19. During the course of these cases, L&W will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Fee Guidelines, and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such applications will constitute a request for interim payment against L&W's reasonable fees and expenses to be determined at the conclusion of these Chapter 11 Cases.

20. L&W will accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in these cases.

21. Additionally, L&W will also seek compensation for all time and expenses associated with its retention as a Section 327(a) professional, including the preparation of this Application, the Baker Affidavit and related documents, as well as any monthly fee statements and/or interim and final fee applications.

22. With respect to restructuring matters and substantially contemporaneous with the execution of the Engagement Letter, the Debtors paid L&W the amount of $300,000 to be held as a retainer for the advance payment of pre-petition professional fees and expenses incurred and charged by L&W in its representation of the Debtors on restructuring matters (the "**Retainer**"). The Debtors subsequently increased the Retainer to $1,750,000.00. Since entering into the Engagement Letter, L&W has provided the Debtors with invoices in the aggregate approximate

8

amount of $3,950,467.70 for restructuring matters. This amount reflects all amounts billed to the Debtors for pre-petition professional services, including a final pre-petition invoice for estimated fees and expenses through the Petition Date (the "**Estimated Invoice**"), as well as amounts requested to replenish and increase the Retainer. Upon providing the Debtors with an invoice for professional fees and services, L&W deducted the amount of the invoice from the Retainer and requested that the Debtors replenish the Retainer (except with respect to the Estimated Invoice). Since entering into the Engagement Letter, the Debtors have paid L&W an aggregate amount of $5,022,190.12 with respect to the restructuring engagement, which amount includes the Retainer presently being held, but not yet applied, by L&W.

23. Under the terms of the Engagement Letter, L&W will be permitted, subject to this Court's approval of its engagement, to apply the balance of any Retainer it is holding against its final reconciled invoice for prepetition professional fees and expenses. The balance of any remaining Retainer will be applied to the first monthly postpetition invoice for professional fees and expenses. In that regard, L&W has informed the Debtors that, as promptly as practicable after all fees and charges accrued prior to the Petition Date have been finally posted within L&W's computerized billing system, L&W will issue a final detailed billing statement to the Company for the actual fees, charges, and disbursements incurred for the period prior to the Petition Date (the "**Final Prepetition Bill Amount**"). Pursuant to the Engagement Letter, and subject to any orders of this Court, L&W will reconcile the Final Prepetition Bill Amount with the Retainer. To the extent that the amount of prepetition invoices is less than the Retainer, L&W will apply the balance against L&W's first postpetition monthly invoice for professional fees and expenses. In the event that the Final Prepetition Bill Amount exceeds the Retainer, L&W has agreed to waive any resulting pre-petition claim against the Debtors for payment.

24. Additionally, attached as <u>Annex 6</u> to the Baker Affidavit is a schedule of the invoices sent by L&W and the payments made by the Debtors to replenish the Retainer during the 90 days prior to the commencement of these Chapter 11 Cases. As set forth on <u>Annex 6</u>, L&W has invoiced the Company in the approximate aggregate amount of $3,950,467.70 for professional services, including fees and expenses. Prior to the Petition Date, L&W prepared and forwarded to the Debtors the Estimated Invoice in the amount of $678,277.58, which is also in Annex 6. L&W drew on the Retainer in that same amount. Presently, L&W estimates that it is holding approximately $1,071,722.42 in the Retainer.

25. The Debtors submit that the engagement and retention of L&W on the terms and conditions set forth herein and in the Engagement Letter is necessary and in the best interests of the Debtors, their estates, and their creditors and should be approved.

## Application Practice

26. This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their applicability to this Application. Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## Notice

27. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee, (b) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the Debtors' chapter 11 petitions, (c) counsel to the administrative agent for the lenders under the Debtors' prepetition first lien credit facility, (d) counsel to the administrative agent for the lenders under the Debtors' prepetition second lien credit facility, (e) counsel to the administrative agent for the lenders under the Debtors' prepetition unsecured mezzanine credit facility, (f) the Internal Revenue Service, (g) the Federal

10

NY\1658197.19

Energy Regulatory Commission, (h) the Environmental Protection Agency, and (i) entities entitled to notice pursuant to Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Notice Parties**"). In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

28. A copy of the Application is available on the Court's website: http://www.nysb.uscourts.gov/. Additional copies of the Application are available on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at www.bgrestructuring.com or can be requested by calling 1-866-454-3498.

## No Prior Application

29. No previous request for the relief sought herein has been made to this Court or any other court.

NY\1658197.19

WHEREFORE, the Debtors respectfully request that this Court enter the order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to retain and employ L&W *nunc pro tunc* to the Petition Date and (b) granting such other and further relief as is just and proper.

Dated: August 18, 2010  
      New York, New York

Respectfully Submitted,

BOSTON GENERATING, LLC

/s/ Jeff Hunter
------------------------------
Jeff Hunter  
Executive Vice President

On behalf of Boston Generating, LLC, EBG Holdings LLC, Fore River Development, LLC, Mystic I, LLC, Mystic Development, LLC, BG New England Power Services, Inc., and BG Boston Services LLC