**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Boston Generating, LLC, <br> <u>et al.</u>,[1] | Case No. 10-14419 (SCC) |
| Debtors. | Jointly Administered |
| | **Related Docket No. 18** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363; AND (III) SCHEDULING A FINAL <u>HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)</u>

Upon the motion, dated August 18, 2010, (the "***Cash Collateral Motion***"), of EBG Holdings LLC ("***EBG***"), Boston Generating, LLC (the "***Borrower***"), and the other debtors and debtors in possession (collectively, the "***Debtors***") in the above-referenced chapter 11 cases (the "***Cases***" and each of the Cases upon either appointment of any trustee or any other estate representative or conversion to a case under chapter 7 of the Bankruptcy Code (as defined below) and any other proceedings related to the Cases, a "***Successor Case***"), seeking entry of an interim order (this "***Interim Order***") pursuant to sections 105, 361, 362, 363, 507 and 552 of chapter 11 of title 11 of the United States Code (as amended, the "***Bankruptcy Code***") and Rules

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), that, among other things[2]:

(i) authorizes the Debtors to use Prepetition Collateral (as defined below), including, without limitation, "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "***Cash Collateral***"), in which the Prepetition Secured Parties (as defined below) have a Lien or other interest, whether existing on the Petition Date (as defined below), arising pursuant to this Interim Order or otherwise;

(ii) grants, as of the Petition Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Prepetition Secured Parties as described below;

(iii) vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and subject in all respects to the Debtors' rights under paragraph 13 herein;

(iv) schedules a final hearing on the Cash Collateral Motion to be held within thirty-five (35) days after the Petition Date (the "***Final Hearing***") to consider entry of a final order acceptable in form and substance to the First Lien Agent (as defined below) and Consenting First Lien Lenders (as defined below), which grants all of the relief requested in the Cash Collateral Motion on a final basis (the "***Final Order***"); and

(v) waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the Cash Collateral Motion, the Declaration of Jeff Hunter, Manager, Executive Vice President and Chief Financial Officer of EBG in Support of Chapter 11 Petitions

---

[2]    Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the First Lien Credit Agreement (as defined below).

and First Day Pleadings and the evidence submitted or proffered at the hearing to consider the entry of this Interim Order (the "***Interim Hearing***"); and in accordance with Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and all applicable Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"), notice of the Cash Collateral Motion and the Interim Hearing having been provided in a sufficient manner; an Interim Hearing having been held and concluded on August 20, 2010; and it appearing that approval of the interim relief requested in the Cash Collateral Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[3], that:**

B. **Petition Date**. On August 18, 2010, (the "***Petition Date***"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (this "***Court***"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No statutory committee of unsecured creditors (to the extent such committee is appointed, the "***Committee***"), trustee, or examiner has been appointed in the Cases.

C. **Jurisdiction and Venue**. This Court has core jurisdiction over the Cases, the Cash Collateral Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the Cash Collateral Motion is proper

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Rules.

D. **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Cash Collateral Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on August 18, 2010, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Internal Revenue Service, (iii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis, (iv) counsel to the First Lien Agent (as defined below), (v) the First Lien Agent, (vi) counsel to the Second Lien Agent (as defined below), (vii) the Second Lien Agent, (viii) the administrative agent for the lenders under the Debtors' prepetition unsecured mezzanine credit facility, (ix) the Federal Energy Regulatory Commission and (x) the Environmental Protection Agency. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Cash Collateral Motion, the relief requested therein and the Interim Hearing is required for entry of this Interim Order.

E. **Debtors' Stipulations Regarding the Prepetition Secured Credit Facility**. Without prejudice to the rights of parties in interest to the extent set forth in paragraph 6 below, the Debtors admit, stipulate, acknowledge and agree (paragraphs D(i) through D(viii) hereof shall be referred to herein collectively as the "***Debtors' Stipulations***") as follows:

(i) <u>First Lien Credit Facility</u>. Pursuant to that certain First Lien Credit and Guaranty Agreement dated as of December 21, 2006 (the "***First Lien Credit Agreement***"), among, *inter alia*, the Borrower, certain other Debtors as guarantors (the "***Guarantors***"), the

lenders party thereto (collectively, "***First Lien Lenders***"), the Fronting Bank, the Synthetic Issuing Bank and Credit Suisse AG, Cayman Islands Branch (formerly know as Credit Suisse, Cayman Islands Branch) ("***CS***"), as administrative agent for the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank and collateral agent for the First Lien Secured Parties (as defined in the Intercreditor Agreement (as defined below)) (CS, in such capacity, the "***First Lien Agent***"), the First Lien Agent, the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank agreed to extend certain loans to, and issue synthetic letters of credit for the account of, the Borrower. The First Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the First Lien Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "***First Lien Documents***" (as the same may be amended, restated, supplemented or otherwise modified from time to time). All obligations of the Debtors arising under the First Lien Credit Agreement (including, without limitation, the Obligations) or any other First Lien Document (including, without limitation, any First Lien Hedge Agreement and any First Lien Commodity Hedge and Power Sale Agreement) shall collectively be referred to herein as the "***First Lien Obligations***."

(ii)     <u>Second Lien Credit Facility</u>.  Pursuant to that certain Second Lien Credit and Guaranty Agreement dated as of December 21, 2006 (the "***Second Lien Credit Agreement***"), among, *inter alia*, the Borrower, the Guarantors, the lenders party thereto (collectively, "***Second Lien Lenders***") and Wilmington Trust FSB ("***WT***"), as administrative agent for the Second Lien Lenders and Second Lien Collateral Agent for the Second Lien Secured Parties (as defined in the Intercreditor Agreement) (the Second Lien Secured Parties and First Lien Secured Parties collectively, the "***Prepetition Secured Parties***") (WT, in such

capacity, the "***Second Lien Agent***"), the Second Lien Agent and the Second Lien Lenders agreed to extend certain loans to the Borrower.  The Second Lien Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Second Lien Documents (as defined in the Intercreditor Agreement), are collectively referred to herein as the "***Second Lien Documents***" (as the same may be amended, restated, supplemented or otherwise modified from time to time).  All obligations of the Debtors arising under the Second Lien Credit Agreement (including, without limitation, the Obligations (as defined in the Second Lien Credit Agreement)) or any other Second Lien Document shall collectively be referred to herein as the "***Second Lien Obligations***" and, together with the First Lien Obligations, the "***Prepetition Obligations***."

   (iii) <u>First Priority Liens and First Lien Collateral</u>.  Pursuant to the First Lien Collateral Documents (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "***First Lien Collateral Documents***") other than the First Lien Pledge Agreement (as defined below), by and between each of the Debtors (other than EBG) and the First Lien Agent, each Debtor (other than EBG) granted to the First Lien Agent, for the benefit of the First Lien Secured Parties, to secure the First Lien Obligations, a valid, binding, enforceable and perfected first priority continuing security interest (the "***Guarantor First Priority Liens***") in substantially all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising.  Pursuant to the First Lien Pledge Agreement, dated as of December 21, 2006 (the "***First Lien Pledge Agreement***"), between EBG and the First Lien Agent, EBG granted to the First Lien

Agent for the benefit of the First Lien Secured Parties, to secure the First Lien Obligations, a valid, binding, enforceable and perfected first priority continuing security interest (the "*EBG First Priority Lien*" and, together with the Guarantor First Priority Liens, the "*First Priority Liens*") in 100% of the membership interests of the Borrower, all rights and benefits under the LLC Agreement (as defined in the First Lien Pledge Agreement), the Tender Offer Payment Account (as defined in the First Lien Pledge Agreement), all amounts deposited or held therein from time to time, all investments from time to time purchased with funds therein or otherwise delivered thereto or held therein and all certificates, instruments or other documents evidencing such and all proceeds of any of the foregoing. All collateral granted or pledged by the Debtors pursuant to any First Lien Collateral Document (including, without limitation, the First Lien Pledge Agreement) or any other First Lien Document, including, without limitation, the Collateral, and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "*First Lien Collateral*."

(iv)  <u>Second Priority Liens and Second Lien Collateral</u>. Pursuant to the Second Lien Collateral Documents (as defined in the Second Lien Credit Agreement) (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "*Second Lien Collateral Documents*") other than the Second Lien Pledge Agreement (as defined below), by and between each of the Debtors (other than EBG) and the Second Lien Agent, each Debtor (other than EBG) granted to the Second Lien Agent, for the benefit of the Second Lien Secured Parties, to secure the Second Lien Obligations, a valid, binding, enforceable and perfected second priority continuing security interest (the "*Guarantor Second Priority Liens*") in substantially all of such Debtor's assets and property (which for the avoidance of doubt includes Cash Collateral) and all proceeds thereof, collateral therefor, income, royalties and other

payments due and payable with respect thereto and supporting obligations relating thereto, in each case whether then owned or existing or thereafter acquired or arising. Pursuant to the Second Lien Pledge Agreement, dated as of December 21, 2006 (the "***Second Lien Pledge Agreement***"), between EBG and the Second Lien Agent, EBG granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties, to secure the Second Lien Obligations, a valid, binding, enforceable and perfected second priority continuing security interest (the "***EBG Second Priority Lien***" and, together with the Guarantor Second Priority Liens, the "***Second Priority Liens***" and, together with the First Priority Liens, the "***Prepetition Liens***") in 100% of the membership interests of the Borrower, all rights and benefits under the LLC Agreement (as defined in the Second Lien Pledge Agreement), the Tender Offer Payment Account (as defined in the Second Lien Pledge Agreement), all amounts deposited or held therein from time to time, all investments from time to time purchased with funds therein or otherwise delivered thereto or held therein and all certificates, instruments or other documents evidencing such and all proceeds of any of the foregoing. All collateral granted or pledged by the Debtors pursuant to any Second Lien Collateral Document (including, without limitation, the Second Lien Pledge Agreement) or any other Second Lien Document, including, without limitation, the Collateral (as defined in the Second Lien Credit Agreement), and all prepetition and postpetition proceeds thereof shall collectively be referred to herein as the "***Second Lien Collateral***" and, together with the First Lien Collateral, the "***Prepetition Collateral***."

(v)    Intercreditor Agreement.    The Collateral Agency and Intercreditor Agreement was entered into as of December 21, 2006 (the "***Intercreditor Agreement***" and, together with the First Lien Documents and the Second Lien Documents, the "***Prepetition Documents***"), by and among the Debtors, the First Lien Agent, the Second Lien Agent and

Credit Suisse Energy LLC, as First Lien Commodity Hedge Counterparty (as defined in the Intercreditor Agreement).

(vi) (1) First Priority Liens and First Lien Obligations, Second Priority Liens and Second Priority Lien Objections. (I) The First Priority Liens (a) are valid, binding, enforceable, and perfected Liens, (b) were granted to, or for the benefit of, the First Lien Secured Parties, as applicable, for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (d) are subject and subordinate in all respects only to (A) the Carve-Out (as defined below) and (B) valid, perfected and unavoidable Liens permitted under the First Lien Documents, but only to the extent that such Liens are permitted by the First Lien Documents to be senior to the First Priority Liens and (II) (w) the First Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable First Lien Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets (other than any potential offset under the following agreements: (i) Revised Confirmation dated February 14, 2007 between Boston Generating, LLC and Goldman Sachs Capital Markets, L.P. pursuant to 1992 ISDA Master Agreement (Reference No.: LTAA1707046728.0), (ii) Confirmation dated September 23, 2009 between Boston Generating, LLC and Goldman Sachs Bank USA pursuant to 1992 ISDA Master Agreement (Reference No.: LTAA1742974978.0), Confirmation dated September 23, 2009 between Boston Generating, LLC and Goldman Sachs Bank USA pursuant to 1992 ISDA Master Agreement (Reference No.: LTAA1742975234.0) (collectively, the "**Goldman Sachs Agreements**")), defenses or counterclaims to any of the First Lien Obligations exist, (y) no portion of the First Lien Obligations or any payments made to any or all of the First

Lien Secured Parties is subject to avoidance, recharacterization, recovery, subordination, attack, offset (other than any potential offset under the Goldman Sachs Agreements), counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) the Guaranty of each Guarantor continues in full force and effect notwithstanding any use of the Prepetition Collateral, including, without limitation the Cash Collateral, permitted hereunder. (2) <u>Second Priority Liens and Second Lien Obligations</u>. (I) The Second Priority Liens (a) are valid, binding, enforceable, and perfected Liens, (b) were granted to, or for the benefit of, the Second Lien Secured Parties, as applicable, for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (d) are subject and subordinate in all respects only to (A) the Carve-Out (as defined below), (B) valid, perfected and unavoidable Liens permitted under the Second Lien Documents, but only to the extent that such Liens are permitted by the Second Lien Documents to be senior to the Second Priority Liens and (C) the First Priority Liens, and (II) (w) the Second Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Second Lien Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets (other than any potential offset under the Goldman Sachs Agreement), defenses or counterclaims to any of the Second Lien Obligations exist, (y) no portion of the Second Lien Obligations or any payments made to any or all of the Second Lien Secured Parties is subject to avoidance, recharacterization, recovery, subordination, attack, offset (other than any potential offset under the Goldman Sachs Agreements), counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or

applicable non-bankruptcy law, and (z) the Guaranty of each Guarantor continues in full force and effect notwithstanding any use of the Prepetition Collateral, including, without limitation the Cash Collateral, permitted hereunder.

(vii)     <u>Amounts Owed under Prepetition Documents</u>.  As of the Petition Date, the Debtors were truly and justly indebted (i) to the First Lien Secured Parties pursuant to the First Lien Documents, without defense, counterclaim or offset of any kind, in respect of loans made and synthetic letters of credit issued by the First Lien Agent, the First Lien Lenders, the Fronting Bank and the Synthetic Issuing Bank in the aggregate principal amount of not less than $1,279,450,000, *plus* all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon, any additional obligations arising under any First Lien Hedge Agreement (as defined in the Intercreditor Agreement) or any First Lien Commodity Hedge and Power Sale Agreement (as defined in the Intercreditor Agreement) and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Documents) now or hereafter due under the First Lien Credit Agreement and the other First Lien Documents and (ii) to the Second Lien Secured Parties pursuant to the Second Lien Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the Second Lien Agent and Second Lien Lenders in the aggregate principal amount of not less than $350,000,000, *plus* all accrued and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Documents) due under the Second Lien Credit Agreement and the other Second Lien Documents as of the Petition Date.

(viii)  <u>Release of Claims</u>.  Each Debtor and its estate shall be deemed to have forever waived, discharged, and released the First Lien Agent and First Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "***First Lien Secured Party Releasees***") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights (other than any potential offset under the Goldman Sachs Agreements) against any and all of the First Lien Secured Party Releasees, whether arising at law or in equity, with respect to the First Lien Obligations and First Priority Liens, including, without limitation, (I) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the First Lien Obligations, or the validity, enforceability, priority, perfection or non-avoidability of the First Priority Liens securing the First Lien Obligations.

(ix)  <u>Release of Claims</u>.  Each Debtor and its estate shall be deemed to have forever waived, discharged, and released the Second Lien Agent and Second Lien Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "***Second Lien Secured Party Releasees***") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights (other than any potential offset under the Goldman Sachs Agreements) against any and all of the Second Lien Secured Party Releasees, whether arising at law or in equity, with respect to the Second Lien Obligations and First Priority Liens, including, without limitation, (I) any recharacterization, subordination,

avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Second Lien Obligations, or the validity, enforceability, priority, perfection or non-avoidability of the Second Priority Liens securing the Second Lien Obligations.

F.   **Need to Use the Prepetition Collateral (including, without limitation, the Cash Collateral)**.

The Debtors have an immediate need to use the Prepetition Collateral, including, without limitation, the Cash Collateral, to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operation needs.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral is of vital importance and in the best interest of the Debtors' estates.

G.   **Adequate Protection for Prepetition Secured Parties**.  The First Lien Agent and certain First Lien Lenders holding a majority of the First Lien Obligations and that have consented to the use of the Prepetition Collateral, including, without limitation, the Cash Collateral (the "*Consenting First Lien Lenders*") have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, to fund the administration of the Debtors' estates and maintain the continued operation of their businesses.  The First Lien Agent, Consenting First Lien Lenders and the Second lien Agent have agreed to permit the Debtors to use the Prepetition Collateral, including, without limitation, the Cash Collateral, for the period through the Cash Collateral Termination Date (as defined below), subject to the terms and conditions set forth herein.  The Prepetition Secured Parties are

entitled to the adequate protection set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code for the Diminution in Value (as defined below) of the Prepetition Collateral. Based on the Cash Collateral Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and use of the Prepetition Collateral, including, without limitation, the Cash Collateral, contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the consent of the First Lien Agent and Consenting First Lien Lenders thereto.

H.      **Intentionally Omitted.**

I.      **Limited Consent**.  The consent of the First Lien Agent and the Consenting First Lien Lenders to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, is limited to use of the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to the terms of this Interim Order and shall not, and shall not be deemed to, extend to any other use of the Prepetition Collateral, including, without limitation, the Cash Collateral.  Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the First Lien Agent or any First Lien Secured Party are or will be adequately protected with respect to any non-consensual use of Prepetition Collateral, including, without limitation, the Cash Collateral.

J.      **Section 552(b).**  In light of the subordination of their Liens and super-priority administrative claims to the Carve-Out, each of the First Lien Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

CH\1182115.12

K. **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully operate their businesses will be immediately and irreparably harmed. Authorization of the use of Prepetition Collateral, including, without limitation, the Cash Collateral, in accordance with this Interim Order is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the Cash Collateral Motion and the record before this Court with respect to the Cash Collateral Motion, and with the consent of the Debtors, the First Lien Agent and the Consenting First Lien Lenders to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The Cash Collateral Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Cash Collateral Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. **Use of the Prepetition Collateral (including, without limitation, the Cash Collateral)**. To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the date of entry of the Final Order (the "*Interim Period*"), and subject to the terms and conditions of this Interim Order, including, without limitation, the Approved Budget and Budget Covenants (in each case, as defined below), the Debtors are hereby authorized to use the Prepetition Collateral, including, without limitation,

the Cash Collateral, and each Debtor shall be prohibited from at any time using the Prepetition Collateral, including, without limitation, the Cash Collateral, except in accordance with the terms and conditions of this Interim Order. Following the expiration of the Interim Period, the Debtors' authority to use the Prepetition Collateral, including, without limitation, the Cash Collateral, will be governed by the terms of the Final Order.

3. **Approved Budget**. Attached hereto as <u>Exhibit A</u> is a 32 week cash flow budget (as may be amended from time to time with the consent of the Consenting First Lien Lenders, the "***Approved Budget***") which reflects the Debtors' projected aggregate cash receipts, operating expenses and disbursements, capital expenditures and unrestricted cash on hand (collectively, "***Aggregate Liquidity***"), in each case, on a weekly basis. The Debtors' use of Cash Collateral is subject to and governed by the terms of the Approved Budget and subparagraph (b) of this Paragraph 3 and the First Lien Agent and First Lien Lenders shall have no obligation to permit the use of Cash Collateral hereunder other than in accordance with the terms of the Approved Budget and as set forth in this Interim Order. Certain non-ordinary course expenditures reflected in the Approved Budget remain subject to consideration by the Board of Managers and, if appropriate, will be brought by separate motion for approval of this Court and subject to the reservations of all parties in interest.

(a) <u>Budget Covenants</u>. (i) For each 4-week period set forth in the Approved Budget, tested every fourth week by reference to the Variance Report (as defined below), the aggregate operating expenses and disbursements (excluding professional fees, payments to Credit Suisse Energy LLC or Credit Suisse (USA), Inc. related to the ISDA Master Agreement and various related agreements (as may have been or may be amended, restated, supplemented, or otherwise modified from time to time, collectively, the "***CS Contracts***") and fuel expenses)

CH\1182115.12

by the Debtors shall not exceed one hundred fifteen percent (115%) of the aggregate amount budgeted for each such 4-week period pursuant to the Approved Budget. The Debtors shall provide to the First Lien Agent and the Second Lien Agent, so as actually to be received on or prior to the Friday following the end of each week commencing with the Friday of the fifth week after the Petition Date, a variance report (a "***Variance Report***") certified by the chief financial officer of the Borrower, in form acceptable to the First Lien Agent and the First Lien Lenders holding at least forty percent (40%) of the outstanding principal amount of the Loans (the "***Designated Lenders***") in their sole discretion, setting forth (A) the actual cash receipts, aggregate operating expenses and disbursements and aggregate capital expenditures for such immediately preceding calendar week and the Aggregate Liquidity as of the end of such calendar week (provided, however, that the initial Variance Report provided by the Debtors in accordance the terms of this Interim Order shall set forth actual cash receipts, aggregate operating expenses and disbursements and aggregate capital expenditures for each immediately preceding calendar week since the Petition Date and the Aggregate Liquidity as of the end of each such calendar week), and (B) with respect to each 4-week period commencing with the 4-week period ending on the Friday of the fifth week after the Petition Date, the variance in dollar amounts of the actual aggregate operating expenses and disbursements (excluding professional fees, payments to Credit Suisse Energy LLC or Credit Suisse (USA), Inc. related to the CS Contracts and fuel expense) from those reflected for the corresponding period in the Approved Budget.  (ii) The aggregate amount of Capital Expenditures made (or committed to be made) by the Debtors during the period between the Petition Date and March 31, 2011 shall not exceed $17,500,000.

The undertakings of the Debtors provided for in this paragraph 3(a) shall be collectively referred to herein as the "***Budget Covenants***."

(b)     Events of Default.  Each of the following events shall constitute an event of default (collectively, the "**Events of Default**"), upon the occurrence of which the consensual Cash Collateral use arrangement contained in this Interim Order other than as set forth herein shall terminate automatically without any further notice or action (including, without limitation, further notice, motion or application to, order of or hearing before the Court) unless the occurrence of such Event of Default is waived in writing by Consenting First Lien Lenders holding a majority of the outstanding principal amount of the Loans held by all Consenting First Lien Lenders:

(i)      the failure to obtain the Final Order on or within thirty-five (35) days after the Petition Date;

(ii)     (A) the incurrence or payment by the Debtors of expenses other than in accordance with the Approved Budget or (B) any violation of the Budget Covenants (each a "**Budget Default**");

(iii)    the entry of an order by the Court invalidating, disallowing or limiting in any respect, as applicable, either (A) the enforceability, priority, or validity of the First Priority Liens securing the First Lien Obligations or (B) any of the First Lien Obligations

(iv)     the incurrence after the Petition Date of indebtedness that is (A) secured by a security interest, mortgage or other lien on all or any portion of the Prepetition Collateral which is equal or senior to any security interest, mortgage or other lien of the First Lien Agent and the First Lien Secured Parties, as applicable, or (B) entitled to priority administrative status which is equal or senior to that granted to the First Lien Agent and First Lien Secured Parties, as applicable, herein, except, in each case, any such indebtedness used to refinance the First Lien Obligations in full or any debtor-in-possession financing facility provided to the Debtors by the Consenting First Lien Lenders or, upon the consent of the First Lien Agent and the Consenting First Lien Lenders, in their sole discretion, by a third party ("**DIP Financing**");

(v)      the entry of a final order by the Court, other than the Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (A) to allow any creditor to execute upon or enforce a lien on or security interest in any Prepetition Collateral in excess of $1,000,000 or (B) with respect to any lien on or the granting of any lien on any Prepetition Collateral to any state or local environmental or regulatory agency or authority (in each case with a value in excess of $1,000,000), which in either case would have a material

adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(vi)     reversal, vacatur, or modification (without the express prior written consent of the First Lien Agent and the Consenting First Lien Lenders, in their sole discretion) of this Interim Order;

(vii)     the entry by the Court of an order, or the filing by the Debtors of a motion which seeks entry of an order, (A) dismissing any of the Cases, (B) converting any of the Cases to cases under chapter 7 of the Bankruptcy Code or (iii) appointing a trustee or examiner with the expanded powers to operate the Debtors' businesses pursuant to section 1104 of the Bankruptcy Code in any of the Cases;

(viii)     any material breach by the Debtors of any of the obligations, representations, warranties or covenants set forth in this Interim Order, which material breach is not cured on or within five (5) Business Days after the giving of written notice of such breach to the Debtors or, if applicable, on or within the cure period provided for under this Interim Order;

(ix)     the failure to pay interest, fees or professional fees, costs and expenses when and as provided for under this Interim Order;

provided, however, that the consensual Prepetition Collateral, including, without limitation, Cash Collateral, use arrangement described in this Interim Order shall, unless it shall have terminated earlier pursuant to the terms hereof, terminate on June 18, 2011 (unless extended by consent of the Consenting First Lien Lenders).  The earliest date upon which the consensual Cash Collateral use arrangement described in this Interim Order is terminated pursuant to this paragraph 3(b) shall be referred to herein as the "*Cash Collateral Termination Date*."

(c)     Payments on Account of Prepetition Obligations.  Without limiting the foregoing, the Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation prior to the effective date of a chapter 11 plan or plans with respect to the Debtors, except (i) as set forth in this Interim Order; (ii) as provided in the first day orders, which first day orders shall be in form and substance acceptable to the First Lien Agent and Designated Lenders; and (iii) as provided in other orders entered by the Court pursuant to

motions, orders and requests for relief filed by the Debtors, in form and substance acceptable to the First Lien Agent and the Designated Lenders.

(d)     Enforceable Obligations.   No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.     **Adequate Protection for Prepetition Secured Parties**.  The Prepetition Secured Parties shall receive the following adequate protection (collectively referred to as the "***Prepetition Secured Parties' Adequate Protection***"):

(a)     Adequate Protection Replacement Liens.   To the extent of the diminution in value of the respective interests of the Prepetition Secured Parties in the respective Prepetition Collateral, including, without limitation, the Cash Collateral, from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral, including, without limitation, the Cash Collateral, the subordination of the Prepetition Liens to the Carve-Out, and the imposition or enforcement of the automatic stay of section 362(a) (collectively, "***Diminution in Value***"), the First Lien Agent and Second Lien Agent, as applicable, for the benefit of the First Lien Secured Parties and Second Lien Secured Parties, as applicable, are hereby granted, subject to the terms

and conditions set forth below, pursuant to sections 361 and 363(e) of the Bankruptcy Code, replacement Liens upon all property of the Debtors, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the First Lien Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title**,** letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, proceeds ("***Avoidance Action Proceeds***") of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("***Avoidance Actions***") (solely upon entry of the Final Order), rights under section 506(c) of the Bankruptcy Code (solely upon entry of the Final Order), all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "***Adequate Protection Collateral***" and such adequate protection replacement liens, the "***Adequate Protection Replacement Liens***").   The Adequate Protection Replacement Liens on such Adequate Protection Collateral shall be subject and subordinate only to (i) any security interest or lien

granted pursuant to sections 364(c)(2), 364(c)(3) and/or 364(d)(1) of the Bankruptcy Code in connection with any DIP Financing, (ii) the Carve-Out and (iii) with respect to the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties only, the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties. For the avoidance of doubt, the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties shall be subordinated to the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties on the same basis as the Second Priority Liens are subordinated to the First Priority Liens.

(b)     <u>Adequate Protection First Priority Super-Priority Claims</u>.  To the extent of Diminution in Value, the First Lien Secured Parties are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "***First Lien Adequate Protection Super-Priority Claims***") pursuant to section 507(b) of the Bankruptcy Code, junior only to (i) any superpriority administrative claims granted pursuant to Section 364(c)(1) of the Bankruptcy Code in connection with any DIP Financing and (ii) the Carve-Out.  The First Lien Adequate Protection Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(c)     <u>Adequate Protection Second Priority Super-Priority Claims</u>.  To the extent of Diminution in Value, the Second Lien Secured Parties are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "***Second Lien Adequate Protection Super-Priority Claims***" and together with the First Lien Adequate Protection Super-Priority Claims, the "Adequate Protection Super-Priority Claims") pursuant to section 507(b) of the Bankruptcy Code, junior only to (i) any superpriority administrative claims

CH\1182115.12

granted pursuant to Section 364(c)(1) of the Bankruptcy Code in connection with any DIP Financing, (ii) the Carve-Out, and (iii) the First Lien Adequate Protection Super-Priority Claims. The Second Lien Adequate Protection Super-Priority Claim is against each Debtor shall be against each Debtor on a joint and several basis.

(d)    <u>Interest, Professional Fees and Information</u>.    As further adequate protection, and in consideration, and as a requirement, for obtaining the consent of the First Lien Agent and Consenting First Lien Lenders to the entry of this Interim Order and the Debtors' consensual use of the Prepetition Collateral, including, without limitation, the Cash Collateral, as provided herein, the Debtors shall (i) within three (3) Business Days of the date of entry of this Interim Order pay to the First Lien Agent for prompt distribution to the First Lien Lenders, Revolving Credit Lenders and Synthetic L/C Lenders, as applicable, a cash amount equal to $5,175,420.63, (ii) on the last day of each calendar month commencing after the date of entry of this Interim Order pay to the First Lien Agent for prompt distribution to (A) the First Lien Lenders, interest on the unpaid principal amount of the Loans outstanding under the First Lien Credit Agreement equal to (I) with respect to such payments on August 31, 2010 and September 30, 2010, the Eurodollar Rate for the applicable Interest Period then in effect for such Loans plus 4.25% and (II) with respect to all other such payments, the Base Rate set at the beginning of such applicable month plus 3.25%, (B) the Revolving Credit Lenders, a fee equal to 2.375% on the daily amount of the Revolving Credit-Linked Deposits of such Revolving Credit Lenders less the principal amount of Revolving Credit Loans held thereby and (C) the Synthetic L/C Lenders, a fee equal to 2.375% on the average daily amount of the Synthetic L/C Deposits of such Synthetic L/C Lenders (it being understood that with respect to any payment made pursuant to this subparagraph (c)(ii) on August 31, 2010, such payment amount shall not include the amount of

interest or fees accrued prior to the Petition Date), (iii) timely pay in cash all reasonable out of pocket fees, costs and expenses of the First Lien Agent and its professionals, Wachtell, Lipton, Rosen & Katz and Capstone Advisory Group, LLC, on a regular monthly basis during the Cases, without further notice, motion or application to, order of, or hearing before, this Court and (iv) deliver to the First Lien Agent and Second Lien Agent all information, reports, documents and other material that it may reasonably request, either directly or through its professionals. Notwithstanding anything contained herein or otherwise, all interest, fees and professional fees and expenses (in each case, as described above) paid pursuant to this Interim Order shall be subject to recharacterization and reapplication pursuant to further order of the Court if and to the extent the First Lien Obligations are determined by the Court to be undersecured.

(e)     <u>Notice of Professional Fees</u>.  None of the fees, costs and expenses incurred by professionals engaged by the First Lien Agent shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; <u>provided</u>, that such professionals shall submit copies of their respective professional fee invoices to the Debtors, counsel to the Second Lien Agent, the U.S. Trustee and counsel for any Committee (and any subsequent trustee of the Debtors' estates).  Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  The Debtors, the U.S. Trustee, and the Committee (and any subsequent trustee of the Debtors' estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by such professionals; <u>provided</u> that, any such

objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the First Lien Agent and the Debtors no later than five (5) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the specific basis for the objection. Any hearing on an objection to payment of any fees, costs and expenses set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. All such unpaid fees, costs and expenses that have not been disallowed by this Court on the basis of an objection filed by the Debtors, the U.S. Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute First Lien Obligations and shall be secured by the Adequate Protection Collateral as specified in this Interim Order. The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a fee objection has been timely filed.

(f)     <u>Right to Seek Additional Adequate Protection</u>.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. However, subject to the terms of the Intercreditor Agreement, any Prepetition Secured Party may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request.

(g)     <u>Consent to Adequate Protection</u>.  The First Lien Agent and the Consenting First Lien Lenders (and to the extent required, the Second Lien Agent and Second Lien Lenders) consent to the use of the Prepetition Collateral, including, without limitation, the Cash Collateral, and the Prepetition Secured Parties' Adequate Protection; <u>provided</u>, <u>however</u>, that such consent

to the use of the Prepetition Collateral, including, without limitation, the Cash Collateral, is expressly conditioned upon the entry of this Interim Order; and provided, further, that (I) such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed or amended (unless such reversal, modification, stay or amendment is acceptable to the First Lien Agent and the Consenting First Lien Lenders, in their sole discretion) and (II) in the event of the occurrence of the Cash Collateral Termination Date, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of the Prepetition Collateral, including, without limitation, the Cash Collateral, by the Debtors.

5.      **Automatic Postpetition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the Adequate Protection Replacement Liens or to entitle the Adequate Protection Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, each of the First Lien Agent and Second Lien Agent, as applicable (solely with respect to the Adequate Protection Replacement Liens), may, in its sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded on the Petition Date.  The applicable Debtors shall execute and deliver to each of the First Lien Agent and Second Lien Agent, as applicable, all such financing

statements, mortgages, notices and other documents as such party may reasonably request to evidence and confirm the contemplated priority of the Adequate Protection Replacement Liens granted pursuant hereto. Without limiting the foregoing, each of the First Lien Agent and Second Lien Agent, as applicable, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Adequate Protection Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable Adequate Protection Collateral or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Prepetition Secured Parties in accordance with the terms of this Interim Order.

6. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors in all circumstances. The Debtors' Stipulations shall be binding upon each other party in interest, including any Committee, unless (i) such Committee or any other party in interest other than the Debtors obtains the authority to commence and commences, or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee

in such Successor Cases commences, on or before 60 days after entry of the Final Order (such time period shall be referred to as the "***Challenge Period***," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***"), (x) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (y) a contested matter or adversary proceeding against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Obligations, or the actions or inactions of any or all of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations, or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any or all of the Prepetition Secured Parties) (the objections, challenges, actions and claims referenced in clauses (x) and (y), collectively, the "***Claims and Defenses***") and (ii) this Court rules in favor of the plaintiff in any such timely and properly commenced contested matter or adversary proceeding; provided, that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date. Until the Challenge Period Termination Date, any party in interest, including the Committee, may assert any Claims and Defenses. If no Claims and Defenses with respect to the First Lien Secured Parties or First Lien Obligations have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Cases and any Successor Case, (i) all payments made to the First Lien Secured Parties pursuant to this

Interim Order or otherwise shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred with respect to the First Lien Secured Parties, (iii) the First Lien Obligations shall be deemed to be an allowed claim, and (iv) the Debtors' Stipulations with respect to the First Lien Secured Parties, including, without limitation, the release provisions therein, shall be binding on all parties in interest, including any Committee. If no Claims and Defenses with respect to the Second Lien Secured Parties or Second Lien Obligations have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Cases and any Successor Case, (i) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred with respect to the Second Lien Secured Parties and (ii) the Debtors' Stipulations with respect to the Second Lien Secured Parties shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, (x) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences shall nonetheless remain binding and preclusive on any Committee (and any subsequent trustee of the Debtors' estates) and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences were expressly challenged in such adversary proceeding or contested matter, and (y) any portion of the Debtors' Stipulations or other provisions in clauses (i) through (iv) or clauses (i) and (ii), as applicable, in the immediately preceding sentences that is the subject of a timely

filed Claim and Defense shall become binding and preclusive on any Committee (and any subsequent trustee of the Debtors' estates) and any other party in interest to the extent set forth in any order of the Court resolving such Claim and Defense. The Challenge Period in respect of the First Lien Obligations may be extended by written agreement of the First Lien Agent and the Consenting First Lien Lenders and in respect of the Second Lien Obligations may be extended by written agreement of the Second Lien Agent and the Required Lenders (as defined in the Second Lien Credit Agreement), as applicable, in their sole discretion. Nothing in this Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against any Prepetition Secured Parties. Nothing contained herein shall effect the rights of the parties to the Intercreditor Agreement as against each other.

7. **Carve-Out**. Subject to the terms and conditions contained in this paragraph 7, each of the Prepetition Liens, Adequate Protection Replacement Liens, and Adequate Protection Super-Priority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

(a) For purposes of this Interim Order, "*Carve-Out*" means (i) all unpaid fees required to be paid in these Cases to the Clerk of the Court and to the office of the United States Trustee under 28 U.S.C. §1930, whether arising prior to or after the delivery of the Carve-Out Trigger Notice (as defined below); (ii) all reasonable and documented unpaid fees, costs, disbursements and expenses, including, without limitation, success fees, of professionals retained by the Debtors in these Cases (collectively, the "*Debtors' Professionals*") that are incurred and earned prior to the delivery by the First Lien Agent of a Carve-Out Trigger Notice, are allowed

by the Court under sections 105(a), 328, 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors; (iii) all reasonable and documented unpaid fees and expenses of professionals retained by the Committee in these Cases (collectively, the "***Committee's Professionals***") and all reasonable unpaid expenses of the members of any Committee ("***Committee Members***") that are incurred and earned prior to the delivery by the First Lien Agent of a Carve-Out Trigger Notice, are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount (for both Committee Members and the Committee's Professionals) not to exceed $1,500,000 (the "***Committee Professionals Carve-Out Cap***"); (iv) all reasonable and documented unpaid fees, costs, disbursements and expenses, including, without limitation, success fees, of the Debtors' Professionals that are incurred and earned on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice, that are allowed by the Court under sections 105(a), 328, 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount not to exceed $2,000,000, split among them on a pro rata basis in accordance with the amount budgeted for each such Debtor Professional in the Approved Budget (the "***Debtors' Professionals Carve-Out Cap***"); (v) all reasonable and documented unpaid fees and expenses of the Committee Professionals that are incurred on or after the delivery by the First Lien Agent of a Carve-Out Trigger Notice, are allowed by the Court under sections 105(a), 330 and 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount not to exceed

31

$250,000 (the "**Committee Professionals Post Carve-Out Cap** and together with the Debtors' Professionals Carve-Out Cap and Committee Professions Carve-Out Cap, the "**Carve-Out Cap**"); and (vi) in the event of a conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, the payment of fees and expenses incurred by a trustee and any professional retained by such trustee in an aggregate amount not to exceed $100,000 (clauses (i) through (vi), collectively, the "**Carve-Out**"). The term "**Carve-Out Trigger Notice**" shall mean a written notice delivered by the First Lien Agent to the Debtors' lead counsel, the U.S. Trustee, counsel for the Second Lien Secured Parties, and lead counsel to any Committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default, expressly stating that the Carve-Out is invoked.

(b)  Any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise to Debtors' Professionals or Committee's Professionals shall (i) in the case of the Debtors' Professionals only, not be paid from the proceeds of any Adequate Protection Collateral, Prepetition Collateral or Cash Collateral until such time as all retainers, if any, held by such Debtors' Professionals have been reduced to zero, and (ii) in the case of any payments made on account of any fees and expenses described in clauses (iii), (iv) and (v) of the definition of Carve-Out, reduce the applicable Carve-Out Cap on a dollar-for-dollar basis. So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses, as applicable, of the Debtors' Professionals allowed and payable under 11 U.S.C. §§ 328, 330 and 331, as the same may be due and payable, and any such compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Debtors' Professionals' Carve-Out Cap.

(c)     Notwithstanding any provision in this paragraph 7 to the contrary or otherwise, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral or Adequate Protection Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under paragraph 14 hereof.

(d)     Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

8.     **Waiver of Section 506(c) Claims**.  Subject to the entry of the Final Order, as a further condition of the First Lien Secured Parties' consent to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, and to the payment of the Carve-Out to the extent provided herein, no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Adequate Protection Collateral, the Prepetition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the First Lien Agent and the Consenting First Lien Lenders and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the First Lien Secured Parties.

9.     **After-Acquired Property**.  Subject to the entry of the Final Order, the "equities of the case" exception of section 552 of the Bankruptcy Code shall not apply.

10.     **Protection of First Lien Secured Parties' Rights**.

(a)     Unless the Consenting First Lien Lenders shall have provided their prior written consent, there shall not be entered in these proceedings, or in any Successor Case, any

order which authorizes any of the following: (i) the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Adequate Protection Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties and the First Lien Adequate Protection Super-Priority Claims (except any such indebtedness used to refinance the First Lien Obligations in full or any DIP Financing); or (ii) the use of Cash Collateral for any purpose other than to pay the First Lien Obligations in full or as permitted in this Interim Order or otherwise allowed by the Court.

(b)     The Debtors (and/or their legal and financial advisors) will (i) maintain books, records and accounts to the extent and as required by the First Lien Credit Agreement, (ii) reasonably cooperate, consult with, and provide to the First Lien Agent and the Designated Lenders all such information as required or allowed under the provisions of this Interim Order, (iii) permit representatives of the First Lien Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants, and (iv) permit the First Lien Agent, its advisors and the Designated Lenders to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

11.     **Cash Collection**.  From and after the date of the entry of this Interim Order, all collections and proceeds of any Adequate Protection Collateral or Prepetition Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the First Lien Documents (or in such other accounts as are designated by First Lien Agent from time to time).

12.     **Disposition of Adequate Protection Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or Adequate Protection Collateral without the prior written consent of the Consenting First Lien Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by any Consenting First Lien Lender or any order of this Court), except as permitted in this Interim Order or as approved by the Court to the extent required under applicable bankruptcy law.

13.     **Rights and Remedies Upon Event of Default**.

(a)     Any automatic stay otherwise applicable to the First Lien Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the First Lien Secured Parties to exercise the following remedies immediately upon the occurrence and during the continuance of an Event of Default:  (i) declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral, including Cash Collateral derived solely from the proceeds of Adequate Protection Collateral, and to use Prepetition Collateral other than in the ordinary course (any such declaration to be made to the Debtors, the respective lead counsel to any Committee and the United States Trustee and to be referred to herein as a "***Termination Declaration***" and the date which is the earliest to

occur of any such Termination Declaration being herein referred to as the "*Termination Declaration Date*"); (ii) reduce any claim to judgment; and/or (iii) take any other action permitted by law.

(b)     During the three (3) Business Day period after a Termination Declaration Date, the Debtors and any Committee shall be entitled to an emergency hearing before the Court for the sole purpose of contesting whether an Event of Default has occurred and section 105 of the Bankruptcy Code may not be invoked by the Debtor in an effort to restrict or preclude any First Lien Lender from exercising any rights or remedies set forth in this Interim Order or the Prepetition Documents.  Unless during such period the Court determines that an Event of Default has not occurred and/or is not continuing, this Interim Order shall automatically terminate at the end of such 3 Business Day period, without further notice or order.  During such 3 Business Day period, the Debtors may not use Cash Collateral except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Interim Order as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and to incur all liabilities and obligations to the Prepetition Secured Parties under this Interim Order and (ii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

14.     **Restriction on Use of Proceeds**.     Notwithstanding anything herein to the contrary, no Adequate Protection Collateral, Cash Collateral (including any prepetition retainers funded by any or all of the Prepetition Secured Parties), Prepetition Collateral, or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Cases or any Successor Case, or any other person, party or entity

to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than to (i) refinance the First Lien Obligations in full or (ii) any DIP Financing; (b) investigate (except as set forth below), assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the First Lien Secured Parties and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any Claims and Defenses, any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code, in each case, with respect to the First Lien Secured Parties; (ii) any so-called "lender liability" claims and causes of action with respect to the First Lien Secured Parties; (iii) any action with respect to the validity, enforceability, priority and extent of the First Lien Obligations, or the validity, extent, perfection and priority of the First Priority Liens or the Adequate Protection Replacement Liens (or the value of any of the Prepetition Collateral or Adequate Protection Collateral); (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Second Priority Liens, the First Priority Liens, the Adequate Protection Replacement Liens or the other Prepetition Secured Parties' Adequate Protection; and/or (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to any or all of the First Lien Agent and First Lien Secured Parties hereunder or the Prepetition Documents; provided, however, up to $50,000 in the aggregate of the Committee Professionals Carve-Out Cap and Committee

Professionals Post Carve-Out Cap, any Adequate Protection Collateral, any Prepetition Collateral or any Cash Collateral may be used by the Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity and priority of the First Lien Obligations, the First Priority Liens or any other claims against the First Lien Secured Parties so long as such investigation occurs within sixty (60) days after entry of the Final Order.

15. **Proofs of Claim**.  Upon entry of the Final Order, neither the First Lien Agent and the First Lien Secured Parties nor the Second Lien Agent and the Second Lien Secured Parties will be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim for the First Lien Agent and the First Lien Secured Parties and the Second Lien Agent and the Second Lien Secured Parties.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the First Lien Agent for the benefit of itself and the First Lien Secured Parties or the Second Lien Agent for the benefit of itself and the Second Lien Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.

16. **Preservation of Rights Granted under the Interim Order**.

(a)     No Non-Consensual Modification or Extension of Interim Order.  The Debtors shall not seek, and it shall constitute an Event of Default (resulting, among other things, in the termination of the Debtors' right to use the Prepetition Collateral, including, without limitation, the Cash Collateral), if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Interim Order or (ii) an order converting or dismissing any

of the Cases, in each case, without the prior written consent of the First Lien Agent and the Consenting First Lien Lenders, and no such consent shall be implied by any other action, inaction or acquiescence.

(b)     Dismissal.   If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the Prepetition Secured Parties' Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition Secured Parties' Adequate Protection have been paid in full in cash or are otherwise satisfied in full (and that the Prepetition Secured Parties' Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Prepetition Secured Parties' Adequate Protection.

(c)     Survival of Interim Order.   To the extent not superseded by a Final Order, the provisions of this Interim Order, any actions taken pursuant hereto, the Prepetition Secured Parties' Adequate Protection and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the Prepetition Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission.  The terms and provisions of this Interim Order, including the Prepetition Secured Parties' Adequate

Protection and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted to any or all of the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such Prepetition Secured Parties' Adequate Protection shall continue in these proceedings and in any Successor Case, and shall maintain its priority as provided by this Interim Order.

17.     **Other Rights and Obligations**.

(a)     <u>Binding Effect</u>.   Subject to paragraph 6 above, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Prepetition Secured Parties, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; <u>provided</u>, <u>however</u>, that the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral, including, without limitation, the Cash Collateral, by any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(b)     <u>No Waiver</u>.  The failure of the First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization of the

use of any Prepetition Collateral, including, without limitation, Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any First Lien Secured Party, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Interim Order and the First Lien Documents, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the First Lien Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the First Lien Secured Parties. Except to the extent otherwise expressly provided in this Interim Order, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the First Lien Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Documents, applicable law, or equity.

(c)  No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to permit the use of Prepetition Collateral, including, without limitation, the Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the First Lien Secured Parties

CH\1182115.12

shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

(d)     <u>No Marshaling</u>.   The First Lien Secured Parties and the Second Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(e)     <u>Amendments</u>.   No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the First Lien Agent (after having obtained the approval of the Consenting First Lien Lenders) and, except as provided herein, approved by this Court.

(f)     <u>Inconsistency</u>.   In the event of any inconsistency between the terms and conditions of the Prepetition Documents and the terms and conditions of this Interim Order, the provisions of this Interim Order shall govern and control.

(g)     <u>Enforceability</u>.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(h)     <u>Headings</u>.   Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

18.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order is scheduled for September 13, 2010, at 11:00 a.m. (prevailing Eastern time) at the Court.  The proposed Final Order shall be substantially the same as the Interim Order except that those provisions in the Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)     Final Hearing Notice.  On or before August 23, 2010 the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "***Final Hearing Notice***") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court, which objections shall be served upon:  (a) counsel for the Debtors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022-4834, Attn: D.J. Baker and Robert J. Rosenberg, dj.baker@lw.com and robert.rosenberg@lw.com; (b) counsel for the First Lien Agent, Wachtell, Lipton, Rosen & Katz, Attn: Scott K. Charles and Michael S. Benn, SKCharles@wlrk.com and MSBenn@wlrk.com; (c) counsel to any Committee; (d) counsel to the Second Lien Agent, Dechert LLP, Attn: Allan S. Brilliant and Glenn Siegel, 1095 Avenue of the Americas, New York, NY 10036,  allan.brilliant@dechert.com and (e) the Office of the

United States Trustee for the Southern District of New York, in each case to allow actual receipt of the foregoing no later than September 8, 2010, at 4:00 p.m. (prevailing Eastern time).

19.     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: August 20, 2010
        New York, New York

                                        /s/Shelley C. Chapman
                                        Honorable Shelley C. Chapman
                                        United States Bankruptcy Judge

CH\1182115.12

# EXHIBIT A

## Approved Budget

CH\1182115.12