Bennett G. Young (admitted pro hac vice)
Paul S. Jasper (admitted pro hac vice)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone: (415) 951-1100
Facsimile: (415) 951-1180

- and -

Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

Attorneys for Algonquin Gas Transmission, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br><u>et</u> <u>al.</u>,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**DECLARATION OF RICHARD M. PAGLIA
IN SUPPORT OF MOTION OF ALGONQUIN GAS TRANSMISSION, LLC
FOR WITHDRAWAL OF REFERENCE WITH RESPECT TO FIRST
OMNIBUS MOTION OF DEBTORS FOR ENTRY OF ORDER
AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY
CONTRACTS *NUNC PRO TUNC* TO THEIR RESPECTIVE NOTICE DATES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

I, Richard M. Paglia, under penalty of perjury, declare the following to be true to the best of my knowledge:

1. I am employed by Algonquin Gas Transmission, LLC ("**Algonquin**") as its Vice President of Marketing. I make this declaration in support of the Motion of Algonquin Gas Transmission, LLC (the "**Motion to Withdraw Reference**") for Withdrawal of Reference with Respect to First Omnibus Motion of Debtors for Entry of Order Authorizing the Debtors To Reject Certain Executory Contracts *Nunc Pro Tunc* to Their Respective Notice Dates.

2. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion to Withdraw Reference.

3. I make this declaration based on my personal knowledge and a review of agreements, business records, and other documents maintained by Algonquin in the ordinary course of its business.

4. I have been employed by Algonquin since September 29, 2009 and I am familiar with Algonquin's pipeline facilities and its provision of natural gas transportation services to the Fore River Plant. I am also familiar with the various contracts entered into by and among Algonquin and Fore River Development, LLC ("**Fore River**") with respect to such services.

5. On January 31, 2001, Algonquin, Fore River (then known as Sithe Fore River Development, LLC), and Sithe Power Marketing, L.P. ("**SPM**") entered into the Service Agreement (Applicable to Rate Schedule AFT-1) (the "**HubLine Service Agreement**"), Contract No. 510008, that is the subject of the Rejection Motion. Under the HubLine Service Agreement, Algonquin agreed to reserve capacity and provide transportation service for natural gas tendered by Fore River on a firm basis for a primary term of twenty years. Pursuant to the HubLine Service Agreement, Algonquin reserves capacity for, and transports up to, 140,000 dekatherms ("**Dth**") of natural gas per day delivered to a single delivery point serving the Fore River Plant. A true and accurate copy of the HubLine Service Agreement is attached hereto as Exhibit A.

6. The applicable recourse rates for such service on Algonquin's HubLine facilities are established under Rate Schedule AFT-1 which is part of Algonquin's FERC-approved gas tariff (the "**Algonquin Tariff**"). Section 7 of Rate Schedule AFT-1 incorporates by reference the General Terms and Conditions of the Algonquin Tariff. The negotiated rates for shippers on the HubLine Project, including Fore River, were approved by the FERC in a Letter Order issued on November 7, 2003, in Docket No. RP00-70-003. The negotiated rate applicable to the HubLine Service Agreement was subsequently modified and approved by the FERC in a unpublished letter order dated February 21, 2008 in Docket No. RP00-70-018. Pursuant to the HubLine Service Agreement, Fore River pays Algonquin a fixed monthly charge of approximately $719,000 and a variable charge based on usage.

7. The Fore River Plant does not have access to natural gas except via Algonquin's pipeline facilities. No other natural gas pipeline serves the Fore River Plant. If a purchaser of the Fore River Plant does not assume the HubLine Service Agreement and desires to operate the plant using natural gas, the purchaser will need to enter into alternative arrangements for transportation of natural gas on the Algonquin pipeline, presumably at a rate different than the FERC-approved rate for service under the HubLine Service Agreement.

8. The Fore River Plant has a single delivery point where natural gas is delivered to the plant. Fore River has the right under its service agreement to receive gas on the Algonquin pipeline system at two primary receipt points for transport to the Fore River Plant. The first primary receipt point is the interconnection of the Algonquin pipeline with the Maritimes & Northeast Pipeline system in Beverly, Massachusetts, which can receive up to 70,000 Dth per day. The second primary receipt point is the interconnection of Algonquin's HubLine system with its Q and I-3 pipeline systems, which can likewise receive up to 70,000 Dth per day. Together, these two primary receipt points receive up to the maximum daily transportation quantity ("**MDTQ**") of 140,000 Dth reserved for Fore River pursuant to the HubLine Service Agreement. A diagram illustrating the receipt and delivery points is attached hereto as Exhibit B.

9. Under the HubLine Service Agreement, the Fore River Plant has primary (i.e., highest priority) access to capacity on Algonquin's pipeline for transportation of volumes of natural gas of up to 140,000 Dth per day. If the HubLine Service Agreement is rejected, there will be no transportation service agreements in place with Algonquin where a shipper will have the Fore River delivery point as a primary point of delivery on its contract. In the absence of an alternate firm transportation service agreement with Algonquin establishing the Fore River delivery point as a primary point of delivery, the Fore River Plant owner will be dependent upon gas being delivered to the Fore River Plant under service agreements having a lower service priority, and, thus, subject to curtailment before service agreements with primary firm priority, like the service currently provided under the HubLine Service Agreement. Moreover, the HubLine Service Agreement gives the shipper certain delivery pressure assurances on Algonquin's HubLine system with respect to the natural gas that Algonquin delivers to the Fore River delivery point that will no longer be in place if the HubLine Service Agreement is rejected.

10. A true and accurate copy of this original signed declaration is being electronically transmitted on this date to Irena M. Goldstein, Esq., Algonquin's attorney of record in connection with the Motion to Withdraw. The original signed declaration will be sent to Ms. Goldstein today via overnight delivery for filing with the court upon receipt.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 1, 2010

Richard M. Paglia
Vice President, Marketing
Algonquin Gas Transmission, LLC

# EXHIBIT A

FEB 6 2001 2:41AM
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190   (MON) 2  5'01 11:12/ST. 11:05/NO 4860069731 P 31

Contract No 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

This Agreement ("Agreement") is made and entered into this 31st day of January, 2001, by and between Algonquin Gas Transmission Company, a Delaware Corporation (herein called "Algonquin"), Sithe Fore River Development, L.L.C., a Delaware limited liability company (herein called "Customer" whether one or more persons), and Sithe Power Marketing, L.P., a Delaware limited partnership (herein called "Sithe Power Marketing") (solely for purposes of Article VIII hereof)

WHEREAS, pursuant to an Assignment and Assumption Agreement ("Assignment Agreement") dated as of January 31, 2001 among Sithe Power Marketing, Customer and Algonquin, Customer and Algonquin are parties to a precedent agreement dated September 28, 1999 ("1999 Precedent Agreement"), pursuant to which Algonquin will undertake to construct a lateral pipeline facility to serve a proposed electric generating plant to be developed by Customer in Weymouth, Massachusetts (the "Fore River Plant"), and

WHEREAS, pursuant to the terms and conditions of Paragraph 11 of the 1999 Precedent Agreement, Customer desires to obtain firm transportation capacity in that certain expansion project proposed by Algonquin and known as the HubLine Expansion Project and, to that end, pursuant to the Assignment Agreement, is a party to a precedent agreement dated August 2, 2000 (the "2000 Precedent Agreement") pertaining to service utilizing the Hubline Expansion Project pursuant to this Agreement, and

WHEREAS, Sithe Power Marketing and Algonquin are parties to a Service Agreement, Contract No 99025, dated August 2, 2000 (the "Original Service Agreement") for firm transportation service from Algonquin to serve the Fore River Plant, and

WHEREAS, Customer, Sithe Power Marketing and Algonquin desire to enter into this Agreement to supersede the Original Service Agreement, and

WHEREAS, subject to all of the terms and conditions of the 2000 Precedent Agreement and this Agreement, Algonquin desires to provide firm transportation service for Customer pursuant to the terms and conditions of Algonquin's Rate Schedule AFT-1;

In consideration of the premises and of the mutual covenants herein contained, the parties do agree as follows:

Sithe Boston 039977

FEB 6 2001 2.42AM  NO 0259 P 33
FROM DUKE ENERGY LAW DEPT. FAX NO 713-989-3190  (MON) 2 5 31 11-12/ST. 1' 06/NO 4960069731 P 32

Contract No. 510008

## SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

### ARTICLE I
### SCOPE OF AGREEMENT

1.1 Subject to the terms, conditions and limitations hereof and of Algonquin's Rate Schedule AFT-1, Algonquin agrees to receive from or for the account of Customer for transportation on a firm basis quantities of natural gas tendered by Customer on any day at the Point(s) of Receipt; provided, however, Customer shall not tender without the prior consent of Algonquin, at any Point of Receipt on any day a quantity of natural gas in excess of the applicable Maximum Daily Receipt Obligation for such Point of Receipt plus the applicable Fuel Reimbursement Quantity; and provided further that Customer shall not tender at all Point(s) of Receipt on any day or in any year a cumulative quantity of natural gas, without the prior consent of Algonquin, in excess of the following quantities of natural gas plus the applicable Fuel Reimbursement Quantities

| | |
|---|---|
| Maximum Daily Transportation Quantity | 140,000 Dth |
| Maximum Annual Transportation Quantity | 51,100,000 Dth |

1.2 Algonquin agrees to transport and deliver to or for the account of Customer at the Point(s) of Delivery and Customer agrees to accept or cause acceptance of delivery of the quantity received by Algonquin on any day, less the Fuel Reimbursement Quantities, provided, however, Algonquin shall not be obligated to deliver at any Point of Delivery on any day a quantity of natural gas in excess of the applicable Maximum Daily Delivery Obligation

### ARTICLE II
### TERM OF AGREEMENT

2.1 This Agreement shall become effective as of the date first above written. Subject to Paragraph 11 of the 1999 Precedent Agreement, service under this Agreement shall commence on the date that construction of the HubLine facilities necessary to provide the firm transportation service contemplated herein is completed and such facilities are available for service. After service commences under this Agreement, this Agreement shall continue in effect until and including the later of (i) August 31, 2021; or (ii) the last day of the month in which the twentieth (20th) anniversary of the commencement of service under the agreement being superseded, as described in Section 8.2 of this Agreement, occurs ("Primary Term") and shall remain in force from year to year thereafter unless terminated by either party by

2

FEB 6 2001 2 42AM
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190   (MON) 2 5 01 11 12/ST 11 06/NO 4869069731 P 33

Contract No 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

written notice one year or more prior to the end of the Primary Term or any successive term thereafter. Algonquin's right to cancel this Agreement upon the expiration of the Primary Term hereof or any succeeding term shall be subject to Customer's rights pursuant to Sections 8 and 9 of the General Terms and Conditions In the event that HubLine service does not commence for any reason, then service under this Agreement shall not commence and this Agreement shall be null and void

2.2 This Agreement may be terminated at any time by Algonquin in the event Customer fails to pay part or all of the amount of any bill for service hereunder and such failure continues for thirty days after payment is due, provided Algonquin gives ten days prior written notice to Customer of such termination and provided further such termination shall not be effective if, prior to the date of termination, Customer either pays such outstanding bill or furnishes a good and sufficient surety bond guaranteeing payment to Algonquin of such outstanding bill; provided that Algonquin shall not be entitled to terminate service pending the resolution of a disputed bill if Customer complies with the billing dispute procedure currently on file in Algonquin's tariff

## ARTICLE III
## RATE SCHEDULE

3 1 Customer shall pay Algonquin for all services rendered hereunder and for the availability of such service under Algonquin's Rate Schedule AFT-1 as filed with the Federal Energy Regulatory Commission and as the same may be hereafter revised or changed. The rate to be charged Customer for transportation hereunder shall not be more than the maximum rate under Rate Schedule AFT-1, nor less than the minimum rate under Rate Schedule AFT-1

3 2 This Agreement and all terms and provisions contained or incorporated herein are subject to the provisions of Algonquin's applicable rate schedules and of Algonquin's General Terms and Conditions on file with the Federal Energy Regulatory Commission, or other duly constituted authorities having jurisdiction, and as the same may be legally amended or superseded, which rate schedules and General Terms and Conditions are by this reference made a part hereof

3 3 Customer agrees that Algonquin shall have the unilateral right to file with the appropriate regulatory authority and make changes effective in (a) the rates and charges applicable to service pursuant to Algonquin's Rate Schedule AFT-1, (b) Algonquin's Rate Schedule AFT-1, pursuant to which service hereunder is rendered or (c) any provision of the General Terms and Conditions applicable to Rate

3

Contract No 510008

## SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

Schedule AFT-1. Algonquin agrees that Customer may protest or contest the aforementioned filings, or may seek authorization from duly constituted regulatory authorities for such adjustment of Algonquin's existing FERC Gas Tariff as may be found necessary to assure that the provisions in (a), (b), or (c) above are just and reasonable.

### ARTICLE IV
### POINT(S) OF RECEIPT

Natural gas to be received by Algonquin for the account of Customer hereunder shall be received at the outlet side of the measuring station(s) at or near the Primary Point(s) of Receipt set forth in Exhibit A of the service agreement, with the Maximum Daily Receipt Obligation and the receipt pressure obligation indicated for each such Primary Point of Receipt. Natural gas to be received by Algonquin for the account of Customer hereunder may also be received at the outlet side of any other measuring station on the Algonquin system, subject to reduction pursuant to Section 6.2 of Rate Schedule AFT-1.

### ARTICLE V
### POINT(S) OF DELIVERY

Natural gas to be delivered by Algonquin for the account of Customer hereunder shall be delivered on the outlet side of the measuring station(s) at or near the Primary Point(s) of Delivery set forth in Exhibit B of the service agreement, with the Maximum Daily Delivery Obligation and the delivery pressure obligation indicated for each such Primary Point of Delivery. Natural gas to be delivered by Algonquin for the account of Customer hereunder may also be delivered at the outlet side of any other measuring station on the Algonquin system, subject to reduction pursuant to Section 6.4 of Rate Schedule AFT-1.

### ARTICLE VI
### ADDRESSES

Except as herein otherwise provided or as provided in the General Terms and Conditions of Algonquin's FERC Gas Tariff, any notice, request, demand, statement, bill or payment provided for in this Agreement, or any notice which any party may desire to give to the other, shall be in writing and shall be considered as duly delivered when mailed by registered, certified, or first class mail to the post office address of the parties hereto, as the case may be, as follows:

    (a)    Algonquin    Algonquin Gas Transmission Company
                                                5400 Westheimer Court

4

FEB 6 2001 2 42AM NO 8269
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190 (MON) 2 5'01 11:13/ST 11 06/NO 4860069731 P 35

Contract No 510008

## SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

Houston, TX 77056
Attn: Vice President Marketing

(b) Customer  Sithe Fore River Development, LLC
335 Madison Avenue, 28th floor
New York, NY 10017
Attn: Project Manager, with copy to: Legal Group

or such other address as either party shall designate by formal written notice.

## ARTICLE VII
## INTERPRETATION

The interpretation and performance of the Agreement shall be in accordance with the laws of the Commonwealth of Massachusetts, excluding conflicts of law principles that would require the application of the laws of a different jurisdiction

## ARTICLE VIII
## AGREEMENTS BEING SUPERSEDED

8 1  When this Agreement becomes effective, it shall supersede the following agreements between the parties hereto:

> The Original Service Agreement, Contract No 99025 (References to the Original Service Agreement, Contract No 99025, in the 2000 Precedent Agreement shall be construed for purposes thereof and hereof to refer to this Agreement)

8 2  When service commences under this Agreement, it shall supersede the following agreements between the parties hereto, except that in the case of conversions from former Rate Schedules F-2 and F-3, the parties' obligations under Article II of the service agreements pertaining to such rate schedules shall continue in effect.

> Subject to the terms and conditions of Paragraph 11 of the 1999 Precedent Agreement, this Agreement supersedes the Service Agreement dated January 31, 2001, Contract No. 510009, effective on the date service commences under this Agreement as part of Algonquin's HubLine Project as specified in ARTICLE II, Section 2 1 of this Agreement

5

FEB 5 2001 2:42AM                                                                    NO 0257  P 37
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190  (MON) 2 5'01 11:3/ST 11 06/NO 4260069731 P 36

Contract No. 510008

## SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective agents thereunto duly authorized, the day and year first above written.

ALGONQUIN GAS TRANSMISSION COMPANY

By: _____
Title:  Thomas C. O'Connor


SITHE FORE RIVER DEVELOPMENT, LLC

By: _____
   Sandra J. Manilla
Title: **Vice President & Treasurer**


SITHE POWER MARKETING, L.P. (solely for purposes of Article VIII hereof)
By its General Partner
Sithe AOG Holding #1, Inc.

By: _____
   **Sandra J. Manilla**
Title: **Vice President & Treasurer**

6

FEB 6 2001 2 42AM
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190  (MON) 2 5'01 11 13/ST 11 06/NO 4860069731 P 37

Contract No 510008

## SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

Exhibit A
Point(s) of Receipt

Dated: January 31, 2001

To the service agreement under Rate Schedule AFT-1 between
Algonquin Gas Transmission Company (Algonquin) and
Sithe Fore River Development, LLC (Customer)
concerning Point(s) of Receipt

| Primary Point of Receipt | Maximum Daily Receipt Obligation (Dth) | Maximum Receipt Pressure (Psig) |
|---|---|---|
| Interconnection of AGT and Maritimes & Northeast Pipeline | 70,000 | Algonquin's line pressure as may exist from time to time |
| Interconnection with AGT's Q and I-3 systems | 70,000 | Algonquin's line pressure as may exist from time to time |

Signed for Identification

Algonquin: _____

Customer: _____

7

FEB 5 2001 2:42AM
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190 (MON) 2 5'01 1: 13/ST 1: 05/NO 4860069731 P 39

Contract No. 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

### Exhibit B
### Point(s) of Delivery

Dated: January 31, 2001

To the service agreement under Rate Schedule AFT-1 between
Algonquin Gas Transmission Company (Algonquin) and
Sithe Fore River Development, LLC (Customer)
concerning Point(s) of Delivery

| Primary Point of Delivery | Maximum Daily Delivery Obligation (Dth) | Minimum Delivery Pressure (Psig) |
|---|---|---|
| Fore River Plant | 140,000 | Algonquin's line pressure as may exist from time to time, but not less than 400 psig or greater than 750 psig. |

Signed for Identification

Algonquin _____[signature]_____

Customer _____

# EXHIBIT B

