Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted pro hac vice)
Paul S. Jasper (admitted pro hac vice)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone: (415) 951-1100
Facsimile: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br><u>et</u> <u>al.</u>,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**OPPOSITION OF ALGONQUIN GAS TRANSMISSION, LLC TO THE
MOTIONS OF THE DEBTORS FOR ENTRY OF ORDERS AUTHORIZING THE
ASSUMPTION OF EXECUTORY CONTRACTS WITH (1) SEMPRA ENERGY
TRADING LLC; (2) DISTRIGAS OF MASSACHUSETTS LLC AND GDF SUEZ
ENERGY NORTH AMERICA, INC.; (3) CREDIT SUISSE ENERGY LLC AND
<u>CREDIT SUISSE (USA), INC.; AND (4) SEQUENT ENERGY MANAGEMENT, L.P.</u>**

Algonquin Gas Transmission, LLC ("**Algonquin**"), by and through its undersigned

counsel, objects to the relief requested in (1) the "Motion Of The Debtors For Entry Of An Order

Authorizing The Assumption Of Executory Contracts With Sempra Energy Trading LLC" (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

"SET Assumption Motion"); (2) the "Motion Of The Debtors For Entry Of Interim And Final Orders Providing Certain Protections In Connection With, And Authorizing The Assumption Of, Executory Contracts With Distrigas Of Massachusetts LLC And GDF Suez Energy North America, Inc." (the "Distrigas Assumption Motion"); (3) the "Motion of the Debtors For Entry Of An Order Providing Certain Protections In Connection With, and Authorizing The Assumption Of, Executory Contracts With Sequent Energy Management, L.P. (the "Sequent Assumption Motion"); and (4) the "Motion Of The Debtors For Entry Of An Order Providing Certain Protections In Connection With, And Authorizing The Assumption Of, Executory Contracts With Credit Suisse Energy LLC And Credit Suisse (USA), Inc." (the "CS Assumption Motion" and together with SET Assumption Motion, the Distrigas Assumption Motion, and the Sequent Assumption Motion, the "Assumption Motions").  In support of these objections, Algonquin respectfully states as follows:

## I.    INTRODUCTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek authority to assume the following agreements (the "Contracts"):

| | |
|---|---|
| 1. The "**SET Contracts**": | The ISDA Master Agreement dated December 11, 2007 and various related agreements as set forth on Schedule 1 to the Sempra Assumption Motion. |
| 2. The "**Distrigas Contracts**": | The firm and non-firm gas sales and purchase agreements and related agreements set forth in Schedule 1 of the Distrigas Assumption Motion. |
| 3. The "**CS Contracts**": | The ISDA Master Agreement Dated December 20, 2006 and various related agreements as set forth in Schedule 1 of the CS Assumption Motion. |
| 4. The "**Sequent Contracts**": | Fuel Management Agreement dated April 1, 2008 and related agreements as set forth in Schedule 1 of the Sequent Assumption Motion. |

Algonquin respectfully requests that this Court enter an order denying the Assumption Motions. The Debtors have failed to provide the Court, creditors, and interested parties with sufficient information to evaluate whether Debtors have exercised their best business judgment in seeking to assume the Contracts. The Assumption Motions are unduly vague because the Debtors did not attach the Contracts to the Assumption Motions, failed to specify key contractual terms, and provided only a brief description regarding the benefits the Contracts purportedly bring to the estate.

Moreover, the Assumption Motions are premature. The Debtors have filed a motion seeking authority to sell substantially all of their assets. While the Stalking Horse Bidder has indicated that it desires to have the Contracts assigned to it, the Stalking Horse Bidder is free to change its mind up until closing of the sale. Furthermore, there is no certainty that the Stalking Horse Bidder will be the successful bidder, and there is no assurance that the ultimate purchaser of the Debtors' assets will want each of the Contracts assigned to it. Indeed, assumption of the Contracts before the proposed sale hearing may be a disincentive for certain bidders, leading such bidders not to bid or to submit a lower bid. As such, assumption of the Contracts is premature until the identity of the purchaser of substantially all of the Debtors' assets is finalized. If the Contracts are assumed and the Stalking Horse Bidder determines not to accept an assumption of one or more or the Contracts, or if the successful bidder does not accept an assignment of one or more of the Contracts, the estate will be exposed to administrative liability.

Finally, the Distrigas Assumption Motion and the CS Assumption Motion contemplate large cure payments. Debtors have failed to provide sufficient evidence to determine whether, considering the large cure payments, assumption of the Distrigas and CS Contracts is a sound business judgment. As such, Debtors' Assumption Motions are inappropriate at this time.

For these and other reasons discussed more fully below, Algonquin is entitled to the entry of an order denying the Assumption Motions.

## II. ARGUMENT

### A. The Assumption Motions Do Not Provide Sufficient Information to Determine Whether Assumption of the Contracts Represents an Appropriate Business Judgment.

When seeking to assume a contract pursuant to 11 U.S.C. § 365, a Debtor must provide facts sufficient to determine whether assumption will benefit the estate. Indeed, assumption of an executory contract is subject to court approval based on a review of the totality of the circumstances. *See Regen Capital I, Inc. v. Halperin (In re U. S. Wireless Data, Inc.)*, 547 F.3d 484, 488 (2d Cir. 2008). "[A] bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it." *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993). Application by a Debtor for assumption of a contract pursuant to 11 U.S.C. § 365 "requires a *sufficient showing* of (1) whether performance of the contract will be advantageous to the estate, and (2) whether the estate will be able to perform." *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) (emphasis added). For the reasons stated below, Debtors have failed to make a showing sufficient for this Court to make a determination on the Assumption Motions.

The Assumption Motions should be denied because they do not provide the Court, creditors, and interested parties with sufficient information to evaluate whether Debtors have exercised their best business judgment in seeking to assume the Contracts. The Assumption Motions are unduly vague as the Contracts are not attached and key contractual terms are not specified. Instead, the Assumption Motions contain broad conclusions as to the beneficial nature of the Contracts with only vague references as to the circumstances warranting such a determination.

The only information provided in the SET Assumption Motion regarding the SET Contracts is that such contracts provide for a financially-settled heat rate option and a generic assertion that such contracts are hedging agreements that protect the Debtors from fluctuations in

4

commodity price volatility. The SET Assumption Motion does not provide a copy of the SET Contracts and fails to identify key terms necessary to evaluate the proposed assumption, such as the price and volume of the SET Contracts and the projected amount that would be due from the Debtors in the event the contracts are terminated. Moreover, the SET Assumption Motion contains no evidence that substitute hedging contracts could not be consummated, thereby avoiding the need to maintain the Sempra Collateral. There is no indication that the Debtors have made any attempt to identify substitute counterparties. Rather, the SET Assumption Motion merely speculates that substitute counterparties will be unwilling to do business with a debtor in financial distress. The lack of information about the essential terms of the SET Contracts, coupled with mere speculation as to the availability of substitute arrangements, is insufficient to allow the Court, creditors, and other interest holders to assess whether the proposed assumption represents a sound business judgment.

Similarly, the CS Assumption Motion describes the CS Contracts as related financially settled daily call options for daytime and nighttime spark spreads constructed from a swap and a put with an effective date of January 1, 2007 and a termination date of December 31, 2010. The CS Motion does not provide a copy of the CS Contracts and fails to identify key terms necessary to evaluate the proposed assumption, such as the price and volume of the CS Contracts and the projected amount that would be due from the Debtors in the event the contracts are terminated. Moreover, the CS Assumption Motion contains no evidence that substitute hedging contracts could not be consummated, thereby avoiding the need to maintain the CS Collateral. There is no indication that the Debtors have made any attempt to identify substitute counterparties. Rather, the CS Assumption Motion merely speculates that substitute counterparties will be unwilling to do business with a debtor in financial distress. The lack of information about the essential terms of the CS Contracts, coupled with mere speculation as to the availability of substitute arrangements, is insufficient to allow the Court, creditors, and other interest holders to assess whether the proposed assumption represents a sound business judgment.

The Distrigas Assumption Motion describes the Amended and Restated Firm Gas Sales and Purchase Agreement, dated as of December 3, 2007 (the "ARGA"), pursuant to which Mystic Development, LLC is obligated to purchase and take, at a below-market contract price, a specified quantity of natural gas vaporized from liquefied natural gas and delivered from Distrigas's adjacent liquefied natural gas facility. Under the ARGA, Distrigas supplies the substantial quantities of natural gas necessary for the operation of the Debtors' Mystic 8 and Mystic 9 facilities. The term of the ARGA extends through 2027. In addition, Mystic I, LLC and Distrigas are parties to a Non-Firm Gas Sales and Purchase Agreement, dated as of April 11, 2008 (the "Non-Firm Gas Sales Agreement" and together with the ARGA the "Gas Sales Agreements")) which provides Distrigas a right of first offer to provide gas for the Debtors' Mystic 7 facility. In addition, Sithe Mystic Development LLC (now Mystic Development LLC) and Distrigas are parties to the Prior Gas Sales Agreement dated as of September 18, 2002 (the "Prior Gas Sales Agreement") which deals with certain wharfing rights. The Distrigas Assumption Motion also describes three closely related agreements each dated February 9, 2001 (the "Wharfing Rights Agreements") governing the right to use, and providing third party access to, a wharf which directly abuts the water frontage of a portion of facilities now owned by Mystic I, LLC. The Assignment of Wharfing Rights Agreement governs Sithe Mystic LLC's assignment of the Wharfing Rights to Distrigas. Moreover, the Letter Agreement sets forth Sithe Mystic LLC's and Sithe Mystic Development LLC's rights and obligations in relation to a related Easement Agreement dated February 9, 2001 by and between Hugo Neu Products, Inc., Proleride Transport Systems, Inc., and Distrigas. The Distrigas Contracts are not attached to the Distrigas Assumption Motion and the Motion fails to enumerate other key contractual terms necessary to the Gas Sales Agreements to aid in determining the value of the Gas Sales Agreements, such as the price and quantity of natural gas. Moreover, the Distrigas Assumption Motion does not specify whether substitute counterparties have been considered in order to avoid the need to maintain the Distrigas Collateral. Finally, Debtors fail to provide any discussion as to how assumption of the Prior Gas Sales Agreement and the Wharfing Rights Agreements, the

Assignment of Wharfing Rights Agreement and the Letter Agreement will benefit the estate. The lack of information about the essential terms of the Distrigas Contracts, coupled with mere speculation as to the unavailability of substitute arrangements, is insufficient to allow the Court, creditors, and other interest holders to assess whether the proposed assumption represents a sound business judgment.

Finally, Debtors describe the Fuel Management Agreement Dated April 1, 2008 (the "Fuel Management Agreement") pursuant to which Sequent's major responsibilities include activities such as purchasing and/or selling fuel, arranging and scheduling delivery and managing risk. On March 1, 2008, BostonGen and Sequent also entered into the related NAESB Base Contract, pursuant to which Sequent provides for the purchase, sale or exchange of natural gas or other fuels. However, the Sequent Assumption Motion does not contain information related to the price and quantity of natural gas. Debtors simply conclude, with no support, that they do not believe that any alternative suppliers could provide the Debtors with sufficient supply to satisfy the Debtors' requirements in the short term. There is no indication that other suppliers were considered, thereby eliminating the need to maintain the Sequent Collateral. Moreover, the Sequent Assumption Motion fails to explain why assumption of the Sequent Contracts will benefit the estate. As such, Debtors have failed to provide adequate notice of their proposed assumption of the Contracts, inasmuch as interested parties have been deprived of the ability to fully evaluate how the Contracts will affect the estate.

B.    **Debtors' Assumption Motions are Premature in Light of the Impending Sale of All of the Debtors' Assets.**

The Assumption Motions are premature in light of the upcoming sale of Debtors' assets. On the August 18, 2010, the Debtors filed a motion pursuant to which they seek to sell substantially all of their assets (the "Sale Motion"). [Docket No. 24]. The Sale Motion specifies a proposed sale hearing on November 2, 2010. Debtors state that the entity selected to be the stalking horse bidder for the sale of substantially all of the Debtors' assets (the "Stalking Horse Bidder") has included the Contracts in its lists of contracts to be assumed and assigned upon the

closing of the sale.  The Debtors speculate, with no support, that in the event the Stalking Horse Bidder is not the prevailing party at an auction for the Debtors' assets, it is likely that the ultimate purchaser of the Debtors' assets will similarly request that the Contracts be assumed and assigned to it upon closing of a sale.  However, the Stalking Horse Bidder has the right to delete contracts from the list of assumed contracts up until closing.  Therefore, it is simply conjecture that the Stalking Horse Bidder will ultimately assume the Contracts.

Until the ultimate purchaser of the Debtors' assets is finalized it is impossible to determine whether such purchaser will view the Contracts as beneficial and desire assumption of the same.  Indeed, assumption of the Contracts before the proposed sale hearing may be a disincentive for certain bidders, leading  such bidders not to bid or to submit a lower bid.  As such, assumption of the Contracts is premature until the identity of the purchaser of substantially all of the Debtors' assets is finalized.  Assumption at this time based on speculation regarding whether the eventual purchaser of the Debtors' assets will request assumption the Contracts is inappropriate.  Moreover, in the event the Stalking Horse Bidder is the successful bidder for Debtors' assets, it still retains the right to delete contracts from the list of assumed contracts.  If the Stalking Horse Bidder changes its mind, or a different purchaser does not want to assume the Contracts, the estate may face administrative liability.

C.      **The Assumption Motions Fails to Provide Sufficient Evidence to Determine Whether, Considering the Large Cure Payments, Assumption of the Distrigas Contracts and CS Contracts is a Sound Business Judgment.**

The Distrigas and CS Assumption Motions also fail to provide the Court, creditors, and interested parties with sufficient information to evaluate whether payment of the proposed cure amounts is warranted.  "[A] sound assumption decision depends on the debtor's - - and, ultimately, the bankruptcy court's - - full awareness of the universe of executory-contract defaults and their cure costs."  *See  Regen Capital I, Inc. v. Halperin (In re U. S. Wireless Data, Inc.)*, 547 F.3d 484, 494 (2d Cir. 2008).  "The debtor party must take full account of the cost to cure all existing defaults owed to the non-debtor party when assessing whether the contract is

beneficial to the estate." *Century Indem. Co. v. NGC Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 506 (5th Cir. 2000).

The Distrigas Assumption Motion specifies that Debtors must pay $50,655,332 to cure defaults under the Distrigas Contracts. However, as discussed above, the Distrigas Assumption Motion fails to enumerate key contractual terms necessary to determine the value of the Distrigas Contracts, making it impossible to determine whether assumption will benefit the estate to an extent justifying the $50,655,332 cure amount. Similarly, the Debtors estimate in the CS Assumption Motion that in order to assume the CS Contracts, the Debtors must pay a cure amount of $36,900,000 but the Debtors fail to specify key contractual terms necessary to make a determination of whether assumption would benefit the estate. As such it is impossible to determine whether assumption of the Distrigas and CS Contracts will be beneficial to the estate in view of the tremendous cure amounts necessary to assume those contracts. The Debtors' failure to provide key information necessary to assess the rationale for incurring cure amounts of this magnitude is particularly troubling at this early stage in the case, when a creditors committee has not yet been formed to review and analyze the proposed assumptions. The proposed assumptions are inadequately supported, premature, and should be denied.

## CONCLUSION

For all of the reasons stated above, Algonquin respectfully requests that the Court enter an order denying the Assumption Motions and granting Algonquin such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  September 8, 2010     **DEWEY & LEBOEUF LLP**
     New York, New York

By: /s/ Irena M. Goldstein
    Irena M. Goldstein
    **DEWEY & LEBOEUF LLP**
    1301 Avenue of the Americas
    New York, New York 10019
    Tel: (212) 259-8000
    Fax: (212) 259-6333

    - and -

    Bennett G. Young (admitted pro hac vice)
    Paul S. Jasper (admitted pro hac vice)
    **DEWEY & LEBOEUF LLP**
    One Embarcadero Center, Suite 400
    San Francisco, CA  94111
    Tel: (415) 951-1100
    Fax: (415) 951-1180

    **Attorneys for Algonquin Gas Transmission, LLC**