Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted pro hac vice)
Paul S. Jasper (admitted pro hac vice)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone: (415) 951-1100
Facsimile: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br><u>et al.</u>,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**OPPOSITION OF ALGONQUIN GAS TRANSMISSION, LLC TO DEBTORS'**
**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II)**
**GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**
**PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363; AND (III) SCHEDULING A**
**<u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)</u>**

   Algonquin Gas Transmission, LLC ("**Algonquin**"), by and through its undersigned

counsel, objects to the entry of the order (the "**Final Order**") requested in the Debtors' Motion

for Entry of Interim and Final Orders (I) Authorizing Debtors To Utilize Cash Collateral

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant to §§ 361, 362 and 363; and (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(B) (the "**Motion**").  In support of such objection, Algonquin respectfully states as follows:

**MEMORANDUM OF LAW**

## I.     INTRODUCTION

The Court should deny the Final Order for the following reasons:

First, the Adequate Protection Replacement Liens[2] and super priority claims set forth in the Final Order are inappropriate because this case is essentially a liquidation of the Prepetition Secured Parties' collateral for their sole benefit.  The Debtors have requested authority to sell all of their assets with a stalking horse bid of $1.1 billion.  Unless there is a substantially higher bid that is accepted, the proceeds will be insufficient to pay secured claims the Debtors allege are in excess of $1.6 billion.  Thus, the sale will likely provide no return for unsecured creditors.  But, as set forth in the Debtors' own cash projections, the Debtors will experience negative cash flow of $84.5 million between August 21, 2010 and March 26, 2011.  The Final Order grants the Secured Creditors Adequate Protection Replacement Liens and super priority claims to protect against this diminution in the Secured Parties' collateral.  In other words, any unencumbered assets of these estates will be used to fund liquidation of the Secured Parties' collateral for the sole benefit of those Secured Parties.  Unsecured creditors would be better served if the Motion is denied and unencumbered assets remain available for potential distribution to unsecured creditors.

Second, the Debtors provide no justification for the inclusion of the hair trigger default remedies specified in paragraph 14 of the Final Order, which, upon occurrence, entitle the First

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Debtors' Cash Collateral Motion and Interim Order.

Lien Secured Parties to exercise any remedies to which they are entitled, such as to terminate the Debtors' use of cash collateral and foreclose without further authorization of this Court.

Third, and finally, the Final Order inappropriately provides for payment of interest, fees, and costs to First Lien Secured Lenders before the time to object to the validity and enforceability of the First Lien Obligations has expired. There is no assurance that, if an objection is successfully prosecuted, the amounts paid to the First Lien Secured Lenders will be recoverable from them.

For these and other reasons discussed more fully below, the Motion should be denied.

## II. ARGUMENT

### A. The Adequate Protection Replacement Liens And Super Priority Status Set Forth In The Final Order Are Inappropriate Because They Essentially Require General Unsecured Creditors To Fund The Liquidation Of The Prepetition Secured Parties' Collateral.

The Adequate Protection Replacement Liens and super priority status set forth in the Cash Collateral Motion and Interim Order are inappropriate because this case is essentially a liquidation of the Prepetition Secured Parties' collateral for their benefit only. Pursuant to paragraph 5 of the Final Order, the First Lien Secured Parties and Second Lien Secured Parties are granted replacement Liens, to the extent of any Diminution in Value of their respective interests, upon all property of the Debtors pursuant to 11 U.S.C. §§ 361 and 363(e), including Avoidance Action Proceeds of the Debtors' claims and causes of action under §§ 502(d), 544, 545, 547, 548, 549, 550, and 553. The Adequate Protection Replacement Liens will be subject and subordinate only to (i) any security interest or lien granted pursuant to §§ 364(c)(3), and/or 364(d)(1) in connection with any DIP Financing (ii) the Carve-Out, and (iii) with respect to the Adequate Protection Replacement Liens granted to the Second Lien Agent for the benefit of the Second Lien Secured Parties, the Adequate Protection Replacement Liens granted to the First Lien Agent for the benefit of the First Lien Secured Parties.

The Final Order proposes to divert any unencumbered assets otherwise available to unsecured creditors of the estate to fund the cost of liquidating the Prepetition Secured Parties'

collateral for the Prepetition Secured Parties' sole benefit. The Debtors represent that the First Lien Secured Parties and the Second Lien Secured Parties hold aggregate secured claims in excess of $1.6 billion. *See* Final Order ¶D (vii). At the same time, the Debtors have requested approval of a sale of all their assets for a stalking horse bid of approximately $1.1 billion. *See* Declaration of Jeff Hunter, Executive Vice President and Chief Financial Officer of EBG Holdings LLC, in Support of Chapter 11 Petitions and First Day Pleadings, ¶47. Thus, unless a bid is accepted that exceeds the stalking horse offer by at least $500 million, the sale will not generate any distributions to unsecured creditors.

However, the Debtors' own cash forecast projects a decline in the Debtors' cash of about $84.5 million between August 21, 2010 and March 26, 2011. Thus, if the Debtors perform merely as forecast, the Secured Parties' cash collateral will decline by $84.5 million, generating replacement liens over all of the Estates' assets and super priority claims in that amount.

These replacement liens and superpriority claims serve no purpose, from the perspective of unsecured creditors, other than to redirect unencumbered assets that might fund a distribution to unsecured creditors to instead pay the liquidation costs of the Pre-Petition Lenders. Algonquin submits that the Secured Parties should pay their own liquidation costs. In sum, unsecured creditors would be better served if the Motion is denied and whatever unencumbered assets exist remain available for distribution to unsecured creditors.

    **B.**    **The Debtors Provide No Justification For Inclusion Of The Hair Trigger Defaults Specified In Paragraph 4(b) Of The Final Order, Which, Upon Occurrence, Entitle The First Liens Secured Parties To Exercise Any Available Remedies, Including Foreclosure.**

The Debtors provide no justification for the inclusion of the hair trigger default remedies specified in paragraph 13 of the Final Order which, upon occurrence of a default, entitle the First Lien Secured Parties to exercise any available remedies, such as foreclosure on the collateral and to terminate the Debtors' use of cash collateral, without prior notice to or authorization of this Court. Bankruptcy Rule 4001 provides that a motion for relief from the automatic stay shall be made in accordance with Rule 9104. *See* Bankr. R. 4001(1). Pursuant to Bankruptcy Rule 9104,

"reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." *See* Bankr. R. 4001. However, *ex parte* relief from the automatic stay may be granted without prior notice if it clearly appears from specific facts shown by affidavit or by a verified motion that immediate and irreparable injury, loss, or damage will result to the movants before the adverse party or the attorney for the adverse party can be heard in opposition. *See* Bankr. R. 4001(2).

The Final Order specifies that upon the occurrence of an Event of Default, the secured creditors have relief, without further authorization from the court, from the automatic stay to exercise all of their remedies, which presumably includes foreclosure. In addition, upon occurrence of an Event of Default, the consensual use of cash Collateral and the Debtors' right to use Prepetition Collateral other than in the ordinary course automatically terminates. Paragraph 14(b) of the Final Order states that in the event an Event of Default does occur, the Debtors have 3 business days to obtain a hearing for the sole purpose of contesting whether an Event of Default exists. As such, in the event one of the hair trigger defaults occurs, the Final Order effectively provides relief equivalent to the *ex parte* relief set forth in Bankr. R. 4001(2) without notice and without a demonstration by the First Lien Secured Parties that immediate and irreparable injury, loss, or damage will result before opposition can be heard. Debtors provide no justification for creating a hair trigger default eliminating the substantive and procedural protections governing motions for relief from stay.

    **C.    Payment Of Interest, Fees, And Costs As Specified In Paragraph 5(d) Of The Final Order Is Inappropriate Until After Interested Parties Are Given A Chance To Object To Such Payment Pursuant To 11 U.S.C. § 506(b).**

The request in the Final Order for payment of interest, costs and charges for First Lien Lenders, the Revolving Credit Lenders and the Synthetic L/C Lenders is inappropriate until the validity of those liens and the claims secured thereby are determined. Paragraph 5(d) of the Final Order provides that as further adequate protection for, and in consideration of, and as a requirement of, obtaining the consent of the First Lien Agent and Consenting First Lien Lenders to the entry of the Final Order and the Debtors' consensual use of the Prepetition Collateral, the

Debtor shall pay on a monthly basis interest on the unpaid principal amount of the Loans outstanding under the First Lien Credit Agreement to the First Lien Lenders, a fee to the Revolving Credit Lenders, and a fee to the Synthetic L/C Lenders.  In addition, the Debtors are required to pay in cash all reasonable out of pocket fees, costs and expenses of the First Lien Agent and its professionals.

The Final Order reserves until sixty (60) days after the date of entry of the Final Order the rights of any party to bring a contested matter or adversary proceeding challenging the admissions, stipulations, and findings by the Debtors related to the validity, enforceability, and perfection of the prepetition Liens.  The Final Order states that such payment of interest, fees, and professional fees and expenses shall be subject to recharacterization and reapplication pursuant to further order of the court if and to the extent the First Lien Obligations are determined by the Court to be undersecured.  However there is uncertainty that, in the event there is a successful challenge, the Secured Parties can pay the money back.  As such, the more prudent course is to withhold such payments until after parties in interest are given a chance to object to such payment pursuant to 11 U.S.C. § 506(b).

## CONCLUSION

For all of the reasons stated above, Algonquin respectfully requests that the Court enter an order denying the Final Order and granting Algonquin such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  September 8, 2010
      New York, New York

**DEWEY & LEBOEUF LLP**

By: /s/ Irena M. Goldstein
    Irena M. Goldstein
    **DEWEY & LEBOEUF LLP**
    1301 Avenue of the Americas
    New York, New York 10019
    Tel: (212) 259-8000
    Fax: (212) 259-6333

    - and -

    Bennett G. Young (admitted pro hac vice)
    Paul S. Jasper (admitted pro hac vice)
    **DEWEY & LEBOEUF LLP**
    One Embarcadero Center, Suite 400
    San Francisco, CA  94111
    Tel: (415) 951-1100
    Fax: (415) 951-1180

    **Attorneys for Algonquin Gas Transmission, LLC**