Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted *pro hac vice*)
Paul S. Jasper (admitted *pro hac vice*)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, California 94111
Tel: (415) 951-1100
Fax: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>*et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

## <u>NOTICE OF MOTION FOR WITHDRAWAL OF REFERENCE</u>

PLEASE TAKE NOTICE that upon the Motion of Algonquin Gas Transmission, LLC ("**Algonquin**") for Withdrawal of Reference With Respect to "Motion of the Debtors for Entry of (I) an Order Approving and Authorizing (A) Bidding Procedures in Connection With Substantially All of the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale of Substantially all of the Assets of the Debtors, (D) the Form and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

Manner of Notice of the sale and Hearing and (E) Related Relief; and (II) an Order Approving and Authorizing (A) the Sale of Substantially All of the Assets of the Debtors Free and Clear of Claims, Liens, Liabilities, Rights Interests and Encumbrances, (B) the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, (D) the Transition Services Agreement and (E) Related Relief" (the "**Sale Motion**") [Bankruptcy Court Docket No. 24], the Declaration of Richard M. Paglia in Support of the Motion, dated September 16, 2010, and the exhibits attached thereto, and the Declaration of Bennett G. Young in Support of the Motion, dated September 16, 2010, and the exhibits attached thereto, Algonquin will move the United States District Court for the Southern District of New York (the "**District Court**") at the United States Courthouse, 500 Pearl Street, New York, New York 10007 for an order pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011 withdrawing the reference from the United States Bankruptcy Court for the Southern District of New York to the District Court of the Sale Motion to the extent the Sale Motion seeks an order approving and authorizing (a) the sale of substantially all of the assets of the Debtors free and clear of claims, liens, liabilities, rights, interests and encumbrances, and (b) the Debtors to enter into and perform their obligations under the asset purchase agreement, or, in the alternative, withdrawing the reference of the Sale Motion only to the extent the Sale Motion seeks such relief with respect to the Fore River Plant (as defined in the Motion) as well as for such other and further relief as the District Court deems just and proper. A hearing on the Motion shall be scheduled at a date and time that is convenient for the District Court.

Dated:  September 16, 2010
        New York, New York

Respectfully submitted,


By: /s/ Irena M. Goldstein
     Irena M. Goldstein
     **DEWEY & LEBOEUF LLP**
     1301 Avenue of the Americas
     New York, New York 10019
     Tel: (212) 259-8000
     Fax: (212) 259-6333

     - and -

     Bennett G. Young (admitted *pro hac vice*)
     Paul S. Jasper (admitted *pro hac vice*)
     **DEWEY & LEBOEUF LLP**
     One Embarcadero Center, Suite 400
     San Francisco, California 94111
     Tel: (415) 951-1100
     Fax: (415) 951-1180

     **Attorneys for Algonquin Gas Transmission, LLC**

Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted *pro hac vice*)
Paul S. Jasper (admitted *pro hac vice*)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, California 94111
Tel: (415) 951-1100
Fax: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>*et al.*,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**MOTION OF ALGONQUIN GAS TRANSMISSION, LLC**
**FOR WITHDRAWAL OF REFERENCE WITH RESPECT TO**
**MOTION OF THE DEBTORS FOR ENTRY OF (I) AN ORDER APPROVING AND**
**AUTHORIZING (A) BIDDING PROCEDURES IN CONNECTION WITH THE SALE**
**OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS, (B) STALKING**
**HORSE BID PROTECTIONS, (C) PROCEDURES FOR THE ASSUMPTION AND**
**ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN**
**CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF**
**THE DEBTORS, (D) THE FORM AND MANNER OF NOTICE OF THE SALE AND**
**HEARING AND (E) RELATED RELIEF; AND (II) AN ORDER APPROVING AND**
**AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE**
**DEBTORS FREE AND CLEAR OF CLAIMS, LIENS, LIABILITIES, RIGHTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

**INTERESTS AND ENCUMBRANCES, (B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) THE TRANSITION SERVICES AGREEMENT AND (E) RELATED RELIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 2

JURISDICTION ............................................................................................. 4

MEMORANDUM OF LAW .............................................................................. 5

STATEMENT OF FACTS ................................................................................. 5

    A.       The Bankruptcy Proceedings and the Sale Motion ................................ 5

    B.       The Rejection Motion and Algonquin's Motion for Withdrawal of
                Reference with Respect to the Rejection Motion ................................... 6

    C.       The 203 Application and the FERC Protest ......................................... 7

    D.       Construction of the Fore River Plant, the Algonquin Interconnection,
                and the Prior Agreements .................................................................. 8

    E.       The HubLine Service Agreement at Issue ........................................ 11

    F.       The Fore River Plant Receives All of Its Fuel Via Algonquin's Pipeline
                Facilities ....................................................................................... 12

    G.       Subsequent Related Agreements ....................................................... 14

ARGUMENT ................................................................................................ 14

I.      THE REFERENCE MUST BE WITHDRAWN BECAUSE RESOLUTION
        OF THE SALE MOTION REQUIRES SUBSTANTIAL AND MATERIAL
        CONSIDERATION OF FEDERAL ENERGY LAW .................................... 14

    A.       Standard for Mandatory Withdrawal .................................................. 14

    B.       Resolution of the Sale Motion Will Require Substantial and
                Material Consideration of Title 11 and Federal Energy Law ............................ 17

           1.      A Conflict Exists Between FERC's Exclusive Jurisdiction
                      Over Natural Gas Transportation Contracts and the Bankruptcy
                      Court's Authority to Authorize the Sale of the Fore River Plant
                      by Allowing Rejection of the HubLine Service Agreement .................. 17

           2.      Courts Considering Bankruptcy Motions with Respect to Contracts
                      That Implicate Federal Energy Laws Have Consistently Concluded
                      That Withdrawal of the Reference Is Mandatory ................................... 21

II.     WHEN THE PUBLIC INTEREST STANDARD IS APPLIED, THERE ARE
        CLEAR CONCERNS REGARDING RELIABILITY, EFFECTS ON

CONSUMERS AND SHIPPERS, AND OTHER ISSUES ............................................ 24

CONCLUSION ...................................................................................................................... 26

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Algonquin Gas Transmission Co.*
  92 FERC ¶ 61,071 (2000) ............................................................................. 9

*Algonquin Gas Transmission Co.*
  Docket No. RP00-70-003 (Nov. 7, 2003) (unpublished letter order) ........................................... 11

*Algonquin Gas Transmission, LLC,*
  Docket No. RP00-70-018 (Feb. 21, 2008) (unpublished letter order) ......................................... 14

*Am. Freight Sys., Inc. v. Interstate Commerce Comm'n (In re Am. Freight Sys., Inc.)*
  150 B.R. 790 (D. Kan. 1993) ........................................................................ 15

*Ark. La. Gas Co. v. Hall*
  453 U.S. 571 (1981) ......................................................................... 18, 19, 20

*Armen Corp.*
  131 FERC ¶ 61,240, at P 38 (2010) ................................................................... 24

*Bear, Stearns Secs. Corp. v. Gredd*
  No. 01-4379, 2001 WL 840187, at *3 (S.D.N.Y. July 25, 2001) ................................... 16

*BlackRock, Inc.*
  131 FERC ¶ 61,063, at P 50 (2010) ................................................................... 24

*Blumenthal v. NRG Power Mktg., Inc.*
  104 FERC ¶ 61,210, at P 1 (2003) ................................................................... 20

*Cal. Dep't of Water Res. v. Calpine Corp. (In re Calpine Corp.)*
  337 B.R. 27 (S.D.N.Y. 2006) ............................................................. 16, 19, 20, 21, 22

*Cal. ex rel. Lockyer v. Dynegy*
  375 F.3d 831 (9th Cir. 2004) ....................................................................... 22

*City of New York v. Exxon Corp.*
  932 F.2d 1020 (2d Cir. 1991) ....................................................................... 15

*Colo. Interstate Gas Co. v. FERC*
  791 F.2d 803 (10th Cir. 1986), *cert. denied*, 479 U.S. 1043 (1987) ............................... 18

*Corp. v. Williams Bailey & Wesner LLP (In re Keene Corp.)*
  182 B.R. 379 (S.D.N.Y. 1995) ........................................................................

*E. & J. Gallo Winery v. EnCana Corp.*
    503 F.3d 1027 (9th Cir. 2007) ...................................................................... 19

*E. Tenn. Natural Gas Co. v. FERC*
    863 F.2d 932  (D.C. Cir. 1988) ............................................................... 18, 20

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*
    No. 04-cv-8177, 2004 WL 2711101, at *4 (S.D.N.Y. Nov. 23, 2004) ..................... 16, 23

*EPA v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*
    134 B.R. 188 (N.D. Tex. 1991) ...................................................................... 16

*FPC v. Sierra Pac. Power Co.*
    350 U.S. 348 (1956) ............................................................................ 18, 20

*In re Cablevision S.A.*
    315 B.R. 818 (S.D.N.Y. 2004) ................................................................ 15, 16

*In re Horizon Air, Inc.*,
    156 B.R. 369 (N.D.N.Y. 1993) ...................................................................... 15

*In re Permian Basin Rate Cases*
    390 U.S. 747 (1968) ............................................................................ 18, 19

*Keene Corp. v. Williams Bailey & Wesner LLP (In re Keene Corp.)*
    182 B.R. 379, 382 (S.D.N.Y. 1995) ................................................................ 15

*Maritimes & Ne. Pipeline, L.L.C.*
    95 FERC ¶ 61,077 (2001) ...........................................................................11

*Maritimes & Ne. Pipeline, L.L.C.*
    97 FERC ¶ 61,345 (2001), *amended*, 99 FERC ¶ 61,277 (2002) ................................11

*Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*
    378 F.3d 511, 516 n.2 (5th Cir. 2004) ............................................... 20, 21, 22

*Miss. Power & Light Co. v. Moore*
    487 U.S. 354 (1988) .................................................................................. 19

*Nantahala Power & Light Co. v. Thornberg*
    476 U.S. 953 (1986) .................................................................................. 19

*Natural Gas Pipeline Co. of Am. v. FERC*
    904 F.2d 1469 (10th Cir. 1990) .................................................................. 18

*NRG Power Mktg., Inc. v. Blumenthal (In re NRG Energy, Inc.)*
    No. 03-3754, 2003 WL 21507685, at *3 (S.D.N.Y. June 30, 2003) ................. 21, 22, 23

*NSTAR, Advanced Energy Systems, Inc.*
131 FERC ¶ 61,098, at P 40 (2010) ........................................................ 24

*Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*
86 B.R. 33 (S.D.N.Y. 1988) ..................................................................... 16

*United Gas Pipe Line Co. v. Mobile Gas Servs. Corp.*
350 U.S. 332 (1956) ................................................................................ 20

*United States Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*
145 B.R. 539 (N.D. Tex. 1992) ............................................................... 15

## **Statutes**

**Code of Federal Regulations**
18 C.F.R.
§ 375.101

**United States Codes**
11 U.S.C.
§363 ......................................................................................................... 20
§365 ......................................................................................................... 20
§ 365(a) ................................................................................................. 6, 21
§ 1107(a) ................................................................................................... 5
§ 1108 ....................................................................................................... 5

15 U.S.C.
§ 717, *et seq.* ...................................................................................... 3, 18
§717a(6) ................................................................................................... 17
§ 717(b) .................................................................................................... 17
§ 717c ....................................................................................................... 18
§717d ........................................................................................................ 18
§ 717c(a) ................................................................................................... 17
§ 717c(c) and (d) ...................................................................................... 17
§ 717o ....................................................................................................... 18
§§ 791a, *et seq* ......................................................................................... 3

16 U.S.C.
§ 824b ....................................................................................................... 7
§ 824d(c) ................................................................................................... 22

28 U.S.C.

§ 157.............................................................................................. 4, 5, 21

§ 157(a).......................................................................................... 14

§ 157(b).......................................................................................... 5

§ 157(d)................................................................................ 1, 3, 15, 17

§ 1334............................................................................................ 5

§ 1334(a)......................................................................................... 4

§ 1334(b)......................................................................................... 14

§ 1408............................................................................................ 5

§ 1409............................................................................................ 5

§ 1412............................................................................................ 5

Algonquin Gas Transmission, LLC ("**Algonquin**"), by and through its undersigned counsel, submits this memorandum in support of its motion, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and Rule 5011.1 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") for an order withdrawing the reference to the Bankruptcy Court of the "Motion of the Debtors for Entry of (I) an Order Approving and Authorizing (A) Bidding Procedures in Connection With Substantially All of the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale of Substantially All of the Assets of the Debtors, (D) the Form and Manner of Notice of the Sale and Hearing and (E) Related Relief; and (II) an Order Approving and Authorizing (A) the Sale of Substantially All of the Assets of the Debtors Free and Clear of Claims, Liens, Liabilities, Rights Interests and Encumbrances, (B) the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, (D) the Transition Services Agreement and (E) Related Relief" (the "**Sale Motion**") [Docket No. 24] to the extent the Sale Motion seeks an order approving and authorizing (a) the sale of substantially all of the assets of the Debtors free and clear of claims, liens, liabilities, rights, interests and encumbrances, and (b) the Debtors to enter into and perform their obligations under the asset purchase agreement, or, in the alternative, withdrawing the reference of the Sale Motion only to the extent the Sale Motion seeks such relief with respect to the Debtors' Fore River Plant (as defined below).[1]

---

[1] Algonquin does not seek withdrawal of the reference of the Sale Motion to the extent the Sale Motion seeks entry of the Bidding Procedures Order (as defined in the Sale Motion). Algonquin reserves all of its rights to object to the Sale Motion or to entry of the Bidding Procedures Order.

<u>**PRELIMINARY STATEMENT**</u>

The Sale Motion is a thinly veiled attempt at an end run around the "filed rate doctrine" because, pursuant to such motion, the Debtors seek to maximize the sale price of the Fore River Plant (as defined below) by stripping it of the FERC-approved gas transportation rate, terms, and conditions set forth in the HubLine Service Agreement (as defined below), which was filed with and approved by the Federal Energy Regulatory Commission ("**FERC**" or "**Commission**") according to its exclusive authority under the Natural Gas Act ("**Natural Gas Act**" or "**NGA**"). Moreover, the Sale Motion impermissibly abrogates the FERC's parallel exclusive authority under the Federal Power Act ("**Federal Power Act**" or "**FPA**") to determine whether, in light of electric system reliability concerns, firm transportation service under the HubLine Service Agreement is a necessary term and condition of the proposed sale of the Fore River Plant, a FERC-jurisdictional generation facility (including the transmission facilities that interconnect it to the interstate electricity grid). The District Court, as opposed to the Bankruptcy Court, must interpret the interplay between the approval of a sale of assets under the Bankruptcy Code and the two separate "public interest" inquiries delegated to the FERC under the FPA and NGA.

Algonquin is a counterparty to a contract with Sithe Fore River Development LLC (now Fore River Development, LLC) ("**Fore River**"), one of the above-captioned debtors, under which Algonquin agreed to reserve capacity and provide transportation service for natural gas tendered by Fore River on a firm basis for a primary contract term of twenty years. On August 19, 2010, Boston Generating, LLC and its affiliated entities (collectively, the "**Debtors**") filed the Sale Motion seeking, among other relief, approval of the sale of substantially all of their assets, including the Fore River Plant (defined below), pursuant to section 363 of the Bankruptcy Code. In addition, on August 27, 2010, the Debtors filed the First Omnibus Motion of Debtors

for Entry of Order Authorizing the Debtors to Reject Certain Executory Contracts *Nunc Pro Tunc* to Their Respective Notice Dates (the "**Rejection Motion**") [Docket No. 75] with the Bankruptcy Court seeking authorization to reject, among other executory contracts, the Service Agreement (Applicable to Rate Schedule AFT-1) (the "**HubLine Service Agreement**"), Contract No. 510008, dated as of January 31, 2001, by and among Fore River, Algonquin, and Sithe Power Marketing, L.P. ("**SPM**")[2] Through the Sale Motion and the Rejection Motion, the Debtors seek to sell the Fore River Plant after first stripping it of the HubLine Service Agreement.[3]

Pursuant to 28 U.S.C. § 157(d), this Court must withdraw the reference to the Bankruptcy Court of the Sale Motion with respect to the sale of the Fore River Plant because resolution of this matter necessarily requires, as a threshold matter, consideration of the interrelationship between the Bankruptcy Code and federal non-bankruptcy laws regulating organizations or activities affecting interstate commerce, namely, the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*, and the Federal Power Act, 15 U.S.C. §§ 791a, *et seq*., and related case law.

Specifically, the Debtors' proposed sale of the Fore River Plant without assumption of the HubLine Service Agreement raises two fundamental legal issues, both of which require the District Court, as opposed to the Bankruptcy Court, to interpret the interplay between bankruptcy law and the body of federal law under the NGA governing natural gas transportation service contracts as well as that governing the disposition of generation facilities (including transmission necessary to interconnect the facilities to the interstate electricity grid) under the exclusive

---

[2] SPM is a party to the HubLine Service Agreement solely for purposes of Article VIII thereof, which provides that the HubLine Service Agreement shall supersede certain other prior contracts.

[3] As discussed below, Algonquin has also filed a motion seeking withdrawal of the reference with respect to the Rejection Motion on grounds similar to those asserted herein. Algonquin expects to seek consolidation of the two motions.

jurisdiction of the FERC pursuant to its FPA authority. First, this Court must determine whether the Debtors are authorized to sell the Fore River Plant, without assumption of the HubLine Service Agreement, notwithstanding the NGA's vesting of exclusive authority over the rates, terms and conditions of natural gas transportation service agreements in the FERC or whether FERC and the Bankruptcy Court each have concurrent jurisdiction under their governing statutes. Second, this Court must determine whether the Debtors should be authorized to sell the Fore River Plant, without assumption of the HubLine Service Agreement, notwithstanding the FPA's vesting of exclusive authority over reliability concerns, such as those that could be caused by rejection of firm transportation service under the HubLine Service Agreement, related to the disposition of FERC-jurisdictional power facilities in the FERC or whether FERC and the Bankruptcy Court each have concurrent jurisdiction under their governing statutes. Determination of both issues requires the District Court, as opposed to the Bankruptcy Court, to interpret the interplay between the approval of a sale of assets under the Bankruptcy Code and the two separate "public interest" inquiries delegated to FERC under the NGA and the FPA.

The expeditious resolution of these issues is necessary to clarify the respective authority of the FERC under two separate and exclusive enabling statutes and that of the Bankruptcy Court under the Bankruptcy Code with respect to the sale of the Fore River Plant and its related assets. This Court's resolution of these fundamental issues at this early juncture will streamline future proceedings in the Debtors' bankruptcy and promote judicial economy.

## JURISDICTION

The Bankruptcy Court has jurisdiction over the Debtors' chapter 11 proceeding pursuant to 28 U.S.C. § 1334(a). The District Court has jurisdiction to consider this Motion under 28

U.S.C. §§ 157, 1334 and 1412. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

## MEMORANDUM OF LAW

This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, Algonquin respectfully submits that such citations and discussion satisfy the requirement of Local Rule 9013-1 for the Bankruptcy Court of the Southern District of New York and Local Civil Rule 7.1 of the Southern District of New York that motions be accompanied by memoranda of law.

## STATEMENT OF FACTS

### A.     The Bankruptcy Proceedings and the Sale Motion

On August 18, 2010, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these chapter 11 cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. Fore River is a debtor in possession whose bankruptcy case is being jointly administered in the chapter 11 cases.

On August 19, 2010, the Debtors filed the Sale Motion pursuant to which Debtors seek, *inter alia*, to sell five generating facilities, including the Fore River Plant, to Constellation Holdings, Inc. (the "**Stalking Horse Bidder**") pursuant to an auction process. The Sale Motion requests that the Bankruptcy Court authorize and approve bidding procedures in connection with the receipt and analysis of competing bids for the sale of substantially all of the Debtors' assets, including what the Debtors describe as "customary" bid protections for the Stalking Horse Bidder. In addition, the Debtors seek authorization for the assumption and assignment of certain executory contracts and unexpired leases of the Debtors (collectively, the "**Assumed Contracts**") to the successful purchaser. The HubLine Service Agreement is not one of the

Assumed Contracts specified in the Sale Motion. As such, the Debtors are seeking to reject the HubLine Service Agreement through the back door, thereby conducting an end run around the filed rate doctrine. The Sale Motion requests that the Bankruptcy Court hold a hearing to approve the sale on or about November 2, 2010.

### B. The Rejection Motion and Algonquin's Motion for Withdrawal of Reference with Respect to the Rejection Motion

By letter dated August 24, 2010 (the "**Notice of Rejection Letter**"), the Debtors notified Algonquin that the Debtors intended to file a motion to reject the HubLine Service Agreement. The Notice of Rejection Letter specified that the proposed rejection would not affect the rights and obligations of Algonquin and the Debtors under the 2004 OBA Agreement (defined below). Subsequently, on August 27, 2010, the Debtors filed the Rejection Motion seeking authority pursuant to 11 U.S.C. § 365(a) to reject two executory contracts – the HubLine Service Agreement and a terminalling agreement between Fore River and Sprague Energy Corp.

On September 1, 2010, Algonquin filed in the Bankruptcy Court its Motion for Withdrawal of Reference With Respect to First Omnibus Motion of Debtors for Entry of Order Authorizing the Debtors to Reject Certain Executory Contracts *Nunc Pro Tunc* to Their Respective Notice Dates (the "**Motion for Withdrawal of Reference of Rejection Motion**"), requesting that the District Court withdraw the reference of the Rejection Motion with respect only to the HubLine Service Agreement to resolve the conflict between federal bankruptcy law authorizing the rejection of executory contracts and federal energy law under the NGA requiring FERC approval of termination or amendment of natural gas transportation agreements. This motion is currently pending before the Honorable Denise L. Cote, United States District Court Judge, as Case No. 10 Civ. 6528 (DLC).

### C. The 203 Application and the FERC Protest

The Debtors and the Stalking Horse Bidder sought FERC approval of the proposed sale of the Fore River Plant to the Stalking Horse Bidder under section 203 of the FPA, 16 U.S.C. § 824b, by filing with the FERC in Docket No. EC10-85-000 on August 18, 2010 their Joint Application for Authorization of Disposition of Jurisdictional Facilities, Request for Waivers of Certain Filing Requirements, and Request for Shortened Comment Period and Expedited Consideration (the "**203 Application**"). On September 8, 2010, Algonquin filed with the FERC its Motion to Intervene and Protest of Algonquin Gas Transmission, LLC (the "**FERC Protest**") with respect to the 203 Application. A true and accurate copy of the FERC Protest is attached to the Declaration of Bennett G. Young ("**Young Decl.**") which is attached hereto as Exhibit A. In the FERC Protest, Algonquin argues that if the FERC were to approve the Application in a manner that severed, concluded, or terminated the parties' mutual obligations under the HubLine Service Agreement, FERC would be using Congress's exclusive delegation of authority under the FPA to preempt an equal but separate exclusive delegation of authority under the NGA in violation of the filed rate doctrine and the public interest. FERC Protest at 5. Algonquin therefore asserted that any change or alteration by FERC of those obligations must be done only after notice and due process under the NGA, which has yet to be initiated with FERC. *Id.* Algonquin further argues in the FERC Protest that, as a separate basis for protest, if the HubLine Service Agreement is rejected as proposed and does not continue with the successor owner, the Fore River Plant will no longer have firm transportation service providing for primary firm delivery rights at the Fore River Plant's delivery point on Algonquin's facilities and, as a result, will be more likely to experience service constraints, restrictions or interruptions particularly during periods of peak need and utilization. *Id.* at 5, 13-14. As such, Algonquin has requested of FERC, if it proceeds with the merits of the 203 Application prior to this Court's action on the

jurisdictional and related issues, that it closely examine the likely effects of the proposed sale of the Fore River Plant on electric reliability in determining whether to approve and/or condition authorization of the proposed sale. *Id.* at 17. In the FERC Protest, Algonquin requested, in the event the FERC determines it cannot summarily grant the relief requested therein, and if FERC finds there are genuine issues of material fact in dispute, that the matter be set for hearing for development of a full record from which to determine the impacts of the proposed sale of the Fore River Plant upon any filed rates pursuant to the FERC's exclusive jurisdiction under the NGA and upon the reliability of electricity transmission in New England pursuant to the FERC's exclusive jurisdiction under the FPA. *Id.* at 18.

**D.    Construction of the Fore River Plant, the Algonquin Interconnection, and the Prior Agreements**

On September 28, 1999, Algonquin and SPM entered into a Precedent Agreement (the "**1999 Lateral Precedent Agreement**") pursuant to which Algonquin agreed to construct a lateral pipeline facility to serve the Debtors' natural gas-fired electric power plant near Weymouth, Massachusetts (the "**Fore River Plant**"), which plant was still under construction at the time. The Fore River Plant is a 787-megawatt combined-cycle power plant that burns natural gas to generate power. *See* Declaration of Jeff Hunter, Manager, Executive Vice President And Chief Financial Officer of EBG Holdings LLC, in Support of Chapter 11 Petitions and First Day Pleadings (the "**Hunter Declaration**"), ¶ 20 [Dkt. No. 2]. The Fore River Plant went into service in August 2003. *Id.* The facility is located on a 77-acre site in North Weymouth, Massachusetts, which is approximately 12 miles south of Boston. *Id.*

Contemporaneous with the 1999 Lateral Precedent Agreement, Algonquin and SPM entered into the Service Agreement (Applicable to Rate Schedule AFT-CL), Contract No. 99004 (the "**1999 Lateral Service Agreement**"), a firm transportation agreement governed by Rate

Schedule AFT-CL of Algonquin's FERC Gas Tariff, and a letter agreement (the "**1999 Lateral Letter Agreement**") whereby the parties agreed to the rate that would be applicable to service under the firm transportation agreement as well as certain additional elements of the transaction.

On November 29, 1999, Algonquin filed an application with the FERC in Docket No. CP00-34-000 requesting a certificate of public convenience and necessity to construct a new lateral pipeline to provide service to the Fore River Plant. The 1999 Lateral Precedent Agreement, 1999 Lateral Service Agreement and 1999 Lateral Letter Agreement were evidence of market support for the proposed expansion project. On July 26, 2000, FERC issued an order authorizing Algonquin to construct and operate the proposed facilities. *See Algonquin Gas Transmission Co.*, 92 FERC ¶ 61,071 (2000).

On August 2, 2000, Algonquin and SPM entered into a Precedent Agreement (the "**2000 HubLine Precedent Agreement**" and, along with the 1999 Lateral Precedent Agreement, the "**Precedent Agreements**") whereby Algonquin agreed to construct an expansion of its pipeline system called the HubLine expansion project (the "**HubLine Project**"), which would connect Algonquin's facilities with the facilities of another interstate pipeline and provide additional natural gas transportation service in the New England region. Contemporaneous with the 2000 HubLine Precedent Agreement, Algonquin and SPM entered into the Service Agreement (Applicable to Rate Schedule AFT-1), Contract No. 99025 (the "**2000 HubLine Service Agreement**" and, along with the 1999 Lateral Service Agreement, the "**Prior Service Agreements**"), a firm transportation agreement governed by Rate Schedule AFT-1 of Algonquin's FERC Gas Tariff, and a letter agreement (the "**2000 HubLine Letter Agreement**" and, along with the 1999 Lateral Letter Agreement, the "**Letter Agreements**") whereby the parties agreed to the rates that would be applicable to service under the firm transportation

agreement as well as certain additional elements of the transaction.  SPM had the option under the 2000 HubLine Precedent Agreement to convert its firm transportation service from the existing lateral service agreement under Rate Schedule AFT-CL in the project approved by FERC in Docket No. CP00-34-000 to firm transportation service in the HubLine Project pursuant to a service agreement under Rate Schedule AFT-1 and SPM elected to do so per the terms of that agreement.

On October 10, 2000, Algonquin filed an application with the FERC in Docket No. CP01-5-000, requesting a certificate of public convenience and necessity to construct the HubLine Project facilities and provide transportation service to several shippers, including SPM. The 2000 Precedent Agreement, 2000 HubLine Service Agreement and 2000 Letter Agreement were evidence of market support for the HubLine project.  As part of that application Algonquin proposed to include in the HubLine Project, on the in-service date of the HubLine Project, the facilities previously approved in Algonquin's Fore River Project in Docket No. CP00-34-000.

On January 31, 2001, Algonquin, SPM, and Fore River (then known as Sithe Fore River Development, LLC) entered into the Assignment and Assumption Agreement (Precedent Agreements) and the Assignment and Assumption Agreement (Letter Agreements) whereby SPM assigned to Fore River its rights and duties under the Precedent Agreements and the Letter Agreements, respectively.  Contemporaneously, Algonquin, SPM, and Fore River entered into the transportation service agreement governed by Rate Schedule AFT-CL of Algonquin's FERC Gas Tariff, Contract No. 510009 (the "**Lateral Service Agreement**"), which superseded the 1999 Lateral Service Agreement.

On December 21, 2001, FERC issued a certificate of public convenience and necessity to Algonquin authorizing it to construct the HubLine Project and provide transportation service to

the project customers, including SPM.[4]  The 2000 HubLine Letter Agreement, which established

the negotiated rate applicable to service under the HubLine Service Agreement, was filed with

the FERC on October 10, 2003 in Docket No. RP00-70-003 and approved by the FERC by letter

order dated November 7, 2003.[5]  Service to SPM under the HubLine Service Agreement

commenced on November 23, 2003.

> ### E.      The HubLine Service Agreement at Issue

Also on January 31, 2001, Algonquin, Fore River (then known as Sithe Fore River

Development, LLC), and SPM entered into the HubLine Service Agreement that is the subject of

the Rejection Motion, pursuant to which Algonquin agreed to reserve capacity and provide

transportation service for natural gas tendered by Fore River on a firm basis for a primary term

of twenty years.  Pursuant to the HubLine Service Agreement, Algonquin reserves capacity for,

and transports up to, 140,000 dekatherms ("**Dth**") of natural gas per day delivered at a single

delivery point serving the Fore River Plant.  The HubLine Service Agreement superseded both

the 2000 HubLine Service Agreement and the 1999 Lateral Service Agreement.  *See* HubLine

Service Agreement, §§ 8.1, 8.2.  A true and accurate copy of the HubLine Service Agreement is

attached as Exhibit A to the Declaration of Richard M. Paglia in Support of Motion of Algonquin

Gas Transmission, LLC for Withdrawal of Reference With Respect to Sale Motion (the "**Paglia**

**Declaration**"), filed herewith as Exhibit B to this Motion.

The applicable recourse rates for such service on Algonquin's HubLine facilities are

established under Rate Schedule AFT-1 which is part of Algonquin's FERC-approved gas tariff

(the "**Algonquin Tariff**").  Section 7 of Rate Schedule AFT-1 incorporates by reference the

---

[4] *Maritimes & Ne. Pipeline, L.L.C.*, 97 FERC ¶ 61,345 (2001), *amended*, 99 FERC ¶ 61,277 (2002); *see also Maritimes & Ne. Pipeline, L.L.C.*, 95 FERC ¶ 61,077 (2001).

[5] *Algonquin Gas Transmission Co.*, Docket No. RP00-70-003 (Nov. 7, 2003) (unpublished letter order).

General Terms and Conditions of the Algonquin Tariff. The negotiated rates for shippers on the HubLine Project, including Fore River, were approved by the FERC in a Letter Order issued on November 7, 2003, in Docket No. RP00-70-003. The negotiated rate applicable to the HubLine Service Agreement was subsequently modified and approved by the FERC in a Letter Order dated February 21, 2008 in Docket No. RP00-70-018.

Pursuant to the terms of its FERC-approved negotiated rate, Fore River pays Algonquin a fixed monthly charge of approximately $719,000 and a variable charge based on usage. In the Rejection Motion, the Debtors assert that they owed Algonquin $1,149,729 on account of outstanding pre-petition charges. *See* Rejection Motion, ¶ 7.

**F.  The Fore River Plant Receives All of Its Fuel Via Algonquin's Pipeline Facilities**

The only means for the Fore River Plant to obtain natural gas is through Algonquin's pipeline facilities. As the Debtors indicate in the Rejection Motion, when initially conceived, the Fore River Plant intended to use natural gas as its primary source of fuel and to have the option to use low sulfur diesel fuel as a backup fuel source. Rejection Motion, ¶ 11. However, the Debtors have never successfully implemented the ability to efficiently run the Fore River Plant using low sulfur diesel fuel. *Id.* As a result, the Fore River Plant has been operated solely using natural gas. *Id.*

The Fore River Plant does not have access to natural gas except via Algonquin's pipeline facilities. No other natural gas pipeline serves the Fore River Plant. If a purchaser of the Fore River Plant does not assume the HubLine Service Agreement and desires to operate the plant using natural gas, the purchaser will need to enter into alternative arrangements for transportation of natural gas on the Algonquin pipeline, presumably at a rate different than the FERC-approved rate under the NGA for service under the HubLine Service Agreement.

The Fore River Plant has a single delivery point where natural gas is delivered to the plant. Fore River has the right under its service agreement to receive gas on the Algonquin pipeline system at two primary receipt points for transport to the Fore River Plant. The first primary receipt point is the interconnection of the Algonquin pipeline with the Maritimes & Northeast Pipeline system in Beverly, Massachusetts, which can receive up to 70,000 Dth per day. The second primary receipt point is the interconnection of Algonquin's HubLine system with its Q and I-3 pipeline systems, which can likewise receive up to 70,000 Dth per day. Together, these two primary receipt points receive up to the maximum daily transportation quantity ("**MDTQ**") of 140,000 Dth per day reserved for Fore River pursuant to the HubLine Service Agreement. A diagram illustrating the receipt and delivery points is attached hereto as Exhibit B to the Paglia Declaration.

Under the HubLine Service Agreement, the Fore River Plant has primary (i.e., highest priority) access to capacity on Algonquin's pipeline for transportation of volumes of natural gas of up to 140,000 Dth per day. If the HubLine Service Agreement is rejected, there will be no transportation service agreements in place with Algonquin where a shipper will have the Fore River delivery point as a primary point of delivery on its contract. In the absence of an alternate firm transportation service agreement with Algonquin establishing the Fore River delivery point as a primary point of delivery, the Fore River Plant owner will be dependent upon gas being delivered to the Fore River Plant under service agreements having a lower service priority, and, thus, subject to curtailment before service agreements with primary firm priority, like the service currently provided under the HubLine Service Agreement. Moreover, the HubLine Service Agreement gives the shipper certain delivery pressure assurances on Algonquin's HubLine

System with respect to the natural gas that Algonquin delivers to the Fore River delivery point that will no longer be in place if the HubLine Service Agreement is rejected.

### G. Subsequent Related Agreements

On September 1, 2004, Fore River and Algonquin entered into the Operational Balancing Agreement Between Algonquin Gas Transmission, LLC and Fore River Development, LLC (the "**2004 OBA Agreement**"), establishing the terms for addressing imbalances between scheduled and actual deliveries of natural gas at the delivery point to the Fore River Plant. The 2004 OBA Agreement replaced a prior operational balancing agreement entered into on August 1, 2002, between SPM and Algonquin.

By transmittal letter dated January 30, 2008, Algonquin and Fore River agreed to a new negotiated rate applicable to service under the HubLine Service Agreement (the "**2008 HubLine Negotiated Rate Agreement**"). The 2008 HubLine Negotiated Rate Agreement, which superseded and replaced the 2000 HubLine Letter Agreement, and the Statement of Negotiated Rates attached thereto, was filed with the FERC on January 30, 2008 in Docket No. RP00-70-018 and approved by unpublished letter order dated February 21, 2008.[6]

### ARGUMENT

### I. THE REFERENCE MUST BE WITHDRAWN BECAUSE RESOLUTION OF THE SALE MOTION REQUIRES SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL ENERGY LAW

### A. Standard for Mandatory Withdrawal

Under 28 U.S.C. § 1334(b), district courts have original jurisdiction of "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." Each district court may provide, however, that such proceedings will be "referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In this district, all such proceedings are automatically referred

---

[6] *Algonquin Gas Transmission, LLC*, Docket No. RP00-70-018 (Feb. 21, 2008) (unpublished letter order).

to the Bankruptcy Court pursuant to the "Standing Order of Referral of Cases to Bankruptcy Judges," dated July 10, 1984 (Ward, Acting C.J.).

Notwithstanding the automatic reference of bankruptcy cases and proceedings, a district court must withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The mandatory withdrawal provision in section 157(d) "require[s] withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991); *see also United States Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992).

Withdrawal of the reference is required when "'substantial and material' potential conflict exists between non-bankruptcy federal laws and Title 11." *Keene Corp. v. Williams Bailey & Wesner LLP (In re Keene Corp.)*, 182 B.R. 379, 382 (S.D.N.Y. 1995) (citations omitted). Moreover, "[t]he 'substantial and material' standard is satisfied even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code." *See In re Cablevision S.A.*, 315 B.R. 818, 821 (S.D.N.Y. 2004) (citations omitted). Thus, where a proceeding pending in the bankruptcy court requires the court to engage in "something more than the mere process of examining, thinking about or taking into account" federal laws other than the Bankruptcy Code, section 157(d) mandates withdrawal of the reference. *In re Horizon Air, Inc.*, 156 B.R. 369, 373 (N.D.N.Y. 1993) (citing *Am. Freight Sys., Inc. v. Interstate Commerce Comm'n (In re Am. Freight Sys., Inc.)*, 150 B.R. 790, 792 (D. Kan. 1993)); *see also EPA v. Nat'l*

*Gypsum Co. (In re Nat'l Gypsum Co.)*, 134 B.R. 188, 192 (N.D. Tex. 1991) (holding withdrawal of the reference to be mandatory because unresolved issues addressed the intersection of CERCLA and the Bankruptcy Code).

Where a non-bankruptcy federal law conflicts with the Bankruptcy Code, as it does here, courts have consistently held that withdrawal is mandatory. *See, e.g.*, *Cal. Dep't of Water Res. v. Calpine Corp. (In re Calpine Corp.)*, 337 B.R. 27, 35 (S.D.N.Y. 2006) ("Having determined that the Bankruptcy Code does not expressly limit FERC's jurisdiction, and that it contemplates agency action during the pendency of a reorganization, it is clear the bankruptcy court's authority cannot be exercised so as to interfere with the jurisdiction of a federal agency acting in its regulatory capacity."); *Cablevision*, 315 B.R. at 821 ("The 'substantial and material' standard is satisfied even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code."); *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, No. 04-cv-8177, 2004 WL 2711101, at *4 (S.D.N.Y. Nov. 23, 2004); *Bear, Stearns Secs. Corp. v. Gredd,* No. 01-4379, 2001 WL 840187, at *3 (S.D.N.Y. July 25, 2001); *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 37 (S.D.N.Y. 1988).

As demonstrated below, withdrawal of the reference is mandated here. First, in order to resolve the Sale Motion, a court must determine, as a threshold issue, whether it can approve the sale of the Fore River Plant without assumption of the HubLine Service Agreement notwithstanding FERC's exclusive jurisdiction under the NGA over the rates, terms and conditions for the transportation of natural gas in interstate commerce. Indeed, as discussed below, the Sale Motion is a thinly veiled attempt at an end run around the filed rate doctrine because the Debtors seek to maximize the sale price of the Fore River Plant by stripping it of the FERC-approved gas transportation rate, terms, and conditions set forth in the HubLine Service

Agreement. Second, assuming a court has the authority to authorize the sale of the Fore River Plant without the HubLine Service Agreement, the court must also determine whether Debtors are authorized to sell the Fore River Plant without assumption of the HubLine Service Agreement, notwithstanding the FERC's exclusive authority under the FPA over reliability concerns, such as those that may be caused by rejection of firm transportation service under the HubLine Service Agreement, related to the disposition of FERC-jurisdictional generation facilities and associated transmission interconnection facilities. Determination of both issues requires the District Court, as opposed to the Bankruptcy Court, to interpret the interplay between the approval of a sale of assets under the Bankruptcy Code and the two separate "public interest" inquiries delegated to the FERC under the NGA and the FPA. These are precisely the types of issues Congress envisioned must be resolved by Article III courts when it enacted the mandatory withdrawal provisions of 28 U.S.C. § 157(d). Accordingly, the reference of the Sale Motion must be withdrawn.

**B.    Resolution of the Sale Motion Will Require Substantial and Material Consideration of Title 11 and Federal Energy Law**

    **1.    A Conflict Exists Between FERC's Exclusive Jurisdiction Over Natural Gas Transportation Contracts and the Bankruptcy Court's Authority to Authorize the Sale of the Fore River Plant by Allowing Rejection of the HubLine Service Agreement**

The Sale Motion raises issues that are the subject of FERC's exclusive jurisdiction under the NGA. The NGA governs the transportation of natural gas in interstate commerce and confers exclusive jurisdiction over such agreements in the FERC. *See* 15 U.S.C. § 717(b). Sellers and transporters of natural gas must file their rates and charges with the FERC. *See* 15 U.S.C. § 717c(c) and (d). Such rates are lawful only if they are "just and reasonable." *See* 15 U.S.C. § 717c(a). Algonquin is a transporter of natural gas in interstate commerce, and therefore is defined as a "natural-gas company" under the NGA. *See* 15 U.S.C. §717a(6). Accordingly,

Algonquin and the HubLine Service Agreement are subject to the NGA, 15 U.S.C. §§ 717, *et seq.*

FERC's exclusive jurisdiction is not limited to natural gas rates but extends to "classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services." *See* 15 U.S.C. § 717c(c). The NGA grants FERC the power to "perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate" to carry out the provisions of the NGA. *See* 15 U.S.C. § 717o; 18 C.F.R. § 375.101. Sections 4 and 5 of the NGA, 15 U.S.C. §§ 717c and 717d, authorize FERC's "plenary review of the contracts and rate schedules established by [natural gas] companies." *Natural Gas Pipeline Co. of Am. v. FERC*, 904 F.2d 1469, 1470 (10th Cir. 1990) (citing *Colo. Interstate Gas Co. v. FERC*, 791 F.2d 803, 806 (10th Cir. 1986), *cert. denied*, 479 U.S. 1043 (1987)).

Under the "filed rate doctrine," as defined by the United States Supreme Court, transporters and sellers of natural gas are allowed to charge only those rates, and implement and enforce only those terms and conditions, that the FERC has approved. *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981); *see also E. Tenn. Natural Gas Co. v. FERC*, 863 F.2d 932, 941 (D.C. Cir. 1988). The analysis of the filed rate doctrine is identical under the FPA and the NGA. *See, e.g.*, *Ark. La. Gas*, 453 U.S. at 577 n.7 (noting that in Filed Rate Doctrine analysis, the Court "follow[s] our established practice of citing interchangeably decisions interpreting the pertinent sections of the [Natural Gas Act and Federal Power Act]," citing *In re Permian Basin Rate Cases*, 390 U.S. 747, 820-21 (1968), because "the relevant provisions of the two statutes are in all material respects substantially identical," quoting *FPC v. Sierra Pac. Power Co.*, 350 U.S.

348, 353 (1956)); *see also E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1041 (9th Cir. 2007) (noting that filed rate doctrine analysis in FPA cases is applicable to rates under the NGA because the FPA and the NGA are substantially identical).

FERC has exclusive jurisdiction over the rates, terms and conditions for natural gas transportation services. A natural gas transportation service agreement filed with, and/or approved by, the FERC must be respected by the courts. "No court may substitute its own judgment on reasonableness for the judgment of the Commission. The authority to decide whether the rates are reasonable is vested by . . . the Act solely in the Commission." *Ark. La. Gas*, 453 U.S. at 577. "It has been widely recognized that the filed rate doctrine prohibits any collateral attack in the courts on the reasonableness of rates, and that the only forum for such a challenge is the FERC." *In re Calpine Corp.*, 337 B.R. at 32. Once FERC has approved a rate it has determined to be reasonable, a court "can assume no right to a different one on the ground that, in its opinion, it is the only, or the more reasonable one," unless it is reviewing a Commission order. *Id.* (quoting *Nantahala Power & Light Co. v. Thornberg*, 476 U.S. 953, 963-64 (1986)). The Supreme Court has similarly observed that FERC has exclusive jurisdiction over the prices charged for interstate power sales at wholesale under the FPA. *Miss. Power & Light Co. v. Moore*, 487 U.S. 354, 371 (1988). But even the Commission's power to modify the filed rate is limited. As the Supreme Court noted in the Permian Basis Area Rate Cases, the Commission may abrogate field rate agreements "only in circumstances of unequivocal public necessity." *In re Permian Basin Area Rate Cases*, 390 U.S. at 822. The unequivocal public necessity is present, and the Commission is permitted to "change a filed rate only when . . . it might impair the financial ability of the public utility to continue its service, cast upon other

consumers an excessive burden, or be unduly discriminatory." *In re Calpine Corp.*, 337 B.R. at 32 (citing *Mirant*, 378 F.3d at 518 (quoting *Sierra Pac.*, 350 U.S. at 355)).

Absent a bankruptcy filing, FERC, by virtue of the power granted it by the NGA, has the exclusive authority to approve any modification in the rates, terms or conditions of a natural gas transportation contract. *See Ark. La. Gas Co.*, 453 U.S. at 577; *see also E. Tenn. Natural Gas*, 863 F.2d at 941. Likewise, with respect to the FPA, FERC has specifically held that "even if a public utility files for bankruptcy, the utility must still meet its obligations under the FPA." *Blumenthal v. NRG Power Mktg., Inc.*, 104 FERC ¶ 61,210, at P 1 (2003). In the seminal *Mobile* and *Sierra* cases, the Supreme Court made clear that sections 205 and 206 of the FPA operate to preserve both private contractual rights and the paramount authority of FERC to ensure that rates to the public are just and reasonable. *See United Gas Pipe Line Co. v. Mobile Gas Servs. Corp.*, 350 U.S. 332, 338-39 (1956), and *Sierra Pac. Power*, 350 U.S. at 353. Thus, outside of bankruptcy, if Fore River wished to alter the rates, terms or conditions of the HubLine Service Agreement, it would have to seek permission from FERC.

Nevertheless, the Debtors are seeking to utilize Sections 363 and 365 of the Bankruptcy Code to reject the HubLine Service Agreement and sell the Fore River Plant without FERC's approval of the rejection of the HubLine Service Agreement notwithstanding FERC's exclusive jurisdiction under the NGA. A sale of the Fore River Plant without the assumption of the HubLine Service Agreement by the purchaser is equivalent to rejection of the HubLine Service Agreement. Thus, the Rejection Motion and Sale Motion work in conjunction to circumvent the filed rate doctrine in order to maximize the sale price of the Fore River Plant by stripping it of the FERC-approved gas transportation rate, terms, and conditions set forth in the HubLine

Service Agreement.[7]  As a result, the Bankruptcy Court lacks jurisdiction over the issues surrounding the transfer of the Fore River Plant as set forth in the Sale Motion.

> **2.** **Courts Considering Bankruptcy Motions with Respect to Contracts That Implicate Federal Energy Laws Have Consistently Concluded That Withdrawal of the Reference Is Mandatory**

Where a debtor seeks to alter the rates, terms, conditions, or duration of a contract that is subject to FERC's exclusive jurisdiction, courts have held that withdrawal of the reference is mandatory.  *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 516 n.2 (5th Cir. 2004); *In re Calpine Corp.*, 337 B.R. at 32; *NRG Power Mktg., Inc. v. Blumenthal (In re NRG Energy, Inc.)*, No. 03-3754, 2003 WL 21507685, at *3 (S.D.N.Y. June 30, 2003).

In *Calpine Corp.*, the District Court for the Southern District of New York held that the FERC has exclusive jurisdiction over power purchase agreements filed with, and regulated by, the FERC and that district courts lack subject matter jurisdiction to authorize rejection of such contracts.  *In re Calpine*, 337 B.R. at 29-30.  In *Calpine*, Calpine filed a motion seeking authority to reject certain energy contacts pursuant to 11 U.S.C. § 365(a) on the ground that they were the "most financially burdensome" of all of Calpine's energy contracts.  *Id.* at 31.  The district court ordered withdrawal of the reference to the bankruptcy court, finding that, pursuant to 28 U.S.C. § 157, resolution of the questions before it required substantial and material consideration of both federal law and bankruptcy law and that prior law, including the Fifth Circuit's decision in *Mirant* (discussed below) had not definitively resolved the issue.  *Id.*  After withdrawing the reference, the district court concluded that FERC had exclusive jurisdiction over the energy contracts Calpine sought to reject.  *Id.* at 30.

---

[7] While it may be the intent of the Debtors, through the Sale Motion, to maximize the sale price of the Fore River Plant, the Debtors' pleadings do not address whether rejection of the HubLine Service Agreement will lead to a diminution in service and reliability.

In reaching its holding, the district court explained that "FERC's jurisdiction and the filed rate doctrine stretches past regulation of rates, 16 U.S.C. § 824d(c), and extends to the terms and conditions of wholesale energy contracts," including the duration of a filed rate energy contract. *Id.* at 32-33. Indeed, "[b]ecause, once filed with FERC, wholesale power contracts become the 'equivalent of a federal regulation, the duty to perform under those contracts may be required, 'not from the private law of contract,' but by FERC itself." *Id.* at 33 (internal citation omitted) (citing *Cal. ex rel. Lockyer v. Dynegy*, 375 F.3d 831, 839 (9th Cir. 2004)). The court further found little evidence of congressional intent to limit FERC's regulatory authority, that "[t]here are no provisions in the FPA that specifically limit FERC jurisdiction in the bankruptcy context" and that "[c]onversely, FERC's lack of authority to modify a filed contract solely because it is in the interest of a private utility, suggests Congress thought no forum ought have such authority." *Id.* at 33. "Absent overriding language, the Bankruptcy Code should not be read to interfere with FERC jurisdiction." *Id.*

Similarly, in the bankruptcy proceedings of Mirant Corporation, the District Court for the Northern District of Texas withdrew the reference to the Bankruptcy Court on the grounds that the resolution of Mirant's motion to reject a power purchase agreement would require more than *de minimis* consideration of the FPA. *See In re Mirant Corp.*, 378 F.3d at 516, n.2. While the Fifth Circuit ultimately held that, on the facts in that case, the bankruptcy court could authorize the rejection of an energy contract so long as the debtor's reasons for rejection were not related to the rate at which the power was purchased, *see In re Mirant Corp*, 378 F.3d at 519, that holding flatly conflicts with the holding of Judge Casey of this Court in *Calpine Corp.*, 337 B.R. 27, and *NRG Power Mktg.*, 2003 WL 21507685 at *3. In *NRG*, Judge Casey held that "given the unique regulatory framework for the business of selling electric energy the pending FERC

proceeding," this Court lacked jurisdiction to authorize the rejection of the energy contract at issue in that case. *NRG Power Mktg.*, at *3. While the ability of the Debtors to sell the Fore River Plant without assuming the HubLine Service Agreement is an issue for another day, it is an issue that must be decided by this Court.

Finally, withdrawal of the reference is supported by the decision of the District Court for the Southern District of New York in *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, No. 04-cv-8177, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004), wherein Judge Casey of this Court held, under similar circumstances, that withdrawal of the reference was mandatory where the Bankruptcy Court's jurisdiction potentially conflicted with FERC's jurisdiction. 2004 WL 2711101 at *4. In *Enron*, the debtor, Enron, sought a judgment from the Bankruptcy Court declaring that certain letter-of-credit proceeds held by defendants California Power Exchange Corp. ("**CalPX**") were property of the Enron bankruptcy estate and that CalPX lacked a valid, perfected security interest in the funds. *Id.* at *1. CalPX had filed a proof of claim asserting that the letter-of-credit proceeds secured a claim against Enron. Meanwhile, FERC had ordered that CalPX retain the collateral pending completion of certain FERC proceedings. *Id.* Thus, the threshold issue in the case was whether FERC or the Bankruptcy Court had jurisdiction over the collateral at issue. This Court withdrew the reference to the Bankruptcy Court for determination of the issue, noting that "[s]uch a determination requires an examination of the interrelation between the bankruptcy and federal energy regulatory laws and the spheres of authority that enforce those laws." *Id.* at *4.

The same jurisdictional conflict found to require withdrawal of the reference in *Calpine*, *NRG Power*, *Mirant,* and *Enron* is presented here. Indeed, just as the Court in *Calpine* determined that it had no subject-matter jurisdiction to hear the Debtors' motion to reject certain

energy contracts in light of FERC's jurisdiction over those energy contracts, the Court should likewise determine that it has no jurisdiction over the Sale Motion with respect to the sale of the Fore River Plant due to FERC's exclusive jurisdiction over the proposed transfer and the terms and conditions of the HubLine Service Agreement. The Debtors seek to utilize Sections 363 and 365 of the Bankruptcy Code to reject the HubLine Service Agreement in the Bankruptcy Court and sell the Fore River Plant without FERC's approval notwithstanding FERC's jurisdiction under the NGA. As such, the Sale Motion is an attempt at an end run around the filed rate doctrine. Accordingly this Court should dismiss the portion of the Sale Motion with respect to the sale of the Fore River Plant or abate the Sale Motion until FERC has the opportunity to review the proposed sale of the Fore River Plant under the "public interest" standard and determine under what terms and conditions the transfer may proceed, if at all.

## II. WHEN THE PUBLIC INTEREST STANDARD IS APPLIED, THERE ARE CLEAR CONCERNS REGARDING RELIABILITY, EFFECTS ON CONSUMERS AND SHIPPERS, AND OTHER ISSUES

The Debtors have sought FERC approval of the proposed sale of Fore River to the Stalking Horse Bidder by filing the 203 Application. In light of the requested approval of the sale by the FERC, the Sale Motion necessarily raises issues that are the subject of FERC's exclusive jurisdiction under the FPA. Under section 215 of the FPA, the Commission has the responsibility to protect the reliability of the high voltage interstate transmission system through mandatory reliability standards. In recent orders under section 203 of the FPA, the Commission has indicated that reliability concerns may be considered in the context of section 203 proceedings. *See Armen Corp.*, 131 FERC ¶ 61,240, at P 38 (2010); *NSTAR, Advanced Energy Systems, Inc.*, 131 FERC ¶ 61,098, at P 40 (2010); and *BlackRock, Inc.*, 131 FERC ¶ 61,063, at P 50 (2010). The Debtor's Sale Motion does not address the reliability concerns that may reasonably be expected if the Fore River Plant is sold without assumption of the HubLine

Service Agreement. In its FERC Protest, Algonquin requests that the FERC examine and address these reliability concerns.[8]

Without firm transportation service pursuant to the HubLine Service Agreement or an alternate firm transportation service arrangement establishing the Fore River Plant as a primary point of delivery, the service priority for ensuring delivery of supplies of natural gas to the Fore River Plant would be lower, and in turn could create reliability concerns in the Southeast Massachusetts ("**SEMA**") load area. In the FERC Protest, Algonquin supports its argument that stripping the Hubline Service Agreement from the Fore River Plant could result in reliability concerns with the Affidavit of Paul J. Hibbard, Vice President of Analysis Group, Inc. ("**Hibbard Affidavit**"). A true and correct copy of the Hibbard Affidavit is attached to the Young Decl. In his affidavit, Hibbard concludes that:

> [R]ejection and/or non-availability of service under the HubLine Service Agreement, by reducing the ability to count on operation of the Fore River Plan under peak load or system contingency circumstances, would diminish the reliability of power supply for at least some portion of business and residential electricity consumers within Massachusetts.

Hibbard Aff., ¶ 27. Thus, Algonquin has urged FERC to consider carefully these reliability risks in the context of its FPA Section 215 responsibilities. *See* FERC Protest at 16.

These reliability concerns could lead the FERC pursuant to its exclusive authority under the FPA to further examine the adequacy of the transportation service arrangements that will be used to supply natural gas to the Fore River Plant. As such, the District Court, as opposed to the

---

[8] The potential adverse effect on electricity transmission system reliability, which will likely occur if the Debtors dispose of their FERC jurisdictional facilities without a guarantee of reliable gas transportation to each of the facilities, is a primary issue raised by the other comments to the 203 Application. *See, e.g., NSTAR Electric Company's Motion to Intervene, Comments and Request for Merger Conditions*, Docket No. EC10-85-000 (Sep. 8, 2010) (requesting that the Commission condition its approval of the 203 Application on Debtors' commitment to solve gas supply reliability issues at the Mystic generation facilities). These comments agree that reliability issues are a substantial concern in the Section 203 proceeding, and that they thus fall under the FERC's exclusive jurisdiction pursuant to the FPA.

Bankruptcy Court, must interpret the interplay between the approval of a sale of assets under the Bankruptcy Code and the "public interest" inquiry delegated to the FERC.

## CONCLUSION

For all of the reasons stated above, Algonquin respectfully requests that the District Court withdraw the reference with respect to the sale of the Fore River Plant as specified in the Sale Motion, deny the portion of the Sale Motion relating to the sale of the Fore River Plant for lack of subject matter jurisdiction or alternatively abate the Sale Motion until the FERC has the opportunity to complete its review of the proposed sale of the Fore River Plant under the "public interest" standard to determine under what terms and conditions the sale may proceed, if at all, and grant Algonquin such other and further relief to which they are entitled.

Dated: September 16, 2010  
New York, New York

Respectfully submitted,

By: /s/ Irena M. Goldstein  
Irena M. Goldstein  
**DEWEY & LEBOEUF LLP**  
1301 Avenue of the Americas  
New York, New York 10019  
Tel: (212) 259-8000  
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted *pro hac vice*)  
Paul S. Jasper (admitted *pro hac vice*)  
**DEWEY & LEBOEUF LLP**  
One Embarcadero Center, Suite 400  
San Francisco, California 94111  
Tel: (415) 951-1100  
Fax: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**