Irena M. Goldstein
**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Bennett G. Young (admitted pro hac vice)
Paul S. Jasper (admitted pro hac vice)
**DEWEY & LEBOEUF LLP**
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone: (415) 951-1100
Facsimile: (415) 951-1180

**Attorneys for Algonquin Gas Transmission, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>et al.,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**DECLARATION OF BENNETT G. YOUNG**
**IN SUPPORT OF MOTION OF ALGONQUIN GAS TRANSMISSION, LLC**
**FOR WITHDRAWAL OF REFERENCE WITH RESPECT TO MOTION OF THE**
**DEBTORS FOR ENTRY OF (I) AN ORDER APPROVING AND AUTHORIZING (A)**
**BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY**
**ALL OF THE ASSETS OF THE DEBTORS, (B) STALKING HORSE BID**
**PROTECTIONS, (C) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH**
**THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS, (D) THE**
**FORM AND MANNER OF NOTICE OF THE SALE AND HEARING AND (E)**
**RELATED RELIEF; AND (II) AN ORDER APPROVING AND AUTHORIZING (A)**
**THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS FREE**
**AND CLEAR OF CLAIMS, LIENS, LIABILITIES, RIGHTS INTERESTS AND**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

**ENCUMBRANCES, (B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) THE TRANSITION SERVICES AGREEMENT AND (E) RELATED <u>RELIEF</u>**

SF 231150.3 314147 000004

I, Bennett G. Young, under penalty of perjury, declare the following to be true to the best of my knowledge:

1.   I am a partner with the law firm of Dewey & LeBoeuf LLP.  I am counsel of record for Algonquin Gas Transmission, LLC ("**Algonquin**").  I make this declaration in support of the Motion of Algonquin Gas Transmission, LLC (the "**Motion to Withdraw Reference**") for Withdrawal of Reference with Respect to "Motion of the Debtors for Entry of (I) an Order Approving and Authorizing (A) Bidding Procedures in Connection With Substantially All of the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale of Substantially all of the Assets of the Debtors, (D) the Form and Manner of Notice of the sale and Hearing and (E) Related Relief; and (II) an Order Approving and Authorizing (A) the Sale of Substantially All of the Assets of the Debtors Free and Clear of Claims, Liens, Liabilities, Rights Interests and Encumbrances, (B) the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, (D) the Transition Services Agreement and (E) Related Relief" (the "**Sale Motion**")

2.   Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion to Withdraw Reference.

3.   On September 8, 2010, Algonquin filed with the FERC its Motion to Intervene and Protest of Algonquin Gas Transmission, LLC (the "**FERC Protest**") with respect to the 203 Application.  A true and accurate copy of the FERC Protest is attached hereto as Exhibit A.

Dated: September *16*, 2010

_____

Bennett G. Young

## EXHIBIT A

**(Motion to Intervene and Protest of Algonquin Gas Transmission, LLC)**

| | | |
|---|---|---|
| **Fore River Development, LLC** | ) | |
| **Mystic I, LLC** | ) | |
| **Mystic Development, LLC** | ) | **Docket No. EC10-085-000** |
| **Boston Generating, LLC** | ) | |
| **Constellation Mystic Power, LLC** | ) | |

## MOTION TO INTERVENE AND PROTEST
## OF ALGONQUIN GAS TRANSMISSION, LLC

Pursuant to Rules 211, 212 and 214 of the Rules and Regulations of the Federal Energy

Regulatory Commission ("FERC" or "Commission"), 18 C.F.R. §§ 385.211, 385.212, and

385.214 (2010), Algonquin Gas Transmission, LLC ("Algonquin") hereby respectfully moves to

intervene and protest in the captioned proceeding. Specifically, Algonquin is protesting the

application of Fore River Development, LLC ("Fore River"), Mystic I, LLC ("Mystic I"), Mystic

Development, LLC ("Mystic Development"), and Boston Generating, LLC ("Boston

Generating," and together with Fore River, Mystic I, and Mystic Development, the "Boston

Companies"), and Constellation Mystic Power, LLC ("Buyer" or "Constellation," and together

with the Boston Generating Companies, "Applicants") seeking authorization for a transaction

(the "Proposed Transaction") pursuant to which the Boston Companies will sell five generating

facilities, including the associated electric interconnection facilities, and certain other assets, to

Constellation.

# I. COMMUNICATIONS AND CORRESPONDENCE

All communications and correspondence in this proceeding should be directed to:

*Catherine P. McCarthy
Dewey & LeBoeuf LLP
1101 New York Avenue NW
Washington, DC  20005-4213
(202) 346-8753 Telephone
(202) 346-8102 Facsimile
cmccarthy@dl.com

*Steven E. Hellman
Associate General Counsel
Spectra Energy Corp
5400 Westheimer Court
Suite 9B-61
Houston, TX 77056
(713) 627-5215
SEHellman@spectraenergy.com

*Charles A. Moore
*Scott A. Looper
Dewey & LeBoeuf LLP
RRI Energy Plaza
1000 Main Street, Suite 2550
Houston, TX  77002
(713) 287-2000  Telephone
(713) 287-2100  Facsimile
cmoore@dl.com
slooper@dl.com

*Designated to receive service in this proceeding pursuant to 18 C.F.R. § 385.2010.

# II. MOTION TO INTERVENE

Algonquin is a limited liability company organized and existing under the laws of the State of Delaware and has its principal place of business at 5400 Westheimer Court,  Houston, Texas 77056-5310.  Algonquin also has permanent offices in Massachusetts, at 890 Winter Street, Suite 300, Waltham, Massachusetts 02451, and has been operating in New England since 1953.  Algonquin is an indirect, wholly-owned subsidiary of Spectra Energy Corp ("Spectra"), a Delaware corporation.

Algonquin is a "natural gas company" as defined in the Natural Gas Act ("NGA"), engaged in the transportation of natural gas in interstate commerce subject to the Commission's NGA jurisdiction.  Algonquin owns and operates a natural gas pipeline system extending from points near Lambertville and Hanover, New Jersey, through the states of New Jersey, New York,

Connecticut, Rhode Island and Massachusetts, to points near the Boston area. Algonquin delivers natural gas pursuant to Parts 284 and 157 of the Commission's regulations at numerous points along its system, including major metropolitan areas such as Boston, Providence and Hartford. Algonquin is authorized to do business in the states of Connecticut, Massachusetts, New Jersey, New York, Rhode Island and Texas.

Algonquin delivers gas to the Boston Companies' 787 megawatt ("MW")[1] combined-cycle natural gas-fired electric power plant which is interconnected to Algonquin's pipeline near Weymouth, Massachusetts (the "Fore River Plant"), for which Applicants seek approval of the Proposed Transaction. Algonquin transports natural gas to the Fore River Plant pursuant to a firm transportation service agreement with Fore River under Algonquin's Rate Schedule AFT-1 (the "Service Agreement"). The Service Agreement, which has a primary term through November 2023, permits Fore River to take delivery of up to 140,000 dekatherms per day ("Dth/d") of natural gas from Algonquin at the delivery point to the Fore River Plant. The Service Agreement also includes certain delivery pressure assurances for the gas that is delivered at the delivery point to the Fore River Plant. Algonquin's pipeline is the only natural gas pipeline serving the Fore River Plant and the Fore River Plant has been solely operated using natural gas.

On August 18, 2010, the Boston Companies filed voluntary bankruptcy petitions under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the

---

[1] In their Application, Applicants use several different calculations of the Fore River Plant's generation capacity. The winter capacity of the plant is 836.6 MW, and the summer capacity is 688.3 MW. In the Asset Purchase Agreement between Constellation and the Boston Companies, the Applicants apply seasonal weighted capacity (2/3 winter capacity + 1/3 summer capacity) of 787 MW. For purposes of this Protest, Algonquin applies the Fore River Plant's seasonal weighted capacity of 787 MW because it represents the intent of the Applicants in their private bargain for the Proposed Transaction.

Southern District of New York, Case No. 10-14419 (SCC). The Boston Companies have filed in their bankruptcy cases a motion under Bankruptcy Code § 365(a) to reject the Service Agreement, and thereby strip it off the Fore River Plant, and a motion under Bankruptcy Code § 363 for approval of the Proposed Transaction, including the sale of the Fore River Plant without the Service Agreement, to Constellation. As described below, Algonquin has already filed one and will shortly file a second Motion to Withdraw the Reference with the United States District Court for the Southern District Court of New York as to these Boston Companies' filings.

In their Joint Application for Authorization of Disposition of Jurisdictional Facilities, Request for Waivers of Certain Filing Requirements, and Request for Shortened Comment Period and Expedited Consideration (the "Application") filed with the Commission in Docket No. EC10-085-000 on August 18, 2010, Applicants do not give notice of nor do they seek approval of any change or alteration, nor do they propose to assign or transfer the Service Agreement in connection with the transfer of the Fore River Plant and other assets associated therewith between the Boston Companies and Constellation. Under the Proposed Transaction and the proposed bankruptcy court rejection of the Service Agreement, it may later be argued by Applicants that Fore River's rights and performance obligations and the service obligations of Algonquin under the Service Agreement will have ended, terminated and/or ceased once the Proposed Transaction is finally consummated. Therefore, Algonquin has a direct interest in the outcome of this proceeding arising out of its rights, obligations, and interests in the Service Agreement. Algonquin's interest cannot be adequately represented by any other party to this proceeding. Accordingly, Algonquin's participation in this proceeding is in the public interest.

### III. PROTEST

The Service Agreement is a filed rate that has been approved by the Commission pursuant to the Natural Gas Act (the "NGA"). If the Commission were to approve the Application in a manner that severed, concluded, or terminated the parties' mutual obligations under the Service Agreement, the Commission would, without public notice and due process under the Natural Gas Act, use Congress's exclusive delegation of authority under the Federal Power Act to preempt an equal but separate exclusive delegation of authority under the Natural Gas Act in violation of the filed rate doctrine and the public interest. Accordingly, Algonquin protests the Application to the extent that it seeks, or the Commission decides, to alter or change the Service Agreement as an approved filed rate, and requests that any such action be reserved, and without prejudice to Algonquin's rights thereunder, as determined after adequate notice and due process in a proceeding before the Commission under the Natural Gas Act.

Furthermore, and as a separate basis for protest from the matter stated above, Algonquin will show that if the Service Agreement is rejected as proposed to the bankruptcy court and does not continue with the successor owner, the Fore River Plant will no longer have firm transportation service providing for primary firm delivery rights at its delivery point on Algonquin's facilities and, as a result, will be more likely to experience service restrictions or interruptions particularly during periods of peak utilization. Any interruption of natural gas service could degrade and have a material adverse effect on the reliability of the power transmission grid into which the Fore River Plant is connected. The Commission should closely examine the likely effects of the Proposed Transaction on electric reliability in determining whether to approve and/or condition authorization of the Proposed Transaction.

Accordingly, Algonquin requests that the Commission consider the issues presented in this protest, all in a manner such that any approval or authorization of the Proposed Transaction be done in accordance with due process and conditioned so as to be consistent with the public interest. Algonquin also requests that the Commission consider the concerns presented in the Affidavits of Paul Hibbard and Richard Paglia, which are referenced herein and filed along with this protest. *See* Affidavit of Paul J. Hibbard on Behalf of Algonquin Gas Transmission, LLC in Support of Motion to Intervene and Protest Application for Authorization of Disposition of Jurisdictional Facilities, Docket No. EC10-085-000 (Sep. 8, 2010) ["Hibbard Affidavit"]; Affidavit of Richard M. Paglia in Support of Motion of Algonquin Gas Transmission, LLC to Intervene and Protest Application for Authorization of Disposition of Jurisdictional Facilities, Docket No. EC10-085-000 (Sep. 8, 2010) ["Paglia Affidavit"].

### A. The Natural Gas Act Filed-Rate Doctrine and the District Court's Review of the Bankruptcy Court's Concurrent Jurisdiction therewith Limits the Commission's Authority to Approve the Application

The filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana v. Hall*, 453 U.S. 571, 577 (1981); *see also California Department of Water Resources v. Calpine Corp. (In re Calpine Corp.)*, 337 B.R. 27, 35 (S.D.N.Y. 2006); *In re Enron Corp.*, 328 B.R. 75, 85 (Bankr. S.D.N.Y. 2005); *NRG Power Mktg., Inc. v. Blumenthal (In re NRG Energy, Inc.)*, No. 03-3754, 2003 WL 21507685, at *3 (S.D.N.Y. June 30, 2003). The filed rate doctrine assists the Commission in achieving the purpose of the Natural Gas Act ("NGA") by guaranteeing "the stability of supply arrangements which all agree is essential to the health of the natural gas industry" and ensuring that filed rate "contracts remain fully subject to the paramount power of the Commission to modify them when necessary in the public interest." *United Gas*

*Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332, 344 (1956).  Accordingly, it prohibits collateral attacks in the courts on the reasonableness of filed rates; challenges to filed rates may only be heard before the Commission because only the Commission has authority to modify the filed rate.  *Miss. Power & Light Co. v. Moore*, 487 U.S. 354, 371 (1988); *Wegoland Ltd. V. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994); *Calpine*, 337 B.R. at 33; *Enron*, 327 B.R. at 537; *NRG*, 2003 WL 21507685, at *3.  But even the Commission's power to modify the filed rate is limited: as the Supreme Court noted in the *Permian Basin Area Rate Cases*, the Commission may abrogate filed rate agreements "only in circumstances of unequivocal public necessity."  *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968).  This unequivocal public necessity is present, and the Commission is permitted to "change a filed rate only when . . . it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory.'"  *Calpine*, 337 B.R. at 32 (citing *Mirant*, 378 F.3d at 518 (quoting *Sierra Pacific*, 350 U.S. at 355)).

As referenced above, the Boston Companies have moved in United States Bankruptcy Court to reject the Service Agreement pursuant to 11 U.S.C. § 365(a) and to approve the Proposed Transaction.  In response, Algonquin has moved (the "Withdrawal Motion") in the United States District Court pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the Bankruptcy Court of the Boston Companies' rejection motion with respect to the Service Agreement because resolution of the rejection motion necessarily requires, as a threshold matter, consideration of the interrelationship between the Bankruptcy Code and the Natural Gas Act.[2] *See California Department of Water Resources v. Calpine Corp. (In re Calpine Corp.)*, 337 B.R. 27 (S.D.N.Y. 2006).  In the Withdrawal Motion, Algonquin requests the District Court to make

---

[2] Algonquin has expressly reserved its rights, and intends to move to withdraw the reference to the District Court with respect to the Proposed Transaction Sale Motion submitted to the Bankruptcy Court for approval.

two determinations.  First, whether the Bankruptcy Court Debtors are authorized to reject an executory energy contract notwithstanding the exclusive authority over the rates, terms and conditions of natural gas transportation service agreements in the Commission or whether the Commission and the Bankruptcy Court each have concurrent jurisdiction under their governing statutes.  Second, Algonquin requests the District Court to determine the appropriate standard for authorizing the rejection of natural gas transportation service agreements – *i.e.*, whether the public interest standard underlying the Natural Gas Act, as opposed to the traditional "business judgment" standard utilized for rejection of executory contracts, must be applied.  The District Court has issued a scheduling order with respect to the Withdrawal Motion under which briefing will be completed on September 24.

It is indisputable that the Service Agreement is a contract for the transportation of natural gas in interstate commerce under a filed rate approved by the Commission.  Accordingly, the Service Agreement is subject to all of the requirements of sections 4 and 5 of the NGA and any change or modification to the contract, including a change in rates, terms or conditions or the cessation of performance thereunder, must be approved by the Commission pursuant to its authority and exclusive jurisdiction under the NGA.

In this Section 203 proceeding, the Commission is acting pursuant to its authority and exclusive jurisdiction under the FPA.  The Applicants have asked the Commission to "facilitate the administration of the bankruptcy proceedings" by approving the disposition of facilities by a transaction that is subject to a Bankruptcy Court order, which order cannot have been stayed, reversed, modified, or amended on the transaction's closing date.  Application, at 3; *see* Asset Purchase Agreement § 7.1(e) (conditions to obligations of Constellation).  However, as

Algonquin will urge before the District Court, the Bankruptcy Court should be prohibited from entering an order regarding the proposed rejection of the Service Agreement until the District Court determines the jurisdictional and related issues.  If the Commission approves the Application in this docket before the District Court decides on the issues before it, the Commission should require that the purchaser assume the Service Agreement, or otherwise make clear that the ultimate disposition of issues regarding the Service Agreement are not within the scope of the Commission's review in this proceeding.  If the Commission does not so require or clarify, its decision could be construed as having determined that the public interest is served by a transaction where the parties do not intend to keep in place the Service Agreement.

Algonquin is not asking the Commission in this FPA proceeding to rule on the reasonableness of, or the continuing validity of, the filed rate Service Agreement.  Indeed, as the matters in this proceeding have been given public notice, the Commission may not determine to change, alter or amend the filed rate Service Agreement.  Instead, Algonquin simply asks the Commission to consider whether it should approve a Section 203 application for disposition of a natural-gas fired generation plant when the Applicants (a) fail to request the assumption of or otherwise give notice of a change or alteration of a currently effective FERC-regulated filed-rate natural gas transportation service agreement, and/or (b) ask the Commission to approve the disposition of facilities by a transaction that should not be consummated until the United States District Court renders a decision regarding the jurisdictional and related issues associated with the Service Agreement.  Algonquin submits that the Commission should defer a final decision on Applicants' Section 203 Application until the District Court makes its rulings on the issues before the District Court.  In the event the Commission does not defer its decision, Algonquin requests that the Commission condition any Section 203 authorization such that the NGA filed

rate obligations under the Service Agreement are assumed by the transferee in any Proposed

Transaction, or, alternatively, confirm that the issues regarding the disposition of the Service

Agreement are not before the Commission in this proceeding and Algonquin is free to proceed

later with whatever action may be appropriate whether before the Commission or in another

appropriate forum.

> **B.**    **If the Commission Concludes it Must Go Forward Now, the Commission
> Should Consider Reliability Issues Here and Condition any Approval of the
> Proposed Transaction on Fore River's or the Buyer's Continued
> Performance Under the Service Agreement**

Under Section 215 of the Federal Power Act, the Commission has the responsibility to

protect the reliability of the high voltage interstate transmission system through mandatory

reliability standards.  In recent orders issued under Section 203 of the Federal Power Act, the

Commission has indicated that reliability concerns may be considered in the context of Section

203 proceedings.  *See Ameren Corporation et al.*, 131 FERC ¶ 61,240 (2010); *NSTAR, Advanced

Energy Systems, Inc. et al.*, 131 FERC ¶ 61,098 (2010); *and BlackRock, Inc. et al.*, 131 FERC ¶

61,063 (2010).  These orders addressed the obligation to comply with reliability standards more

generally.  Here, the Commission is faced with specific reliability concerns.

The Application does not consider reliability concerns that may reasonably be expected

to arise if the Fore River Plant owners successfully reject the Service Agreement.  The Fore

River Plant interconnects to the Southeast Massachusetts ("SEMA") load area, which is adjacent

to the Northeast Massachusetts/Boston ("NEMA/Boston") load area.  Hibbard Affidavit, at P 14.

The SEMA and NEMA/Boston load areas serve the largest share of residential and business

customers in New England; these consumers used 40 million MWh of energy in 2009 (34

percent of total annual consumption in New England) in Eastern Massachusetts, and required a

peak electrical load of 8,374 MW in 2009. Hibbard Affidavit, at P 14. The ISO New England Inc. ("ISO-NE") plans for and operates the power system in Eastern Massachusetts and the rest of New England. Hibbard Affidavit, at P 14. The ISO-NE ensures that customer demand for electricity within each load zone and for New England as a whole is met by all generators that serve the region, and that sufficient balancing and reactive service and voltage control ("RS/VC") ancillary services are contributed to the system to prevent local outages and rolling blackouts on the transmission system. Hibbard Affidavit, at P 15.

Historically, the ISO-NE has relied on the Fore River Plant's obligations to serve generation load to and provide RS/VC service within Eastern Massachusetts and the rest of New England. Hibbard Affidavit, at P 14-15. As an existing generating resource, the Fore River Plant provides up to 688 MW (summer rating) and up to 836 MW (winter rating) to Eastern Massachusetts and the rest of New England at levels up to approximately 16,368 MWh of electricity generation per day. Hibbard Affidavit, at P 6. Additionally, the ISO-NE calls on the Fore River Plant to provide RS/VC service, with ratings of 483 MVAR (lagging) and 342 MVAR (leading), pursuant to the RS/VC provisions of the ISO-NE Open Access Transmission Tariff. Hibbard Affidavit, at P 23. RS/VC helps ensure transmission grid stability and reliability. Hibbard Affidavit, at P 23.

Mr. Hibbard evaluated the Fore River Plant's ability to meet load obligations, including fulfilling RS/VC obligations to maintain system reliability during system peak or during sudden changes referred to as "contingencies." Hibbard Affidavit at PP 20-25. As Mr. Hibbard explains in his attached Affidavit, without a guarantee that a stable fuel supply will be delivered to its generation facilities, the Fore River Plant cannot be relied on with the same degree of certainty

by the ISO-NE to be available to meet power system needs. Hibbard Affidavit, at PP 15, 19-25. Mr. Hibbard concludes that, without the Fore River Plant's contributions to the system, the current level of power system reliability will be degraded for consumers in the local area of the Fore River Plant and, over the term of the Service Agreement, for consumers across the SEMA region and, potentially, throughout Eastern Massachusetts and the rest of New England. Hibbard Affidavit, at PP 20-25.

The Fore River Plant's primary variable costs to ensure a stable fuel supply for its generating capacity are for natural gas, which is the only fuel source that it uses to generate electricity, and firm transportation service on Algonquin, which is the only pipeline available to transport gas to its facilities. Paglia Affidavit, at P 7. While the Fore River Plant accepts delivery of natural gas pursuant to the Service Agreement, the cost to transport natural gas on Algonquin's system is at a negotiated rate that is less than the applicable maximum recourse rate for firm transportation service on Algonquin. Paglia Affidavit, a P 6. If the Applicants are able to successfully reject the Service Agreement, however, the Fore River Plant will lose the benefit of this negotiated rate. Paglia Affidavit, at P 7.

Algonquin's capacity map currently shows available capacity from Beverly to various points on its system. However, all of that capacity has been committed to other shippers under Algonquin's East-to-West expansion project, which was certificated by the Commission in Docket No. CP08-420 and is currently under construction with a target in-service date of November 1, 2010. Paglia Affidavit, at P 11. Once Algonquin commences service to its East-to-West expansion customers, this unsubscribed capacity will no longer be available for others to subscribe on a firm basis. Paglia Affidavit, at P 11.

Applicants apparently believe that the Fore River Plant operation will be able to save money and have Algonquin transport the same volumes of natural gas that are needed to generate electricity by utilizing interruptible or secondary point firm transportation service.  If the Fore River Plant owner proceeds without retaining the Service Agreement, it will be dependent on these lower priority services which could jeopardize reliability during times of peak utilization on Algonquin and peak demand for electricity in the Boston and surrounding areas.   Paglia Affidavit, at PP 9, 11; Hibbard Affidavit, at PP 15, 20.

In this regard, the availability of interruptible or secondary firm service could be more limited than it is today once the Algonquin East-to-West Expansion goes into service and if its shippers, who have fully subscribed to the remaining HubLine capacity, begin using their firm transportation agreements to serve requirements other than the Fore River Plant.  No other shipper has primary firm transportation delivery rights at the Fore River delivery point.  Paglia Affidavit, at PP 9, 11.  Additionally, the Fore River Plant has no other means to receive natural gas for plant operations.  Paglia Affidavit, at P 7.  Consequently, the ability for the Fore River Plant to be counted on for reliability purposes, especially in times of peak demand, will be diminished.  Paglia Affidavit, at PP 9, 11; Hibbard Affidavit, at PP 15, 20.

Additionally, assuming Fore River is successful in rejecting the Service Agreement, when the Fore River Plant owners secure interruptible or secondary firm service, Algonquin will not be obligated to maintain a delivery pressure of between 400 psig and 750 psig at the Fore River Plant.  Paglia Affidavit, at P 10.  Delivery point pressure is a critical component for efficient plant operation and deliveries at the Fore River delivery point.  Paglia Affidavit, at P 10.  Without this element of the service obligation, pressure at the Fore River delivery point will be

subject to fluctuation based on prevailing pipeline operating conditions.  Paglia Affidavit, at P 10.  Accordingly, the efficiency with which Fore River is able to take delivery of gas at the Fore River Plant may be diminished.

If natural gas transportation service restrictions or interruptions do prevent Fore River from meeting its obligations, the Fore River Plant will also be unable to provide RS/VC services to the local transmission system.  Hibbard Affidavit, at PP 21, 22.  The ISO-NE has recognized the need for RS/VC services throughout its transmission system.  *See ISO New England Inc. and New England Power Pool Participants Committee*, 123 FERC ¶ 61,300 at P 5 (2008) ("ISO-NE needs steady state and post-contingency voltage control during low voltage conditions to protect the entire bulk-power system from a cascading voltage collapse, and the ISO-NE needs steady state voltage control during high voltage conditions primarily to protect equipment at the specific location or locations that might otherwise experience high voltage levels sufficient to cause equipment damage.").  The siting and provision of RS/VC services is a localized reliability requirement because "[o]ver- or under-supply of reactive power at other points in the network do not contribute to a stable system and could harm the reliability of the system."  Order No. 888-A, 78 FERC ¶ 61,220 at *159 (1997).  The loss of a single generator or a major transmission line could raise reliability concerns.  Hibbard Affidavit, at PP 21-22.  A gas-fired generator such as the Fore River Plant cannot predict how much of its RS/VC services are required at any point in time; it only knows that it has a requirement to provide them.  *See Mandatory Reliability Standards for the Bulk-Power System*, Order No. 693, FERC Stats. & Regs. ¶ 31,242 at P 253 (2007) (requiring mandatory compliance with the RS/VC schedules by all generators that provide RS/VC services).

The Fore River Plant has historically provided energy, capacity, RS/VC, and other ancillary services to its localized transmission system. Hibbard Affidavit, at PP 14, 20-21. In its initial review of the need for the Fore River Plant in New England, the ISO-NE determined that the plant was needed to support transmission system voltages and reduce thermal loadings in SEMA. Hibbard Affidavit, at P 23. Although the ISO-NE concluded that the Fore River Plant's contributions were insufficient to justify granting the plant Reliability-Must-Run status, the ISO-NE stated that, without the Fore River Plant, load shedding, or "rolling blackouts," along with generation redispatch, would need to be activated in the SEMA system in case of contingencies. Hibbard Affidavit, at P 25.

By successfully rejecting the Service Agreement, however, Fore River will put at risk its ability to have assurances that gas will be delivered at peak times when gas will be most needed; or, when Fore River is able to secure interruptible and/or secondary service, Fore River will find itself subject to a lower priority that may restrict or interrupt its transportation service if firm shippers use their capacity to meet other primary firm service requirements . On each and every occasion that Fore River is unable to obtain delivery of the volume of natural gas it needs to meet its obligations, it may not be available to provide energy, capacity, RS/VC, and/or other ancillary services to the SEMA system; reliability issues will then arise if a contingency simultaneously occurs. Hibbard Affidavit, at PP 27, 34-35. Mr. Hibbard concludes that to prevent transmission system failure in such circumstances, the ISO-NE could need to implement rolling blackouts in SEMA that could temporarily diminish or eliminate power supply to residential and business electricity consumers within Massachusetts. Hibbard Affidavit, at PP 26-27.

The Commission should carefully consider these reliability risks in the context of its Federal Power Act Section 215 responsibilities. As stated in his Affidavit, it is Mr. Hibbard's professional opinion that the non-availability of primary point firm service under the Service Agreement will reduce "the ability to count on operation of the Fore River Plant under peak load or system contingency circumstances", and would thereby "diminish the reliability of power supply for at least some portion of business and residential electricity consumers within Massachusetts." As stated at the very beginning of this argument, the reliability standards approved by the Commission under Federal Power Act Section 215 are mandatory, and reliability concerns may properly be considered in the context of Section 203 proceedings. *See Ameren Corporation et al.*, 131 FERC ¶ 61,240 (2010); *NSTAR, Advanced Energy Systems, Inc. et al.*, 131 FERC ¶ 61,098 (2010); *and BlackRock, Inc. et al.*, 131 FERC ¶ 61,063 (2010).

Algonquin is mindful of one prior Commission Section 203 order where the Commission, although taking power system reliability into account, rejected "Portland Gas Transmission's reliability concerns related to the Applicants' decision not to transfer the firm gas transportation contract along with the Rumford plant as speculative." *James A. Goodman, As Receiver For Certain Assets of PMCC Calpine,* 115 FERC ¶ 61346 (2006) ("*Goodman*"). However, *Goodman* is properly distinguished from the circumstances present here. Prominent among those distinctions was that in *Goodman,* the Rumford plant had not been operating for several months (with no stated plans to recommence operations). In this case, the Fore River Plant has been for many years, and continues to be, in continuous operation in ISO-NE. Moreover, in contrast to and compared with Algonquin's HubLine system being fully subscribed on the effective date of its East-to-West expansion, Portland's facilities were not fully subscribed in the facts presented in *Goodman*. Moreover, as compared to the reliability analysis offered by Mr.

Hibbard, and as supported by the Affidavit and exhibits of Mr. Paglia, Portland offered no affidavit or other evidentiary support for its reliability allegations. *Goodman* is therefore factually distinguishable from the circumstances here.

Accordingly, if the Commission here concludes that it cannot or should not defer its Section 203 determinations on these reliability issues until the United States District Court acts on the jurisdictional and related issues before it, and the Commission further determines that it should not delay its decision to authorize disposition of the assets in the Proposed Transaction, then, subject to the appropriate notice and due process as required under the NGA, the Commission should condition any authorization of the Proposed Transaction on the transfer and assumption of the Service Agreement along with the interconnection and generation facilities. Such a condition would serve the public interest to mitigate the potential reliability effects the transaction would otherwise impose. *See Okla. Gas & Elec. Co. ("OG&E") and Redbud Energy LP*, 124 FERC ¶ 61,239 at P 50 (2008) (conditioning approval of a Section 203 disposition application on the applicant's commitment to make investments that mitigate potential reliability issues). Alternatively, Algonquin requests that the Commission confirm that the issues regarding the disposition of the Service Agreement are not before the Commission in this proceeding and that Algonquin is free to proceed later with whatever action may be appropriate whether before the Commission or in another appropriate forum.

## IV. CONCLUSION

For the reasons stated above, Algonquin requests that the Commission grant Algonquin's motion to intervene in this proceeding with full rights of a party to the proceeding, and considering the matters raised in Algonquin's protests as stated above, summarily grant the relief

therein requested.  If the Commission determines that it cannot summarily grant any of

Algonquin's above-mentioned requests, but nonetheless finds that there are genuine issues of

material fact in dispute, Algonquin asks that the Commission set this matter for hearing for

development of a full record from which to determine the impacts of the as-filed Proposed

Transaction on any filed rates and the reliability of electricity transmission in New England and,

therefore, on the public interest.

Respectfully submitted,

*/s/ Charles A. Moore*_____
Charles A. Moore
Scott A. Looper
Dewey & LeBoeuf LLP
RRI Energy Building
1000 Main Street, Suite 2550
Houston, TX 77002
(713) 287-2000 Telephone

Catherine P. McCarthy
Dewey & LeBoeuf LLP
1101 New York Avenue NW
Washington, DC  20005-4213
(202) 346-8753 Telephone

Steven E. Hellman
Associate General Counsel
Spectra Energy Corp
5400 Westheimer Court
Suite 9B-61
Houston, TX 77056

Attorneys for Algonquin Gas Transmission, LLC

**AFFIDAVIT OF RICHARD M. PAGLIA**
**IN SUPPORT OF MOTION OF ALGONQUIN GAS TRANSMISSION, LLC**
**TO INTERVENE AND PROTEST APPLICATION FOR AUTHORIZATION OF**
**DISPOSITION OF JURISDICTIONAL FACILITIES**

I, Richard M. Paglia, under penalty of perjury, declare the following to be true to the best of my knowledge:

1.      I am employed by Algonquin Gas Transmission, LLC ("**Algonquin**") as its Vice President of Marketing.  I make this declaration in support of the Motion of Algonquin Gas Transmission, LLC (the "**Motion to Intervene**") to Intervene and Protest the Joint Application for Authorization of Disposition of Jurisdictional Facilities of Fore River Development, LLC, et al. in Docket No. EC10-85-000 (the "**Fore River Application**").

2.      Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion to Intervene.

3.      I make this declaration based on my personal knowledge and a review of agreements, business records, and other documents maintained by Algonquin in the ordinary course of its business.

4.      I have been employed by Algonquin since September 29, 2009, and as such I am familiar with Algonquin's pipeline facilities and its provision of natural gas transportation service to the Fore River power generation plant ("**Fore River Facility**") and other delivery points on and along the Algonquin HubLine facilities.  I am also familiar with the various contracts entered into by and among Algonquin and Fore River Development, LLC ("**Fore River**") with respect to such service, as well as the various rate schedules and services provided thereunder by Algonquin to other shippers on and along those HubLine facilities.

5.      On January 31, 2001, Algonquin, Fore River (then known as Sithe Fore River Development, LLC), and Sithe Power Marketing, L.P. ("**SPM**") entered into the Service Agreement (Applicable to Rate Schedule AFT-1) (the "**HubLine Service Agreement**"),

Contract No. 510008.  Under the HubLine Service Agreement, Algonquin agreed to reserve capacity and provide transportation service for natural gas tendered by Fore River on a firm basis for a primary term of twenty years.  Pursuant to the HubLine Service Agreement, Algonquin reserves capacity for, and transports up to, 140,000 dekatherms ("**Dth**") of natural gas per day delivered to a single delivery point serving the Fore River Facility.  Firm transportation service to the Fore River Facility under the HubLine Service Agreement receives the highest priority of service on the Algonquin system.  A true and accurate copy of the HubLine Service Agreement is attached hereto as Exhibit A, along with a schedule showing the last three years of daily deliveries at the Fore River Facility delivery point attached as Exhibit A-1.

6.       The applicable recourse rates for such service on Algonquin's HubLine facilities are established under Rate Schedule AFT-1 which is part of Algonquin's FERC-approved gas tariff (the "**Algonquin Tariff**").  Section 7 of Rate Schedule AFT-1 incorporates by reference the General Terms and Conditions of the Algonquin Tariff.  The negotiated rates for shippers on the HubLine facilities, including Fore River, were approved by the FERC in a Letter Order issued on November 7, 2003, in Docket No. RP00-70-003.  The negotiated rate applicable to the HubLine Service Agreement was subsequently modified and approved by the FERC in an unpublished letter order dated February 21, 2008 in Docket No. RP00-70-018.  Pursuant to the HubLine Service Agreement, Fore River pays Algonquin a fixed monthly charge of approximately $719,000 and a variable charge based on usage.

7.       The Fore River Facility does not have access to natural gas except via Algonquin's pipeline facilities.  No other natural gas pipeline serves the Fore River Facility.  If a purchaser of the Fore River Facility does not assume the HubLine Service Agreement and desires to operate the plant using natural gas, the purchaser will need to enter into alternative arrangements for transportation of natural gas on the Algonquin pipeline, presumably at a rate different than the FERC-approved rate for service under the HubLine Service Agreement.

8.      The Fore River Facility has a single delivery point where natural gas is delivered to the plant.  Fore River has the right under its HubLine Service Agreement to receive gas on the Algonquin pipeline system at two primary receipt points for transport to the Fore River Facility.  The first primary receipt point is the interconnection of the Algonquin pipeline with the Maritimes & Northeast Pipeline system in Beverly, Massachusetts, which can receive up to 70,000 Dth per day.  The second primary receipt point is the interconnection of Algonquin's HubLine system with its Q and I-3 pipeline systems, which can likewise receive up to 70,000 Dth per day.  Together, these two primary receipt points receive up to the maximum daily transportation quantity ("**MDTQ**") of 140,000 Dth reserved for Fore River pursuant to the HubLine Service Agreement.  A diagram illustrating the receipt and delivery points is attached hereto as Exhibit B.

9.      Under the HubLine Service Agreement, the Fore River Facility has primary (i.e., highest priority) access to capacity on Algonquin's pipeline for transportation of volumes of natural gas of up to 140,000 Dth per day.  If the HubLine Service Agreement is rejected, there will be no transportation service agreements in place with Algonquin where a shipper will have the Fore River delivery point as a primary point of delivery on its contract.  In the absence of an alternate firm transportation service agreement with Algonquin establishing the Fore River delivery point as a primary point of delivery, the Fore River Facility owner will be dependent upon gas being delivered to the Fore River Facility under service agreements having a lower service priority, and, thus, subject to curtailment before service agreements with primary firm priority, like the service currently provided under the HubLine Service Agreement.

10.      Moreover, the HubLine Service Agreement gives Fore River certain delivery pressure assurances on Algonquin's HubLine system with respect to the natural gas that Algonquin delivers to the Fore River delivery point.  These delivery pressure assurances will no longer be obligatory if the HubLine Service Agreement does not remain in effect.  Algonquin's delivery point pressure obligation under the HubLine Service Agreement requires that natural gas be delivered at a pressure of not less than 400 psig, and not greater than 750 psig in order to

accommodate the operating requirements of the Fore River Facility. The pressure of natural gas supplies delivered at the Fore River delivery point is a critical component for efficient plant operations. Without this element of the service obligation, pressure at the Fore River delivery point will be subject to fluctuation based on prevailing pipeline operating conditions.

11.     No other shipper on Algonquin has in place a firm transportation service contract with the Fore River delivery point designated as a primary delivery point. Since its institution of the bankruptcy proceedings on August 18, 2010, Fore River has not utilized the HubLine Service Agreement, instead relying exclusively on transportation of gas to the Fore River Facility under alternative arrangements. Unlike Fore River's historic utilization of capacity under the HubLine Service Agreement, these lower priority services are subject to a greater risk of being restricted or curtailed than the primary firm service that is available under the HubLine Service Agreement. The service priority under the HubLine Service Agreement can be particularly important on peak days when the Fore River Facility is most likely to be called upon to meet critical electric generation demands. Further, all of the currently available Rate Schedule AFT-1 capacity on the HubLine facilities will be fully subscribed to other customers upon the in-service date of Algonquin's East-to-West expansion project, which is currently targeted for a November 1, 2010 in-service date. Thus, the availability of the lower priority arrangements that Fore River has been relying on since it filed for bankruptcy protection could be subject to restrictions or curtailment in the event these other shippers utilize their firm transportation service to supply gas to parties other than Fore River.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 8, 2010

Richard M. Paglia
Vice President, Marketing
Algonquin Gas Transmission, LLC

**EXHIBIT A**

To Affidavit of Richard M. Paglia
In Support of Motion of Algonquin Gas Transmission, LLC
To Intervene and Protest Application
For Authorization of Disposition of Jurisdictional Facilities

Contract No 510008

### SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

This Agreement ("Agreement") is made and entered into this 31st day of January, 2001, by and between Algonquin Gas Transmission Company, a Delaware Corporation (herein called "Algonquin"), Sithe Fore River Development, L.L.C. a Delaware limited liability company (herein called "Customer" whether one or more persons), and Sithe Power Marketing, L.P., a Delaware limited partnership (herein called "Sithe Power Marketing") (solely for purposes of Article VIII hereof)

WHEREAS, pursuant to an Assignment and Assumption Agreement ("Assignment Agreement") dated as of January 31, 2001 among Sithe Power Marketing, Customer and Algonquin, Customer and Algonquin are parties to a precedent agreement dated September 28, 1999 ("1999 Precedent Agreement"), pursuant to which Algonquin will undertake to construct a lateral pipeline facility to serve a proposed electric generating plant to be developed by Customer in Weymouth, Massachusetts (the "Fore River Plant"), and

WHEREAS, pursuant to the terms and conditions of Paragraph 11 of the 1999 Precedent Agreement, Customer desires to obtain firm transportation capacity in that certain expansion project proposed by Algonquin and known as the HubLine Expansion Project and, to that end, pursuant to the Assignment Agreement, is a party to a precedent agreement dated August 2, 2000 (the "2000 Precedent Agreement") pertaining to service utilizing the Hubline Expansion Project pursuant to this Agreement, and

WHEREAS, Sithe Power Marketing and Algonquin are parties to a Service Agreement, Contract No 99025, dated August 2, 2000 (the "Original Service Agreement") for firm transportation service from Algonquin to serve the Fore River Plant, and

WHEREAS, Customer, Sithe Power Marketing and Algonquin desire to enter into this Agreement to supersede the Original Service Agreement, and

WHEREAS, subject to all of the terms and conditions of the 2000 Precedent Agreement and this Agreement, Algonquin desires to provide firm transportation service for Customer pursuant to the terms and conditions of Algonquin's Rate Schedule AFT-1;

In consideration of the premises and of the mutual covenants herein contained, the parties do agree as follows:

Sithe Boston  039977

Contract No. 510008

### SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

## ARTICLE I
## SCOPE OF AGREEMENT

1 1    Subject to the terms, conditions and limitations hereof and of Algonquin's Rate
Schedule AFT-1, Algonquin agrees to receive from or for the account of Customer
for transportation on a firm basis quantities of natural gas tendered by Customer on
any day at the Point(s) of Receipt; provided, however, Customer shall not tender
without the prior consent of Algonquin, at any Point of Receipt on any day a
quantity of natural gas in excess of the applicable Maximum Daily Receipt
Obligation for such Point of Receipt plus the applicable Fuel Reimbursement
Quantity; and provided further that Customer shall not tender at all Point(s) of
Receipt on any day or in any year a cumulative quantity of natural gas, without the
prior consent of Algonquin, in excess of the following quantities of natural gas plus
the applicable Fuel Reimbursement Quantities

|  |  |
|---|---|
| Maximum Daily Transportation Quantity | 140,000 Dth |
| Maximum Annual Transportation Quantity | 51,100,000 Dth |

1.2    Algonquin agrees to transport and deliver to or for the account of Customer at the
Point(s) of Delivery and Customer agrees to accept or cause acceptance of delivery
of the quantity received by Algonquin on any day, less the Fuel Reimbursement
Quantities, provided, however, Algonquin shall not be obligated to deliver at any
Point of Delivery on any day a quantity of natural gas in excess of the applicable
Maximum Daily Delivery Obligation

## ARTICLE II
## TERM OF AGREEMENT

2.1    This Agreement shall become effective as of the date first above written  Subject to
Paragraph 11 of the 1999 Precedent Agreement, service under this Agreement shall
commence on the date that construction of the HubLine facilities necessary to
provide the firm transportation service contemplated herein is completed and such
facilities are available for service. After service commences under this Agreement,
this Agreement shall continue in effect until and including the later of (i) August
31, 2021; or (ii) the last day of the month in which the twentieth (20th) anniversary
of the commencement of service under the agreement being superseded, as
described in Section 8 2 of this Agreement, occurs ("Primary Term") and shall
remain in force from year to year thereafter unless terminated by either party by

2

Contract No 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

written notice one year or more prior to the end of the Primary Term or any successive term thereafter. Algonquin's right to cancel this Agreement upon the expiration of the Primary Term hereof or any succeeding term shall be subject to Customer's rights pursuant to Sections 8 and 9 of the General Terms and Conditions In the event that HubLine service does not commence for any reason, then service under this Agreement shall not commence and this Agreement shall be null and void

2 2    This Agreement may be terminated at any time by Algonquin in the event Customer fails to pay part or all of the amount of any bill for service hereunder and such failure continues for thirty days after payment is due, provided Algonquin gives ten days prior written notice to Customer of such termination and provided further such termination shall not be effective if, prior to the date of termination, Customer either pays such outstanding bill or furnishes a good and sufficient surety bond guaranteeing payment to Algonquin of such outstanding bill; provided that Algonquin shall not be entitled to terminate service pending the resolution of a disputed bill if Customer complies with the billing dispute procedure currently on file in Algonquin's tariff

## ARTICLE III
## RATE SCHEDULE

3 1    Customer shall pay Algonquin for all services rendered hereunder and for the availability of such service under Algonquin's Rate Schedule AFT-1 as filed with the Federal Energy Regulatory Commission and as the same may be hereafter revised or changed. The rate to be charged Customer for transportation hereunder shall not be more than the maximum rate under Rate Schedule AFT-1, nor less than the minimum rate under Rate Schedule AFT-1

3 2    This Agreement and all terms and provisions contained or incorporated herein are subject to the provisions of Algonquin's applicable rate schedules and of Algonquin's General Terms and Conditions on file with the Federal Energy Regulatory Commission, or other duly constituted authorities having jurisdiction, and as the same may be legally amended or superseded, which rate schedules and General Terms and Conditions are by this reference made a part hereof

3 3    Customer agrees that Algonquin shall have the unilateral right to file with the appropriate regulatory authority and make changes effective in (a) the rates and charges applicable to service pursuant to Algonquin's Rate Schedule AFT-1, (b) Algonquin's Rate Schedule AFT-1, pursuant to which service hereunder is rendered or (c) any provision of the General Terms and Conditions applicable to Rate

3

Contract No 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

Schedule AFT-1. Algonquin agrees that Customer may protest or contest the aforementioned filings, or may seek authorization from duly constituted regulatory authorities for such adjustment of Algonquin's existing FERC Gas Tariff as may be found necessary to assure that the provisions in (a), (b), or (c) above are just and reasonable.

### ARTICLE IV
### POINT(S) OF RECEIPT

Natural gas to be received by Algonquin for the account of Customer hereunder shall be received at the outlet side of the measuring station(s) at or near the Primary Point(s) of Receipt set forth in Exhibit A of the service agreement, with the Maximum Daily Receipt Obligation and the receipt pressure obligation indicated for each such Primary Point of Receipt  Natural gas to be received by Algonquin for the account of Customer hereunder may also be received at the outlet side of any other measuring station on the Algonquin system, subject to reduction pursuant to Section 6 2 of Rate Schedule AFT-1.

### ARTICLE V
### POINT(S) OF DELIVERY

Natural gas to be delivered by Algonquin for the account of Customer hereunder shall be delivered on the outlet side of the measuring station(s) at or near the Primary Point(s) of Delivery set forth in Exhibit B of the service agreement, with the Maximum Daily Delivery Obligation and the delivery pressure obligation indicated for each such Primary Point of Delivery  Natural gas to be delivered by Algonquin for the account of Customer hereunder may also be delivered at the outlet side of any other measuring station on the Algonquin system, subject to reduction pursuant to Section 6.4 of Rate Schedule AFT-1

### ARTICLE VI
### ADDRESSES

Except as herein otherwise provided or as provided in the General Terms and Conditions of Algonquin's FERC Gas Tariff, any notice, request, demand, statement, bill or payment provided for in this Agreement, or any notice which any party may desire to give to the other, shall be in writing and shall be considered as duly delivered when mailed by registered, certified, or first class mail to the post office address of the parties hereto, as the case may be, as follows.

(a)   Algonquin    Algonquin Gas Transmission Company
                   5400 Westheimer Court

4

Contract No 510008

### SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

Houston, TX 77056
Attn· Vice President Marketing

(b)　　Customer　　Sithe Fore River Development, LLC
335 Madison Avenue, 28ᵗʰ floor
New York, NY 10017
Attn· Project Manager, with copy to· Legal Group

or such other address as either party shall designate by formal written notice.

### ARTICLE VII
### INTERPRETATION

The interpretation and performance of the Agreement shall be in accordance with the laws of the Commonwealth of Massachusetts, excluding conflicts of law principles that would require the application of the laws of a different jurisdiction

### ARTICLE VIII
### AGREEMENTS BEING SUPERSEDED

8 1　　When this Agreement becomes effective, it shall supersede the following agreements between the parties hereto·

> The Original Service Agreement, Contract No 99025 (References to the Original Service Agreement, Contract No 99025, in the 2000 Precedent Agreement shall be construed for purposes thereof and hereof to refer to this Agreement )

8 2　　When service commences under this Agreement, it shall supersede the following agreements between the parties hereto, except that in the case of conversions from former Rate Schedules F-2 and F-3, the parties' obligations under Article II of the service agreements pertaining to such rate schedules shall continue in effect.

> Subject to the terms and conditions of Paragraph 11 of the 1999 Precedent Agreement, this Agreement supersedes the Service Agreement dated January 31, 2001, Contract No. 510009, effective on the date service commences under this Agreement as part of Algonquin's HubLine Project as specified in ARTICLE II, Section 2 1 of this Agreement

5

Contract No. 510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective agents thereunto duly authorized, the day and year first above written

ALGONQUIN GAS TRANSMISSION COMPANY

By: _____ _Thomas C. O'Connor_ _____

Title

SITHE FORE RIVER DEVELOPMENT, LLC

By _____
Title.   **Sandra J. Manilla**
         **Vice President & Treasurer**

SITHE POWER MARKETING, L.P. (solely for purposes of Article VIII hereof)
By its General Partner
Sithe AOG Holding #1, Inc.

By. _____ **Sandra J. Manilla** _____
Title:   **Vice President & Treasurer**

6

Contract No  510008

## SERVICE AGREEMENT
## (APPLICABLE TO RATE SCHEDULE AFT-1)

### Exhibit A
### Point(s) of Receipt

Dated· January 31, 2001

To the service agreement under Rate Schedule AFT-1 between
Algonquin Gas Transmission Company (Algonquin) and
Sithe Fore River Development, LLC (Customer)
concerning Point(s) of Receipt

| Primary Point of Receipt | Maximum Daily Receipt Obligation (Dth) | Maximum Receipt Pressure (Psig) |
|---|---|---|
| Interconnection of AGT and Maritimes & Northeast Pipeline | 70,000 | Algonquin's line pressure as may exist from time to time |
| Interconnection with AGT's Q and I-3 systems | 70,000 | Algonquin's line pressure as may exist from time to time |

Signed for Identification

Algonquin: _____

Customer. _____

7

FEB  E 2001  2 42AM                                          HC  u295   F  37
FROM DUKE ENERGY LAW DEPT FAX NO 713-989-3190  (MON) 2  5'01 1; 13/ST 1; 05/NO 4860069731 F 39

Contract No. 510008

### SERVICE AGREEMENT
### (APPLICABLE TO RATE SCHEDULE AFT-1)

#### Exhibit B
#### Point(s) of Delivery

Dated: January 31, 2001

To the service agreement under Rate Schedule AFT-1 between
Algonquin Gas Transmission Company (Algonquin) and
Sithe Fore River Development, LLC (Customer)
concerning Point(s) of Delivery

| Primary Point of Delivery | Maximum Daily Delivery Obligation (Dth) | Minimum Delivery Pressure (Psig) |
|---|---|---|
| Fore River Plant | 140,000 | Algonquin's line pressure as may exist from time to time, but not less than 400 psig or greater than 750 psig. |

Signed for Identification

Algonquin _____

Customer _____

Not to Scale

Neptune Buoys

NEG Buoys

Massachusetts Bay

Beverly

Receipt: Beverly/Salem 00215 70,000 Dth/d

I-10

KSpan Weymouth 827

Potter 081

Braintree 023

I-9

I-8

Delivery: Fore River 803 140,000 Dth/d

I-3

Receipt: I-3/Q-1 Interconnection 70,000 Dth/d

Ponkapoag 052

Q-1 Ext

Brockton 024

I-2

Needham Regulator Station 302 END AGT Mainline, BEGIN J System

J System

Needham 038

Dover 066

24" Mainline

Woodland Rd 061

Westwood 022

Canton 058

I-1

Norwood 021

Q-1

Sharon 823

Norfolk 832

30" Mainline Loop

24" Mainline

**EXHIBIT A-1**

To Affidavit of Richard M. Paglia
In Support of Motion of Algonquin Gas Transmission, LLC
To Intervene and Protest Application
For Authorization of Disposition of Jurisdictional Facilities

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 9/01/2007 | 88,515 | 1,026 | 90,817 |
| 9/02/2007 | 86,643 | 1,035 | 89,670 |
| 9/03/2007 | 100,250 | 1,034 | 103,652 |
| 9/04/2007 | 95,558 | 1,053 | 100,604 |
| 9/05/2007 | 98,201 | 1,036 | 101,784 |
| 9/06/2007 | 97,818 | 1,040 | 101,751 |
| 9/07/2007 | 80,868 | 1,054 | 85,388 |
| 9/08/2007 | 63,658 | 1,065 | 67,814 |
| 9/09/2007 | 106,641 | 1,045 | 111,484 |
| 9/10/2007 | 95,391 | 1,064 | 101,387 |
| 9/11/2007 | 99,222 | 1,043 | 103,511 |
| 9/12/2007 | 96,019 | 1,051 | 100,885 |
| 9/13/2007 | 99,901 | 1,058 | 105,739 |
| 9/14/2007 | 102,893 | 1,041 | 107,180 |
| 9/15/2007 | 95,402 | 1,035 | 98,756 |
| 9/16/2007 | 91,657 | 1,059 | 97,057 |
| 9/17/2007 | 98,220 | 1,050 | 103,131 |
| 9/18/2007 | 101,594 | 1,040 | 105,745 |
| 9/19/2007 | 101,916 | 1,031 | 105,039 |
| 9/20/2007 | 97,526 | 1,039 | 101,377 |
| 9/21/2007 | 97,617 | 1,043 | 101,847 |
| 9/22/2007 | 95,660 | 1,061 | 101,471 |
| 9/23/2007 | 94,662 | 1,052 | 99,584 |
| 9/24/2007 | 98,738 | 1,060 | 104,679 |
| 9/25/2007 | 91,687 | 1,064 | 97,818 |
| 9/26/2007 | 91,835 | 1,069 | 98,187 |
| 9/27/2007 | 90,337 | 1,063 | 96,046 |
| 9/28/2007 | 93,478 | 1,042 | 97,474 |
| 9/29/2007 | 97,956 | 1,026 | 100,641 |
| 9/30/2007 | 93,335 | 1,050 | 97,922 |
| 10/01/2007 | 100,764 | 1,030 | 103,847 |
| 10/02/2007 | 99,401 | 1,031 | 102,452 |
| 10/03/2007 | 100,462 | 1,029 | 103,360 |
| 10/04/2007 | 98,983 | 1,027 | 101,651 |
| 10/05/2007 | 96,923 | 1,031 | 99,939 |
| 10/06/2007 | 102,375 | 1,055 | 108,026 |
| 10/07/2007 | 94,350 | 1,069 | 100,877 |
| 10/08/2007 | 96,249 | 1,068 | 102,788 |
| 10/09/2007 | 102,812 | 1,039 | 106,939 |
| 10/10/2007 | 103,999 | 1,037 | 107,973 |

# Daily Station Volume  [Chart](Chart)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010     **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](Cheryl D. Dudley)     **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 10/11/2007 | 100,100 | 1,046 | 104,852 |
| 10/12/2007 | 95,428 | 1,051 | 100,377 |
| 10/13/2007 | 93,140 | 1,060 | 98,624 |
| 10/14/2007 | 101,722 | 1,056 | 107,514 |
| 10/15/2007 | 101,662 | 1,035 | 105,250 |
| 10/16/2007 | 95,088 | 1,053 | 100,233 |
| 10/17/2007 | 102,181 | 1,043 | 106,643 |
| 10/18/2007 | 103,380 | 1,033 | 106,883 |
| 10/19/2007 | 99,640 | 1,035 | 103,178 |
| 10/20/2007 | 92,232 | 1,025 | 94,494 |
| 10/21/2007 | 93,078 | 1,024 | 95,288 |
| 10/22/2007 | 100,315 | 1,033 | 103,614 |
| 10/23/2007 | 100,093 | 1,035 | 103,503 |
| 10/24/2007 | 100,040 | 1,038 | 103,819 |
| 10/25/2007 | 92,095 | 1,041 | 95,908 |
| 10/26/2007 | 55,974 | 1,099 | 58,530 |
| 10/27/2007 | 12 | 1,021 | 12 |
| 10/28/2007 | 34,255 | 1,033 | 35,441 |
| 10/29/2007 | 68,194 | 1,034 | 70,598 |
| 10/30/2007 | 97,564 | 1,031 | 100,448 |
| 10/31/2007 | 96,463 | 1,020 | 98,316 |
| 11/01/2007 | 109,723 | 1,031 | 113,086 |
| 11/02/2007 | 107,536 | 1,036 | 111,431 |
| 11/03/2007 | 106,310 | 1,036 | 110,215 |
| 11/04/2007 | 102,355 | 1,035 | 105,976 |
| 11/05/2007 | 102,773 | 1,036 | 106,468 |
| 11/06/2007 | 99,614 | 1,039 | 103,529 |
| 11/07/2007 | 101,847 | 1,044 | 106,360 |
| 11/08/2007 | 101,370 | 1,040 | 105,559 |
| 11/09/2007 | 101,976 | 1,031 | 105,113 |
| 11/10/2007 | 98,056 | 1,037 | 101,722 |
| 11/11/2007 | 102,341 | 1,039 | 106,319 |
| 11/12/2007 | 105,976 | 1,037 | 109,882 |
| 11/13/2007 | 99,912 | 1,030 | 102,932 |
| 11/14/2007 | 93,494 | 1,030 | 96,297 |
| 11/15/2007 | 95,621 | 1,032 | 98,649 |
| 11/16/2007 | 98,524 | 1,041 | 102,570 |
| 11/17/2007 | 90,178 | 1,038 | 93,613 |
| 11/18/2007 | 101,996 | 1,048 | 106,936 |
| 11/19/2007 | 96,389 | 1,045 | 100,767 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010  **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)  **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 11/20/2007 | 89,689 | 1,055 | 94,644 |
| 11/21/2007 | 60,120 | 1,042 | 63,238 |
| 11/22/2007 | 61 | 1,027 | 62 |
| 11/23/2007 | 74 | 1,032 | 77 |
| 11/24/2007 | 122 | 1,053 | 129 |
| 11/25/2007 | 19,941 | 1,062 | 21,042 |
| 11/26/2007 | 91,083 | 1,055 | 96,051 |
| 11/27/2007 | 92,913 | 1,038 | 96,429 |
| 11/28/2007 | 95,604 | 1,035 | 99,021 |
| 11/29/2007 | 102,226 | 1,031 | 105,407 |
| 11/30/2007 | 62,193 | 1,040 | 65,141 |
| 12/01/2007 | 116 | 1,041 | 120 |
| 12/02/2007 | 80 | 1,069 | 86 |
| 12/03/2007 | 83 | 1,051 | 87 |
| 12/04/2007 | 103 | 1,048 | 108 |
| 12/05/2007 | 82 | 1,048 | 86 |
| 12/06/2007 | 268 | 1,011 | 272 |
| 12/07/2007 | 509 | 1,015 | 519 |
| 12/08/2007 | 211 | 1,024 | 217 |
| 12/09/2007 | 485 | 1,032 | 501 |
| 12/10/2007 | 18,369 | 1,040 | 19,020 |
| 12/11/2007 | 16,350 | 1,036 | 16,856 |
| 12/12/2007 | 85,854 | 1,033 | 88,658 |
| 12/13/2007 | 85,268 | 1,043 | 89,159 |
| 12/14/2007 | 57,878 | 1,032 | 59,807 |
| 12/15/2007 | 179 | 1,040 | 186 |
| 12/16/2007 | 91 | 1,050 | 95 |
| 12/17/2007 | 5,170 | 1,054 | 5,445 |
| 12/18/2007 | 89,820 | 1,045 | 93,835 |
| 12/19/2007 | 98,953 | 1,042 | 103,114 |
| 12/20/2007 | 103,449 | 1,045 | 108,125 |
| 12/21/2007 | 64,095 | 1,064 | 67,667 |
| 12/22/2007 | 95 | 1,044 | 99 |
| 12/23/2007 | 62 | 1,024 | 63 |
| 12/24/2007 | 74 | 1,031 | 77 |
| 12/25/2007 | 80 | 1,030 | 82 |
| 12/26/2007 | 85 | 1,035 | 88 |
| 12/27/2007 | 87 | 1,047 | 91 |
| 12/28/2007 | 71 | 1,032 | 73 |
| 12/29/2007 | 77 | 1,045 | 80 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 12/30/2007 | 77 | 1,043 | 81 |
| 12/31/2007 | 93 | 1,033 | 96 |
| 1/01/2008 | 89 | 1,026 | 91 |
| 1/02/2008 | 102 | 1,034 | 106 |
| 1/03/2008 | 589 | 1,021 | 599 |
| 1/04/2008 | 696 | 1,022 | 709 |
| 1/05/2008 | 64 | 1,024 | 66 |
| 1/06/2008 | 59 | 1,032 | 61 |
| 1/07/2008 | 64 | 1,031 | 66 |
| 1/08/2008 | 63 | 1,032 | 65 |
| 1/09/2008 | 2,416 | 1,032 | 2,494 |
| 1/10/2008 | 7,025 | 1,027 | 7,234 |
| 1/11/2008 | 10,800 | 1,050 | 11,372 |
| 1/12/2008 | 54 | 1,051 | 57 |
| 1/13/2008 | 55 | 1,054 | 58 |
| 1/14/2008 | 108 | 1,057 | 115 |
| 1/15/2008 | 152 | 1,069 | 162 |
| 1/16/2008 | 115 | 1,056 | 122 |
| 1/17/2008 | 111 | 1,058 | 118 |
| 1/18/2008 | 73 | 1,052 | 77 |
| 1/19/2008 | 70 | 1,040 | 73 |
| 1/20/2008 | 96 | 1,050 | 101 |
| 1/21/2008 | 107 | 1,053 | 113 |
| 1/22/2008 | 71 | 1,050 | 74 |
| 1/23/2008 | 23,693 | 1,049 | 24,941 |
| 1/24/2008 | 15,738 | 1,053 | 16,554 |
| 1/25/2008 | 73 | 1,053 | 77 |
| 1/26/2008 | 73 | 1,043 | 76 |
| 1/27/2008 | 85 | 1,034 | 88 |
| 1/28/2008 | 26,718 | 1,033 | 27,753 |
| 1/29/2008 | 54,956 | 1,031 | 56,684 |
| 1/30/2008 | 64,078 | 1,034 | 66,314 |
| 1/31/2008 | 88,490 | 1,032 | 91,373 |
| 2/01/2008 | 45,087 | 1,034 | 46,679 |
| 2/02/2008 | 79 | 1,031 | 81 |
| 2/03/2008 | 83 | 1,027 | 85 |
| 2/04/2008 | 25,870 | 1,034 | 26,894 |
| 2/05/2008 | 83,430 | 1,030 | 85,961 |
| 2/06/2008 | 97,524 | 1,022 | 99,593 |
| 2/07/2008 | 90,513 | 1,027 | 93,011 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010   **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)   **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 2/08/2008 | 59,359 | 1,032 | 61,779 |
| 2/09/2008 | 53 | 1,028 | 54 |
| 2/10/2008 | 87 | 1,037 | 90 |
| 2/11/2008 | 95 | 1,051 | 99 |
| 2/12/2008 | 32,636 | 1,041 | 33,779 |
| 2/13/2008 | 91,934 | 1,031 | 94,807 |
| 2/14/2008 | 84,369 | 1,031 | 87,057 |
| 2/15/2008 | 63,429 | 1,029 | 65,239 |
| 2/16/2008 | 75 | 1,029 | 77 |
| 2/17/2008 | 60 | 1,030 | 62 |
| 2/18/2008 | 71 | 1,030 | 73 |
| 2/19/2008 | 26,656 | 1,042 | 28,015 |
| 2/20/2008 | 81,950 | 1,047 | 85,865 |
| 2/21/2008 | 82,933 | 1,037 | 86,119 |
| 2/22/2008 | 55,845 | 1,038 | 58,404 |
| 2/23/2008 | 74 | 1,030 | 77 |
| 2/24/2008 | 81 | 1,030 | 84 |
| 2/25/2008 | 87 | 1,031 | 91 |
| 2/26/2008 | 31,121 | 1,033 | 32,128 |
| 2/27/2008 | 87,727 | 1,038 | 91,084 |
| 2/28/2008 | 92,746 | 1,042 | 96,735 |
| 2/29/2008 | 52,480 | 1,055 | 55,207 |
| 3/01/2008 | 49 | 1,056 | 52 |
| 3/02/2008 | 58 | 1,051 | 61 |
| 3/03/2008 | 32,727 | 1,037 | 33,650 |
| 3/04/2008 | 100,465 | 1,033 | 103,808 |
| 3/05/2008 | 89,612 | 1,031 | 92,370 |
| 3/06/2008 | 85,149 | 1,029 | 87,638 |
| 3/07/2008 | 86,267 | 1,028 | 88,703 |
| 3/08/2008 | 89,031 | 1,036 | 92,269 |
| 3/09/2008 | 88,473 | 1,051 | 93,207 |
| 3/10/2008 | 87,181 | 1,038 | 90,661 |
| 3/11/2008 | 87,634 | 1,032 | 90,490 |
| 3/12/2008 | 101,726 | 1,038 | 105,673 |
| 3/13/2008 | 87,766 | 1,035 | 91,028 |
| 3/14/2008 | 88,210 | 1,031 | 90,924 |
| 3/15/2008 | 85,961 | 1,028 | 88,337 |
| 3/16/2008 | 88,784 | 1,029 | 91,439 |
| 3/17/2008 | 88,823 | 1,044 | 92,886 |
| 3/18/2008 | 95,072 | 1,033 | 98,303 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 3/19/2008 | 98,706 | 1,043 | 103,252 |
| 3/20/2008 | 94,006 | 1,047 | 98,529 |
| 3/21/2008 | 85,584 | 1,052 | 90,085 |
| 3/22/2008 | 85,511 | 1,028 | 87,889 |
| 3/23/2008 | 85,885 | 1,032 | 88,744 |
| 3/24/2008 | 90,782 | 1,039 | 94,564 |
| 3/25/2008 | 83,390 | 1,032 | 86,068 |
| 3/26/2008 | 90,659 | 1,026 | 93,066 |
| 3/27/2008 | 100,717 | 1,028 | 103,501 |
| 3/28/2008 | 95,749 | 1,033 | 99,035 |
| 3/29/2008 | 62,059 | 1,033 | 64,114 |
| 3/30/2008 | 57,105 | 1,029 | 58,756 |
| 3/31/2008 | 54,200 | 1,039 | 56,375 |
| 4/01/2008 | 55,143 | 1,027 | 56,655 |
| 4/02/2008 | 53,850 | 1,029 | 55,423 |
| 4/03/2008 | 53,129 | 1,026 | 54,516 |
| 4/04/2008 | 56,086 | 1,027 | 57,616 |
| 4/05/2008 | 58,709 | 1,028 | 60,335 |
| 4/06/2008 | 59,661 | 1,028 | 61,318 |
| 4/07/2008 | 56,707 | 1,029 | 58,376 |
| 4/08/2008 | 54,992 | 1,037 | 57,079 |
| 4/09/2008 | 46,860 | 1,034 | 48,479 |
| 4/10/2008 | 53,210 | 1,033 | 54,998 |
| 4/11/2008 | 52,989 | 1,032 | 54,676 |
| 4/12/2008 | 52,416 | 1,028 | 53,866 |
| 4/13/2008 | 56,081 | 1,046 | 58,679 |
| 4/14/2008 | 56,253 | 1,061 | 59,654 |
| 4/15/2008 | 51,940 | 1,064 | 55,200 |
| 4/16/2008 | 51,336 | 1,032 | 52,992 |
| 4/17/2008 | 53,353 | 1,043 | 55,634 |
| 4/18/2008 | 54,196 | 1,027 | 55,656 |
| 4/19/2008 | 49,452 | 1,082 | 53,493 |
| 4/20/2008 | 51,593 | 1,078 | 55,630 |
| 4/21/2008 | 48,816 | 1,075 | 52,435 |
| 4/22/2008 | 53,132 | 1,085 | 57,626 |
| 4/23/2008 | 53,104 | 1,064 | 56,563 |
| 4/24/2008 | 76,009 | 1,038 | 78,947 |
| 4/25/2008 | 52,897 | 1,028 | 54,394 |
| 4/26/2008 | 60,626 | 1,027 | 62,302 |
| 4/27/2008 | 58,906 | 1,037 | 61,028 |

# Daily Station Volume     [Chart](#)

**Station:**    00803 FORE RIVER (NORFOLK,MA)

**Period:**    9/1/2007 To 8/29/2010    **Report Date:**    8/30/2010 9:06 AM

**Analyst:**    [Cheryl D. Dudley](#)    **Phone:**    713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 4/28/2008 | 54,060 | 1,069 | 57,780 |
| 4/29/2008 | 77,194 | 1,053 | 81,628 |
| 4/30/2008 | 86,639 | 1,057 | 91,600 |
| 5/01/2008 | 102,593 | 1,046 | 107,389 |
| 5/02/2008 | 106,307 | 1,048 | 111,646 |
| 5/03/2008 | 102,735 | 1,047 | 107,772 |
| 5/04/2008 | 107,835 | 1,039 | 112,168 |
| 5/05/2008 | 109,301 | 1,039 | 113,689 |
| 5/06/2008 | 112,421 | 1,058 | 118,982 |
| 5/07/2008 | 108,924 | 1,055 | 115,123 |
| 5/08/2008 | 102,329 | 1,032 | 105,669 |
| 5/09/2008 | 55,876 | 1,048 | 59,183 |
| 5/10/2008 | 2 | 1,039 | 2 |
| 5/11/2008 | 3 | 1,045 | 3 |
| 5/12/2008 | 1 | 1,024 | 1 |
| 5/13/2008 | 4 | 1,083 | 4 |
| 5/14/2008 | 3 | 1,053 | 4 |
| 5/15/2008 | 2 | 1,023 | 2 |
| 5/16/2008 | 12 | 1,066 | 13 |
| 5/17/2008 | 2 | 1,058 | 2 |
| 5/18/2008 | 55 | 1,059 | 59 |
| 5/19/2008 | 432 | 1,053 | 455 |
| 5/20/2008 | 1,616 | 1,050 | 1,711 |
| 5/21/2008 | 191 | 1,053 | 202 |
| 5/22/2008 | 10,727 | 1,042 | 11,360 |
| 5/23/2008 | 46 | 1,059 | 48 |
| 5/24/2008 | 15 | 1,053 | 16 |
| 5/25/2008 | 4,222 | 1,060 | 4,467 |
| 5/26/2008 | 44,363 | 1,028 | 45,644 |
| 5/27/2008 | 41,347 | 1,067 | 44,293 |
| 5/28/2008 | 160 | 1,064 | 172 |
| 5/29/2008 | 12,534 | 1,080 | 13,553 |
| 5/30/2008 | 57,829 | 1,083 | 62,601 |
| 5/31/2008 | 62,511 | 1,044 | 65,656 |
| 6/01/2008 | 56,544 | 1,046 | 59,231 |
| 6/02/2008 | 96,357 | 1,033 | 99,481 |
| 6/03/2008 | 87,547 | 1,026 | 89,919 |
| 6/04/2008 | 98,361 | 1,031 | 101,486 |
| 6/05/2008 | 99,263 | 1,045 | 104,042 |
| 6/06/2008 | 72,075 | 1,025 | 73,861 |

# Daily Station Volume  [Chart](#)

**Station:**   00803 FORE RIVER (NORFOLK,MA)

**Period:**   9/1/2007 To 8/29/2010    **Report Date:**   8/30/2010 9:06 AM

**Analyst:**   [Cheryl D. Dudley](#)    **Phone:**   713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 6/07/2008 | 70,497 | 1,051 | 74,107 |
| 6/08/2008 | 64,118 | 1,016 | 65,717 |
| 6/09/2008 | 82,318 | 1,025 | 84,508 |
| 6/10/2008 | 103,335 | 1,059 | 109,362 |
| 6/11/2008 | 100,455 | 1,046 | 105,143 |
| 6/12/2008 | 95,597 | 1,042 | 99,660 |
| 6/13/2008 | 95,922 | 1,045 | 100,346 |
| 6/14/2008 | 98,627 | 1,068 | 105,270 |
| 6/15/2008 | 91,936 | 1,073 | 98,614 |
| 6/16/2008 | 88,014 | 1,054 | 92,820 |
| 6/17/2008 | 87,887 | 1,068 | 93,840 |
| 6/18/2008 | 101,359 | 1,041 | 105,507 |
| 6/19/2008 | 99,119 | 1,044 | 103,495 |
| 6/20/2008 | 90,438 | 1,045 | 94,574 |
| 6/21/2008 | 86,086 | 1,071 | 92,226 |
| 6/22/2008 | 95,948 | 1,066 | 102,337 |
| 6/23/2008 | 92,820 | 1,067 | 99,057 |
| 6/24/2008 | 86,309 | 1,067 | 92,068 |
| 6/25/2008 | 93,427 | 1,043 | 97,492 |
| 6/26/2008 | 84,823 | 1,065 | 90,351 |
| 6/27/2008 | 45,727 | 1,025 | 47,461 |
| 6/28/2008 | 10 | 1,044 | 10 |
| 6/29/2008 | 23 | 1,022 | 24 |
| 6/30/2008 | 27,118 | 1,062 | 28,959 |
| 7/01/2008 | 95,797 | 1,039 | 99,549 |
| 7/02/2008 | 89,690 | 1,044 | 93,620 |
| 7/03/2008 | 78,103 | 1,066 | 83,326 |
| 7/04/2008 | 43,067 | 1,058 | 45,583 |
| 7/05/2008 | 44,223 | 1,061 | 46,900 |
| 7/06/2008 | 95,110 | 1,061 | 100,937 |
| 7/07/2008 | 103,562 | 1,054 | 109,270 |
| 7/08/2008 | 102,337 | 1,055 | 108,008 |
| 7/09/2008 | 102,520 | 1,041 | 106,743 |
| 7/10/2008 | 100,505 | 1,035 | 104,101 |
| 7/11/2008 | 98,798 | 1,039 | 102,742 |
| 7/12/2008 | 85,037 | 1,037 | 88,150 |
| 7/13/2008 | 98,540 | 1,034 | 101,950 |
| 7/14/2008 | 100,952 | 1,031 | 104,074 |
| 7/15/2008 | 102,938 | 1,034 | 106,400 |
| 7/16/2008 | 102,645 | 1,037 | 106,398 |

# Daily Station Volume  [Chart](#)

**Station:**    00803 FORE RIVER (NORFOLK,MA)

**Period:**    9/1/2007 To 8/29/2010    **Report Date:**    8/30/2010 9:06 AM

**Analyst:**    [Cheryl D. Dudley](#)    **Phone:**    713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 7/17/2008 | 103,622 | 1,040 | 107,699 |
| 7/18/2008 | 94,664 | 1,028 | 97,467 |
| 7/19/2008 | 90,478 | 1,038 | 93,692 |
| 7/20/2008 | 107,064 | 1,044 | 111,839 |
| 7/21/2008 | 100,544 | 1,053 | 105,898 |
| 7/22/2008 | 87,348 | 1,056 | 92,284 |
| 7/23/2008 | 90,210 | 1,050 | 94,722 |
| 7/24/2008 | 94,156 | 1,044 | 98,219 |
| 7/25/2008 | 81,946 | 1,049 | 85,806 |
| 7/26/2008 | 82,738 | 1,048 | 86,697 |
| 7/27/2008 | 81,991 | 1,042 | 85,460 |
| 7/28/2008 | 96,018 | 1,032 | 99,105 |
| 7/29/2008 | 101,376 | 1,035 | 104,923 |
| 7/30/2008 | 103,339 | 1,035 | 106,980 |
| 7/31/2008 | 102,062 | 1,034 | 105,572 |
| 8/01/2008 | 83,356 | 1,043 | 86,653 |
| 8/02/2008 | 46,472 | 1,047 | 48,645 |
| 8/03/2008 | 53,050 | 1,050 | 55,609 |
| 8/04/2008 | 98,099 | 1,041 | 102,057 |
| 8/05/2008 | 90,732 | 1,045 | 94,778 |
| 8/06/2008 | 99,685 | 1,040 | 103,639 |
| 8/07/2008 | 92,489 | 1,048 | 96,863 |
| 8/08/2008 | 72,122 | 1,054 | 75,953 |
| 8/09/2008 | 49,693 | 1,058 | 52,584 |
| 8/10/2008 | 54,181 | 1,063 | 57,587 |
| 8/11/2008 | 88,571 | 1,058 | 93,781 |
| 8/12/2008 | 87,735 | 1,065 | 93,468 |
| 8/13/2008 | 100,978 | 1,045 | 105,463 |
| 8/14/2008 | 100,538 | 1,027 | 103,248 |
| 8/15/2008 | 106,052 | 1,030 | 109,215 |
| 8/16/2008 | 96,692 | 1,035 | 100,032 |
| 8/17/2008 | 95,124 | 1,033 | 98,244 |
| 8/18/2008 | 106,305 | 1,036 | 110,083 |
| 8/19/2008 | 95,579 | 1,034 | 98,860 |
| 8/20/2008 | 96,799 | 1,036 | 100,271 |
| 8/21/2008 | 97,551 | 1,037 | 101,126 |
| 8/22/2008 | 84,429 | 1,036 | 87,430 |
| 8/23/2008 | 49,540 | 1,050 | 52,045 |
| 8/24/2008 | 43,348 | 1,019 | 44,286 |
| 8/25/2008 | 85,117 | 1,019 | 86,697 |

# Daily Station Volume  [Chart](#)

**Station:**     00803 FORE RIVER (NORFOLK,MA)

**Period:**     9/1/2007 To 8/29/2010     **Report Date:**    8/30/2010 9:06 AM

**Analyst:**    [Cheryl D. Dudley](#)       **Phone:**      713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 8/26/2008 | 86,383 | 1,019 | 87,986 |
| 8/27/2008 | 76,152 | 1,025 | 78,034 |
| 8/28/2008 | 80,720 | 1,028 | 83,008 |
| 8/29/2008 | 83,559 | 1,027 | 85,797 |
| 8/30/2008 | 53,304 | 1,025 | 54,662 |
| 8/31/2008 | 48,960 | 1,027 | 50,284 |
| 9/01/2008 | 46,742 | 1,026 | 47,916 |
| 9/02/2008 | 90,290 | 1,022 | 92,266 |
| 9/03/2008 | 100,250 | 1,024 | 102,582 |
| 9/04/2008 | 108,924 | 1,027 | 111,888 |
| 9/05/2008 | 113,917 | 1,031 | 117,486 |
| 9/06/2008 | 106,188 | 1,031 | 109,482 |
| 9/07/2008 | 99,738 | 1,029 | 102,643 |
| 9/08/2008 | 101,143 | 1,029 | 104,145 |
| 9/09/2008 | 91,962 | 1,030 | 94,680 |
| 9/10/2008 | 102,363 | 1,031 | 105,473 |
| 9/11/2008 | 102,273 | 1,029 | 105,261 |
| 9/12/2008 | 85,336 | 1,033 | 88,223 |
| 9/13/2008 | 83,447 | 1,050 | 87,804 |
| 9/14/2008 | 87,495 | 1,049 | 91,982 |
| 9/15/2008 | 97,121 | 1,044 | 101,616 |
| 9/16/2008 | 95,778 | 1,041 | 99,781 |
| 9/17/2008 | 81,829 | 1,047 | 85,931 |
| 9/18/2008 | 52,148 | 1,040 | 54,229 |
| 9/19/2008 | 53,888 | 1,033 | 55,642 |
| 9/20/2008 | 91,975 | 1,033 | 95,002 |
| 9/21/2008 | 96,873 | 1,031 | 99,828 |
| 9/22/2008 | 80,542 | 1,038 | 83,486 |
| 9/23/2008 | 25,173 | 1,068 | 26,965 |
| 9/24/2008 | 51,145 | 1,050 | 53,708 |
| 9/25/2008 | 50,401 | 1,055 | 53,189 |
| 9/26/2008 | 55,670 | 1,042 | 57,995 |
| 9/27/2008 | 93,447 | 1,071 | 99,886 |
| 9/28/2008 | 97,766 | 1,062 | 103,790 |
| 9/29/2008 | 99,225 | 1,065 | 105,717 |
| 9/30/2008 | 99,823 | 1,055 | 105,463 |
| 10/01/2008 | 99,090 | 1,046 | 103,669 |
| 10/02/2008 | 96,770 | 1,028 | 99,485 |
| 10/03/2008 | 81,663 | 1,049 | 85,681 |
| 10/04/2008 | 52,525 | 1,041 | 54,692 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010   **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)   **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 10/05/2008 | 54,449 | 1,037 | 56,490 |
| 10/06/2008 | 52,581 | 1,045 | 54,991 |
| 10/07/2008 | 52,140 | 1,038 | 54,132 |
| 10/08/2008 | 51,379 | 1,043 | 53,587 |
| 10/09/2008 | 52,878 | 1,027 | 54,317 |
| 10/10/2008 | 50,913 | 1,025 | 52,197 |
| 10/11/2008 | 51,486 | 1,030 | 53,033 |
| 10/12/2008 | 53,271 | 1,050 | 55,895 |
| 10/13/2008 | 99,589 | 1,050 | 104,688 |
| 10/14/2008 | 104,170 | 1,049 | 109,326 |
| 10/15/2008 | 102,092 | 1,034 | 105,578 |
| 10/16/2008 | 106,816 | 1,034 | 110,437 |
| 10/17/2008 | 101,235 | 1,030 | 104,296 |
| 10/18/2008 | 88,117 | 1,028 | 90,605 |
| 10/19/2008 | 104,607 | 1,042 | 109,029 |
| 10/20/2008 | 75,471 | 1,050 | 79,363 |
| 10/21/2008 | 58,098 | 1,031 | 59,881 |
| 10/22/2008 | 53,375 | 1,028 | 54,895 |
| 10/23/2008 | 30,333 | 1,041 | 31,388 |
| 10/24/2008 | 79 | 1,052 | 83 |
| 10/25/2008 | 53 | 1,059 | 57 |
| 10/26/2008 | 70 | 1,060 | 75 |
| 10/27/2008 | 78 | 1,060 | 82 |
| 10/28/2008 | 148 | 1,061 | 157 |
| 10/29/2008 | 23,500 | 1,046 | 24,322 |
| 10/30/2008 | 51,359 | 1,039 | 53,362 |
| 10/31/2008 | 51,961 | 1,031 | 53,584 |
| 11/01/2008 | 55,088 | 1,029 | 56,661 |
| 11/02/2008 | 53,638 | 1,033 | 55,414 |
| 11/03/2008 | 54,118 | 1,033 | 55,925 |
| 11/04/2008 | 54,138 | 1,029 | 55,726 |
| 11/05/2008 | 51,800 | 1,028 | 53,274 |
| 11/06/2008 | 52,431 | 1,026 | 53,786 |
| 11/07/2008 | 48,350 | 1,027 | 49,672 |
| 11/08/2008 | 51,046 | 1,026 | 52,393 |
| 11/09/2008 | 49,259 | 1,032 | 50,817 |
| 11/10/2008 | 51,073 | 1,029 | 52,548 |
| 11/11/2008 | 50,815 | 1,032 | 52,450 |
| 11/12/2008 | 54,367 | 1,029 | 55,947 |
| 11/13/2008 | 51,799 | 1,032 | 53,440 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 11/14/2008 | 50,942 | 1,031 | 52,533 |
| 11/15/2008 | 51,780 | 1,026 | 53,165 |
| 11/16/2008 | 51,554 | 1,026 | 52,911 |
| 11/17/2008 | 54,262 | 1,030 | 55,879 |
| 11/18/2008 | 52,953 | 1,037 | 54,901 |
| 11/19/2008 | 53,904 | 1,045 | 56,334 |
| 11/20/2008 | 54,287 | 1,049 | 56,939 |
| 11/21/2008 | 55,803 | 1,033 | 57,642 |
| 11/22/2008 | 59,126 | 1,037 | 61,289 |
| 11/23/2008 | 59,051 | 1,030 | 60,800 |
| 11/24/2008 | 54,267 | 1,031 | 55,935 |
| 11/25/2008 | 51,826 | 1,031 | 53,424 |
| 11/26/2008 | 50,453 | 1,029 | 51,934 |
| 11/27/2008 | 49,755 | 1,027 | 51,108 |
| 11/28/2008 | 48,423 | 1,025 | 49,634 |
| 11/29/2008 | 48,601 | 1,026 | 49,883 |
| 11/30/2008 | 49,535 | 1,029 | 50,945 |
| 12/01/2008 | 46,561 | 1,035 | 48,185 |
| 12/02/2008 | 49,334 | 1,035 | 51,045 |
| 12/03/2008 | 31,822 | 1,030 | 32,824 |
| 12/04/2008 | 11,083 | 1,030 | 11,393 |
| 12/05/2008 | 52,215 | 1,035 | 54,025 |
| 12/06/2008 | 53,065 | 1,040 | 55,175 |
| 12/07/2008 | 51,942 | 1,050 | 54,553 |
| 12/08/2008 | 55,524 | 1,036 | 57,529 |
| 12/09/2008 | 51,932 | 1,033 | 53,651 |
| 12/10/2008 | 51,855 | 1,032 | 53,513 |
| 12/11/2008 | 50,968 | 1,034 | 52,715 |
| 12/12/2008 | 28,622 | 1,033 | 29,648 |
| 12/13/2008 | 84 | 1,038 | 88 |
| 12/14/2008 | 77 | 1,037 | 80 |
| 12/15/2008 | 56 | 1,038 | 58 |
| 12/16/2008 | 8,536 | 1,038 | 8,847 |
| 12/17/2008 | 56,139 | 1,035 | 58,104 |
| 12/18/2008 | 52,704 | 1,035 | 54,564 |
| 12/19/2008 | 35,813 | 1,037 | 37,136 |
| 12/20/2008 | 80 | 1,037 | 83 |
| 12/21/2008 | 94 | 1,035 | 98 |
| 12/22/2008 | 94 | 1,039 | 98 |
| 12/23/2008 | 89 | 1,040 | 93 |

# Daily Station Volume   [Chart](#)

**Station:**   00803 FORE RIVER (NORFOLK,MA)

**Period:**   9/1/2007 To 8/29/2010     **Report Date:**   8/30/2010 9:06 AM

**Analyst:**   [Cheryl D. Dudley](#)     **Phone:**   713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 12/24/2008 | 50 | 1,040 | 52 |
| 12/25/2008 | 64 | 1,040 | 67 |
| 12/26/2008 | 66 | 1,041 | 69 |
| 12/27/2008 | 48 | 1,039 | 50 |
| 12/28/2008 | 48 | 1,038 | 49 |
| 12/29/2008 | 149 | 1,035 | 154 |
| 12/30/2008 | 144 | 1,038 | 150 |
| 12/31/2008 | 96 | 1,037 | 100 |
| 1/01/2009 | 96 | 1,037 | 99 |
| 1/02/2009 | 6,214 | 1,036 | 6,384 |
| 1/03/2009 | 50,780 | 1,038 | 52,707 |
| 1/04/2009 | 52,435 | 1,038 | 54,410 |
| 1/05/2009 | 53,337 | 1,039 | 55,435 |
| 1/06/2009 | 53,172 | 1,036 | 55,105 |
| 1/07/2009 | 53,578 | 1,036 | 55,521 |
| 1/08/2009 | 52,587 | 1,037 | 54,516 |
| 1/09/2009 | 32,279 | 1,038 | 33,529 |
| 1/10/2009 | 90 | 1,037 | 93 |
| 1/11/2009 | 95 | 1,036 | 99 |
| 1/12/2009 | 87 | 1,035 | 91 |
| 1/13/2009 | 88 | 1,032 | 90 |
| 1/14/2009 | 98 | 1,030 | 102 |
| 1/15/2009 | 80 | 1,014 | 83 |
| 1/16/2009 | 107 | 1,032 | 111 |
| 1/17/2009 | 99 | 1,039 | 103 |
| 1/18/2009 | 96 | 1,042 | 100 |
| 1/19/2009 | 92 | 1,035 | 95 |
| 1/20/2009 | 99 | 1,037 | 103 |
| 1/21/2009 | 3,038 | 1,036 | 3,181 |
| 1/22/2009 | 51,399 | 1,045 | 53,722 |
| 1/23/2009 | 51,462 | 1,046 | 53,852 |
| 1/24/2009 | 50,999 | 1,046 | 53,368 |
| 1/25/2009 | 53,624 | 1,053 | 56,463 |
| 1/26/2009 | 51,434 | 1,051 | 54,076 |
| 1/27/2009 | 51,988 | 1,036 | 53,881 |
| 1/28/2009 | 50,920 | 1,038 | 52,913 |
| 1/29/2009 | 50,275 | 1,030 | 51,796 |
| 1/30/2009 | 52,501 | 1,028 | 53,949 |
| 1/31/2009 | 54,487 | 1,029 | 56,073 |
| 2/01/2009 | 50,693 | 1,028 | 52,125 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 2/02/2009 | 51,404 | 1,027 | 52,789 |
| 2/03/2009 | 51,226 | 1,029 | 52,714 |
| 2/04/2009 | 28,271 | 1,029 | 29,056 |
| 2/05/2009 | 97 | 1,027 | 100 |
| 2/06/2009 | 110 | 1,030 | 114 |
| 2/07/2009 | 71 | 1,030 | 73 |
| 2/08/2009 | 144 | 1,030 | 149 |
| 2/09/2009 | 210 | 1,029 | 216 |
| 2/10/2009 | 229 | 1,027 | 236 |
| 2/11/2009 | 96 | 1,028 | 99 |
| 2/12/2009 | 61 | 1,028 | 63 |
| 2/13/2009 | 89 | 1,029 | 91 |
| 2/14/2009 | 80 | 1,026 | 82 |
| 2/15/2009 | 81 | 1,024 | 83 |
| 2/16/2009 | 86 | 1,024 | 88 |
| 2/17/2009 | 89 | 1,025 | 91 |
| 2/18/2009 | 1,308 | 1,027 | 1,345 |
| 2/19/2009 | 46,268 | 1,026 | 47,467 |
| 2/20/2009 | 50,051 | 1,028 | 51,428 |
| 2/21/2009 | 47,577 | 1,027 | 48,838 |
| 2/22/2009 | 52,726 | 1,027 | 54,175 |
| 2/23/2009 | 54,621 | 1,029 | 56,191 |
| 2/24/2009 | 54,884 | 1,029 | 56,491 |
| 2/25/2009 | 64,213 | 1,030 | 66,109 |
| 2/26/2009 | 67,627 | 1,029 | 69,611 |
| 2/27/2009 | 47,807 | 1,025 | 49,008 |
| 2/28/2009 | 51,207 | 1,027 | 52,570 |
| 3/01/2009 | 54,372 | 1,028 | 55,901 |
| 3/02/2009 | 53,053 | 1,030 | 54,631 |
| 3/03/2009 | 51,480 | 1,028 | 52,912 |
| 3/04/2009 | 52,026 | 1,023 | 53,236 |
| 3/05/2009 | 49,428 | 1,027 | 50,754 |
| 3/06/2009 | 76,069 | 1,027 | 78,076 |
| 3/07/2009 | 40,640 | 1,026 | 41,689 |
| 3/08/2009 | 47,569 | 1,028 | 48,887 |
| 3/09/2009 | 51,624 | 1,023 | 52,834 |
| 3/10/2009 | 48,557 | 1,026 | 49,805 |
| 3/11/2009 | 50,012 | 1,026 | 51,316 |
| 3/12/2009 | 49,853 | 1,025 | 51,119 |
| 3/13/2009 | 49,935 | 1,026 | 51,249 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010     **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)     **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 3/14/2009 | 48,532 | 1,025 | 49,749 |
| 3/15/2009 | 48,249 | 1,029 | 49,646 |
| 3/16/2009 | 48,789 | 1,028 | 50,177 |
| 3/17/2009 | 46,985 | 1,025 | 48,145 |
| 3/18/2009 | 47,709 | 1,025 | 48,902 |
| 3/19/2009 | 52,480 | 1,023 | 53,674 |
| 3/20/2009 | 61,116 | 1,025 | 62,658 |
| 3/21/2009 | 53,806 | 1,026 | 55,203 |
| 3/22/2009 | 52,820 | 1,028 | 54,291 |
| 3/23/2009 | 51,012 | 1,035 | 52,764 |
| 3/24/2009 | 47,834 | 1,028 | 49,178 |
| 3/25/2009 | 50,926 | 1,026 | 52,237 |
| 3/26/2009 | 73,103 | 1,025 | 74,968 |
| 3/27/2009 | 48,233 | 1,024 | 49,396 |
| 3/28/2009 | 51,382 | 1,024 | 52,618 |
| 3/29/2009 | 52,056 | 1,023 | 53,259 |
| 3/30/2009 | 50,895 | 1,026 | 52,197 |
| 3/31/2009 | 56,277 | 1,026 | 57,768 |
| 4/01/2009 | 103,311 | 1,028 | 106,249 |
| 4/02/2009 | 100,304 | 1,033 | 103,616 |
| 4/03/2009 | 102,194 | 1,028 | 105,080 |
| 4/04/2009 | 100,709 | 1,027 | 103,456 |
| 4/05/2009 | 99,004 | 1,027 | 101,632 |
| 4/06/2009 | 105,675 | 1,025 | 108,286 |
| 4/07/2009 | 92,147 | 1,024 | 94,322 |
| 4/08/2009 | 98,651 | 1,026 | 101,187 |
| 4/09/2009 | 69,599 | 1,027 | 71,493 |
| 4/10/2009 | 52,826 | 1,026 | 54,194 |
| 4/11/2009 | 55,617 | 1,023 | 56,905 |
| 4/12/2009 | 52,325 | 1,021 | 53,438 |
| 4/13/2009 | 63,526 | 1,022 | 64,964 |
| 4/14/2009 | 101,494 | 1,024 | 103,922 |
| 4/15/2009 | 105,450 | 1,023 | 107,874 |
| 4/16/2009 | 102,483 | 1,024 | 104,914 |
| 4/17/2009 | 47,676 | 1,022 | 48,842 |
| 4/18/2009 | 0 | 0 | 0 |
| 4/19/2009 | 0 | 0 | 0 |
| 4/20/2009 | 0 | 0 | 0 |
| 4/21/2009 | 0 | 0 | 0 |
| 4/22/2009 | 0 | 0 | 0 |

# Daily Station Volume   [Chart](#)

**Station:**  00803 FORE RIVER (NORFOLK,MA)

**Period:**  9/1/2007 To 8/29/2010     **Report Date:**  8/30/2010 9:06 AM

**Analyst:**  [Cheryl D. Dudley](#)     **Phone:**  713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---:|---:|---:|
| 4/23/2009 | 0 | 0 | 0 |
| 4/24/2009 | 0 | 0 | 0 |
| 4/25/2009 | 0 | 0 | 0 |
| 4/26/2009 | 0 | 0 | 0 |
| 4/27/2009 | 1,843 | 1,070 | 1,971 |
| 4/28/2009 | 44,955 | 1,070 | 48,089 |
| 4/29/2009 | 50,153 | 1,070 | 53,668 |
| 4/30/2009 | 48,023 | 1,071 | 51,436 |
| 5/01/2009 | 50,925 | 1,072 | 54,585 |
| 5/02/2009 | 84,563 | 1,038 | 87,990 |
| 5/03/2009 | 89,540 | 1,025 | 91,830 |
| 5/04/2009 | 104,821 | 1,030 | 108,002 |
| 5/05/2009 | 102,412 | 1,049 | 107,516 |
| 5/06/2009 | 104,414 | 1,039 | 108,491 |
| 5/07/2009 | 103,826 | 1,029 | 106,810 |
| 5/08/2009 | 88,962 | 1,029 | 91,556 |
| 5/09/2009 | 78,814 | 1,030 | 81,162 |
| 5/10/2009 | 76,140 | 1,065 | 81,187 |
| 5/11/2009 | 87,774 | 1,050 | 92,584 |
| 5/12/2009 | 101,492 | 1,046 | 106,284 |
| 5/13/2009 | 103,605 | 1,031 | 106,827 |
| 5/14/2009 | 93,195 | 1,028 | 95,834 |
| 5/15/2009 | 96,692 | 1,031 | 99,767 |
| 5/16/2009 | 92,110 | 1,029 | 94,774 |
| 5/17/2009 | 105,641 | 1,038 | 109,738 |
| 5/18/2009 | 108,207 | 1,030 | 111,457 |
| 5/19/2009 | 101,841 | 1,038 | 105,563 |
| 5/20/2009 | 102,133 | 1,054 | 107,641 |
| 5/21/2009 | 98,179 | 1,041 | 102,254 |
| 5/22/2009 | 62,496 | 1,027 | 64,295 |
| 5/23/2009 | 38 | 1,027 | 40 |
| 5/24/2009 | 24 | 1,027 | 25 |
| 5/25/2009 | 4,127 | 1,048 | 4,383 |
| 5/26/2009 | 50,416 | 1,063 | 53,593 |
| 5/27/2009 | 61,537 | 1,045 | 64,248 |
| 5/28/2009 | 80,221 | 1,034 | 83,070 |
| 5/29/2009 | 50,063 | 1,032 | 51,665 |
| 5/30/2009 | 49,497 | 1,040 | 51,446 |
| 5/31/2009 | 50,531 | 1,042 | 52,657 |
| 6/01/2009 | 85,735 | 1,037 | 88,905 |

# Daily Station Volume  [Chart](#)

**Station:**    00803 FORE RIVER (NORFOLK,MA)

**Period:**    9/1/2007 To 8/29/2010    **Report Date:**    8/30/2010 9:06 AM

**Analyst:**    [Cheryl D. Dudley](#)    **Phone:**    713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 6/02/2009 | 81,229 | 1,040 | 84,431 |
| 6/03/2009 | 85,017 | 1,038 | 88,368 |
| 6/04/2009 | 90,630 | 1,027 | 93,072 |
| 6/05/2009 | 81,811 | 1,026 | 84,006 |
| 6/06/2009 | 53,513 | 1,027 | 54,981 |
| 6/07/2009 | 58,231 | 1,027 | 59,808 |
| 6/08/2009 | 93,150 | 1,044 | 97,085 |
| 6/09/2009 | 66,093 | 1,030 | 68,142 |
| 6/10/2009 | 80,767 | 1,054 | 85,124 |
| 6/11/2009 | 83,839 | 1,031 | 86,389 |
| 6/12/2009 | 83,317 | 1,039 | 86,727 |
| 6/13/2009 | 81,851 | 1,039 | 84,946 |
| 6/14/2009 | 82,085 | 1,056 | 86,558 |
| 6/15/2009 | 82,116 | 1,051 | 86,520 |
| 6/16/2009 | 53,562 | 1,048 | 56,141 |
| 6/17/2009 | 50,734 | 1,048 | 53,116 |
| 6/18/2009 | 51,274 | 1,048 | 53,757 |
| 6/19/2009 | 51,019 | 1,040 | 53,115 |
| 6/20/2009 | 50,195 | 1,035 | 51,926 |
| 6/21/2009 | 49,171 | 1,046 | 51,354 |
| 6/22/2009 | 54,672 | 1,055 | 57,688 |
| 6/23/2009 | 85,819 | 1,033 | 88,981 |
| 6/24/2009 | 96,816 | 1,030 | 99,701 |
| 6/25/2009 | 95,983 | 1,029 | 98,762 |
| 6/26/2009 | 76,733 | 1,026 | 78,794 |
| 6/27/2009 | 50,184 | 1,026 | 51,496 |
| 6/28/2009 | 50,717 | 1,028 | 52,114 |
| 6/29/2009 | 59,344 | 1,022 | 60,539 |
| 6/30/2009 | 96,806 | 1,025 | 99,196 |
| 7/01/2009 | 95,331 | 1,026 | 97,773 |
| 7/02/2009 | 61,751 | 1,054 | 65,042 |
| 7/03/2009 | 22 | 1,054 | 23 |
| 7/04/2009 | 33 | 1,048 | 34 |
| 7/05/2009 | 3,938 | 1,059 | 4,185 |
| 7/06/2009 | 49,574 | 1,058 | 52,458 |
| 7/07/2009 | 49,447 | 1,059 | 52,372 |
| 7/08/2009 | 49,991 | 1,054 | 52,754 |
| 7/09/2009 | 50,875 | 1,057 | 53,793 |
| 7/10/2009 | 51,789 | 1,040 | 53,939 |
| 7/11/2009 | 49,857 | 1,049 | 52,306 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 7/12/2009 | 49,811 | 1,062 | 52,909 |
| 7/13/2009 | 50,490 | 1,056 | 53,308 |
| 7/14/2009 | 50,059 | 1,060 | 53,037 |
| 7/15/2009 | 51,748 | 1,055 | 54,575 |
| 7/16/2009 | 56,023 | 1,052 | 58,960 |
| 7/17/2009 | 78,205 | 1,052 | 82,271 |
| 7/18/2009 | 50,842 | 1,051 | 53,458 |
| 7/19/2009 | 51,489 | 1,051 | 54,126 |
| 7/20/2009 | 53,609 | 1,051 | 56,324 |
| 7/21/2009 | 80,574 | 1,049 | 84,566 |
| 7/22/2009 | 82,380 | 1,045 | 86,216 |
| 7/23/2009 | 75,156 | 1,055 | 79,274 |
| 7/24/2009 | 78,075 | 1,056 | 82,510 |
| 7/25/2009 | 50,331 | 1,055 | 53,119 |
| 7/26/2009 | 51,580 | 1,055 | 54,426 |
| 7/27/2009 | 99,113 | 1,058 | 104,841 |
| 7/28/2009 | 98,150 | 1,062 | 104,209 |
| 7/29/2009 | 93,623 | 1,055 | 98,826 |
| 7/30/2009 | 99,839 | 1,048 | 104,666 |
| 7/31/2009 | 73,045 | 1,061 | 77,468 |
| 8/01/2009 | 78,330 | 1,056 | 82,797 |
| 8/02/2009 | 76,145 | 1,053 | 80,245 |
| 8/03/2009 | 80,580 | 1,045 | 84,458 |
| 8/04/2009 | 101,317 | 1,038 | 105,188 |
| 8/05/2009 | 98,614 | 1,061 | 104,646 |
| 8/06/2009 | 79,682 | 1,059 | 84,549 |
| 8/07/2009 | 80,344 | 1,057 | 84,932 |
| 8/08/2009 | 48,424 | 1,034 | 50,116 |
| 8/09/2009 | 48,056 | 1,053 | 50,591 |
| 8/10/2009 | 80,220 | 1,031 | 82,899 |
| 8/11/2009 | 104,473 | 1,031 | 107,709 |
| 8/12/2009 | 102,417 | 1,033 | 105,743 |
| 8/13/2009 | 103,779 | 1,025 | 106,368 |
| 8/14/2009 | 86,643 | 1,031 | 89,185 |
| 8/15/2009 | 84,105 | 1,027 | 86,509 |
| 8/16/2009 | 88,022 | 1,024 | 90,203 |
| 8/17/2009 | 99,444 | 1,029 | 102,371 |
| 8/18/2009 | 104,489 | 1,024 | 107,040 |
| 8/19/2009 | 106,515 | 1,025 | 109,196 |
| 8/20/2009 | 109,945 | 1,022 | 112,390 |

# Daily Station Volume    [Chart](#)

**Station:**   00803 FORE RIVER (NORFOLK,MA)

**Period:**   9/1/2007 To 8/29/2010    **Report Date:**   8/30/2010 9:06 AM

**Analyst:**   [Cheryl D. Dudley](#)    **Phone:**   713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 8/21/2009 | 117,129 | 1,021 | 119,537 |
| 8/22/2009 | 105,757 | 1,022 | 108,135 |
| 8/23/2009 | 107,067 | 1,024 | 109,605 |
| 8/24/2009 | 106,360 | 1,024 | 108,945 |
| 8/25/2009 | 103,965 | 1,025 | 106,572 |
| 8/26/2009 | 100,376 | 1,023 | 102,657 |
| 8/27/2009 | 105,756 | 1,023 | 108,155 |
| 8/28/2009 | 84,897 | 1,022 | 86,792 |
| 8/29/2009 | 51,220 | 1,023 | 52,392 |
| 8/30/2009 | 49,126 | 1,021 | 50,161 |
| 8/31/2009 | 51,846 | 1,018 | 52,796 |
| 9/01/2009 | 56,917 | 1,020 | 58,043 |
| 9/02/2009 | 104,296 | 1,033 | 107,704 |
| 9/03/2009 | 87,192 | 1,033 | 90,048 |
| 9/04/2009 | 45,765 | 1,012 | 46,293 |
| 9/05/2009 | 52,547 | 1,013 | 53,249 |
| 9/06/2009 | 48,041 | 1,013 | 48,682 |
| 9/07/2009 | 49,988 | 1,014 | 50,667 |
| 9/08/2009 | 55,161 | 1,047 | 57,806 |
| 9/09/2009 | 104,262 | 1,042 | 108,539 |
| 9/10/2009 | 103,409 | 1,049 | 108,484 |
| 9/11/2009 | 87,835 | 1,035 | 90,582 |
| 9/12/2009 | 84,710 | 1,056 | 89,497 |
| 9/13/2009 | 99,632 | 1,055 | 105,067 |
| 9/14/2009 | 103,322 | 1,039 | 107,449 |
| 9/15/2009 | 103,656 | 1,051 | 108,863 |
| 9/16/2009 | 109,837 | 1,024 | 112,482 |
| 9/17/2009 | 103,921 | 1,024 | 106,370 |
| 9/18/2009 | 83,309 | 1,027 | 85,543 |
| 9/19/2009 | 52,623 | 1,026 | 53,975 |
| 9/20/2009 | 62,929 | 1,026 | 64,537 |
| 9/21/2009 | 107,259 | 1,024 | 109,844 |
| 9/22/2009 | 103,845 | 1,029 | 106,831 |
| 9/23/2009 | 103,106 | 1,053 | 108,539 |
| 9/24/2009 | 103,554 | 1,052 | 108,990 |
| 9/25/2009 | 60,916 | 1,040 | 63,144 |
| 9/26/2009 | 57 | 1,039 | 60 |
| 9/27/2009 | 37 | 1,046 | 39 |
| 9/28/2009 | 2,997 | 1,050 | 3,151 |
| 9/29/2009 | 48,241 | 1,051 | 50,719 |

# Daily Station Volume     [Chart](Chart)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010     **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](Cheryl D. Dudley)     **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 9/30/2009 | 51,646 | 1,051 | 54,271 |
| 10/01/2009 | 104,479 | 1,052 | 109,898 |
| 10/02/2009 | 103,321 | 1,053 | 108,781 |
| 10/03/2009 | 101,221 | 1,045 | 105,845 |
| 10/04/2009 | 100,024 | 1,045 | 104,554 |
| 10/05/2009 | 103,031 | 1,052 | 108,349 |
| 10/06/2009 | 116,371 | 1,048 | 122,054 |
| 10/07/2009 | 109,847 | 1,047 | 115,162 |
| 10/08/2009 | 106,664 | 1,035 | 110,438 |
| 10/09/2009 | 108,073 | 1,032 | 111,565 |
| 10/10/2009 | 96,934 | 1,026 | 99,404 |
| 10/11/2009 | 92,346 | 1,044 | 96,413 |
| 10/12/2009 | 105,746 | 1,038 | 109,798 |
| 10/13/2009 | 106,241 | 1,036 | 109,984 |
| 10/14/2009 | 99,293 | 1,044 | 103,640 |
| 10/15/2009 | 102,671 | 1,049 | 107,651 |
| 10/16/2009 | 107,308 | 1,049 | 112,517 |
| 10/17/2009 | 106,005 | 1,036 | 109,903 |
| 10/18/2009 | 108,543 | 1,048 | 113,670 |
| 10/19/2009 | 111,640 | 1,039 | 116,133 |
| 10/20/2009 | 113,099 | 1,026 | 116,082 |
| 10/21/2009 | 111,357 | 1,027 | 114,353 |
| 10/22/2009 | 109,174 | 1,033 | 112,804 |
| 10/23/2009 | 104,296 | 1,044 | 108,881 |
| 10/24/2009 | 102,576 | 1,042 | 106,836 |
| 10/25/2009 | 90,764 | 1,048 | 95,134 |
| 10/26/2009 | 98,403 | 1,045 | 102,858 |
| 10/27/2009 | 106,580 | 1,045 | 111,445 |
| 10/28/2009 | 96,115 | 1,044 | 100,323 |
| 10/29/2009 | 91,165 | 1,046 | 95,350 |
| 10/30/2009 | 86,221 | 1,040 | 89,844 |
| 10/31/2009 | 52,522 | 1,048 | 55,039 |
| 11/01/2009 | 52,599 | 1,048 | 55,108 |
| 11/02/2009 | 53,604 | 1,038 | 55,638 |
| 11/03/2009 | 52,030 | 1,047 | 54,484 |
| 11/04/2009 | 48,778 | 1,045 | 50,989 |
| 11/05/2009 | 52,676 | 1,042 | 54,904 |
| 11/06/2009 | 53,399 | 1,042 | 55,658 |
| 11/07/2009 | 56,111 | 1,045 | 58,627 |
| 11/08/2009 | 54,290 | 1,042 | 56,586 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 11/09/2009 | 56,413 | 1,039 | 58,648 |
| 11/10/2009 | 52,894 | 1,034 | 54,668 |
| 11/11/2009 | 54,751 | 1,026 | 56,196 |
| 11/12/2009 | 53,086 | 1,025 | 54,405 |
| 11/13/2009 | 54,223 | 1,024 | 55,527 |
| 11/14/2009 | 53,938 | 1,028 | 55,473 |
| 11/15/2009 | 50,856 | 1,040 | 52,864 |
| 11/16/2009 | 52,887 | 1,048 | 55,446 |
| 11/17/2009 | 54,687 | 1,047 | 57,271 |
| 11/18/2009 | 55,082 | 1,047 | 57,680 |
| 11/19/2009 | 52,817 | 1,047 | 55,319 |
| 11/20/2009 | 53,639 | 1,036 | 55,580 |
| 11/21/2009 | 55,036 | 1,028 | 56,558 |
| 11/22/2009 | 56,489 | 1,027 | 58,008 |
| 11/23/2009 | 56,649 | 1,024 | 58,022 |
| 11/24/2009 | 54,573 | 1,025 | 55,905 |
| 11/25/2009 | 36,379 | 1,025 | 37,254 |
| 11/26/2009 | 33 | 1,027 | 34 |
| 11/27/2009 | 56 | 1,030 | 57 |
| 11/28/2009 | 63 | 1,041 | 66 |
| 11/29/2009 | 63 | 1,045 | 66 |
| 11/30/2009 | 62 | 1,048 | 65 |
| 12/01/2009 | 65 | 1,050 | 68 |
| 12/02/2009 | 62 | 1,050 | 65 |
| 12/03/2009 | 60 | 1,049 | 63 |
| 12/04/2009 | 60 | 1,049 | 63 |
| 12/05/2009 | 62 | 1,047 | 65 |
| 12/06/2009 | 1,640 | 1,047 | 1,724 |
| 12/07/2009 | 55,940 | 1,043 | 58,314 |
| 12/08/2009 | 77,263 | 1,045 | 80,757 |
| 12/09/2009 | 57,304 | 1,035 | 59,334 |
| 12/10/2009 | 99,897 | 1,041 | 103,954 |
| 12/11/2009 | 97,558 | 1,045 | 101,859 |
| 12/12/2009 | 112,725 | 1,038 | 116,995 |
| 12/13/2009 | 113,772 | 1,027 | 116,800 |
| 12/14/2009 | 108,771 | 1,027 | 111,674 |
| 12/15/2009 | 99,858 | 1,052 | 105,042 |
| 12/16/2009 | 101,077 | 1,058 | 106,887 |
| 12/17/2009 | 90,255 | 1,052 | 95,019 |
| 12/18/2009 | 85,348 | 1,048 | 89,331 |

# Daily Station Volume   [Chart](#)

**Station:**     00803 FORE RIVER (NORFOLK,MA)

**Period:**     9/1/2007 To 8/29/2010     **Report Date:**     8/30/2010 9:06 AM

**Analyst:**     [Cheryl D. Dudley](#)       **Phone:**     713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 12/19/2009 | 55,556 | 1,053 | 58,505 |
| 12/20/2009 | 60,260 | 1,055 | 63,579 |
| 12/21/2009 | 94,007 | 1,054 | 99,205 |
| 12/22/2009 | 108,586 | 1,051 | 114,154 |
| 12/23/2009 | 106,676 | 1,055 | 112,564 |
| 12/24/2009 | 78,602 | 1,058 | 83,116 |
| 12/25/2009 | 53,499 | 1,036 | 55,487 |
| 12/26/2009 | 54,624 | 1,060 | 57,896 |
| 12/27/2009 | 50,014 | 1,058 | 52,925 |
| 12/28/2009 | 56,985 | 1,040 | 59,208 |
| 12/29/2009 | 90,590 | 1,053 | 95,352 |
| 12/30/2009 | 93,339 | 1,052 | 98,128 |
| 12/31/2009 | 84,059 | 1,041 | 87,785 |
| 1/01/2010 | 51,368 | 1,026 | 52,692 |
| 1/02/2010 | 54,874 | 1,028 | 56,378 |
| 1/03/2010 | 58,179 | 1,036 | 60,284 |
| 1/04/2010 | 97,803 | 1,034 | 101,136 |
| 1/05/2010 | 104,393 | 1,049 | 109,529 |
| 1/06/2010 | 106,734 | 1,053 | 112,292 |
| 1/07/2010 | 109,219 | 1,050 | 114,713 |
| 1/08/2010 | 86,118 | 1,048 | 90,239 |
| 1/09/2010 | 53,188 | 1,052 | 55,944 |
| 1/10/2010 | 54,279 | 1,053 | 57,179 |
| 1/11/2010 | 54,136 | 1,054 | 57,056 |
| 1/12/2010 | 53,111 | 1,054 | 55,988 |
| 1/13/2010 | 55,660 | 1,054 | 58,644 |
| 1/14/2010 | 54,063 | 1,055 | 57,020 |
| 1/15/2010 | 53,313 | 1,050 | 55,984 |
| 1/16/2010 | 50,593 | 1,050 | 53,116 |
| 1/17/2010 | 55,166 | 1,050 | 57,920 |
| 1/18/2010 | 53,694 | 1,047 | 56,250 |
| 1/19/2010 | 52,872 | 1,048 | 55,404 |
| 1/20/2010 | 52,397 | 1,061 | 55,579 |
| 1/21/2010 | 52,375 | 1,062 | 55,621 |
| 1/22/2010 | 52,198 | 1,061 | 55,355 |
| 1/23/2010 | 52,007 | 1,065 | 55,405 |
| 1/24/2010 | 55,858 | 1,065 | 59,510 |
| 1/25/2010 | 53,387 | 1,069 | 57,084 |
| 1/26/2010 | 52,812 | 1,061 | 56,011 |
| 1/27/2010 | 50,761 | 1,065 | 54,071 |

# Daily Station Volume   [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 1/28/2010 | 54,058 | 1,068 | 57,723 |
| 1/29/2010 | 75,401 | 1,057 | 79,699 |
| 1/30/2010 | 55,828 | 1,060 | 59,162 |
| 1/31/2010 | 53,769 | 1,060 | 57,000 |
| 2/01/2010 | 49,776 | 1,063 | 52,933 |
| 2/02/2010 | 56,462 | 1,052 | 59,406 |
| 2/03/2010 | 57,276 | 1,054 | 60,387 |
| 2/04/2010 | 61,638 | 1,053 | 64,862 |
| 2/05/2010 | 84,822 | 1,052 | 89,182 |
| 2/06/2010 | 56,451 | 1,054 | 59,527 |
| 2/07/2010 | 54,042 | 1,056 | 57,045 |
| 2/08/2010 | 53,946 | 1,052 | 56,762 |
| 2/09/2010 | 52,874 | 1,052 | 55,619 |
| 2/10/2010 | 59,643 | 1,052 | 62,727 |
| 2/11/2010 | 102,118 | 1,051 | 107,372 |
| 2/12/2010 | 83,404 | 1,046 | 87,174 |
| 2/13/2010 | 55,356 | 1,046 | 57,888 |
| 2/14/2010 | 52,100 | 1,048 | 54,592 |
| 2/15/2010 | 54,927 | 1,050 | 57,681 |
| 2/16/2010 | 56,403 | 1,050 | 59,216 |
| 2/17/2010 | 98,988 | 1,049 | 103,886 |
| 2/18/2010 | 101,829 | 1,051 | 107,011 |
| 2/19/2010 | 79,803 | 1,059 | 84,544 |
| 2/20/2010 | 50,711 | 1,061 | 53,798 |
| 2/21/2010 | 51,794 | 1,067 | 55,225 |
| 2/22/2010 | 53,083 | 1,055 | 55,948 |
| 2/23/2010 | 53,708 | 1,065 | 57,211 |
| 2/24/2010 | 51,684 | 1,067 | 55,130 |
| 2/25/2010 | 50,627 | 1,069 | 54,109 |
| 2/26/2010 | 51,979 | 1,070 | 55,647 |
| 2/27/2010 | 52,304 | 1,063 | 55,633 |
| 2/28/2010 | 54,596 | 1,064 | 58,086 |
| 3/01/2010 | 98,736 | 1,065 | 105,127 |
| 3/02/2010 | 97,495 | 1,067 | 104,010 |
| 3/03/2010 | 81,762 | 1,062 | 86,802 |
| 3/04/2010 | 59,184 | 1,069 | 63,299 |
| 3/05/2010 | 105,271 | 1,062 | 111,884 |
| 3/06/2010 | 96,005 | 1,038 | 99,636 |
| 3/07/2010 | 93,638 | 1,045 | 97,863 |
| 3/08/2010 | 94,477 | 1,045 | 98,737 |

# Daily Station Volume  [Chart](#)

**Station:**     00803 FORE RIVER (NORFOLK,MA)

**Period:**     9/1/2007 To 8/29/2010     **Report Date:**     8/30/2010 9:06 AM

**Analyst:**     [Cheryl D. Dudley](#)     **Phone:**     713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 3/09/2010 | 102,683 | 1,040 | 106,794 |
| 3/10/2010 | 103,515 | 1,050 | 108,657 |
| 3/11/2010 | 105,744 | 1,047 | 110,739 |
| 3/12/2010 | 63,632 | 1,045 | 66,485 |
| 3/13/2010 | 59 | 1,045 | 62 |
| 3/14/2010 | 59 | 1,045 | 62 |
| 3/15/2010 | 8,397 | 1,045 | 8,793 |
| 3/16/2010 | 52,946 | 1,046 | 55,385 |
| 3/17/2010 | 99,240 | 1,045 | 103,656 |
| 3/18/2010 | 105,539 | 1,044 | 110,185 |
| 3/19/2010 | 81,927 | 1,046 | 85,710 |
| 3/20/2010 | 80,703 | 1,048 | 84,593 |
| 3/21/2010 | 82,476 | 1,048 | 86,479 |
| 3/22/2010 | 104,894 | 1,048 | 109,956 |
| 3/23/2010 | 94,222 | 1,047 | 98,673 |
| 3/24/2010 | 88,499 | 1,045 | 92,562 |
| 3/25/2010 | 88,665 | 1,036 | 91,874 |
| 3/26/2010 | 74,885 | 1,050 | 78,626 |
| 3/27/2010 | 58,126 | 1,043 | 60,644 |
| 3/28/2010 | 59,701 | 1,047 | 62,514 |
| 3/29/2010 | 90,300 | 1,046 | 94,422 |
| 3/30/2010 | 91,512 | 1,050 | 96,068 |
| 3/31/2010 | 86,015 | 1,049 | 90,227 |
| 4/01/2010 | 52,190 | 1,049 | 54,755 |
| 4/02/2010 | 53,586 | 1,043 | 55,867 |
| 4/03/2010 | 52,258 | 1,050 | 54,880 |
| 4/04/2010 | 49,224 | 1,050 | 51,700 |
| 4/05/2010 | 62,747 | 1,050 | 65,878 |
| 4/06/2010 | 102,724 | 1,040 | 106,824 |
| 4/07/2010 | 99,454 | 1,046 | 103,967 |
| 4/08/2010 | 90,130 | 1,050 | 94,637 |
| 4/09/2010 | 102,586 | 1,041 | 106,800 |
| 4/10/2010 | 102,477 | 1,042 | 106,841 |
| 4/11/2010 | 106,996 | 1,046 | 111,873 |
| 4/12/2010 | 106,260 | 1,043 | 110,865 |
| 4/13/2010 | 103,702 | 1,053 | 109,254 |
| 4/14/2010 | 104,599 | 1,035 | 108,319 |
| 4/15/2010 | 103,264 | 1,032 | 106,583 |
| 4/16/2010 | 101,061 | 1,041 | 105,225 |
| 4/17/2010 | 101,695 | 1,036 | 105,463 |

# Daily Station Volume     [Chart](#)

**Station:**  00803 FORE RIVER (NORFOLK,MA)

**Period:**  9/1/2007 To 8/29/2010      **Report Date:**  8/30/2010 9:06 AM

**Analyst:**  [Cheryl D. Dudley](#)      **Phone:**      713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 4/18/2010 | 102,766 | 1,035 | 106,384 |
| 4/19/2010 | 100,706 | 1,039 | 104,546 |
| 4/20/2010 | 106,643 | 1,039 | 110,842 |
| 4/21/2010 | 108,722 | 1,042 | 113,182 |
| 4/22/2010 | 104,583 | 1,039 | 108,648 |
| 4/23/2010 | 102,930 | 1,040 | 107,060 |
| 4/24/2010 | 100,719 | 1,047 | 105,461 |
| 4/25/2010 | 103,966 | 1,048 | 109,000 |
| 4/26/2010 | 105,856 | 1,039 | 110,022 |
| 4/27/2010 | 105,511 | 1,037 | 109,448 |
| 4/28/2010 | 105,281 | 1,045 | 110,104 |
| 4/29/2010 | 103,443 | 1,033 | 106,915 |
| 4/30/2010 | 101,631 | 1,046 | 106,352 |
| 5/01/2010 | 100,702 | 1,048 | 105,521 |
| 5/02/2010 | 102,586 | 1,050 | 107,646 |
| 5/03/2010 | 106,932 | 1,041 | 111,455 |
| 5/04/2010 | 107,405 | 1,029 | 110,597 |
| 5/05/2010 | 104,639 | 1,045 | 109,426 |
| 5/06/2010 | 106,710 | 1,032 | 110,076 |
| 5/07/2010 | 70,676 | 1,032 | 72,834 |
| 5/08/2010 | 43 | 1,036 | 44 |
| 5/09/2010 | 92 | 1,042 | 96 |
| 5/10/2010 | 94 | 1,048 | 98 |
| 5/11/2010 | 90 | 1,049 | 95 |
| 5/12/2010 | 72 | 1,049 | 75 |
| 5/13/2010 | 88 | 1,049 | 92 |
| 5/14/2010 | 77 | 1,048 | 81 |
| 5/15/2010 | 72 | 1,048 | 76 |
| 5/16/2010 | 327 | 1,048 | 342 |
| 5/17/2010 | 2,946 | 1,047 | 3,083 |
| 5/18/2010 | 52,384 | 1,047 | 54,871 |
| 5/19/2010 | 51,730 | 1,052 | 54,399 |
| 5/20/2010 | 46,191 | 1,070 | 49,456 |
| 5/21/2010 | 42,515 | 1,054 | 44,827 |
| 5/22/2010 | 49,589 | 1,065 | 52,803 |
| 5/23/2010 | 54,117 | 1,059 | 57,349 |
| 5/24/2010 | 52,344 | 1,054 | 55,183 |
| 5/25/2010 | 53,394 | 1,051 | 56,116 |
| 5/26/2010 | 52,711 | 1,049 | 55,267 |
| 5/27/2010 | 53,013 | 1,051 | 55,694 |

# Daily Station Volume  [Chart](Chart)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010     **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](Cheryl D. Dudley)     **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 5/28/2010 | 72,342 | 1,053 | 76,196 |
| 5/29/2010 | 74,242 | 1,054 | 78,253 |
| 5/30/2010 | 53,676 | 1,053 | 56,511 |
| 5/31/2010 | 105,064 | 1,052 | 110,490 |
| 6/01/2010 | 101,828 | 1,052 | 107,075 |
| 6/02/2010 | 100,811 | 1,050 | 105,864 |
| 6/03/2010 | 100,919 | 1,047 | 105,623 |
| 6/04/2010 | 106,061 | 1,034 | 109,738 |
| 6/05/2010 | 110,161 | 1,030 | 113,417 |
| 6/06/2010 | 104,938 | 1,030 | 108,043 |
| 6/07/2010 | 105,063 | 1,027 | 107,881 |
| 6/08/2010 | 101,278 | 1,027 | 104,045 |
| 6/09/2010 | 103,922 | 1,050 | 109,056 |
| 6/10/2010 | 107,069 | 1,050 | 112,463 |
| 6/11/2010 | 102,474 | 1,032 | 105,817 |
| 6/12/2010 | 89,478 | 1,051 | 94,004 |
| 6/13/2010 | 89,197 | 1,053 | 93,885 |
| 6/14/2010 | 106,285 | 1,049 | 111,563 |
| 6/15/2010 | 109,431 | 1,043 | 114,107 |
| 6/16/2010 | 106,189 | 1,040 | 110,487 |
| 6/17/2010 | 99,670 | 1,039 | 103,568 |
| 6/18/2010 | 102,757 | 1,044 | 107,341 |
| 6/19/2010 | 99,780 | 1,038 | 103,535 |
| 6/20/2010 | 102,681 | 1,051 | 107,929 |
| 6/21/2010 | 105,667 | 1,048 | 110,722 |
| 6/22/2010 | 108,749 | 1,041 | 113,268 |
| 6/23/2010 | 111,924 | 1,047 | 117,076 |
| 6/24/2010 | 113,106 | 1,035 | 117,017 |
| 6/25/2010 | 109,018 | 1,032 | 112,453 |
| 6/26/2010 | 108,168 | 1,031 | 111,548 |
| 6/27/2010 | 113,163 | 1,031 | 116,686 |
| 6/28/2010 | 110,920 | 1,047 | 116,100 |
| 6/29/2010 | 108,936 | 1,050 | 114,345 |
| 6/30/2010 | 105,487 | 1,030 | 108,661 |
| 7/01/2010 | 108,991 | 1,025 | 111,697 |
| 7/02/2010 | 104,333 | 1,038 | 108,244 |
| 7/03/2010 | 100,068 | 1,042 | 104,283 |
| 7/04/2010 | 99,716 | 1,027 | 102,426 |
| 7/05/2010 | 107,701 | 1,030 | 110,924 |
| 7/06/2010 | 111,912 | 1,051 | 117,655 |

# Daily Station Volume     [Chart](#)

**Station:**    00803 FORE RIVER (NORFOLK,MA)

**Period:**    9/1/2007 To 8/29/2010    **Report Date:**    8/30/2010 9:06 AM

**Analyst:**    [Cheryl D. Dudley](#)    **Phone:**    713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 7/07/2010 | 112,952 | 1,046 | 118,115 |
| 7/08/2010 | 114,801 | 1,026 | 117,774 |
| 7/09/2010 | 116,446 | 1,015 | 118,206 |
| 7/10/2010 | 105,066 | 1,027 | 107,931 |
| 7/11/2010 | 113,209 | 1,028 | 116,347 |
| 7/12/2010 | 114,943 | 1,027 | 117,998 |
| 7/13/2010 | 116,445 | 1,027 | 119,585 |
| 7/14/2010 | 104,406 | 1,026 | 107,099 |
| 7/15/2010 | 107,703 | 1,025 | 110,366 |
| 7/16/2010 | 112,144 | 1,025 | 114,974 |
| 7/17/2010 | 109,000 | 1,027 | 111,888 |
| 7/18/2010 | 103,308 | 1,026 | 105,998 |
| 7/19/2010 | 105,034 | 1,027 | 107,827 |
| 7/20/2010 | 108,407 | 1,026 | 111,212 |
| 7/21/2010 | 106,306 | 1,032 | 109,595 |
| 7/22/2010 | 103,854 | 1,027 | 106,630 |
| 7/23/2010 | 99,422 | 1,028 | 102,160 |
| 7/24/2010 | 111,769 | 1,029 | 114,997 |
| 7/25/2010 | 101,840 | 1,028 | 104,681 |
| 7/26/2010 | 101,857 | 1,029 | 104,801 |
| 7/27/2010 | 110,932 | 1,028 | 114,067 |
| 7/28/2010 | 117,068 | 1,028 | 120,350 |
| 7/29/2010 | 113,469 | 1,027 | 116,480 |
| 7/30/2010 | 105,605 | 1,028 | 108,588 |
| 7/31/2010 | 106,388 | 1,029 | 109,475 |
| 8/01/2010 | 109,452 | 1,047 | 114,592 |
| 8/02/2010 | 109,398 | 1,031 | 112,804 |
| 8/03/2010 | 108,570 | 1,024 | 111,227 |
| 8/04/2010 | 113,620 | 1,039 | 118,005 |
| 8/05/2010 | 106,791 | 1,030 | 110,015 |
| 8/06/2010 | 103,367 | 1,029 | 106,404 |
| 8/07/2010 | 108,068 | 1,029 | 111,243 |
| 8/08/2010 | 117,083 | 1,029 | 120,524 |
| 8/09/2010 | 115,085 | 1,029 | 118,468 |
| 8/10/2010 | 115,681 | 1,029 | 119,081 |
| 8/11/2010 | 109,758 | 1,029 | 112,984 |
| 8/12/2010 | 109,349 | 1,028 | 112,427 |
| 8/13/2010 | 113,439 | 1,027 | 116,460 |
| 8/14/2010 | 109,178 | 1,025 | 111,901 |
| 8/15/2010 | 106,870 | 1,025 | 109,527 |

# Daily Station Volume  [Chart](#)

**Station:** 00803 FORE RIVER (NORFOLK,MA)

**Period:** 9/1/2007 To 8/29/2010    **Report Date:** 8/30/2010 9:06 AM

**Analyst:** [Cheryl D. Dudley](#)    **Phone:** 713-627-5584

| Gas Date | Volume | Btu | Energy |
|---|---|---|---|
| 8/16/2010 | 113,495 | 1,025 | 116,386 |
| 8/17/2010 | 109,870 | 1,026 | 112,700 |
| 8/18/2010 | 105,433 | 1,026 | 108,150 |
| 8/19/2010 | 112,826 | 1,027 | 115,837 |
| 8/20/2010 | 105,287 | 1,026 | 108,081 |
| 8/21/2010 | 105,929 | 1,027 | 108,812 |
| 8/22/2010 | 111,455 | 1,030 | 114,782 |
| 8/23/2010 | 107,290 | 1,030 | 110,493 |
| 8/24/2010 | 102,363 | 1,027 | 105,168 |
| 8/25/2010 | 108,486 | 1,026 | 111,335 |
| 8/26/2010 | 116,345 | 1,027 | 119,493 |
| 8/27/2010 | 105,564 | 1,027 | 108,456 |
| 8/28/2010 | 93,215 | 1,027 | 95,715 |
| 8/29/2010 | 97,987 | 1,026 | 100,566 |
| **Total** | **72,798,764** | **N/A** | **75,710,933** |
| **Daily Avg** | **67,096** | **1,040** | **69,780** |
| **Daily Min** | **1** | **1,011** | **1** |
| **Daily Max** | **117,129** | **1,099** | **122,054** |



**EXHIBIT B**

To Affidavit of Richard M. Paglia
In Support of Motion of Algonquin Gas Transmission, LLC
To Intervene and Protest Application
For Authorization of Disposition of Jurisdictional Facilities

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| **Fore River Development, LLC** | ) | |
| **Mystic I, LLC** | ) | |
| **Mystic Development, LLC** | ) | **Docket No. EC10-085-000** |
| **Boston Generating, LLC** | ) | |
| **Constellation Mystic Power, LLC** | ) | |

**AFFIDAVIT OF PAUL J. HIBBARD**
**ON BEHALF OF ALGONQUIN GAS TRANSMISSION, LLC**
**IN SUPPORT OF MOTION TO INTERVENE AND PROTEST**
**OF ALGONQUIN GAS TRANSMISSION, LLC.**

September 8, 2010

I, Paul J. Hibbard, under penalty of perjury, declare the following to be true to the best of my knowledge:

1.      I am employed by Analysis Group, Inc. in their office in Boston, Massachusetts as Vice President in their energy practice. I submit this affidavit in support of the Motion To Intervene and Protest of Algonquin Gas Transmission, LLC ("Algonquin") ("Motion").

2.      I make the findings in this affidavit based on my personal knowledge of the electric and natural gas industries in New England, and based on my experience related to the technical, economic and regulatory factors affecting the planning for, and operation of, the New England electric power system.

3.      My personal knowledge and experience with respect to the electricity and natural gas industries in New England includes public sector and private sector positions focused on the economics, technology, and policy of energy supply and demand. As a consultant I have provided technical and strategic advice to government, industry, business, public interest groups, and trade organizations on energy market structure, power system modeling, electric and natural gas infrastructure planning and siting, utility resource solicitation and procurement, emission allocation and environmental policy, renewable resource program design and administration, transmission pricing, climate change policy, utility ratemaking practices, and the transfer of U.S. federal and state emission control programs to other countries. Immediately prior to rejoining Analysis Group in August, 2010, I was Chairman of the Massachusetts Department of Public Utilities, appointed to that position by Governor Deval Patrick in April, 2007. As Chairman, I was responsible, in relevant part, for overseeing natural gas utility supply adequacy, planning, and pricing; and electric utility planning, economics, and power system reliability. During my term as Chairman, I provided testimony on resource planning, competitive electricity markets, power supply adequacy and reliability, and transmission pricing in hearings before Committees of the Massachusetts Legislature and the U.S. House of Representatives, the Federal Energy Regulatory Commission, state and regional planning councils; as well as in presentations to numerous industry and trade organizations. I also served as a member on the Massachusetts Energy Facilities Siting Board, the New England Governors'

Conference Power Planning Committee, and the NARUC Electricity Committee and Procurement Work Group, and was appointed as State Manager for the New England States Committee on Electricity and as Treasurer to the Executive Committee of the 41-state Eastern Interconnect States' Planning Council. A copy of my Curriculum Vitae is included as Attachment 1.

4.   Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion.

5.   Paragraphs 6-13, below are my understanding based upon my review of materials provided to me by Algonquin, the Affidavit of Algonquin Vice President Richard Paglia, and upon conversations with Algonquin personnel.

6.   The Fore River Power Plant is a 688 megawatt ("MW") (summer rating; 836 MW winter rating) combined-cycle power plant, capable at that rating of generating up to 16, 512 MWh per day. Independent System Operator New England ("ISO-NE") Capacity Energy, Loads, and Transmission Report, April, 2010 ("CELT Report"). The Fore River Power Plant burns natural gas to generate power. The Fore River Plant went into service in August 2003, and is located in North Weymouth, Massachusetts, which is approximately 12 miles south of Boston. The Fore River Plant is currently owned by Fore River Development, LLC ("Fore River").

7.   The Fore River Plant receives natural gas for power plant operations via Algonquin's HubLine pipeline. This is the only means for Fore River to receive natural gas for plant operations.

8.   Fore River receives its natural gas from Algonquin's HubLine under an agreement between Algonquin and Fore River ("HubLine Service Agreement") pursuant to which Algonquin reserves capacity and provides transportation service for natural gas tendered by Fore River on a firm basis for a primary term of twenty years. On August 27, 2010, Fore River (and other affiliated subsidiaries of Fore River's parent company, Boston Generating, LLC) made a filing, seeking authority, pursuant to 11 U.S.C. § 365(a), to

3

reject two executory contracts - the HubLine Service Agreement and a terminalling agreement between Fore River and Sprague Energy Corp ("Rejection Motion"). The Rejection Motion is presently scheduled to be heard by the Bankruptcy Court on September 13, 2010.

9. Under the HubLine Service Agreement, Algonquin reserves capacity for, and transports up to, 140,000 dekatherms ("Dth") of natural gas per day delivered at a single delivery point serving the Fore River Plant. The Fore River Plant has a single delivery point where natural gas is delivered to the plant. Fore River has the right under its service agreement to receive gas on the Algonquin pipeline system at two primary receipt points for transport to the Fore River Plant. The first primary receipt point is the interconnection of the Algonquin pipeline with the Maritimes & Northeast Pipeline system in Beverly, Massachusetts, which can receive up to 70,000 Dth per day. The second primary receipt point is the interconnection of Algonquin's Q and I-3 pipeline systems, which can likewise receive up to 70,000 Dth per day. Together, these two primary receipt points receive up to the maximum daily transportation quantity ("MDTQ") of 140,000 Dth reserved for Fore River pursuant to the HubLine Service Agreement.

10. The applicable recourse rates for such service on Algonquin's HubLine facilities are established under Rate Schedule AFT-1 which is part of Algonquin's FERC-approved gas tariff (the "Algonquin Tariff"). Section 7 of Rate Schedule AFT-1 incorporates by reference the General Terms and Conditions of the Algonquin Tariff. The negotiated rates for shippers on the HubLine Project, including Fore River, were approved by the FERC in a Letter Order issued on November 7, 2003, in Docket No. RP00-70-003. The negotiated rate applicable to the HubLine Service Agreement was subsequently modified and approved by the FERC in a Letter Order dated February 21, 2008 in Docket No. RP00-70-018.

11. When initially conceived, the Fore River Plant intended to use natural gas as its primary source of fuel and to have the option to use low sulfur diesel fuel as a backup fuel source. Rejection Motion, ¶ 11. However, Fore River has never successfully implemented the

ability to efficiently run the Fore River Plant using low sulfur diesel fuel. Id. As a result, the Fore River Plant has solely been operated using natural gas. Id. The ability to operate the Fore River Plant efficiently on low-sulfur fuel remains in doubt, and in any event would likely require substantial additional capital expenditures. Id.

12. No other natural gas pipeline serves the Fore River Plant. If a purchaser of the Fore River Plant does not assume the HubLine Service Agreement and desires to operate the plant using natural gas, the purchaser will need to enter into alternative arrangements for transportation of natural gas on the Algonquin pipeline that otherwise would have been transported under the Hubline Service Agreement, presumably at a rate different than the FERC-approved rate for service under the HubLine Service Agreement.

13. Under the HubLine Service Agreement, the Fore River Plant has primary (i.e., highest priority) access to capacity on Algonquin's pipeline for transportation of volumes of natural gas of up to 140,000 Dth per day. If the HubLine Service Agreement is rejected, there will be no transportation service agreements in place with Algonquin where a shipper will have the Fore River delivery point as a primary point of delivery on its contract. In the absence of an alternate firm transportation service agreement with Algonquin establishing the Fore River delivery point as a primary point of delivery, the Fore River Plant owner will be dependent upon gas being delivered to the Fore River Plant under service agreements having a lower service priority, and, thus, subject to curtailment before service agreements with primary firm priority, like the service currently provided under the HubLine Service Agreement. Moreover, the HubLine Service Agreement gives the shipper certain delivery pressure assurances on Algonquin's HubLine System with respect to the natural gas that Algonquin delivers to the Fore River delivery point that will no longer be in place if the HubLine Service Agreement is rejected.

14. The Fore River Plant is located electrically within the Southeast Massachusetts load area ("SEMA"), adjacent to the Northeast Massachusetts/Boston load area ("NEMA/Boston"). CELT Report. Eastern Massachusetts, including the SEMA and NEMA/Boston load areas, includes the largest share of residential and business customers in New England,

that consumed 40 million MWh of energy in 2009 (32 percent of New England annual consumption), and had peak electrical load of 8,374 MW in 2009 (34 percent of the New England peak load). CELT Report. The Fore River Plant and approximately 5,358 MW of additional generating capacity within the SEMA load zone serve load within SEMA, and to customers within NEMA/Boston and other load areas through export across transmission lines that separate SEMA from NEMA/Boston and other areas. ISO September 2010 Seasonal Claimed Capability Report. Planning for and operation of the New England power system are the responsibility of ISO-NE.

15.    The Fore River Plant's ability to be counted as available to meet load at the time of system peak, or when needed to maintain reliability of the system under sudden changes (or "contingencies"), depends upon the security of fuel supply. If delivery of fuel to the plant can not be counted on, the plant can not be counted on by ISO-NE to be available when needed to meet power system needs.

16.    As described in the Paglia Affidavit, rejection of the Hubline Service Agreement would mean that the Fore River Plant would no longer have assurance of primary point firm transportation service for any quantity of natural gas. While the Fore River Plant would continue to be able to receive natural gas transportation service under lower-priority service agreements, at any moment in time it is possible that delivery of natural gas to the Fore River Plant would be curtailed in favor of higher-priority service customers. In addition, as described in the Paglia Affidavit, if the Hubline Service Agreement is rejected, Fore River will have no assurance that the pressure of gas at its delivery point will be within an acceptable range for efficient plant operation.

17.    As described in the Rejection Motion, at 5, it can not be assumed that, absent the ability to secure delivery of natural gas supplies, the plant would be able to run on a back-up fuel (low-sulfur diesel oil).

18.    Under the Hubline Service Agreement, firm fuel deliverability would be guaranteed under contract until 2023. Rejection of the Hubline Service Agreement would thus eliminate the current guaranteed delivery of natural gas to the Fore River Plant for a

period of approximately 12 years. As described in the Paglia Affidavit, if the Hubline Service Agreement is rejected the delivery capacity previously reserved for Fore River may be subscribed by another shipper, and any future owner of the Fore River Plant thus may not be able to secure primary firm deliverability.

19.     Consequently, in the absence of demonstrated capability under back-up fuel supply, the rejection of the Hubline Service Agreement would diminish or eliminate the ability for the Fore River Plant to be counted on as available if or when needed to meet power system needs in any hour, including at the time of system peak, or during any power system contingency events.

20.     Any such outcome is likely to degrade the current level of power system reliability for consumers in the local area of the Fore River plant, and – over the term of the Hubline Service Agreement – degrade power system reliability across the SEMA region, and potentially Eastern Massachusetts and the rest of New England, relative to the level of system reliability that would exist if the Fore River Plant operated under firm fuel deliverability conditions.

21.     In order to maintain transmission voltages on the New England Transmission System within acceptable limits, certain qualified generating units are operated by ISO-NE to produce (or absorb) reactive power. This service is known as Reactive Service and Voltage Control ("RS&VC"). ISO-NE Open Access Transmission Tariff, Section II, Schedule 2, at 111. The Fore River Plant is qualified to provide RS&VC, and as a qualified resource Fore River receives fixed monthly payments for being available to provide RS&VC, and variable payments when called upon, as determined by ISO-NE in the course of day-to-day operation of the electric system. Maintaining transmission voltages within acceptable limits is critical to maintaining the reliability of the transmission system within SEMA and the rest of New England.

22.     While Fore River receives fixed monthly payments for being available to provide RS&VC, the ability of the Fore River Plant to provide such services when called upon in real time depends on whether or not the Plant is available to operate. Termination of the Hubline Service Agreement would diminish the ability of the Fore River Plant to provide

RS&VC when called upon, and thus would reduce the reliability of transmission system operation in SEMA, Eastern Massachusetts, and New England.

23.     In 2006 Fore River submitted a request under Section 205 of the Federal Power Act ("FPA") for a determination that the unit was needed for New England system-wide reliability, and thus was entitled to payment under a Reliability Must Run agreement ("RMR").  Letter of ISO-NE in FERC Docket No. ER06-822-001, Fore River Development, LLC, May 30, 2006, at 1.  In its initial review of the need for the Fore River Plant, ISO-NE identified the unit as providing 668.4 MW of capacity (summer rating), and RS&VC in the form of 483 MVAR (lagging) and 342 MVAR (leading). ISO-NE Planning Department RMR Form, Evaluation of Need for Fore River, December 8, 2005.  ISO-NE determined that the Plant was needed to support transmission system voltages and reduce thermal loadings on the 115 kilovolt transmission system in SEMA under certain transmission system contingencies.  Id at 2.  However, in its May letter ISO notes that after continuing review and consultation with local transmission owners and stakeholders, it found that such contingencies need not have an inter-Area (that is, outside of the local load area) impact, and thus the Fore River Plant would not be needed for system-wide reliability.  Id at 2-3.  While this represents the finding of ISO-NE in 2006, it does not necessarily follow that this will remain true over the remainder of the term of the Hubline Service Agreement as system conditions change, a point that will be discussed more below.

24.     Importantly, however, the remedies available to maintain reliability absent operation of the Fore River Plant under the identified contingencies would likely impact local area power system reliability.  In fact, in its analysis ISO-NE concludes that loss of the facility under certain contingencies need not have inter-Area impacts *because* such contingencies could be addressed through special operating practices, including switching arrangements or a combination of *local area load shedding* and generator redispatch.  Id at 2.  Further, ISO-NE notes that in fact, "[t]he ability to utilize switching is very limited in this case and area load shedding and generator redispatch are the more likely alternatives."  Id, footnote 5.

25.     Consequently, while ISO determined at that time that the Fore River plant was not
        needed as an RMR facility for New England-wide power system reliability (in other
        words, to avoid a cascading outage of the entire regional network), the unavailability of
        the plant could at times require local area load shedding, or "rolling blackouts," to
        maintain the integrity of local area power system operations.  While the ISO's job is to
        ensure that system resources are sufficient from an operational perspective to maintain
        the integrity of the power system as a whole, and to prevent cascading outages that could
        result in system-wide failure, operational procedures may allow the rolling of outages in
        local areas to maintain system-wide integrity.

26.     While local, rolling blackouts are not as severe as system-wide blackouts, they
        nevertheless have potentially significant economic, safety and convenience impacts on
        residents and businesses in the affected area.  Consequently, even though ISO determined
        that in 2006 it was not necessary to implement a reliability must run contract for the Fore
        River plant in order to ensure system-wide reliability, a decrease in the availability of the
        Fore River plant will likely decrease the reliability of power supply for at least those
        consumers in the local area that could be exposed to rolling blackouts.

27.     In consideration of these factors, it is my professional opinion that the rejection and/or
        non-availability of service under the Hubline Service Agreement, by reducing the ability
        to count on operation of the Fore River Plant under peak load or system contingency
        circumstances, would diminish the reliability of power supply for at least some portion of
        business and residential electricity consumers within Massachusetts.

28.     It is also important, however, to recognize that ISO-NE's evaluation of reliability need
        for a given power plant is by definition a static analysis, one that is conducted for a given
        point in time based upon a plant owner's request for such analysis.  The analysis for the
        Fore River Plant occurred five years ago, in 2006.  The same analysis may not still be
        relevant today, and more importantly could change significantly over the term over the
        next 12 years representing the term of the Hubline Service Agreement.  In considering
        this, in my judgment there are several factors that have emerged since the time of ISO's
        decision in 2006 that could make it more likely than not that the availability of the Fore

River plant will increase in importance from the perspective of power system reliability, over the term of the Hubline Service Agreement.

29. First, the importance of the contribution of any individual plant in a load area to power system reliability changes over time with changes in load levels and patterns, generating plant additions and retirements, and changes to the transmission infrastructure. While economic conditions have recently suppressed load growth, a period of economic recovery in the future would likely lead to growth in load. This in fact is a pattern – one of alternating periods of high and low load growth – that has repeated cyclically over time and, in my view, can be expected to continue.

30. Second, there is a significant probability that other generation capacity within SEMA and the rest of Eastern Massachusetts will retire over the term of the Agreement, increasing the importance of firm capacity availability for the Fore River Plant. One driver of such potential retirement is current economics of plant operation relative to other plants in New England. Specifically, ISO has administered four Forward Capacity Auctions ("FCA") over the past several years. In the most recent auction, owners of 875 MW of generation within Eastern Massachusetts have entered "delist" bids for those units. In effect, a delist bid is a request by owners of capacity to be released from their obligation to be available to maintain system reliability. If ISO-NE believes a unit is needed for reliability in the year of the FCA, it will "reject" the delist bid. If ISO-NE is willing to let the unit delist, it will "clear" the delist bid. For the fourth auction, for power year 2013-2014, ISO cleared 127 MW and rejected 749 MW of delist bids in Eastern Massachusetts. ISO-NE website, report on FCA 4. It stands to reason that as delist bids are accepted or cleared (allowing them to not operate if the owner so chooses), the importance of remaining capacity to be available for reliability reasons increases.

31. While one may consider the level of delisting in FCAs to this point to be relatively modest, it will potentially become more severe over the next few years. Specifically, it is expected by many in the industry that combination of several quickly-emerging factors will lead to potentially meaningful retirement of older and less efficient fossil-fired generation across at least the eastern U.S. Coal Fired Electric Generation Unit

10

Retirement Analysis, ICF International, May 11, 2010. These factors include (1) emerging court-ordered changes to EPA air and water regulations, (2) additional EPA-proposed regulations related to mercury, other hazardous air pollutants ("HAP"), and liquid and solid waste from power plant operations, (3) the increasing stringency of applicable Regional Greenhouse Gas Initiative ("RGGI") requirements (for power plants in the Northeast), and (4) the possibility of federal carbon control requirements on at least the power sector. While the Fore River plant is among the most efficient and clean fossil fuel capacity within New England, SEMA, and Eastern Massachusetts, these regions contain significant capacity of older, less efficient fossil generation that would be considered at-risk. Specifically, in Massachusetts there are approximately 7,700 MW of fossil-fired generation built in the 1970s or earlier, approximately 6,800 MW of which are fueled by oil or coal. SNL Financial Power Plant Data.

32.    In consideration of the combination of these factors – the emergence of delisting requests from capacity within Eastern Massachusetts, the potential impact over the next 3-5 years on a significant amount of generation in New England, SEMA, and Eastern Massachusetts of EPA air, water, and waste regulations, and the evolution of regional and possible emergence of federal carbon control requirements on the power sector – it is reasonable to expect that the importance of the Fore River plant for maintaining the reliability of the SEMA load pocket, Eastern Massachusetts, and the New England power system will increase over the term of the Hubline Service Agreement.

33.    In this context, the degradation of firm transportation capacity for natural gas delivery to the Fore River Plant that will result if the Hubline Service Agreement is rejected will only enhance the risk from the standpoint of New England and SEMA power system reliability concerns.

34.    The rejection of the Hubline Service Agreement has the further potential to degrade the economics of Fore River plant operation, and thus diminish the value of the asset from the perspective of potential purchasers. Specifically, participation in the Forward Capacity Market ("FCM") requires that a plant's capacity be available for dispatch by ISO-NE in all months of the year (this is referred to as the plant's Capacity Supply

Obligation, or "CSO"). Transmission, Markets and Services Tariff, ISO-NE . Fore River has cleared the FCM in all four FCAs, for power years 2010-2014, meaning it will receive capacity revenues and has a CSO for plant capacity throughout those years. ISO-NE website, Reports on FCA Results. Rejecting the Hubline Service Agreement would decrease the reliability of fuel supply to the plant, and would thus increase the risk that the plant would not be available if called upon by ISO to meet its CSO. Consequently, the new owner of Fore River will either need to replace its CSO through the purchase of replacement capacity, or face the risk that it will be penalized for not being available if called upon. Thus, cancellation of the fuel delivery contract will diminish the potential value of the plant from the perspective of revenues captured through the FCM.

35.     In addition, a plant's potential value in the energy market depends significantly on that plant's availability to operate during periods of relative scarcity, when energy market prices are at their highest. Many of the highest-price hours occur during summer and winter peaks when load is high, and consequently when power plant utilization is at its highest. Consequently, it is in these high-priced hours that on a regional basis operation of natural gas units – and thus the delivery and supply of natural gas for power plant operations – is in its highest demand, with units that have firm supply and deliverability receiving priority service. Without firm supply and transportation, a unit is less likely to be able to capture energy market revenues at times when prices are highest. Considering these factors, in my judgment it is possible that eliminating the assurance of fuel deliverability by rejection of the Hubline Service Agreement will diminish the ability of the Fore River Plant's owners to capture energy market revenues in hours when prices are highest, thus further diminishing the profitability of plant operation and the value of the asset.

36.   I, Paul J. Hibbard, depose and state that the contents of the foregoing Affidavit on behalf of Algonquin is true, correct, accurate and complete to the best of my knowledge, information and belief.


Dated:  September 8, 2010


Paul J. Hibbard
Vice President
Analysis Group, Inc.

ATTACHMENT 1

CURRICULUM VITAE OF PAUL J. HIBBARD

**Paul J. Hibbard**
**Vice President**

Phone: (617) 425-8000
Fax:    (617) 425-8001
phibbard@analysisgroup

111 Huntington Ave.
Tenth Floor
Boston, MA 02199

Paul Hibbard is an expert on economics, transmission and resource planning, regulation, and policy in the electric and gas industries. Throughout his career, he has promoted an aggressive agenda of advanced ratemaking and policy initiatives for regulated utilities. Mr. Hibbard has also provided technical and strategic advice to government, industry, business, public interest groups, and trade organizations on energy market structure, electric and natural gas infrastructure planning and siting, utility resource solicitation and procurement, emission allocation and environmental policy, renewable resource program design and administration, transmission pricing, climate change policy, utility ratemaking practices, and the transfer of U.S. federal and state emission control programs to other countries.

Mr. Hibbard has a comprehensive background merging technical analysis, resource planning and development modeling, economics, and public policy in energy and environmental fields. Prior to joining Analysis Group, Mr. Hibbard was Chairman of the Massachusetts Department of Public Utilities. He was appointed to that position by Governor Deval Patrick in April, 2007. As Chairman, Mr. Hibbard carried out an aggressive ratemaking and policy agenda to advance energy efficiency and renewable resources, coordinate regional efforts in the development of energy resources and associated infrastructure, and promote the administration of fair and efficient transmission pricing models in regional and national contexts. During his term as Chairman, Mr. Hibbard provided testimony on resource planning, competitive electricity markets, and transmission pricing in hearings before Committees of the Massachusetts Legislature and the U.S. House of Representatives, the Federal Energy Regulatory Commission, and state and regional planning councils. Mr. Hibbard served asa member on the Massachusetts Energy Facilities Siting Board, the New England Governors' Conference Power Planning Committee, and the NARUC Electricity Committee and Procurement Work Group. He was also appointed as State Manager for the New England States Committee on Electricity and as Treasurer to the Executive Committee of the 41-state Eastern Interconnect States' Planning Council.

Prior to 2007, Mr. Hibbard held Vice President, Manager, and Senior Consultant positions at Analysis Group and Lexecon, Inc., providing technical and policy analysis and strategic advice to energy sector clients in a wide range of market, policy and infrastructure areas. From 1991-2000, Hibbard worked for both utility and environmental regulatory agencies in Massachusetts on utility resource planning, industry restructuring, market design, and power plant emission control and allowance allocation mechanisms.

## EDUCATION

Ph.D. program (coursework), Nuclear Engineering, University of California, Berkeley

M.S. in Energy and Resources, University of California, Berkeley
*Thesis: Safety and Environmental Hazards of Nuclear Reactor Designs*

B.S. in Physics, University of Massachusetts, Amherst

## PROFESSIONAL EXPERIENCE

2010 - Present     Analysis Group, Inc., Boston, MA
*Vice President*

2007 - 2010     MA Department of Public Utilities, Boston, MA
*Chairman*
*Member, Energy Facilities Siting Board*
*Manager, New England States Committee on Electricity*
*Treasurer, Executive Committee, Eastern Interconnect States' Planning Council*
*Representative, New England Governors' Conference Power Planning Committee*
*Member, NARUC Electricity Committee, Procurement Work Group*

2003 - 2007     Analysis Group, Inc., Boston, MA
*Vice President*
*Manager ('03 – '05)*

2000 - 2003     Lexecon Inc., Cambridge, MA
*Senior Consultant*
*Consultant ('00 – '02)*

1998 - 2000     Massachusetts Department of Environmental Protection, Boston, MA
*Environmental Analyst*

1991 - 1998     Massachusetts Department of Public Utilities, Boston, MA
*Senior Analyst, Electric Power Division*

1988 - 1991     University of California, Berkeley, CA
*Research Assistant, Safety/Environmental Factors in Nuclear Designs*

1987 - 1988     Greenpeace, Boston, MA
*Director of Outreach*

## SELECTED PUBLIC SECTOR EXPERIENCE

- ***Chairman, Department of Public Utilities*** – Chaired the state's public utilities commission during a period of aggressive change in state policies affecting electricity and natural gas industries, including initial implementation of several new state energy laws and initiatives restructuring the setting of utility rates, promoting the expansion of energy efficiency and demand response, facilitating the retail and wholesale market integration of renewable and low-carbon resources, and revising state policy on the siting of major generation and transmission infrastructure. Oversaw the issuance of initial regulations and policy related to revenue decoupling, net metering, long-term contracting for renewables, and power system emergency planning and outage restoration. Also, led Massachusetts' work with regulators across the Northeast to pursue large-scale renewable resource development through coordinated procurement strategies, to develop coordinated positions related to national transmission development proposals, and to establish a regional presence on transmission-related provisions in federal legislation. As Chairman, served as administrative and policy head of an agency of nearly 150 employees, responsible for agency management and growth, budgeting, legislative matters, press inquiries, and setting of the policy agenda. Responsible for overseeing completion of all dockets jurisdictional to the DPU, including rate cases and associated tariff matters, forecast and supply planning for electric and natural gas industries, and state oversight of natural gas pipeline safety and public transit authorities. Also responsible for all interaction with the Governor's office, Legislature, and Executive Office of Energy and Environmental Affairs, as well as representing the state in regional deliberations related to electric and natural gas utility policy, electricity market design and oversight, and regional power system reliability issues.

- *Member, Energy Facilities Siting Board* – Sitting member of state Board with responsibility to review all proposals for major generation and transmission infrastructure projects within the state, as well as state intervention in federal review of natural gas pipeline infrastructure. Involved technical, environmental, and economic review of jurisdictional power plants, transmission lines, and other energy infrastructure, as well as ruling on proposals for exemption from state and local zoning ordinances.

- *Manager, New England States Committee on Electricity* – State representative on regional group chartered to develop New England regional policy positions on electricity market and transmission planning issues. Included consideration of group development issues, input into regional determinations of installed capacity requirement, consideration of regional approaches to transmission planning and the consideration of non-transmission alternatives, and coordinated development of a regional RFP/RFI for the solicitation of renewable power under long-term contracts for the New England states.

- *Treasurer, Executive Committee, Eastern Interconnect States' Planning Council* – Elected Treasurer of steering committee for state council formed under a U.S. DOE grant, to coordinate with power system operators on developing long-range plans for the transmission system spanning 41 states in the Eastern U.S. Coordinated New England states' approach to policy issues stemming from council efforts.

- *Representative, NEGC Power Planning Committee* – Represented Governor's Office in all discussions related to regional energy/environmental issues, including transmission cost allocation, regional energy policy coordination, and development of mechanisms and approaches for procurement of renewable power through long-term contracts with sources in New England and Eastern Canada. Engaged in collaborative discussions with counterparts representing the Eastern Canadian Premiers.


## SELECTED CONSULTING EXPERIENCE

### Government, Foundations, Commissions, Cooperatives

- *For the National Commission on Energy Policy* – Authored white papers on (1) the implications for U.S. energy infrastructure of the damage to Gulf Coast energy facilities from Hurricanes Katrina and Rita (2006); (2) the practical and economic implications of various mechanisms for the allocation of carbon dioxide emission allowances to the electric sector under potential federal carbon control regimes (2005), and (3) national energy infrastructure needs for the electricity, natural gas, and petroleum industries, and for addressing the long-term impacts of energy production and use associated with spent nuclear fuel and carbon dioxide (2004).

- *For the Attorney General, State of North Carolina* – Managed project in support of expert testimony on the economic and financial feasibility of requiring the installation of controls to reduce emissions of sulfur dioxide, nitrogen oxides, and mercury from coal-fired power plants owned by the Tennessee Valley Authority (TVA). Project is in the context of a public nuisance lawsuit brought by the NC Attorney General against TVA (2006).

- *For the Energy Foundation* – Coauthored a Report (with Dr. Susan Tierney) documenting best practices in energy facility siting regulations in the U.S., and analyzing in particular the impact of California's energy facility siting process on that state's electricity crisis (2002). Supported a foundation-based program to provide international assistance to China's efforts to privatize and restructure its electric industry, and to develop regulations to control air emissions from power plants in that country (2000 – 2003).

- *For the Massachusetts Technology Collaborative* – Managed projects in support of the MTC's renewable and premium power programs, including (1) creation of a standard financial pro-forma for wind and landfill gas technologies in New England under various assumptions related to capital and

operating costs, financing, discount rates, and the impact of state and federal policies to support renewable development; (2) development of an economic model to determine the financial impact on potential wind and combined heat and power facilities of proposed changes to utility standby service tariffs; and (3) research, strategic, and regulatory support of MTC's efforts to advance distributed generation in Massachusetts to promote renewable resources and improve power reliability for commercial and industrial customers (2000 – 2002).

- *For the Massachusetts Health and Educational Facilities Authority (MHEFA) PowerOptions Program* – Managed several projects providing regulatory, economic, and strategic advice to PowerOptions to assist in their selection and pricing of retail electricity products from competitive electricity suppliers. Over a three-year period projects included analyses of forward prices and wholesale markets for capacity and reserves; analysis of contract price options, terms and conditions; and analysis of congestion pricing implications for retail supply (2002 – 2004).

## Other Electric Industry Experience

- *For Independent System Operators (ISO)* – Managed several projects and coauthored reports or analyses for the Northeast region's ISOs/RTOs, related to ISO/RTO annual strategic plans; market monitoring and mitigation best practices; and the links between wholesale electricity markets and local distribution company retail prices (2002 – 2006).

- *For Electric Utilities* – Managed or participated in numerous engagements with wires-only as well as vertically-integrated electric utilities within New England and across the country related to rate case strategy and regulatory support; strategic planning; power supply resource planning and procurement (including the role of independent monitor of utility procurements); price and environmental analyses related to the siting of new high-voltage transmission lines; and evaluation of the allocation of $SO_2$ and $NO_x$ emission allowances under the EPA CAIR program (2001 – 2006).

- *For Retail Energy Providers* – Managed projects and authored or coauthored confidential reports on the experience with retail competition in the U.S., a benefit/cost analysis of wholesale electricity competition, and comparative analyses of retail electricity prices for utility and competitive retail suppliers in select states (2004 – 2006).

- *For Merchant Generating Companies/Coalitions* – Managed production cost dispatching analyses for strategic planning related to the construction of new generating capacity in New England; assisted in the development of regulatory proposals for new wholesale market organizations and policies in New England (2001-2002).

- *For a Renewable Power Developer Association* – Provided testimony on the potential negative effects – and remedial policy options – related to the impact of locational marginal pricing on the development and operation of renewable generating resources in New England (2001).

- *For an Industry Coalition* – Conducted a study and coauthored a white paper (with Dr. Susan Tierney) for the New England Energy Alliance on New England energy infrastructure needs and policy issues (e.g., facility siting policies, RGGI/climate change) influencing the future addition of energy infrastructure in the region.

## Other Natural Gas Industry Experience

- *For an Interstate Pipeline Company and Offshore LNG Developer* – Authored a Report related to recent developments in the supply and demand for natural gas in New England, and surveyed the development, regulatory and commercial status of proposed LNG projects across the U.S. (2006); coauthored a Report (with Dr. Susan Tierney) providing an overview of Northeastern natural gas markets and conditions, and an assessment of natural gas supply and demand conditions (2005).

- *For a Developer of a Land-Based LNG Facility* – Assisted in the preparation of confidential reports on U.S. natural gas supply/demand conditions, market pricing indices, U.S. LNG facilities' status,

Northeast interstate and intrastate pipeline infrastructure conditions and prospects, and LNG supply contract prices, terms and conditions (2006).

- *For a Major Interstate Pipeline Owner/Operator* – Modeled the electrical load characteristics of pipeline operations and utility rate structures to quantify the extent to which the company was being overcharged for electricity services. Supported company intervention in public utility commission proceedings and with analytical support in settlement negotiations (2002).

## SELECTED REPORTS, TESTIMONY AND PRESENTATIONS

"Deregulation and Sustainable Energy," class lecture, MIT (Jonathan Raab Energy Course), Cambridge MA, March 2010.

"Transmission for Renewables," presentation to Raab Restructuring Roundtable, Boston MA, March 2010.

"Federal Transmission Legislation," comments to Capitol Hill Briefing of the Coalition for Fair Transmission Policy, Washington DC, April 2010.

"Transmission Planning & Cost Allocation Alternatives under Order 890," comments to the Energy Bar Association's 64th Meeting, Washington DC, April 2010.

"US Electric Power Transmission: The Battle of the Jurisdictions," comments to CERAWeek 2010, March, 2010.

"New England Blueprint and the Federal Context," presentation to ISO-NE Consumer Liaison Group Meeting, Westborough MA, February 2010.

"Interconnection-Wide Planning and Renewable Energy," comments to the National Wind Coordinating Collaborative, Transmission Update Briefing, December 2009.

"Infrastructure Planning," comments to Northeast Energy and Commerce Association Power Markets Conference, Westborough MA, November 2009.

"Transmission for Renewables - Risks and Opportunities for the Northeast," Presentation to Governor's Clean Energy Innovation Forum, New Brunswick, NJ, October 2009.

"Renewable Energy Development – The Role of Markets and Planning," presentation to Northeast Power Planning Council General Meeting, Cambridge MA, September, 2009.

"Transmission Planning," comments to FERC Technical Conference on Transmission Planning Processes Under Order No. 890, Docket No. AD09-8-000, Philadelphia, PA, September, 2009.

"New England Governors' Blueprint – Purpose and Context," presentation to the Raab Restructuring Roundtable, Boston MA, September 2009.

"Wind, Transmission, and Federal Legislation," comments to MIT Wind Group, Cambridge MA, Fall, 2009.

"National Transmission Policy," comments to The Energy Daily's Transmission Siting Policy Summit, Washington DC, September 2009.

Testimony to the Massachusetts' Joint Committee on Telecommunications, Utilities and Energy Hearing to Review Implementation of the Green Communities Act, Boston MA, July 8, 2009.

"Federal Transmission Legislation," comments to the National Association of State Utility Consumer Advocates, Boston MA, July 2009.

"Renewable Energy Development - The Role of Markets and Planning," presentation to Governor's Wind Energy Coalition, Washington DC, July 2009.

"Transmission and Renewables: ISO and Regulator Perspectives" comments to the Raab Restructuring Roundtable, Boston MA, June 2009.

"Renewable Development In and For New England; Massachusetts' Perspective," presentation to Law Seminars International, Boston MA, June 2009.

"Roadmap to New Renewable Resources in New England," comments on New England Governors' Blueprint to NECPUC Annual Symposium, Newport, RI, May 2009.

"Comments of Chairman Paul Hibbard," presented to EBC Energy Seminar: New Transmission – The Key to Renewable Resource Integration in New England, Boston MA, April, 2009.

"Coordinating Wind and Transmission Development – Who Pays?" Comments to 2009 Platts Wind Power Development Conference, Chicago, IL, March, 2009.

"Integrating Energy and Environmental Regulations in Massachusetts," presentation to Northeast Sustainable Energy Association Building Energy Conference'09, Boston, MA, March, 2009.

"One Reason for the GCA: Energy Pricing in Massachusetts," presentation to the South Shore Coalition, Hingham MA, January 2009.

"Non-Reliability Transmission: State Choice and Control," presentation to the New England Conference of Public Utility Commissioners Transmission Group, Chelmsford MA, January 2009.

"Regulation and Renewable Energy Policy," panel moderator, Center for Resource Solutions National Renewable Energy Marketing Conference, Denver, CO, October, 2008.

"Energy Pricing in Massachusetts (…And What We Should Do About it)," presentation to Berkshire Gas Large Commercial and Industrial Customer Annual Meeting, Lenox MA, October, 2008.

"Conversation With Chairman Hibbard," presentation to New England Energy Alliance, Boston MA, September, 2008.

"Creating the Path: Delivering Clean Energy through Transmission Improvements," presentation to ISO-NE Lights, Power, Action Conference, Boston MA, September, 2008.

"Distributed Resources, the Decoupling Model, and the Green Communities Act," presentation to Raab Restructuring Roundtable, Boston MA, September, 2008.

"Resource Planning: The Contribution of Efficiency and Renewables in Massachusetts," presentation to Law Seminars International Renewable Energy in New England Conference, Boston MA, September 2008.

"Remarks to Economic Studies Working Group," ESWG Committee Meeting, Westborough MA, July 2008.

"Power Trade: Market Context and Opportunities," presentation to New England Governors' Council/Eastern Canadian Premiers' Energy Dialogue, Montreal Canada, May 2008.

"New England Transmission Investment," presentation to Municipal Electric Association of Massachusetts Annual Business Meeting, North Falmouth MA, April 2008.

"Bringing Power from the North," presentation to the Raab Restructuring Roundtable, Boston MA, February 2008.

"Natural Gas: Drivers of Supply, Demand, and Prices," comments to Guild of Gas Managers, November 2007.

"Generation and Demand Outlook for New England," presentation to NECA Dinner Meeting, Cambridge MA, September, 2007.

"Comments on ISO's Draft Regional System Plan," presentation to ISO Planning Advisory Committee, Boston MA, September 2007.

"Regulatory Pressures, Policy Opinions," presentation to Environmental Business Council, Boston MA, July 2007.

"Is New England Ensuring the Adequacy and Cost Effectiveness of the Region's Transmission Grid?" Panel moderator, New England Conference of Public Utility Commissioners Annual Symposium, Mystic CT, June 2007.

"Energy Regulation in Massachusetts – Concerns and Options," presentation to the Raab Restructuring Roundtable, Boston MA, June, 2007.

"View From the Regulatory Bench," comments to the New England Energy Conference and Exposition, Groton CT, May 2007.

"Energy for New England – The Demand, Supply and Price Context," presentation to Massachusetts Municipal Wholesale Electric Cooperative Annual Meeting, Boylston MA, May 2007.

"Demand Resources in New England: New Opportunities and Future Directions," Presentation at ISO-NE Annual Demand Resources Summit, Westborough MA, May 2007.

"Power Supply for the New England Region," presentation to the Boston Bar Association, Boston MA, March 2007.

"Fuel Supplies and the Need for Fuel Diversity: Forecast for Global Fuel Markets and the Likely Impact on Electric Generation in the Northeast," presentation to LSI Seminar on Resource Adequacy and Reliability in the Northeast, October 16, 2006.

"Consumers and Politicians Claim They Want Cheap, Reliable and Clean Energy – Do They Have the Will to Make That Happen?" – presentation to NAESCO New England Regional Meeting, September 28, 2006.

"The Need for New LNG Infrastructure in Massachusetts and New England: An Update," Report prepared for Northeast Gateway Energy Bridge, L.L.C., and Algonquin Gas Transmission, LLC, August, 2006.

"Natural Gas & LNG for New England: What's Needed & How To Get It," presentation to the Foundation for American Communications Meeting on *New England's Energy Needs – Who Pays and Who Suffers?*" May 17, 2006.

"Energy Policy Act Section 1813 Comments: Report of the Ute Indian Tribe of the Uintah and Ouray Reservation for Submission to the US Departments of Energy and Interior," (with Susan F. Tierney, and In Cooperation With The Ute Indian Tribe of the Uintah and Ouray Reservation), May 15, 2006.

"US Energy Infrastructure Vulnerability: Lessons From the Gulf Coast Hurricanes," Report to the National Commission on Energy Policy, March 2006.

"New England Energy Infrastructure – Adequacy Assessment and Policy Review" (with Susan F. Tierney), prepared for the New England Energy Alliance, November, 2005.

"Federal Legislative Developments in Energy," presentation to LSI Seminar on Energy in the Northeast, October 2005.

"The Benefits of New LNG Infrastructure in Massachusetts and New England: The Northeast Gateway Project," (with Susan F. Tierney), prepared for Northeast Gateway Energy Bridge, L.L.C., and Algonquin Gas Transmission, LLC, June, 2005.

"Climate Change Policy – New Business and Regulatory Risks," presentation to EnviroExpo & Conference, May, 2005.

"Carbon Cap & Trade Allocation Options – Practical Considerations," "Carbon Trading Program Emission Allowances: Practical Considerations for Allocation," and "Allocation of Carbon Allowances to Mitigate Electric Sector Costs," Reports to the National Commission on Energy Policy, May 2005.

"U.S. Energy Infrastructure: Demand, Supply and Facility Siting," Report to the National Commission on Energy Policy, November 2004.

"Comments of Susan F. Tierney and Paul. J. Hibbard on their own behalf," before the *Federal Energy Regulatory Commission, in the Matters of Solicitation Processes for Public Utilities (Docket No. PL04-6-000) and Acquisition and Disposition of Merchant Generation Assets by Public Utilities (Docket No. PL04-9-000),* on the role of independent monitors and independent evaluators in public utility resource solicitations, July 1, 2004.

"Energy and Environmental Policy in the United States: Synergies and Challenges in the Electric Industry" (with Susan F. Tierney), prepared for Le Centre Français sur les Etats-Unis (The French Center on the United States), July, 2003.

"Controlling China's Power Plant Emissions after Utility Restructuring: The Role of Output-Based Emission Controls" (with B.A. Finamore, N. Seidman, and T. Szymanski), *The Sinosphere Journal*, July 2002.

"Siting Power Plants in the New Electric Industry Structure: Lessons from California and Best Practices for Other States" (with S. Tierney), *The Electricity Journal*, June 2002.

"Siting Power Plants: Recent Experience in California and Best Practices in Other States" (with S. Tierney), prepared for The Hewlett Foundation and The Energy Foundation, February 2002.

"Setting and Administering Output-Based Emission Standards for the Power Sector: A Case Study of the Massachusetts Output-Based Emission Control Programs" (with N. Seidman and B. Finamore), prepared for the China Sustainable Energy Program, October 2001.

*Before the Federal Energy Regulatory Commission, New England Power Pool and ISO New England, Inc., Docket No. ER01-2329,* Joint Affidavit (with J. Besser) on behalf of the New England Renewable Power Producers Association, July 3, 2001.

"Output-Based Emission Control Programs – U.S. Experience" (with N. Seidman, B. Finamore, and D. Moskovitz), prepared for the China Sustainable Energy Program, May 2000.

"P2 and Power Plants: The Massachusetts Allowance Trading Program," in *Proceedings of the National Pollution Prevention Roundtable*, March 2000.

"Safety and Environmental Comparisons of Stainless Steel with Alternative Structural Materials for Fusion Reactors" (with A.P. Kinzig and J.P. Holdren), *Fusion Technology*, August 1994.

"Utility Environmental Impacts: Incentives and Opportunities for Policy Coordination in the New England Region," US EPA CX817494-01-0, RCEE Core Group, June 1994.

"Final Report: Code Development Incorporating Environmental, Safety, and Economic Aspects of Fusion Reactors," UC-BFE-027, Fusion Environmental and Safety Group, University of California, Berkeley, 1991.

**CERTIFICATE OF SERVICE**

I hereby certify that, I have this day caused to be served by First Class Mail or electronic mail the foregoing documents upon the parties to the official service list compiled by the Secretary for this proceeding.

Dated at Washington, DC this 8th day of September 2010.

*/s/ Claire M. Brennan__*
Claire M. Brennan
Paralegal Manager
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W.
Washington, DC  20005
202-346-8183