UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

Boston Generating, LLC,
et al.,[1]

     Debtors.

Chapter 11

Case No. 10-14419 (SCC)

Jointly Administered

Related Docket No. 24

### ORDER APPROVING AND AUTHORIZING (A) BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE ASSETS OF THE DEBTORS, (B) STALKING HORSE BID PROTECTIONS, (C) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS (D) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING AND (E) RELATED RELIEF

Upon the portion of the motion (the "**Motion**")[2] of Boston Generating, LLC and the other above-captioned debtors, as debtors and debtors-in-possession (collectively, the "**Debtors**"), for entry of an order approving and authorizing (a) bidding procedures, including stalking horse bidder protections, in connection with the receipt and analysis of competing bids for substantially all of the assets of the Debtors, (b) procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, (c) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With the Sale of Substantially All of the Assets of the Debtors, (d) the form and manner of notice of the Sale and scheduling the sale hearing and setting related dates and deadlines and (e) other related relief, pursuant to Sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meanings as set forth in the Motion.

**Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") and the Amended Guidelines for the Conduct of Asset Sales established and adopted by the United States Bankruptcy Court for the Southern District of New York pursuant to General Order M-383 (the "**Sale Guidelines**"); and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and this Court having found that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and hearings having been held on October 4-7 and 9, 2010 (collectively, the "**Hearing**"); and this Court having reviewed the Motion and the exhibits thereto and the arguments of counsel made and the evidence proffered or adduced, as applicable, at the Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having found the form and manner of notice of the Hearing is good, sufficient and appropriate under the circumstances and that no other or further notice need be provided or is necessary; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, this Court FINDS AND DETERMINES THAT:[3]

---

[3] The Court's opinion that was read into the record at the conclusion of the Hearing is attached hereto as <u>Schedule 1</u>.

  **A.**  **Bidding Procedures**. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures annexed as **Exhibit A** hereto (the "**Bidding Procedures**"), which are fair, reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

  **B.**  **Stalking Horse Bid Protections**. The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and the Reimbursable Expenses (the "**Bid Protections**") to the Stalking Horse Bidder under the circumstances, including, without limitation, that:

    i.  the Bid Protections are the product of negotiations among the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's-length, and the APA (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Acquired Assets in order to maximize the value of the Debtors' estates;

    ii.  the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

    iii.  the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the proposed Sale under the APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Acquired Assets will be received;

    iv.  the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the APA, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

    v.  the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the Stalking Horse Bidder's bid, which may be the highest and best available offer for the Acquired Assets, and which induced the Stalking Horse Bidder to submit a bid that will serve as

      a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Acquired Assets.

  **C.**  **Assumption and Assignment Procedures**.  The Motion, the Contract Notice annexed as **Exhibit B** hereto (the "**Contract Notice**") and the Assumption Notice annexed as **Exhibit C** hereto (the "**Assumption Notice**") are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the potential and actual assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures are reasonably calculated to facilitate the fair and orderly assumption and assignment of the Assumed Contracts.

  **D.**  **Sale Notice**.  The Sale Notice annexed as **Exhibit D** hereto (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the sale Motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the APA; (vi) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; (vi) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (vii) notice of the proposed assumption and assignment of contracts and leases to the Stalking Horse Bidder pursuant to the APA (or to another Successful Bidder arising from the Auction, if any), the proposed cure amounts relating thereto and the right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent set forth herein.

2. For the reasons stated on the record in open court on Monday, October 4, 2010,[4] none of (i) the pleadings filed by the Second Lien Administrative Agent, Second Lien Collateral Agent, any Second Lien Lender (in each case, as defined in that certain Collateral Agency and Intercreditor Agreement, dated as of December 21, 2006 (the "**Intercreditor Agreement**")), MatlinPatterson Global Advisers LLC (as investment advisor for one or more of its managed funds, accounts and/or affiliates that are parties in interest in the above-captioned matter, "**MatlinPatterson**"), CarVal Investors, LLC (on behalf of one or more of its managed funds, accounts and/or affiliates that are parties in interest in the above-captioned matter, "**CarVal**"), and Fortress Investment Group LLC (on behalf of one or more of its managed funds, accounts and/or affiliates that are parties in interest in the above-captioned matter, "**Fortress**"), in each case acting in such capacities as permitted by the Bankruptcy Court on the record, in support of an objection to the Motion or (ii) the prosecution thereof is a violation of the Intercreditor Agreement.  Accordingly, the Second Lien Administrative Agent, Second Lien Collateral Agent, each Second Lien Lender, MatlinPatterson, CarVal and Fortress each in its capacity as such, has standing to be heard in connection with the Motion.  Notwithstanding the foregoing, nothing in this order shall be deemed as determining whether the Second Lien Administrative Agent, Second Lien Collateral Agent or any Second Lien Lender has standing to object to anything other than the Debtors' request for approval of Bidding Procedures, including without limitation whether the Second Lien Administrative Agent, Second Lien Collateral Agent or the Second

---

[4] The Court's opinion that was read into the record on October 4, 2010 is attached hereto as Schedule 2.

Lien Lenders may object to a sale of the Debtors' assets under section 363 of the Bankruptcy Code, or may do so without violating the Intercreditor Agreement.

I.    **Important Dates and Deadlines**

3.    **Sale Hearing**.  November 17, 2010, at 10:00 a.m. prevailing Eastern Time, is the date and time the sale hearing (the "**Sale Hearing**") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at: One Bowling Green, Courtroom 610, New York, NY 10004.  Any obligations of the Debtors set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the APA are authorized as set forth herein and are fully enforceable as of the date of entry of this order.  **Please take notice that:** the Sale Hearing may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court or on this Court's calendar.

4.    **Sale Objection Deadline**.  November 9, 2010 at 4:00 p.m. prevailing Eastern Time, is the deadline to object to entry of the proposed Sale Order (the "**Sale Objection Deadline**").  Objections, if any, **must**: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 46] (the "**Case Management Order**"); (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so *actually received* no later than the Sale Objection Deadline by the following parties (the "**Objection Notice Parties**"):

| **Debtors** | **Counsel to Debtors** |
|---|---|
| Boston Generating, LLC<br>505 Fifth Avenue, 21st Floor, New York, NY 10017,<br>Attn: Mark Sudbey, Chief Executive Officer and Jeff | Latham & Watkins LLP<br>885 Third Avenue<br>New York NY 10022-4834 |

| | |
|---|---|
| Hunter, Manager, Executive Vice President, and Chief Financial Officer | Attn: D. J. Baker, Esq. and Robert J. Rosenberg, Esq. |
| **Counsel to the Agent for the First Lien Lenders** | **United States Trustee** |
| Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York NY 10019<br>Attn: Scott K. Charles, Esq. and Michael S. Benn, Esq. | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz, Esq. and Paul Schwartzberg, Esq. |
| **Counsel to the Agent for the Second Lien Lenders** | **Counsel to the Creditors' Committee** |
| Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attn: Allan S. Brilliant, Esq. and Craig P. Druehl, Esq. | Jager Smith P.C.<br>485 Madison Avenue, 20th Floor<br>New York, NY 10022<br>Attn: Bruce F. Smith, Esq. and Steven C. Reingold, Esq. |
| **Counsel to the Stalking Horse Bidder** | |
| Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attn: David Neier, Esq. | |

> **The failure to timely file an objection in accordance with this order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to the APA, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

5. **Response Deadline**. November 15, 2010 at 9:00 a.m., is the deadline for filing a response to any timely-filed objection to entry of the Sale Order with this Court; *provided*, that such deadline may be extended by agreement of the Debtors and the affected objecting party.

6. **Competitive Bidding**. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification as needed):

    a. **Preliminary Bid Deadline**: November 1, 2010, is the deadline by which anyone interested in participating in the bidding process must deliver the "**Preliminary Bid Documents**" (as defined in the Bidding Procedures);

   b. **Qualified Bid Deadline**: November 13, 2010[5] at 12:00 p.m. prevailing Eastern Time, is the deadline by which all "**Qualified Bids**" (as defined in the Bidding Procedures) must be *actually received* by the parties specified in the Bidding Procedures (the "**Bid Deadline**"); and

   c. **Auction**: November 15, 2010 at 10:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors: Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834.

## II.  Bidding Procedures and Related Relief

### A.  Bidding Procedures

7. The Bidding Procedures, substantially in the form annexed hereto as **Exhibit A** and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein. The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Acquired Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this order.

8. The Bid Protections described in the Motion are hereby approved to the extent set forth herein. The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the APA, including the Break-up Fee and the Reimbursable Expenses, without further order of this Court, except as otherwise provided herein.

9. As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the APA at the Sale Hearing. If one or more Qualified Bids is timely received

---

[5] Notwithstanding the fact November 13, 2010 is a Saturday, Qualified Bids are actually due on November 13, 2010 at 12:00 p.m. (Eastern Time).

from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

10. If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale. The Auction will be conducted openly and shall be transcribed or videotaped. Absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the Auction has been closed.

### III.  Assumption and Assignment Procedures

11. The following procedures regarding the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale are hereby approved to the extent set forth herein, and shall govern the assumption and assignment of all executory contracts and unexpired leases proposed to be assumed by the Debtors pursuant to Section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other successful bidder following the Auction, if any) pursuant to Section 365(f) of the Bankruptcy Code under the APA:

  a. **Contract Notice**. As soon as practicable after the entry of this Order, the Debtors shall file with the Court and serve on all non-debtor counterparties (the "**Contract Notice Parties**") to any executory contract or unexpired lease that may be assumed by the Debtors and assigned to the Successful Bidder, a "**Contract Notice**" in the form annexed hereto **Exhibit B** that identifies, to the extent applicable (i) the contract that may be an Assumed Contract, (ii) the name of the counterparty to such contract, (iii) the cure amount for such contract if it becomes an Assumed Contract, and (iv) the deadline by which any such Contract Notice Party must file any Objection to the proposed assumption and assignment; provided, however, that the presence of a contract on a Contract Notice does not constitute an admission that such contract is an executory contract. As soon as practicable after the selection or designation of the Successful Bid, the Debtors shall file with the Court and serve on the Contract Notice Parties a further notice in the form annexed hereto as

     **Exhibit C** (the "**Assumption Notice**") identifying the Successful Bidder and stating which executory contracts and unexpired leases will be Assumed Contracts, and no other or further notice will be required with respect to the Assumed Contracts.

  b. **Objections**.  Objections, if any, to the assumption and/or assignment of any contract or lease, proposed cure amount or adequate assurance of future performance proposed with respect thereto must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order; (iii) state with specificity the nature of the objection and, if to the cure amount proposed by the Debtors, the cure amount alleged by the objecting party, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with this Court and served upon so as to be *actually* *received* by the Objection Notice Parties on or before the Sale Objection Deadline; provided, that if, following the Auction, the Stalking Horse Bidder is not the Successful Bidder, the deadline for such counterparties shall be automatically extended through and until the commencement of the Sale Hearing.

  c. **Dispute Resolution**.  If the parties are not able to consensually resolve any such objection prior to the Sale Hearing, the dispute will be heard at the Sale Hearing (or such other date as fixed by this Court).

  12. Any party failing to timely file an objection to the assumption and assignment of any contract or lease or related cure amount listed on the Contract Notice shall be forever barred from objecting thereto, including asserting any additional cure or other default amounts against the Debtors or any of the Debtors' estates, the Stalking Horse Bidder or other Successful Bidder with respect to such executory contract(s) or unexpired lease(s) and shall be deemed to consent to the Sale and the assumption and assignment of such executory contract(s) or unexpired lease(s) effectuated in connection therewith.

**IV. Sale Hearing Notice and Related Relief**

  13. The Sale Notice, substantially in the form annexed hereto as **Exhibit D**, is hereby approved.  Within three (3) calendar days of the entry of this order, the Debtors shall cause the Sale Notice to be served upon, without limitation, (i) the Master Service List (as such term is defined in the Case Management Order), (ii) all known creditors of the Debtors, (iii) all parties

contacted as potential bidders during the pre-petition marketing of the Acquired Assets; (iv) parties who are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Acquired Assets, (v) all affected federal, state and local regulatory and taxing authorities and (vi) all parties to executory contracts or unexpired leases to be assumed and assigned or rejected as part of the Sale.

14. As soon as practicable after entry of this order, the Debtors shall cause the Sale Notice, substantially in the form annexed hereto as **Exhibit D** (with any necessary modifications for ease of publication), to be published once in the Boston Globe. The Debtors are also authorized, in their sole discretion, to publish the Sale Notice in other newspapers, trade journals, or similar publications.

15. The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this order.

16. The Motion is granted to the extent set forth herein, and all objections or other responses to the Motion are overruled or resolved on the terms set forth herein.

17. The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

18. Nothing herein shall preclude a bidder from submitting a competing bid in the form of a plan of reorganization and it being understood that such bid may be determined by the Debtors not to be a Qualified Bid.

19. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from, based upon or related to this order.

Date: October 12, 2010  
     New York, New York

/s/Shelley C. Chapman  
Honorable Shelley C. Chapman  
United States Bankruptcy Judge