## Schedule 1

**Opinion**

**[To follow and will be filed under separate cover]**

## **Schedule 2**

### **Opinion**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x   Case No. 10-14419 (scc)
*In re:*                                  New York, New York
      BOSTON GENERATING, LLC,          October 4, 2010
                Debtors.   8:49 a.m.
------------------------------------x

TRANSCRIPT OF CHAP 11 HEARING RE DOC #168 SUPPLEMENTAL NOTICE
OF HEARING (RELATED DOCUMENTS 32, 34, 29, 30, 33, 31).
DOC. #29, DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF LATHAM & WATKINS LLP AS BANKRUPTCY
COUNSEL NUNC PRO TUNC TO THE PETITION DATE.  DOC #30,
APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF J.P. MORGAN SECURITIES AS INVESTMENT
BANKER FOR THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE.  DOC.
#32, APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF BROWN RUDNICK LLP AS SPECIAL COUNSEL FOR THE
DEBTORS NUNC PRO TUNC TO THE PETITION DATE.  DOC. #33, DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF ANDERSON KILL & OLICK, P.C. AS CONFLICTS COUNSEL
FOR THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE.  DOC. #24
MOTION OF THE DEBTORS FOR ENTRY OF (I) AN ORDER APPROVING AND
AUTHORIZING (A) BIDDING PROCEDURES IN CONNECTION WITH THE SALE
OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS, (B) STALKING
HORSE BID PROTECTIONS, (C) PROCEDURES FOR THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF
THE DEBTORS, (D) THE FORM AND MANNER OF NOTICE OF THE SALE
HEARING, AND (E) RELATED RELIEF; AND (II) AN ORDER APPROVING AND
AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF
THE DEBTORS FREE AND CLEAR OF CLAIMS, LIENS, LIABILITIES, RIGHTS
INTERESTS AND ENCUMBRANCES, (B) THE DEBTORS TO ENTER INTO AND
PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT,
(C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, (D) THE TRANSITION SERVICES AGREEMENT AND
(E) RELATED RELIEF.  DOC #31, APPLICATION OF THE DEBTORS FOR
ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PERELLA WEINBERG PARTNERS LP AS FINANCIAL ADVISOR FOR THE
DEBTORS NUNC PRO TUNC TO THE PETITION DATE.  DOC #34,
APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
FTI CONSULTING, INC. AS RESTRUCTURING ADVISORS
TO THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE.
BEFORE THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

1          THE COURT:  Mr. Kirpalani, you're allowed to sit down

2     even though you didn't file a pleading.

3          MR. KIRPALANI:  Thank you.

4          (Laughter.)

5          THE COURT:  All right, let me give you my ruling on

6     the standing issue.  And because of the time imperatives, you

7     know this is not a Law Review article.  But it hopefully pretty

8     clearly explains what my thinking is.

9          The essence of the second lien agent's objection at

10    this juncture is whether the Debtors have fulfilled their

11    fiduciary duties to all creditors in teeing up the 363 sale of

12    the Boston Generating assets, in executing a pre-petition

13    marketing process and in proposing the bid procedures.

14         Notwithstanding the inter-creditor agreement, which I

15    will parse through in a moment, I believe as a general matter,

16    and a quite obvious one, that the Debtors are not permitted to

17    abdicate their fiduciary duties to their creditors collectively

18    or individually.  We are here today at One Bowling Green, not in

19    the state law foreclosure proceeding, but in a bid procedure's

20    hearing in the bankruptcy court.

21         The first lien lenders are consenting to and

22    encouraging this process, but this is the Debtor's motion.  At

23    this threshold stage, all parties in interest have a right to

24    assert substantial concerns that if meritorious, would suggest

25    fundamental defects in the Debtor's process to date.  In the

1   absence of explicit language in the inter-creditor agreement and

2   the type of specific prohibition that is now, for example, in

3   the ABA model inter-creditor agreement, I decline to find that I

4   must entirely silence the second lien agent simply because the

5   Debtor's proposed course of action is supported by the first

6   lien lenders.  Unlike the situation in *Ion*, we have here an

7   entire tranche of debt on the cusp of a recovery.  Not one

8   holder, who is far out of the money.  We have $300 million of

9   debt, among others, voicing concerns with a process that may

10  conclude with their getting no recovery.

11         As a preliminary matter, we all agree that the inter-

12  creditor agreement is strictly enforceable in accordance with

13  its terms and that general New York contract law applies.  I

14  have interpreted the inter-creditor agreement in accordance with

15  the plain meaning of its terms and I do not find the agreement

16  to be ambiguous.  I would note that I find the arguments made in

17  the second lien agent's reply, dated October 3, to be

18  particularly persuasive.  The first lien agent's pleading,

19  however, provides a view of the inter-creditor agreement that

20  conflates silence with subordination.

21         Section 3 is generally concerned with the exercise of

22  remedies and leads subordination and enforcement.  The first

23  lien lenders have senior liens; they get paid first; and have

24  virtually unfettered rights with respect to the disposition of

25  the proceeds of the collateral.  The sections referred to by the

1  first lien agent discuss the first lien agent's exclusive right

2  to make determinations about the "sale of collateral without

3  consultation" with the second lien lenders.  That's Section

4  3.1(b)(1).  The first lien agent also points to the second lien

5  lender's passive role in enforcement situations.  There they say

6  the second lien's sole right is to hold a lien on the collateral

7  under Section 3.1(c).

8        To be clear, the current hearing is a bid procedure's

9  hearing.  It is not a sale hearing.  My ruling therefore with

10 respect to standing to object to the bid procedures is limited

11 to just that for now.  If necessary I will deal with standing to

12 object to the sale another day.

13       The first lien agent does not have to do anything,

14 however, until the sale hearing when I anticipate they will

15 either consent under 363(f)(2) or perhaps get paid the aggregate

16 value of all their debt under 363(f)(3).  There is no exercise

17 of remedies here or determinations regarding collateral

18 occurring at this stage of the hearing that I believe implicate

19 3.1(b)(1).

20       The deemed consent to various actions of the first

21 lien agent does not without more mean that the second lien agent

22 has promised to be silent.  For example, in the adequate

23 protection context, the second lien agent cannot contest the

24 first lien agent's request for adequate protection.  The second

25 lien lenders, however, are expressly permitted to request

1  subordinated adequate protection, which they did.

2          The plain language of the inter-creditor agreement

3  says the seconds are silent in certain circumstances, but I do

4  not read any express prohibition against objection to bidding

5  procedures anywhere in the inter-creditor agreement.

6          This case is distinguishable from *Ion Media*.  In *Ion*

7  Media a single second lien lender made arguments about whether

8  FCC licenses were "purported collateral" that were -- to put it

9  colloquially, a bit too cute when read against the inter-

10  creditor agreement.  The objecting second lien lender had also

11  expressly agreed not to object to the plan.  409 BR 597.

12  Nonetheless, the creditor barreled ahead and objected to the

13  plan.

14          Judge Peck ruled that the express prohibition in the

15  inter-creditor agreement deprived the second lien creditor of

16  standing.  In this case, there is no such expressed prohibition

17  against objecting to bid procedures.  And unlike in *Ion*, the

18  objection here posed by the second lien agent on behalf of $300

19  million of debt at the threshold of the case is simply not of

20  the same marginal nature as that of the objecting creditor in

21  *Ion*.  The first lien agent also relies heavily on *In re Erickson*

22  *Retirement*.  *Erickson*, of course is not binding on me and I

23  think it is also distinguishable.

24          The *Erickson* court again, relied heavily on its view

25  that the motion to appoint an examiner was obstructionist

In re Boston Generating - 10/4/10                    55

1  behavior by a junior creditor.  The *Erickson* court held that the

2  examiner motion was commencement of action ultimately aimed at

3  collecting on claims that was prohibited by the inter-creditor

4  agreement.  A bid procedure's hearing does not implicate any

5  collection or enforcement and is thus distinguishable from

6  *Erickson*.

7          I also do not find that there is any basis to conclude

8  that the second lien agent at this juncture is engaging in

9  obstructionist behavior.  The second lien lenders are very close

10 to the money and they want to make sure the Debtors have

11 discharged their fiduciary duty to get the highest price for

12 their assets.  At this juncture, therefore, it is my

13 determination that they have standing to be heard.  That's it.

14          UNKNOWN:  Thank you, Your Honor.

15          THE COURT:  All right.  Thank you.  We're going to

16 have opening arguments now?

17          MR. KIRPALANI:  Your Honor, may I be excused.  I think

18 that was all I was supposed to be here for.

19          (Laughter.)

20          THE COURT:  Yes, thank you.

21          MR. SIEGEL:  May I be excused?

22          THE COURT:  Yes, you too.  I always like to see

23 lawyers with high hourly rates leave.

24          (Laughter.)

25          MR. KIRPALANI:  I won't take it personally.

**<u>Exhibit A</u>**

**Bidding Procedures**

D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Boston Generating, LLC,<br>et al.,[1] | Case No. 10-14419 (SCC) |
| Debtors. | Jointly Administered |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS OF
BIDS IN CONNECTION WITH THE SALE OF DEBTORS' ASSETS**

These Bidding Procedures have been approved by the United States Bankruptcy Court for the Southern District of New York (the "**Court**") in connection with the above-captioned jointly administered cases of Boston Generating, LLC and certain of its affiliates (collectively, the "**Debtors**" or the "**Company**"), dated as of [_____], 2010 [Docket No. ___] (the "**Bidding Procedures Order**").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "**Sale**") by auction (the "**Auction**") of the assets of the Debtors (defined as the "**Acquired Assets**" in the Asset Purchase Agreement dated as of August 7, 2010 (the "**Stalking Horse APA**"), by and among the Debtors and Constellation Holdings, Inc. (the "**Stalking Horse Bidder**") pursuant to the terms and conditions substantially in the form of the Stalking Horse APA.  Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

> Copies of the Bidding Procedures Order, Stalking Horse APA or other documents related thereto are available upon request to The Garden City Group, Inc. by calling 866-454-3498, emailing EBGrestructuring@gcginc.com or visiting www.bgrestructuring.com.

**A.    Assets to be Sold.**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for all or certain of the Acquired Assets and the Assumed Liabilities, as identified in further detail and defined in the Stalking Horse APA.

**B.    Stalking Horse Bidder**

On August 7, 2010, the Debtors, the Stalking Horse Bidder and Constellation Energy Group, Inc. entered into the Stalking Horse APA for the sale of substantially all of the Acquired Assets pursuant to which: (i) the Stalking Horse Bidder agreed to pay One Billion and One Hundred Million Dollars ($1,100,000,000.00) in cash, prior to adjustment of such amount in accordance with the terms of the Stalking Horse APA (the "**Cash Purchase Price**"), and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Acquired Assets, subject to the outcome of the Auction and Court approval; and (ii) the Debtors agreed in the event that the Court approves the purchase of any of the Acquired Assets by any Person other than the Stalking Horse Bidder to (a) pay the Stalking Horse Bidder a break-up fee in the amount of Thirty Million Dollars ($30,000,000) (the "**Break-Up Fee**") and (b) reimburse the Stalking Horse Bidder's reasonable out-of-pocket expenses up to an aggregate amount not to exceed Five Million ($5,000,000) (the "**Reimbursable Expenses**" and together with the Break-Up Fee, the "**Break-Up & Expense Reimbursement Amount**").

**C.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a Person (other than the Stalking Horse Bidder) interested in purchasing the Acquired Assets, or a subset of the Acquired Assets, (a "**Potential Bidder**") must, on or before **November 1, 2010**,[2] deliver (unless previously delivered) to each of (i) Boston Generating, LLC, 505 Fifth Avenue, 21st Floor, New York, NY 10017, Attn: Mark Sudbey, Chief Executive Officer (msudbey@uspowergen.com), Jeff Hunter, Chief Financial Officer and Executive Vice President (jhunter@uspowergen.com) or such other person designated by the Debtors; (ii) Latham & Watkins LLP, 885 Third Avenue, New York NY 10022-4834, Attn: D. J. Baker, Esq. (dj.baker@lw.com) and Robert J. Rosenberg, Esq. (robert.rosenberg@lw.com), counsel to the Debtors and (iii) Jager Smith P.C., 485 Madison Avenue, 20th Floor, New York, NY 10022, Attn: Bruce F. Smith, Esq. (bsmith@jagersmith.com) the following documents (the "**Preliminary Bid Documents**").    Counsel to the Debtors will share the Preliminary Bid Documents with the Consulting Parties (as defined below) if such Consulting Parties confirm in

---

[2]    November 1, 2010 is the outside deadline for Potential Bidders to deliver Preliminary Bid Documents.  To the extent that Preliminary Bid Documents are received prior to that date, they will be considered as quickly as is reasonably possible.

writing to the Debtors that they will not be participating in the Auction process as a bidder (via a credit bid or otherwise).

a.  an executed confidentiality agreement (the "**Confidentiality Agreement**") reasonably acceptable to the Company;

b.  a non-binding indication of interest with respect to the purchase of all or certain of the Acquired Assets and the assumption of all or certain of the Assumed Liabilities; and

c.  preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine.

Within two (2) calendar days after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors, in consultation with the official committee of unsecured creditors (the "**Creditors' Committee**"), shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Debtors.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "**Acceptable Bidder**") may submit bids to purchase the Acquired Assets and assume the Assumed Liabilities. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**D.    Obtaining Due Diligence Access.**

After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, the Debtors shall provide each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder.  To the extent the Debtors give any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors shall promptly provide such information to the Stalking Horse Bidder.  The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Acquired Assets, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however*, the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, have not established that such Acceptable Bidders intend in good

3

faith to or have the capacity to consummate the purchase of all or certain of the Acquired Assets. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

The Debtors designate J.P. Morgan Securities Inc. ("**JPM**") to coordinate all reasonable requests for additional information and due diligence access. The contact information for JPM is:

| David Feierstein | Kevin Shin |
|---|---|
| Tel: (212) 622-2086<br>Fax: (917) 463-0245<br>Cell: (516) 851-4924<br>E-mail: david.s.feierstein@jpmorgan.com | Tel: (212) 622-3432<br>Fax: (917) 546-2351<br>Cell: (917) 751-4332<br>E-mail: kevin.h.shin@jpmorgan.com |

**E.      Bid Requirements.**

To participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver no later than the Bid Deadline (defined below) to the Debtors, their advisors, the Stalking Horse Bidder and the advisors to the Consulting Parties (defined below) at the addresses set forth in Paragraph F below an irrevocable offer that must:

   a.      be in writing;

   b.      at a minimum, exceed the aggregate sum of the following: (i) the Cash Purchase Price; (ii) the Assumed Liabilities; (iii) the Break-Up & Expense Reimbursement Amount (in the amount of $35,000,000); (iv) any amount required to be reimbursed to the Stalking Horse Bidder pursuant to Section 6.19 of the Stalking Horse APA; and (v) the minimum bid increment of Ten Million Dollars ($10,000,000) (such aggregate sum, the "**Minimum Bid Increment**") (all of which must be in cash and the assumption of administrative expense liabilities);

   c.      constitute a good faith, bona fide offer to purchase all or certain of the Acquired Assets and to assume all or certain of the Assumed Liabilities;

   d.      be accompanied by a clean and a duly executed copy of the Stalking Horse APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with the Stalking Horse Bidder, which may not be materially more burdensome to the Debtors or inconsistent with these Bidding Procedures, including with respect to scope of the Acquired Assets and Assumed Liabilities;

   e.      identify with particularity each and every condition to closing;

   f.      identify with particularity the executory contracts and unexpired leases for which assumption and assignment is required;

4

g.      not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) regulatory contingencies of any kind (other than a condition that (A) any applicable waiting period under HSR (defined below) shall have expired or been terminated and (B) required authorization of (I) the Federal Energy Regulatory Commission ("**FERC**")[3] pursuant to Section 203 of the Federal Power Act for disposition of the Acquired Assets, (II) the Federal Communications Commission ("**FCC**") for the transfer of control of the radio authorizations to the Potential Bidder, and (III) if applicable, any other governmental entity whose approval is identified by the Potential Bidder as required for the transaction as set forth in such Potential Bidder's bid, shall, in the case of each of (I), (II) and (III), have been obtained) and/or (iv) the outcome or completion of a due diligence review by the Potential Bidder. Any required governmental approvals identified by the Potential Bidder in addition to the FERC and FCC approvals described herein may impact the evaluation of a Qualified Bid (defined below);

h.      remain irrevocable until 48 hours after the conclusion of the Sale Hearing (as defined below) or such longer period of time as set forth below if the Potential Bidder is selected as the Back-Up Bidder (defined below).

i.      provide for a covenant (i) to close within the later of (A) fourteen (14) days after the entry of the Sale Order, (B) the expiration or termination of the applicable HSR (defined below) waiting period, (C) authorization of FERC pursuant to Section 203 of the Federal Power Act for disposition of the Acquired Assets, (D) authorization by any other governmental entity whose approval is identified by the Potential Bidder as required for the transaction as set forth in such Potential Bidder's bid, and (E) the receipt of approval of the FCC for the transfer of control of the radio authorizations to the Potential Bidder; and (ii) that the Potential Bidder will (A) make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended ("**HSR**"), and pay the fees associated with such filings within two (2) calendar days following the entry of the Sale Order; and (B) make all necessary filings to FERC pursuant to Section 203 of the Federal Power Act for disposition of the Acquired Assets, the FCC for the transfer of control of the radio

---

[3]    Notwithstanding the fact that the Debtors and the Stalking Horse Bidder have jointly filed an application with FERC pursuant to Section 203 of the Federal Power Act seeking authorization for disposition of the Acquired Assets to the Stalking Horse Bidder, the Debtors will assist and cooperate with the preparation and filing of an application by a Potential Bidder seeking similar authorization pursuant to Section 203 of the Federal Power Act to the extent reasonably possible and to the extent any Potential Bidder is pursuing such application with an honest and legitimate business purpose and whose actions in the Debtors' reasonable business judgment are not designed to impede or interfere with the sale process contemplated by these Bidding Procedures and provided that the Potential Bidder agrees not to file protests of, or comments opposing the joint application of the Debtors and the Stalking Horse Bidder or an application filed by another Potential Bidder.

authorizations to the Potential Bidder, and any other governmental entity whose approval is identified by the Potential Bidder as required for the transaction as set forth in such Potential Bidder's bid, and pay any fees associated with such filings, in each case within two (2) calendar days following the entry of the Sale Order;

j.      provide the Debtors, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of the Company, that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of the Acquired Assets and the assumption of the Assumed Liabilities;

k.      fully disclose the identity of each entity that will be bidding for or purchasing all or certain of the Acquired Assets and assuming all or certain of the Assumed Liabilities or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

l.      be accompanied, on or before the Bid Deadline, by a cash deposit equal to Fifty Million Dollars ($50,000,000), by wire transfer of immediately available funds to an account or accounts designated by the Debtors (the "**Good Faith Deposit**");

m.      state that the offering party or parties consents to the jurisdiction of the Court; and

n.      not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment and shall include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Acquired Assets, the financial performance of the Acquired Assets or the physical condition of the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Stalking Horse APA.

Nothing herein shall preclude a bidder from submitting a competing bid in the form of a plan of reorganization and it being understood that such bid may be determined by the Debtors not to be a Qualified Bid.

Bids that the Debtors and their advisors determine fulfill all of the preceding requirements shall be deemed to be "**Qualified Bids**," and those parties submitting Qualified Bids shall be deemed to be "**Qualified Bidders**."  As soon as practicable after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and the advisors to the agent for the first lien lenders (the "**First Lien Lenders**") and the agent for the second lien lenders (the "**Second Lien Lenders**," together with the First Lien Lenders, the "**Lenders**" and each a "**Lender**") and the Creditors' Committee (together with the Lenders, the "**Consulting Parties**"), and the Debtors will notify the Acceptable Bidders and the Stalking Horse Bidder whether bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.  The Stalking Horse Bidder shall be deemed to be a Qualified Bidder.  The Stalking Horse APA submitted by the Stalking Horse Bidder and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) shall be deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.    Bid Deadline.**

**Binding written bids must be received by each of the Debtors, the Stalking Horse Bidder, their respective advisors, and the legal advisors to each of the Consulting Parties at the addresses set forth below, in each case so as to be actually received no later than 12:00 p.m. (prevailing Eastern Time) on Saturday November 13, 2010 (the "Bid Deadline").**

| Debtors | Counsel to Debtors |
|---|---|
| Boston Generating, LLC<br>505 Fifth Avenue, 21st Floor, New York, NY 10017,<br>Attn: Mark Sudbey, CEO and Jeff Hunter, CFO and<br>Executive Vice President or such other person as the<br>Debtors designate prior to the Bid Deadline<br>Email:  msudbey@uspowergen.com;<br>　　　jhunter@uspowergen.com | Latham & Watkins LLP<br>885 Third Avenue<br>New York NY 10022-4834<br>Attn: D. J. Baker, Esq. and Robert J. Rosenberg, Esq.<br>Email:  dj.baker@lw.com<br>　　　robert.rosenberg@lw.com |
| **Counsel to the Agent for the First Lien Lenders** | **Counsel to the Stalking Horse Bidder** |
| Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York NY 10019<br>Attn: Scott K. Charles, Esq. and Michael S. Benn, Esq.<br>Email:  SKCharles@wlkr.com<br>　　　MSBenn@wlrk.com | Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166-4193<br>Attn:  David Neier, Esq.<br>Email: dneier@winston.com |
| **Counsel to the Agent for the Second Lien Lenders** | **Counsel to the Creditors' Committee** |
| Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attn: Allan S. Brilliant, Esq. and Craig P. Druehl, Esq.<br>Email:  allan.brilliant@dechert.com<br>　　　craig.druehl@dechert.com | Jager Smith P.C.<br>485 Madison Avenue, 20th Floor<br>New York, NY 10022<br>Attn: Bruce F. Smith, Esq. and Steven C. Reingold, Esq.<br>Email:  bsmith@jagersmith.com<br>　　　　sreingold@jagersmith.com |

**G.    Credit Bidding**

The First Lien Lenders and Second Lien Lenders may make a credit bid for all of the collateral securing their claims to the full extent permitted by Section 363(k) of the Bankruptcy Code; *provided*, *however*, that the conditions set forth in this Paragraph G must be satisfied before the credit bid of a First Lien Lender or a Second Lien Lender is deemed to be a Qualified Bid.  To be a Qualified Bid, a credit bid must also comply with each of the requirements set forth in Paragraph E above other than E(b).  In addition, to be a Qualified Bid, a credit bid must, on or prior to the Bid Deadline, (i) include a cash amount as part of the purchase price for all or certain of the Acquired Assets upon which such First Lien Lenders and Second Lien Lenders do not have a first priority security interest, (ii) provide for payment in cash at closing and/or the assumption of the administrative and priority expense claims of the Debtors that own the Acquired Assets, and (iii) include a cash amount as part of the purchase price sufficient to pay the Break-Up & Expense Reimbursement Amount (e.g., $35,000,000) plus any amount required to be reimbursed to the Stalking Horse Bidder pursuant to Section 6.19 of the Stalking Horse APA.

**H.    Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "**Starting Bid**").  As soon as practicable prior to the date of the Auction, the Debtors shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid.  The Debtors shall thereafter distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**I.    No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid (as defined herein) and, subject to the Debtors' termination rights under the Stalking Horse APA, the Debtors will immediately pursue entry of an order by the Court approving the Stalking Horse APA and authorizing the sale of the Acquired Assets and the transfer of the Assumed Liabilities to the Stalking Horse Bidder.

**J.    Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Debtors shall conduct the Auction.  The Auction shall commence at 10:00 a.m. on **November 15, 2010** at the offices of Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834, or such later time or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders following consultation with the advisors to the Consulting Parties.

The Auction will be conducted in accordance with the following procedures (the "**Auction Procedures**"):

    a.    only Qualified Bidders and their legal and financial advisors, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

b.   the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

c.   only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, their respective advisors, and the advisors to the Consulting Parties shall be permitted to attend the Auction;

d.   bidding at the Auction shall begin at the Starting Bid;

e.   subsequent bids at the Auction, including any bids by the Stalking Horse Bidder, shall be made in minimum increments of Ten Million Dollars ($10,000,000);

f.   the Stalking Horse Bidder shall receive a credit equal to the sum of the Break-Up & Expense Reimbursement Amount (e.g., $35,000,000) in each round of bidding at the Auction and any amount required to be reimbursed to the Stalking Horse Bidder pursuant to Section 6.19 of the Stalking Horse APA;

g.   each Qualified Bidder will be informed of the terms of the previous bids;

h.   the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

i.   each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

j.   absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the Auction is closed; and

k.   the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors as well as the advisors to the Consulting Parties, from time to time on the record at the Auction; *provided*, that any such other Auction Procedures shall not be inconsistent with any order of the Court.

**K.    Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors and the advisors to the Consulting Parties, shall identify the highest or otherwise best bid (the "**Successful Bid**"). The Qualified Bidder having submitted the Successful Bid will be deemed the "**Successful Bidder**." The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

NY\1688986.9

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid (as defined in these Bidding Procedures), and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for all or certain of the Acquired Assets and all or certain of the Assumed Liabilities and is in the best interests of the Debtors.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving such Successful Bid.

**L.    Sale Hearing.**

A hearing to consider approval of the Sale of all or certain of the Acquired Assets and the transfer of all or certain of the Assumed Liabilities to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "**Sale Hearing**") is presently scheduled to take place on **November 17, 2010** at 10:00 a.m. prevailing Eastern Time, or as soon thereafter as counsel may be heard, before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York, at: One Bowling Green, Courtroom 610, New York, NY 10004.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

**M.    Designation of Back-Up Bidder.**

Following the approval of the Sale of all or certain of the Acquired Assets to any Successful Bidder at the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale within the later of (1) fourteen (14) days after the entry of the Sale Order, (2) the expiration or termination of the applicable HSR waiting period, (3) the receipt of approval of FERC pursuant to Section 203 of the Federal Power Act, (4) the receipt of approval of the FCC for the transfer of control of the radio authorizations, (5) the receipt of approval by any other governmental entity whose approval is identified by the Potential Bidder as required for the transaction as set forth in such Potential Bidder's bid, and (6) December 6, 2010, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "**Back-Up Bid**" and the party submitting the Back-Up Bid, the "**Back-Up Bidder**"), as disclosed at the Sale Hearing, the Successful Bid, and the Debtors in consultation with the Consulting Parties shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder submitting such bid without further order of the Court. The Back-Up-Bid shall

10

remain open until the first business day following the consummation of a Sale of the Acquired Assets to the Successful Bidder.

**N.        Break-Up & Expense Reimbursement Amount.**

The Debtors shall be obligated to pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, all amounts due to the Stalking Horse Bidder, including the Break-Up Fee and Reimbursable Expenses, in each instance in accordance with the applicable provisions of the Stalking Horse APA.

**O.        Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of all or certain of the Acquired Assets and transfer of all or certain of the Assumed Liabilities, be credited to the purchase price paid for all or certain of the Acquired Assets and all or certain of the Assumed Liabilities.  If the Successful Bidder fails to consummate the purchase of all or certain of the Acquired Assets and the assumption of all or certain of the Assumed Liabilities due to a breach by the Successful Bidder, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder and the Back-Up Bidder) will be returned within fifteen (15) days after the entry of the Sale Order by the Bankruptcy Court or upon the permanent withdrawal of the proposed Sale of all or certain of the Acquired Assets and all or certain of the Assumed Liabilities.  The Good Faith Deposit of the Stalking Horse Bidder shall be returned in accordance with the terms of the Stalking Horse APA.  The Good Faith Deposit of the Back-Up Bidder shall be returned upon the earlier of (i) the first day after consummation of the Sale of all or certain of the Acquired Assets and all or certain of the Assumed Liabilities by the Successful Bidder or (ii) the permanent withdrawal of the proposed Sale of all or certain of the Acquired Assets and all or certain of the Assumed Liabilities.

**P.        Reservation of Rights.**

The Debtors reserve their rights, following consultation with their advisors and the advisors to the Consulting Parties and with the consent of the Stalking Horse Bidder (whose consent shall not be unreasonably withheld), to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the Sale of all or certain of the Acquired Assets and the transfer of all or certain of the Assumed Liabilities, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids (excluding, for the avoidance of doubt, the Stalking Horse Bidder's offer pursuant to the Stalking Horse APA) if, in the Debtors' business judgment, following consultation with their advisors, the Debtors determine that such Qualified Bid is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (c) contrary to the best interests of the Debtors; _provided_, that if the Debtors cancel the

11

Auction, or reject all Qualified Bids other than Stalking Horse Bidder's, the Debtors shall promptly pursue entry of an order by the Court authorizing consummation of the Sale of all of the Acquired Assets and the transfer of all of the Assumed Liabilities to the Stalking Horse Bidder; and *provided further*, that the Debtors shall not extend the deadlines set forth in these Bidding Procedures beyond seven days, adjourn the Auction at the Auction and/or adjourn the Sale Hearing beyond seven days without the prior consent of the Stalking Horse Bidder which consent will not be unreasonably withheld.  In the event that a Consulting Party or other insider or affiliate of the Debtors participates in this auction process as a Potential Bidder or a Qualified Bidder, as applicable, such party will be treated like and given no greater or better rights than any other Potential Bidder or Qualified Bidder, as applicable.

The Debtors shall provide to the Stalking Horse the information and documents specified in the Stalking Horse APA relating to the Auction and other bids within the time period and on the terms and conditions set forth in the Stalking Horse APA.

NY\1688986.9

**<u>Exhibit B</u>**

**Contract Notice**

D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
Jason B. Sanjana
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>et al.,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; (II) CURE AMOUNT WITH RESPECT TO
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
TO BE POTENTIALLY ASSUMED AND ASSIGNED**

        **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession
(collectively, the "**Debtors**") have entered into an asset purchase agreement, dated August 7,
2010 (the "**APA**"), with Constellation Holdings, Inc. (the "**Stalking Horse Bidder**") to sell
substantially all of the assets of the Debtors free and clear of all liens, claims, encumbrances and
other interests to the Stalking Horse Bidder, subject to the submission of higher or better offers
in an auction process (the "**Auction**").

        **PLEASE TAKE FURTHER NOTICE** that, pursuant to the *Order Approving and
Authorizing (A) Bidding Procedures in Connection with the Sale of Substantially All of the Assets
of the Debtors, (B) Stalking Horse Bid Protections, (D) Procedures for the Assumption and
Assignment of Executory Contracts and Unexpired Leases in Connection With the Sale of
Substantially All of the Assets of the Debtors (D) the Form and Manner of Notice of the Sale*

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River
Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power
Services, Inc. (0476); and BG Boston Services, LLC (6921).

1

*Hearing, and (E) Related Relief* [Docket No. __] (the "**Bidding Procedures Order**")[2] entered by the United States Bankruptcy Court for the District of New York (the "**Bankruptcy Court**") on [____], 2010, the Debtors hereby provide notice that they are a party to various executory contracts and unexpired leases as set forth on Exhibit 1 attached hereto (individually, a "**Potentially Assumed Contract**", collectively, the "**Potentially Assumed Contracts**") and they intend to seek to assume and assign some or all of the Potentially Assumed Contracts to the Successful Bidder in connection with the proposed sale of the Debtors' assets (the "**Sale**"). You have been identified as a party to a Potentially Assumed Contract.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits, including the APA, have been electronically filed with the Bankruptcy Court and may be examined and inspected by interested parties by (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov/ or (ii) accessing the website maintained by the Debtors in connection with their chapter 11 cases at www.bgrestructuring.com.  Note that a PACER password is needed to access documents on the Bankruptcy Court's website.

      **PLEASE TAKE FURTHER NOTICE** that the Potentially Assumed Contract with respect to which you have been identified as a non-Debtor counterparty, and the corresponding proposed amount the Debtors' records reflect is owing for all arrearages due prior to the closing of the Sale (the "**Cure Amount**"), have been set forth on Exhibit 1, as attached hereto (the "**Contract Notice**").  The Debtors' records reflect, as of the date hereof, that all postpetition amounts owing under your Potentially Assumed Contract have been paid and will continue to be paid and that there are no other defaults under the Potentially Assumed Contract. Amounts due and owing under the contracts with respect to the period after the closing date of the Sale are not included in the calculation of the Cure Amounts.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the assumption and assignment of any contract or lease, proposed cure amount or adequate assurance of future performance proposed with respect thereto **must**:  (i)  conform to the applicable provisions of the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedure*, upon entry, and (ii)  be filed with the Court and served so as to be **actually received no later than 4:00 p.m. prevailing Eastern Time on November 9, 2010** (the "**Objection Deadline**") by the following parties (the "**Objection Notice Parties**"):

| Debtors | Counsel to Debtors |
|---|---|
| Boston Generating, LLC<br>505 Fifth Avenue, 21st Floor, New York, NY 10017,<br>Attn: Mark Sudbey, Chief Executive Officer; Jeff<br>Hunter, Manager, Executive Vice President, and Chief | Latham & Watkins LLP<br>885 Third Avenue<br>New York NY 10022-4834<br>Attn: D. J. Baker, Esq. and Robert J. Rosenberg, Esq. |

---

[2]     All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Bidding Procedures approved as part of the Bidding Procedures Order.

| Financial Officer | |
| --- | --- |
| **Counsel to the Agent for the First Lien Lenders** | **United States Trustee** |
| Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York NY 10019<br>Attn: Scott K. Charles, Esq. and Michael S. Benn, Esq. | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn:  Paul Schwartzberg |
| **Counsel to the Agent for the Second Lien Lenders** | **Counsel to the Creditors' Committee** |
| Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attn: Allan S. Brilliant, Esq. and Craig P. Druehl, Esq. | Jager Smith P.C.<br>485 Madison Avenue, 20th Floor<br>New York, NY 10022<br>Attn: Bruce F. Smith, Esq. and Steven C. Reingold, Esq. |
| **Counsel to the Stalking Horse Bidder** | |
| Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166-4193<br>Attn: David Neier, Esq. | |

**PLEASE TAKE FURTHER NOTICE** the Debtors will seek approval of the Sale and the assumption and assignment of unexpired leases and executory contracts to be assumed and assigned in connection with the Sale before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York (the "**Court**") at One Bowling Green, Room 610  New York, NY 10004 on November 17, 2010 at 10:00 a.m. prevailing Eastern Time (the "**Sale Hearing**"). A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtors.

**PLEASE TAKE FURTHER NOTICE** that regardless of whether a Potentially Assumed Contract will be assumed and assigned at the closing of the Sale, unless a non-debtor party to any Potentially Assumed Contract files an objection to the Cure Amount by the Objection Deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming any amounts under the contracts outstanding as of the effective date of assumption and assignment to the Successful Bidder, other than the Cure Amount on Exhibit 1, against the Debtors, any Successful Bidder or any other assignee of the relevant contract.  The Debtors will file and serve a further notice that identifies any Successful Bidder and provides notice of the particular Potentially Assumed Contracts that the Debtors will seek to assume and assign at the Sale Hearing (the "**Assumption Notice**").   At the Sale Hearing, the Debtors shall present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder. You will have the opportunity to evaluate and, if necessary, challenge, at the Sale Hearing, the ability of any Successful Bidder to provide adequate assurance of future performance under the Assumed Contacts.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to section 365(b)(1)(C) of the Bankruptcy Code, adequate assurance of future performance will be provided by the Stalking Horse Bidder, Successful Bidder or assignee, as applicable, which Stalking Horse Bidder, Successful Bidder or assignee has confirmed or will confirm that the assignee of any Assumed

Contract has the ability to fully perform under each such contract to the extent required under the Bankruptcy Code, and, where applicable and to the extent required under the Bankruptcy Code, the Stalking Horse Bidder, Successful Bidder or assignee will provide collateral if required by the terms of the contract.

**PLEASE TAKE FURTHER NOTICE** that if the parties are not able to consensually resolve any such objection prior to the Sale Hearing, the dispute will be heard at the Sale Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE** that the presence of a contract, lease or other agreement on the Contract Notice does not constitute an admission that such contract, lease or other agreement is an executory contract or unexpired lease or that such contract or lease will be assumed by the Debtors and assigned to any Successful Bidder. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts, leases and other agreements listed on the Contract Notice.

<u>**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**</u>

**ANY PARTY FAILING TO TIMELY FILE AN OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF ANY CONTRACT OR LEASE OR RELATED CURE AMOUNT LISTED ON THE CONTRACT NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS EFFECTED THEREUNDER.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE,
PLEASE CONTACT THE RESTRUCTURING HOTLINE AT 866-454-3498**

---

NY\1688986.9

## **Exhibit 1 to Contract Notice**

**Potentially Assumed Contracts**

## **Exhibit C**

### **Assumption Notice**

D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
Jason B. Sanjana
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Boston Generating, LLC, | Case No. 10-14419 (SCC) |
| <u>et al.</u>,[1] | |
| Debtors. | Jointly Administered |

**NOTICE OF (I) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES (II) CURE AMOUNT WITH RESPECT TO EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED</u>**

      **PLEASE TAKE NOTICE** that, pursuant to the *Order Approving and Authorizing (A) Bidding Procedures in Connection with the Sale of Substantially All of the Assets of the Debtors, (B) Stalking Horse Bid Protections, (D) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With the Sale of Substantially All of the Assets of the Debtors (D) the Form and Manner of Notice of the Sale Hearing, and (E) Related Relief* [Docket No. __] (the "**Bidding Procedures Order**")[2] entered by the United States Bankruptcy Court for the District of New York (the "**Bankruptcy Court**") on [____, 2010], the Debtors have accepted the bid of [_____] (the "**Successful Bidder**") for the purchase of substantially all of the assets (the "**Assets**") related to the Debtors' business (the "**Sale**").  The terms of the bid are set forth in that certain asset purchase agreement (the "**APA**"), dated as of

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

[2]      All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Bidding Procedures approved as part of the Bidding Procedures Order.

NY\1688986.9

August 7, 2010 between the Debtors and the Successful Bidder which [has been / will be] filed with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order, among other things, authorized procedures for the Debtors to assume and assign certain executory contracts and unexpired leases (the "**Assumed Contracts**") to the Successful Bidder.  Attached hereto as Exhibit 1 is a list of the Assumed Contracts that the Debtors will assign to the Successful Bidder in connection with the closing of the Sale and the cure amount, if any, with respect to each Assumed Contract.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to section 365(b)(1)(C) of the Bankruptcy Code, adequate assurance of future performance will be provided by the Stalking Horse Bidder, Successful Bidder or assignee, as applicable, which Stalking Horse Bidder, Successful Bidder or assignee has confirmed or will confirm that the assignee of any Assumed Contract has the ability to fully perform under each such contract to the extent required under the Bankruptcy Code, and, where applicable and to the extent required under the Bankruptcy Code, the Stalking Horse Bidder, Successful Bidder or assignee will provide collateral if required by the terms of the contract.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Bidding Procedures Order, the hearing to approve the Sale will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Bankruptcy Court for the Southern District of New York (the "**Court**") at One Bowling Green, Room 610 New York, NY 10004 on November 17, 2010 at 10:00 a.m. prevailing Eastern Time (the "**Sale Hearing**"). A hearing regarding the Cure Amount, if any, may be continued at the sole discretion of the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits including the APA, are available by (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov/ or (ii) accessing the website maintained by the Debtors in connection with their chapter 11 cases at www.bgrestructuring.com.  Note that a PACER password is needed to access documents on the Bankruptcy Court's website.

NY\1688986.9

**<u>Exhibit 1 to Assumption Notice</u>**

**Assumption Notice**

[TO COME]

| Contract Counterparty | Debtor(s) Entity | Description | Cure Amount (in $US) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## Exhibit D

**Sale Notice**

D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)
Jason B. Sanjana
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Proposed Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC,<br>et al.,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 10-14419 (SCC)<br><br>Jointly Administered |

<u>**NOTICE OF PUBLIC AUCTION AND SALE HEARING**</u>

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), have entered into an asset purchase agreement, dated August 7, 2010 (the "**APA**")[2], with Constellation Holdings, Inc. (the "**Stalking Horse Bidder**") to sell substantially all of the assets of the Debtors free and clear of all liens, claims, encumbrances and other interests to the Stalking Horse Bidder, subject to the submission of higher or better offers in an auction process (the "**Auction**").

      **PLEASE TAKE FURTHER NOTICE** that in connection with the proposed sale (the "**Sale**") to the Stalking Horse Bidder, on August 18, 2010, the Debtors filed the *Debtors' Motion for Entry of (I) an Order Approving and Authorizing (A) Bidding Procedures in Connection With the Sale of Substantially All of the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With the Sale of Substantially All of the Assets of the Debtors, (D) the Form And Manner of Notice of the Sale Hearing and (E) Related Relief; and (II) an Order Approving And*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

[2]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the APA.

*Authorizing (A) the Sale Of Substantially All of the Assets of the Debtors Free and Clear of
Claims, Liens, Liabilities, Rights Interests And Encumbrances, (B) the Debtors to Enter Into and
Perform Their Obligations Under the Asset Purchase Agreement, (C) the Debtors to Assume and
Assign Certain Executory Contracts and Unexpired Leases, (D) the Transition Services
Agreement, and (E) Related Relief* [Docket No. 24] (the, "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that, on [_____], 2010, the United States
Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an
order (the "**Bidding Procedures Order**") [Docket No. ___] approving the bidding procedures
(the "**Bidding Procedures**"), which set key dates and times related to the Sale.  All interested
bidders should carefully read the Bidding Procedures.  To the extent that there are any
inconsistencies between the Bidding Procedures and the summary description of its terms and
conditions in this Notice, the terms of the Bidding Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bidding
Procedures and the Bidding Procedures Order, as well as all related exhibits, including the APA,
have been electronically filed with the Bankruptcy Court and may be examined and inspected by
interested parties by (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov/ or
(ii) accessing the website maintained by the Debtors in connection with their chapter 11 cases at
www.bgrestructuring.com.  Note that a PACER password is needed to access documents on the
Bankruptcy Court's website.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing
bids within the requirements and time frame specified by the Bidding Procedures, the Debtors
will conduct an Auction on November 15, 2010 at 10:00 a.m. prevailing Eastern Time at the
offices of Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, or at any such
other location as the Debtors may hereafter designate.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale
before the Honorable Shelley C. Chapman, United States Bankruptcy Judge for the Bankruptcy
Court for the Southern District of New York (the "**Court**") at One Bowling Green, Room 610
New York, NY 10004 on November 17, 2010 at 10:00 a.m. prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE THAT** objections, if any, to the Motion or Sale,
together with proof of service, **must**:  (i) conform to the applicable provisions of the Federal
Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New
York and the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules
1015(c) and 9007 Implementing Certain Notice and Case Management Procedure* [Docket No.
46], and (ii) be filed with the Court and served so as to be **actually received no later than 4:00
p.m. prevailing Eastern Time on November 9, 2010** (the "**Objection Deadline**") by the
following parties (the "**Notice Parties**"):

| Debtors | Counsel to Debtors |
| --- | --- |

2

| | |
|---|---|
| Boston Generating, LLC<br>505 Fifth Avenue, 21st Floor, New York, NY 10017,<br>Attn: Mark Sudbey, Chief Executive Officer and Jeff<br>Hunter, Manager, Executive Vice President, and Chief<br>Financial Officer | Latham & Watkins LLP<br>885 Third Avenue<br>New York NY 10022-4834<br>Attn: D. J. Baker, Esq. and Robert J. Rosenberg, Esq. |
| **Counsel to the Agent for the First Lien Lenders** | **United States Trustee** |
| Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York NY 10019<br>Attn: Scott K. Charles, Esq. and Michael S. Benn, Esq. | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Andrea Schwartz, Esq. and Paul Schwartzberg,<br>Esq. |
| **Counsel to the Agent for the Second Lien Lenders** | **Counsel to the Creditors' Committee** |
| Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attn: Allan S. Brilliant, Esq. and Craig P. Druehl, Esq. | Jager Smith P.C.<br>485 Madison Avenue, 20th Floor<br>New York, NY 10022<br>Attn: Bruce F. Smith, Esq. and Steven C. Reingold,<br>Esq. |
| **Counsel to the Stalking Horse Bidder** | |
| Winston & Strawn LLP<br>200 Park  Avenue<br>New York, NY 10166<br>Attn:  David Neier, Esq. | |

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS EFFECTED THEREUNDER.**

### NO SUCCESSOR OR TRANSFEREE LIABILITY

The proposed Sale Order provides that the Buyer will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

Other than as expressly set forth in the APA with respect to Assumed Liabilities, the Buyer shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired Assets or (b) any remaining Claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the APA with respect to Assumed Liabilities, the Buyer shall have no liability whatsoever with respect to the Debtors, (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor

or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing.   Except to the extent expressly included in the Assumed Liabilities with respect to Buyer, the Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities by Buyer or an Affiliate of Buyer.   Nothing in the proposed Sale Order shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA"), or the Employee Retirement Income Security Act, as amended, 29 USC § 1001 et seq. ("ERISA").

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE,
PLEASE CONTACT THE RESTRUCTURING HOTLINE AT 866-454-3498**

NY\1688986.9