| | |
|---|---|
| DECHERT LLP<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br>Allan S. Brilliant<br>Kevin J. O'Brien<br>Robert W. Topp<br>Brian H. Brick | BOIES, SCHILLER & FLEXNER LLP<br>575 Lexington Avenue, 7th Floor<br>New York, New York 10012<br>Telephone: (212) 446-2300<br>Facsimile: (212) 446-2350<br>Jonathan D. Schiller<br>Damien J. Marshall<br>Rosaline Y. Chan<br>Joshua I. Schiller |
| *Counsel to Wilmington Trust FSB,*<br>*as Second Lien Administrative Agent,*<br>*Except as to Credit Suisse AG, Cayman Islands*<br>*Branch* | *Counsel to Wilmington Trust FSB,*<br>*as Second Lien Administrative Agent,*<br>*As to Credit Suisse AG, Cayman Islands*<br>*Branch* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BOSTON GENERATING, LLC, *et al.*,<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 10-14419(SCC)<br><br>Joint Administration Requested |
| WILMINGTON TRUST FSB, as Second Lien Administrative Agent,<br><br>　　　　　　　Plaintiff,<br><br>-v-<br><br>BOSTON GENERATING, LLC; EBG HOLDINGS LLC; FORE RIVER DEVELOPMENT, LLC; MYSTIC I, LLC; MYSTIC DEVELOPMENT, LLC; BG NEW ENGLAND POWER SERVICES, INC.; BG BOSTON SERVICES, LLC; and CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH,<br><br>　　　　　　　Defendants. | Adv. Proc. No. 10-_____<br><br>**<u>COMPLAINT</u>** |

Plaintiff Wilmington Trust FSB ("Plaintiff" or "Wilmington Trust"), as Second Lien

Administrative Agent and Second Lien Collateral Agent (the "Second Lien Agent") under that

certain $350,000,000 Second Lien Credit and Guaranty Agreement, dated as of December 21, 2006 (as amended and otherwise modified, the "Second Lien Credit Agreement"), by its attorneys Dechert LLP, as and for its complaint against defendants Boston Generating, LLC, EBG Holdings LLC, Fore River Development, LLC, Mystic I, LLC, Mystic Development, LLC, BG New England Power Services, Inc., and BG Boston Services, LLC (collectively, the "Debtors"), and by its attorneys Boies, Schiller & Flexner LLP, as and for its complaint against Credit Suisse AG, Cayman Islands Branch ("CS," together with Debtors, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.  Wilmington Trust brings this adversary proceeding to restore its rights to the proceeds of a Credit Suisse AG, Cayman Islands Branch Irrevocable Standby Letter of Credit No. TS-07003812 (the "Letter of Credit") in the amount of $13 million, which the Debtors, on the eve of their bankruptcy filing and contrary to their earlier representations, caused to be reduced to $0. Defendants violated Wilmington Trust's rights under the Letter of Credit by means of false and fraudulent misrepresentations as well as breaches of numerous legal obligations in various agreements.

2.  Wilmington Trust, as Second Lien Agent, is acting on behalf of the lenders (the "Second Lien Lenders") under the Second Lien Credit Agreement and related agreements. The Debtors, as borrowers under the Second Lien Credit Agreement, agreed to establish a cash reserve that secured the periodic payment of interest and fees to the Second Lien Lenders under the Second Lien Credit Agreement (the "Second Lien Debt Service Reserve"). The Debtors arranged for the Letter of Credit in favor of Wilmington Trust (for the benefit of the Second Lien Lenders) in order to satisfy this obligation. The Second Lien Lenders have the sole,

senior right to the proceeds of the Letter of Credit under the terms of the Collateral Agency and Intercreditor Agreement, dated December 21, 2006 and the Security Deposit Agreement, dated December 21, 2006. Wilmington Trust, as the Second Lien Agent since February 18, 2009, is the intended beneficiary of the Letter of Credit.

3. On August 16, 2010, the Debtors issued and caused to be issued a false and misleading letter to CS (in its capacity as the Issuing Agent of the Letter of Credit) directing that the $13 million Letter of Credit be reduced to $0 (the "Reduction Letter"). In the Reduction Letter, which was signed by Jeff Hunter ("Hunter"), Executive Vice President and Chief Financial Officer of Boston Generating, LLC, the Debtors asserted that they were entitled to reduce the Letter of Credit to $0 because no interest or fees would be "payable" under the Second Lien Credit Agreement for a six month period running from August 16, 2010. The Debtors and Hunter knew this statement was false. At least $2,325,283 in interest, and substantial fees, had accrued and was unpaid under the Second Lien Credit Agreement as of August 18, 2010, the date the Debtors voluntarily filed a petition for Chapter 11 protection under the Bankruptcy Code (the "Petition Date"), and many millions more would come due over the next six months. Under the Bankruptcy Code, as the Debtors and Hunter also knew, such fees and interest are "payable" even if not "allowable" in bankruptcy.

4. The Reduction Letter also withheld from CS the critical fact that the Debtors were in default under the Security Deposit Agreement having already determined to file for Chapter 11 protection within two days following the date of the Reduction Letter. Because the Debtors were in default, they were precluded by the Security Deposit Agreement from seeking a reduction of the Letter of Credit. Therefore, the Reduction Letter submitted by the Debtors - and the fact that it was submitted at all - was materially false and misleading.

- 3 -

5. Upon receipt of the Reduction Letter on August 16, 2010, CS failed to give proper notice of the Debtors' direction therein to Wilmington Trust, as the Second Lien Agent and beneficiary of the Letter of Credit, despite the fact that CS knew that Wilmington Trust had succeeded CS as Second Lien Agent, on February 18, 2009. By failing to provide proper notice to Wilmington Trust, CS deprived Wilmington Trust of the opportunity to prevent or mitigate the reduction of the Letter of Credit to $0.

6. Furthermore, CS was not entitled to rely on representations by the Debtors in deciding to reduce the amount available under the Letter of Credit and therefore it had no valid basis for doing so. Yet CS reduced the Letter of Credit to $0 and then refused Wilmington Trust's valid draw request for $13 million under the Letter of Credit on the Petition Date.

7. Finally, the Debtors' conduct (1) violated the terms of several financing agreements to which the Debtors are a party, (2) induced CS to violate its own obligations to Wilmington Trust under various agreements, and (3) facilitated conversion of funds in which Wilmington Trust had a possessory interest. CS's inequitable conduct also justifies the equitable subordination of the First Lien Lenders' claims under the Bankruptcy Code.

## THE PARTIES

8. Plaintiff Wilmington Trust is a federally-chartered savings bank with a principal place of business located at 50 South Sixth Street, Suite 1290, Minneapolis, Minnesota 55402. Since February 18, 2009, Wilmington Trust has been acting in its capacity as Second Lien Agent for the Second Lien Lenders.

9. Upon information and belief, defendant Boston Generating, LLC ("BostonGen") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017.

10. Upon information and belief, defendant EBG Holdings LLC ("EBG") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. EBG is the 100 percent owner of BostonGen and the indirect owner of each of the other Debtors. In addition, EBG is wholly owned by non-debtor U.S. Power Generating Company.

11. Upon information and belief, defendant Fore River Development, LLC ("ForeRiver") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. Fore River is wholly owned by BostonGen.

12. Upon information and belief, defendant Mystic I, LLC ("Mystic I") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. Mystic I is wholly owned by BostonGen.

13. Upon information and belief, defendant Mystic Development, LLC ("Mystic Development") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. Mystic Development is wholly owned by BostonGen.

14. Upon information and belief, defendant BG New England Power Services, Inc. ("BG New England") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. BG New England is wholly owned by BostonGen.

15. Upon information and belief, defendant BG Boston Services, LLC ("BG Boston Services") is a Delaware limited liability company with a principal place of business located at 505 Fifth Avenue, 21st Floor, New York, New York 10017. BG Boston Services is wholly owned by BostonGen.

16. Upon information and belief, defendant CS, in its capacity as Synthetic Issuing Bank of the Letter of Credit ("Issuing Bank"), maintains a business address located at One Madison Avenue, 2nd Floor, New York, New York 10010, and, in its capacity as First Lien Collateral and Administrative Agent ("First Lien Agent") and as predecessor Second Lien Agent, maintains a business address located at 11 Madison Avenue, New York, New York 10010.

17. In connection with and in support of the Debtors' Chapter 11 Petition and the First Day Pleadings, Hunter submitted a declaration, dated August 18, 2010 (the "Hunter Declaration").

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

19. Venue in this district is proper pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

### I. The Credit Agreements

20. On or about December 21, 2006, Debtor BostonGen, as borrower, and each of the other debtors (except for EBG) entered into a First Lien Credit and Guaranty Agreement (the "First Lien Credit Agreement"), with CS as First Lien Agent, among other parties.

21. Under the First Lien Credit Agreement, the First Lien Lenders and CS agreed to extend certain loans to the Debtors and to issue synthetic letters of credit for the Debtors' accounts. Obligations under the First Lien Credit Agreement are secured by a first lien in favor of the First Lien Lenders on substantially all assets of the Debtors (other than EBG), with the proviso that the Second Lien Lenders have a senior priority right to the proceeds of the Letter of Credit.

22. Debtor BostonGen, as borrower, and each of the other Debtors (except for EBG), are parties to the Second Lien Credit Agreement (and together with all security documents and agreements related thereto, the "Second Lien Credit Documents"). When the Debtors closed on the Second Lien Credit Agreement, CS was selected to serve as the Second Lien Agent. On February 18, 2009, Wilmington Trust succeeded CS as the Second Lien Agent for all purposes.

23. Under section 9.04 of the Second Lien Credit Agreement, the Debtors are obligated to pay on demand all costs and expenses of Wilmington Trust as the Second Lien Agent, including the reasonable fees and expenses of counsel with respect to advising Wilmington Trust in connection with any participation in or monitoring of the Debtors' bankruptcy proceedings.

24. As of the Petition Date, the Debtors were indebted under the Second Lien Credit Agreement for $350 million in principal, $2,325,283.33 in accrued but unpaid interest, and substantial fees. Under section 2.1(c) of the Second Lien Credit Agreement, all calculations of interest are to be made by Wilmington Trust as the Second Lien Agent.

## II. The Letter Of Credit

25. Under, *inter alia*, Sections 2.3, 2.5, and 3.7 of the Security Deposit Agreement, the Debtors are required to maintain a debt service reserve depository account (the "Reserve Account")[1] or a supporting letter of credit to maintain the Second Lien Debt Service Reserve Requirement, which is defined in Section 1.01 of the Second Lien Credit Agreement as "an amount equal to 100% of the sum of the reasonably anticipated aggregate interest and fees payable during the following six (6) month period occurring after such date of determination in respect of the Facility."

26. Accordingly, on December 21, 2006, the Debtors purchased the Letter of Credit in the amount of $16.7 million. On December 9, 2008, the Letter of Credit was reduced to $13 million as a result of declining interest rates.

27. Under Section 3.7(b)(ii) of the Security Deposit Agreement, on any date on which any amounts (including interest, fees, or expenses, among other things) are due and payable under the Second Lien Credit Agreement, and the amounts in the Reserve Account are insufficient to make such payments, the Second Lien Agent shall cause a drawing under the Letter of Credit to satisfy the deficiency.

28. Obligations under the Second Lien Credit Agreement are secured by a senior right to the proceeds of the Second Lien Debt Service Reserve. In addition, the Intercreditor Agreement (as defined in the Second Lien Credit Agreement) accords the Second Lien Lenders and the Second Lien Agent a senior right to receive the proceeds of the Letter of Credit.

---

[1] According to the Debtors' motion in the bankruptcy case to continue use of their cash management system, the Reserve Account had a zero balance as of the Petition Date.

29.     The Security Deposit Agreement categorically prohibits any reduction or transfer of the amounts available under the Letter of Credit except upon the occurrence of specific delineated circumstances. Of relevance here, Section 3.7(b)(i) of the Security Deposit Agreement provides that the borrower may reduce the amount available under the Letter of Credit only if (i) no Default or an Event of Default has occurred, and (ii) on any Funding Date, the available amount under the Letter of Credit is in excess of the amount of reasonably anticipated aggregate interest and fees payable for a six month period, in which case the borrower may reduce the amount available under the Letter of Credit up to the amount of the excess.

30.     The Security Deposit Agreement defines a default as any event that constitutes an Event of Default but for the passage of time or the requirement that notice be given or both. Under Section 6.01(g) of the Second Lien Credit Agreement, an Event of Default includes the filing of a bankruptcy petition.

### III. The Debtors' Fraudulent Reduction of the Letter of Credit

31.     By no later than early August 2010, the Debtors decided to reduce the Letter of Credit to $0. The Debtors also decided that they would not notify Wilmington Trust or the Second Lien Lenders of this decision before instructing CS to reduce the Letter of Credit, lest Wilmington Trust or the Second Lien Lenders take steps to protect their rights with respect to the Letter of Credit.

32.     [REDACTED]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ If the Debtors had disclosed their true intentions, Wilmington Trust would have taken steps to protect its rights with respect to the Letter of Credit.

33. On August 16, 2010, Hunter, on behalf of the Debtors, transmitted a letter to CS, as Issuing Bank, stating that, as of August 16, 2010, no interest or fees would be payable under the Second Lien Credit Agreement as of that date and for the next six months. Accordingly, the Reduction Letter directed CS to reduce the Letter of Credit to $0. In Hunter's words:

> [A] Second Lien Debt Service Reserve Excess (as defined in the Security Depositary Agreement) exists in an amount equal to $13,000,000 (based on the determination that <u>no interest or fees are reasonably anticipated to be payable during the following six month period occurring after the Date of Determination</u> and the fact that the Available Amount of all Second Lien Debt Service Reserve Letters of Credit standing to the credit of the Second Lien Debt Service Reserve Account is equal to $13,000,000). Accordingly, pursuant to Section 3.7(b)(i) of the Security Deposit Agreement, the Borrower hereby directs the Applicable Issuing Bank to reduce the Available Amount of the Letter of Credit to $0.00, such that, after giving effect to such reduction, no Second Lien Debt Service Reserve Deficiency (as defined in the Security Deposit Agreement) shall exist. (Emphasis added)

34. On the Petition Date, two days later, the Debtors filed the Hunter Declaration, in which Hunter declared under penalty of perjury that no amounts would be payable under the Second Lien Credit Agreement for six months as of August 16, 2010.

### IV. <u>CS's Defective Notice</u>

35. On August 16, 2010, the same day that CS received the Reduction Letter, CS, as the Issuing Bank, gave notice to CS, purportedly as Second Lien Agent, that the Letter of

Credit was to be reduced to $0 on the Petition Date. CS took this step despite knowing that Wilmington Trust had replaced CS as Second Lien Agent, on February 18, 2009.

36.    When Wilmington Trust replaced CS as Second Lien Agent, CS and Wilmington Trust agreed, in the Successor Second Lien Administrative Agent Agreement and the Successor Second Lien Collateral Agent Agreement, each dated February 18, 2009, (the "Succession Agreements"), that Wilmington Trust, as the successor Second Lien Agent, became vested with all the rights and privileges formerly held by CS. Thus, CS's failure to give notice to Wilmington Trust that the reserve maintained for Wilmington Trust's benefit would be reduced to $0 was in violation of the Succession Agreements.

37.    CS did not inform Wilmington Trust of the reduction of the Letter of Credit to $0, which became effective on August 18, 2010, until a few hours prior to the filing of the Debtors' bankruptcy petition on that same day. CS thereby violated its obligations under the Letter of Credit, which require it to give the beneficiary at least two days' notice before reducing the Letter of Credit.

38.    Furthermore, CS was not entitled to rely on representations by the Debtors in deciding to reduce the amount available under the Letter of Credit. Accordingly, CS had no valid basis for doing so. Yet, on the Petition Date, CS reduced the Letter of Credit to $0 pursuant to the directions in the Reduction Letter.

39.    On the Petition Date, August 18, 2010, Wilmington Trust made a valid draw request to CS for $13 million under the Letter of Credit. In violation of its contractual obligations and in bad faith, CS rejected this request and claimed, falsely, that Wilmington Trust was not entitled to submit draw requests under the Letter of Credit.

40. Since the Petition Date, Wilmington Trust has demanded that CS honor its draw request for $13 million. CS has refused Wilmington Trust's demands both to reinstate the full amount of the Letter of Credit and to honor its draw request on the Letter of Credit.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Fraud against the Debtors)**

41. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 40 as if fully set forth herein.

42. As stated above, the Debtors knowingly and intentionally made and caused to be made false and misleading statements of material fact to CS in connection with the Reduction Letter, with the intention that CS would rely on such statements to the detriment of Wilmington Trust, which statements have caused Wilmington Trust substantial injury.

43. Among such false and misleading statements is the Debtors' representation that "no interest or fees are reasonably anticipated to be payable during the following six-month period occurring after the Date of Determination," when in fact, and as the Debtors well knew:

    a) approximately $2.3 million in interest and substantial fees already had accrued by the date of the Reduction letter; and

    b) at least $8 million in interest and fees was reasonably anticipated by the Debtors to be payable during the six-month period set forth in the Reduction Letter.

44. The Reduction Letter also was materially false and fraudulent in that there was an ongoing Default under the Second Lien Credit Agreement because the Debtors knew they would be filing for bankruptcy protection within days of the Reduction Letter and acted with this knowledge in transmitting the Reduction Letter, which Default precluded any

attempt by the Debtors to reduce the Letter of Credit under Sections 3.7(b)(i) and (ii) of the Security Deposit Agreement.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Against CS)

45. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 44 as if fully set forth herein.

46. CS and Wilmington Trust are parties to the Succession Agreements. CS is also a party to the Letter of Credit, and Wilmington Trust, as Second Lien Agent, is the intended third-party beneficiary under the Letter of Credit.

47. CS, as predecessor Second Lien Agent, breached its contractual obligations to Wilmington Trust under the Succession Agreements by, among other breaches, failing to give Wilmington Trust valid notice of its reduction of the Letter of Credit but instead giving notice to itself, which failure prevented Wilmington Trust from taking steps to prevent or mitigate said reduction.

48. CS, as Issuing Bank, also breached its contractual obligations to Wilmington Trust under the Letter of Credit by, among other breaches:

    a) failing to give Wilmington Trust at least two days' notice of its reduction of the Letter of Credit, which failure prevented Wilmington Trust from taking steps to prevent or mitigate said reduction;

    b) reducing the Letter of Credit to $0, even though it was not entitled to rely on representations by the Debtors in taking such action and it knew that the Debtors did not satisfy the conditions for directing said reduction; and

    c) refusing Wilmington Trust's valid draw request for $13 million under the Letter of Credit.

49. Said breaches have caused Wilmington Trust substantial injury.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract Against the Debtors)

50. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 49 as if fully set forth herein.

51. As described above, the Debtors and Wilmington Trust are parties to the Second Lien Credit Agreement, the Security Deposit Agreement and the Intercreditor Agreement.

52. The Debtors have breached their contractual obligations to Wilmington Trust in the following respects, among others:

   a) Under the Second Lien Credit Agreement, by, among other breaches, usurping Wilmington Trust's authority to calculate interest and using an invalid interest determination as the supposed basis for reducing the Letter of Credit to $0;

   b) Under the Security Deposit Agreement, by, among other breaches:

      i. delivering the Reduction Letter to CS directing that the Letter of Credit be reduced to $0; and

      ii. causing CS to reduce the Letter of Credit to $0; and

   c) Under the Intercreditor Agreement, by, among other breaches:

      i. causing CS to reduce the Letter of Credit to $0; and

      ii. interfering with Wilmington Trust's exclusive right to the proceeds of the Letter of Credit.

53. Said breaches have caused Wilmington Trust substantial injury.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Tortious Interference With Contract against the Debtors)

54. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 53 as if fully set forth herein.

55. CS and Wilmington Trust are both parties to the Security Deposit Agreement and the Second Lien Credit Agreement. CS is also a party to the Letter of Credit, and Wilmington Trust is the intended third-party beneficiary under the Letter of Credit.

56. The Debtors knowingly and intentionally induced CS to breach its contractual obligations to Wilmington Trust under the Letter of Credit, the Security Deposit Agreement and the Second Lien Credit Agreement by, among other acts:

　　a) causing CS to reduce the Letter of Credit to $0; and

　　b) causing CS to deny Wilmington Trust's valid draw request for $13 million under the Letter of Credit.

57. Such acts have caused Wilmington Trust substantial injury.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Conversion and Aiding And Abetting Conversion against the Debtors)

58. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 57 as if fully set forth herein.

59. Wilmington Trust had and has an exclusive and immediate right to the proceeds of the $13 million Letter of Credit pursuant to the Second Lien Credit Documents, which provide for Wilmington Trust's senior priority right over the Letter of Credit proceeds for the payment of interest and fees.

60. The Debtors knowingly and intentionally interfered with Wilmington Trust's possessory right to the proceeds of the Letter of Credit, and gave substantial assistance to CS's interference with same, by, among other acts:

    a) causing CS to reduce the Letter of Credit to $0; and

    b) causing CS to deny Wilmington Trust's valid draw request under the Letter of Credit.

61. Such interference has caused Wilmington Trust substantial injury.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Conversion and Aiding And Abetting Conversion against CS)

62. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63. Wilmington Trust had and has an exclusive and immediate right to the proceeds of the $13 million Letter of Credit pursuant to the Second Lien Credit Documents, which provide for Wilmington Trust's senior priority right over the Letter of Credit proceeds for the payment of interest and fees.

64. CS knowingly and intentionally interfered with Wilmington Trust's possessory right to the proceeds of the Letter of Credit, and gave substantial assistance to the Debtors' interference with same, by, among other acts:

    a) failing to give Wilmington Trust at least two days' notice of its reduction of the Letter of Credit, which failure prevented Wilmington Trust from taking steps to prevent or mitigate said reduction;

    b) reducing the Letter of Credit to $0; and

    c) denying Wilmington Trust's valid draw request under the Letter of Credit.

65. Such interference has caused Wilmington Trust substantial injury.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Equitable Subordination Pursuant to 11 U.S.C. § 510(c)**
**against CS, as First Lien Agent on behalf of the First Lien Lenders)**

66. Wilmington Trust repeats and realleges each and every allegation set forth in paragraphs 1 through 65 as if fully set forth herein.

67. CS engaged in inequitable conduct by, among other acts:

a) failing to give Wilmington Trust at least two days' notice of its reduction of the Letter of Credit, which failure prevented Wilmington Trust from taking steps to prevent or mitigate said reduction;

b) reducing the Letter of Credit to $0, even though it was not entitled to rely on representations by the Debtors in taking such action; and

c) refusing Wilmington Trust's valid draw request for $13 million under the Letter of Credit.

68. CS's inequitable conduct unfairly privileges the First Lien Lenders, for whom CS is First Lien Agent, at the expense of Wilmington Trust and the Second Lien Lenders, by, among other reasons, depriving the Second Lien Agent of its sole, senior right to the proceeds of the Letter of Credit and effectively reversing the priority established by the Intercreditor Agreement, under which the Second Lien Agent's fees and expenses are payable prior to the First Lien Lenders receiving adequate protection interest payments.

69. Equitable subordination to the extent of the injuries suffered by Wilmington Trust, *i.e.*, at least $13 million, is therefore consistent with the Bankruptcy Code and the Court's equitable powers thereunder.

WHEREFORE, Wilmington Trust respectfully demands judgment against

Defendants as follows:

  A. Awarding to Wilmington Trust monetary damages to be determined at trial, but in no event less than $13 million, on the First, Second, Fourth, Fifth and Sixth Causes of Action;

  B. Issuing injunctive relief, pursuant to Section 105 of the Bankruptcy Code, requiring the Debtors and/or CS to rescind the Letter of Credit reduction and to restore the Letter of Credit in the amount of $13 million, on the First, Second, Third, Fourth, Fifth and Sixth Causes of Action;

  C. Imposing a constructive trust in favor of Plaintiff in an amount no less than $13 million, on the First, Second, Third, Fourth, Fifth and Sixth Causes of Action;

  D. Equitably subordinating the claims of the First Lien Lenders to the claims of Wilmington Trust, pursuant to Section 510 (c) of the Bankruptcy Code, to the extent of the injuries suffered by Wilmington Trust, *i.e.*, at least $13 million, on the Seventh Cause of Action;

  E. Imposing the fees and costs incurred in connection with bringing this action; and

  F. Ordering such other and further relief as is deemed just and proper.

Dated:  New York, New York
        October 18, 2010

                                                        RESPECTFULLY SUBMITTED,

| BOIES, SCHILLER & FLEXNER LLP | DECHERT LLP |
|---|---|
| /s/ Jonathan D. Schiller | /s/ Allan S. Brilliant |
| Jonathan D. Schiller | Allan S. Brilliant |
| Damien J. Marshall | Kevin J. O'Brien |
| Rosaline Y. Chan | Robert W. Topp |
| Joshua I. Schiller | Brian H. Brick |
| 575 Lexington Avenue, 7th Floor | 1095 Avenue of Americas |
| New York, New York 10012 | New York, New York 10036-6797 |
| Telephone: (212) 446-2300 | Telephone: (212) 698-3500 |
| Facsimile: (212) 446-2350 | Facsimile: (212) 698-3599 |
| jschiller@bsfllp.com | allan.brilliant@dechert.com |
| dmarshall@bsfllp.com | kevin.obrien@dechert.com |
| rchan@bsfllp.com | robert.topp@dechert.com |
| jischiller@bsfllp.com | brian.brick@dechert.com |
| *Counsel to Wilmington Trust FSB, as Second Lien Administrative Agent, as to Credit Suisse AG, Cayman Islands Branch* | *Counsel to Wilmington Trust FSB, as Second Lien Administrative Agent, Except as to Credit Suisse AG, Cayman Islands Branch* |