**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Boston Generating, LLC, | Case No. 10-14419 (SCC) |
| et al.,[1] | |
| Debtors. | Jointly Administered |
| | **Related Docket No. 24** |

**ORDER AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS
OF THE DEBTORS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES,
RIGHTS, INTERESTS AND ENCUMBRANCES; (B) THE DEBTORS TO ENTER INTO
AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE
AGREEMENT; (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE
TRANSITION SERVICES AGREEMENT; AND (E) GRANTING RELATED RELIEF**

Upon the portion of the motion (the "**Motion**")[2] of EBG Holdings LLC and the other

above-captioned debtors, as debtors and debtors-in-possession (collectively, the "**Debtors**") for

entry of orders, pursuant to Sections 105(a), 363, 365, 503 and 507 of the United States

Bankruptcy Code (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing and approving

the following:

(a)     the sale of substantially all of the assets of the Debtors;

(b)     the entry into, performance under and terms and conditions of the Asset Purchase
Agreement dated as of August 7, 2010 (collectively with all related agreements,
amendments (including Amendment No. 1 to Asset Purchase Agreement dated

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River
Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power
Services, Inc. (0476); and BG Boston Services, LLC (6921).

[2]     Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in
the APA, the Motion and the Sale Support Agreement, as applicable.

November 9, 2010 ("**APA Amendment No. 1**"), documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "**APA**"), substantially in the form attached hereto as **Exhibit A**, whereby the Debtors have agreed to sell, and Constellation Holdings, Inc. (the "**Buyer**") has agreed to buy, substantially all of the Debtors' assets (specifically as set forth and defined in the APA, as modified by paragraph 36 of this Order, the "**Acquired Assets**"), free and clear of all Claims (as defined below), Liens (defined below), liabilities rights, interests and encumbrances except where the Debtors have agreed to transfer and Buyer has expressly agreed to assume certain of the Debtors' liabilities (specifically as set forth and defined in the APA, the "**Assumed Liabilities**") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "**Transactions**");

(c)     the assumption and assignment to Buyer or an affiliate of (as defined in the APA, an "**Affiliate**") of Buyer of certain executory contracts and unexpired leases of the Debtors designated for assumption and assignment as Acquired Contracts in accordance with this Order, the Bidding Procedures Order (defined below) and the APA (collectively, with the executory contracts and unexpired leases set forth on Exhibit C attached hereto, the "**Assumed Contracts**");

(d)     the entry into a transition services agreement (the "**Transition Services Agreement**") between the Debtors and Buyer; and

(e)     other related relief;

and the Court having entered an order approving the bidding procedures and granting certain related relief on October 12, 2010 [Docket No. 268] (the "**Bidding Procedures Order**"); and no other qualified bids in accordance with the Bidding Procedures Order having been received and therefore no auction having been conducted in accordance with the Bidding Procedures Order (the "**Auction**"); and Buyer having submitted the highest or otherwise best offer; and the Court having conducted a hearing on the Motion commencing on November 17, 2010 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the APA, the Bidding Procedures Order, the record of the hearing before the Court on October 4, 5, 6, 7 and 9, 2010 (the "**Bidding Procedures Hearing**") at which the Bidding Procedures Order was

2

approved and all objections to the Transactions and the APA filed in accordance with the Bidding Procedures Order; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings had before the Court, and all objections and responses to the relief requested in the Motion having been heard and overruled, continued or resolved on the terms set forth in this Order, and it appearing that due notice of the Motion, the APA, the Bidding Procedures Order and the Auction having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:[3]**

<u>**Jurisdiction, Venue and Final Order**</u>

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]    All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated to the extent not inconsistent herewith.  The Court's opinion that was read into the record at the conclusion of the Sale Hearing is attached hereto as <u>Schedule 1</u> and is hereby incorporated by reference in full, provided, however, this Order may be entered without Schedule 1 (which may be filed subsequently) and this Order shall be effective immediately upon entry.

NY\1671051.28

**Notice of the Transactions, APA, Sale Hearing, Auction and the Cure Amounts**

B.       As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the APA and the Transactions has been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.   The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the APA and the Transactions as required by the Bidding Procedures Order.   The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the APA or the Transactions is required for the entry of this Order.

C.       A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.       In accordance with the Bidding Procedures Order, the Debtors have served a notice (as amended, modified or otherwise supplemented from time to time, the "**Contract Notice**") of the potential assumption and assignment of the Assumed Contracts and of the Cure Amounts upon each non-Debtor counterparty to an Assumed Contract. The service and provision of the Contract Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or establishing a Cure Amount for the respective Assumed Contracts.  Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contracts and the Cure Amount set forth in the Contract Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of

4

Section 365(c)(1) of the Bankruptcy Code). The deadline to file an objection to the assumption and assignment to the Buyer of any Assumed Contract (a "**Contract Objection**") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed cure amount (the "**Cure Amount**") set forth on the Contract Notice.

### **Highest or Otherwise Best Offer**

E.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have otherwise complied in all respects with, the Bidding Procedures Order. The Auction was duly noticed and the Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase all of the Acquired Assets and assume all of the Assumed Liabilities.

F.      The Acquired Assets were adequately marketed by the Debtors, and the consideration provided by Buyer under the APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities.

G.      Approval of the Motion and the APA and the consummation of the Transactions contemplated thereby are in the best interests of the Debtors, their respective creditors, estates and other parties in interest. The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA.

NY\1671051.28

H.      Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

I.      The APA was not entered into, and none of the Debtors or Buyer, have entered into the APA or propose to consummate the Transactions, for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors.  None of the Debtors or Buyer is entering into the APA, or proposing to consummate the Transactions, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

J.      The offer of Buyer, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtors pursuant to the APA: (i) is the highest and/or best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates and (iv) constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Acquired Assets.

K.      The Buyer is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order.  The Buyer has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and the sale, the Transition Services Agreement and the APA likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

NY\1671051.28

## Good Faith of Debtors and Buyer

L.        The sales process conducted by the Debtors, including without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, was at arms' length, non-collusive, in good faith, and substantively and procedurally fair to all parties.

M.        The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded interested potential purchases a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (c) considered any bids submitted on or before the Bid Deadline.

N.        The APA and the Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Debtors and Buyer without collusion, in good faith and at arms' length.  None of the Debtors or the Buyer has engaged in any conduct that would cause or permit the APA or the Transactions to be avoided under Section 363(n) of the Bankruptcy Code.

O.        Neither the Buyer nor any of their respective affiliates, present or contemplated members, officers, directors, shareholders or any of their respective successors and assigns is an "insider" of any of the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code.  Buyer is entering into the Transactions in good faith and is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore entitled to the full

protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the APA to be avoided or impose any costs or damages under Section 363(n) of the Bankruptcy Code.

## Section 363 is Satisfied

P.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to (i) enter into the APA, (ii) sell the Acquired Assets and assume and assign the Assumed Contracts, and (iii) enter into the Transition Services Agreement, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the fact that (i) the APA constitutes the highest or otherwise best offer for the Acquired Assets; (ii) the APA presents the best opportunity to realize the value of the Debtors on a going concern basis and avoid any potential decline and devaluation of the Debtors' business; and (iii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the APA and the Transition Services Agreement, recoveries of creditors may be diminished.

Q.      The Debtors have, to the extent necessary, satisfied the requirements of Bankruptcy Code section 363(b)(1). Accordingly, appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code sections 363(b)(1) or 332 is not required with respect to the relief requested in the Sale Motion.

R.      The Acquired Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of Bankruptcy Code section 541(a).

S.      The sale of all Acquired Assets to Buyer under the terms of the APA meets the applicable provisions of Section 363(f) of the Bankruptcy Code such that the sale of the Acquired Assets will be free and clear of any and all Claims, and except as expressly provided in

8

the APA with respect to the Assumed Liabilities, the (i) transfer of the Acquired Assets to Buyer and (ii) assumption and/or assignment to Buyer or an Affiliate of Buyer of the Assumed Contracts and Assumed Liabilities will be free and clear of all Claims and will not subject the Buyer or any of the Buyer's assets to any liability for any Claims whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability).  All holders of Claims who did not object, or withdrew their objections to the Transactions, are deemed to have consented to the Transactions pursuant to Section 363(f)(2) of the Bankruptcy Code, and all holders of Claims are adequately protected — thus satisfying Section 363(e) of the Bankruptcy Code — by having their Claims, if any, attach to the proceeds of the Transactions ultimately attributable to the property against or in which they assert a Claim or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such Claim holder had prior to the Transactions, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.  Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "**NLRA**"), or the Employee Retirement Income Security Act, as amended, 29 USC § 1001 *et seq.* ("**ERISA**").

T.      Buyer would not have entered into the APA and would not consummate the sale of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear of all Claims or if the Buyer could be liable for any Claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by Buyer as set forth in the APA or in this Order.  Buyer asserts that it will not consummate the Transactions unless the APA specifically provides and this Court specifically orders that none of the Buyer, its assets or the

NY\1671051.28

Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Claim or (ii) any successor or transferee liability for any of the Debtors other than with respect to the Assumed Liabilities.

U.      The transfer of the Acquired Assets to Buyer under the APA will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Acquired Assets free and clear of all Claims.  The Debtors may sell their interests in the Acquired Assets free and clear of all Claims because, in each case, one or more of the standards set forth in Section 363(f) has been satisfied.  The transfer of the Acquired Assets to Buyer will vest Buyer with good and marketable title to the Acquired Assets.  Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

V.      The Buyer is not a continuation of the Debtors or their respective estates and there is no continuity between Buyer and the Debtors.  Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors.

## Assumption and Assignment of the Assumed Contracts

W.      The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented or otherwise modified prior to assumption and assignment without further order of the Court with the consent of the Debtors, the contract counterparty and the Buyer) that are designated for assumption and assignment pursuant to the terms of this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

NY\1671051.28

X.       No section of any Assumed Contract which purports to prohibit, restrict, or condition the use, consideration or assignment of any such Assumed Contract in connection with the Transactions shall have any force or effect.

Y.       The Debtors have met all requirements of Section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  The Debtors and/or Buyer, as applicable under the APA, have (a) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Assumed Contracts, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  Each of the Assumed Contracts is free and clear of all Claims against Buyer.

Z.       Buyer has demonstrated adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to Section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

AA.     No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Sale Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in Section 365(b)(1)(A) of the Bankruptcy Code.

BB.     There is no legal or equitable reason to delay the Transactions.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

<u>**General Provisions**</u>

1.      The Motion is granted in its entirety and approved in all respects.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are, except as provided in other orders of the Court and by paragraph 24 below, hereby overruled on the merits with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein including without limitation all non-debtor parties to the Assumed Contracts.

3.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

<u>**Approval of the APA**</u>

4.      The APA, all of the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.  The transfer of the Acquired Assets by the Debtors to Buyer shall be a legal, valid and effective transfer of the Acquired Assets.  The consummation of the Transactions is hereby approved and authorized under Section 363(b) of the Bankruptcy Code.

NY\1671051.28

5.      The Debtors are authorized and, to the extent not already done, directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement and close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order, including without limitation executing, acknowledging and delivering such corporate name change certificates, deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to Buyer, or reducing to possession, any or all of the Acquired Assets and (b) to assume and assign any and all Assumed Contracts.  The Debtors are further authorized to pay, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Transactions or perform their obligations under the APA.

6.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.

7.      All amounts, if any, to be paid by Debtors to Buyer pursuant to the APA, including, without limitation, any allowed claims for breach thereof and the Final Adjustment Amount, if any, shall (a) constitute allowed administrative expenses of the estates pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) be protected as provided in the APA, (c) not be altered, amended, discharged or affected by any plan proposed or confirmed in these cases without the prior written consent of Buyer, and (d) be due and payable if and when any Debtors' obligations arise under the APA without further order of the Court.

8.      Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions

NY\1671051.28

of the APA or this Order, and to the extent of any conflict or derogation between this Order or

the APA and such future plan or order, the terms of this Order and the APA shall control.

**Sale and Transfer Free and Clear of Claims**

9.      Except as otherwise expressly provided in the APA and the terms of this Order

with respect to Assumed Liabilities, the Acquired Assets shall be sold free and clear of all – prior

to the Closing – claims, Liens, liabilities, interests, rights and encumbrances, including, without

limitation, the following: all mortgages, restrictions (including, without limitation, any restriction

on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any

attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments,

leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights

or other title retention agreements, pledges, judgments; demands, rights of first refusal, consent

rights, offsets, contract rights, recoupment rights, rights of recovery, reimbursement rights,

contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego

claims, environmental rights and claims (including, without limitation, toxic tort claims), labor

rights and claims, employment rights and claims, pension rights and claims, tax claims,

regulatory violations by any governmental entity, decrees of any court or foreign or domestic

governmental entity, charges of any kind or nature, debts arising in any way in connection with

any agreements, acts, or failures to act, reclamation claims, obligation claims, demands,

guaranties, option rights or claims, rights, contractual or other commitment rights and claims,

and all other matters of any kind and nature, whether known or unknown, choate or inchoate,

filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded,

perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or

unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether

arising prior to or subsequent to the commencement of these Chapter 11 Cases (but, for the

14

avoidance of doubt, in each case prior to the Closing), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability (all of the foregoing collectively being referred to in this Order as "**Claims**", and, as used in this Order such term includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof) with all such Claims to attach to the consideration to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. As used in this Order, the term "**Liens**" includes, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof.  Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

10.     At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to Sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims except for Assumed Liabilities.  Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets.  All person or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to Buyer or its respective designees on the Closing or at such time thereafter as Buyer may request.

11.     This Order (a) shall be effective as a determination that, as of the Closing, (i) no Claims (other than Assumed Liabilities) will be capable of being asserted against the Buyer or any of its respective assets (including the Acquired Assets), (ii) the Acquired Assets shall have been transferred to Buyer free and clear of all Claims and (iii) the conveyances described herein

NY\1671051.28

have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  The Acquired Assets are sold free and clear of any reclamation rights.

12.    Except as otherwise expressly provided in the APA with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to Closing or the transfer of the Acquired Assets to Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Buyer, its property or the Acquired Assets.  Following the Closing, no holder of any Claim shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Claim, or based on any action the Debtor may take in their Chapter 11

NY\1671051.28

cases. Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

13.    If any person or entity that has filed financing statements, mortgages, mechanic's Claims, *lis pendens* or other documents or agreements evidencing Claims against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Acquired Assets or otherwise, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Buyer and the applicable Acquired Assets; and (c) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to the Acquired Assets other than Assumed Liabilities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

14.    To the maximum extent permitted under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date.

NY\1671051.28

15.     To the extent permitted by Bankruptcy Code section 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, assigned or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

16.     For the avoidance of doubt, only Acquired Assets (as modified herein by paragraph 36 of this Order) that are part of the estates of the Debtors are being sold to Buyer free and clear of Claims pursuant to Section 363(f) of the Bankruptcy Code.

## No Successor or Transferee Liability

17.     Except as expressly provided in the APA with respect to Assumed Liabilities, the Buyer shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Transactions contemplated by the APA, or the transfer or operation of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations as an assignee under the Assumed Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state or local revenue, pension, ERISA, the Consolidated Omnibus Budget Reconciliation Act (**"COBRA"**), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the NLRA, environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any

18

taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine; provided, however nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

18.     Other than as expressly set forth in the APA with respect to Assumed Liabilities, the Buyer shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Acquired Assets or (b) any remaining Claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the APA with respect to Assumed Liabilities, the Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described herein, "**Successor or Transferee Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing.  Except to the extent expressly included in the Assumed Liabilities with respect to Buyer, the Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**") or the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), or any foreign, federal, state or local labor, employment, or environmental law whether of similar

import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities by Buyer or an Affiliate of Buyer. Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

19.     Except as expressly provided in the APA for the Assumed Liabilities, with respect to Buyer, nothing in this Order or the APA shall require the Buyer to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement. Nothing herein shall be held to limit any bargaining or other obligations that may arise from and after the Closing pursuant to the NLRA or ERISA.

20.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, or its assets (including the Acquired Assets), with respect to any (a) Claim or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or

NY\1671051.28

order; (iii) creating, perfecting or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

### Good Faith of Buyer

21.    The Transactions contemplated by the APA are undertaken by Buyer without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

22.    Neither the Debtors nor Buyer have engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code.  The consideration provided by Buyer for the Acquired Assets under the APA is fair and reasonable and the sale may not be avoided under Section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of Assumed Contracts

23.    The Debtors are authorized and directed at the Closing to assume and assign each of the Assumed Contracts, including that certain lease by and between John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust, and Exelon New England Holdings, LLC and all related amendments (collectively, the "**Schrafft Lease**"), to Buyer or an Affiliate of

NY\1671051.28

Buyer free and clear of all Claims (other than the Assumed Liabilities) pursuant to Sections 105(a), 363(b) and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer provided that Buyer shall pay a cure amount of $9,000 for the Schrafft Lease at Closing to resolve the cure objection filed by The Schrafft Center, LLC.  The payment of the applicable Cure Amounts shall (a) effect a cure of all defaults existing thereunder as of the Closing, (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to Buyer or an Affiliate of Buyer, constitute adequate assurance of future performance thereof.

24.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer or an Affiliate of Buyer of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of Buyer.  Each non-Debtor counterparty to the Assumed Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary

loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against Buyer (or its property, including the Acquired Assets) any claim, counterclaim, defense, breach, condition, setoff asserted or capable of being asserted against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.  Notwithstanding anything to the contrary contained herein, the issues relating to the assumption and assignment of the contracts set forth on Exhibit B attached hereto, have been continued and will be resolved by separate orders of the Court.

25.    Until Closing and including during the period when the Transition Services Agreement is in effect (the "**Designation Period**"), Buyer shall be permitted to designate additional Contracts ("**Buyer Designation Rights**") that will be (i) assumed by the Debtors and assigned to Buyer and become Assumed Contracts (the "**Proposed Assumed Contracts**") or (ii) excluded by the Buyer from the Assumed Contracts set forth in Schedule 2.1 of the APA (the "**Proposed Rejected Contracts**").  Prior to the expiration of the Designation Period, the Debtors shall not reject any contracts, other than in accordance with this Order and the APA.  Buyer shall make any payments that would otherwise be required to be made by the Debtors pursuant to a plan of liquidation (so long as such plan of liquidation shall provide for distributions in accordance with the absolute priority rule) that arise from obligations (including rejection damages claims) incurred by the Debtors as the result of the Buyer's decision to, during the period from the entry of this order until the Closing, exercise the Buyer Designation Rights to remove a Proposed Rejected Contract from Schedule 2.1 of the APA.  Within three (3) Business Days of receipt by the Debtors of prior written notice by Buyer of an exercise of Buyer

NY\1671051.28

Designation Rights requiring assumption by the Debtors and assignment to Buyer or an Affiliate of Buyer of any Proposed Assumed Contract, the Debtors shall file a notice of assumption and assignment ("**Assumption and Assignment Notice**") with the Bankruptcy Court and serve a copy of such notice on each non-Debtor party to the subject Proposed Assumed Contract (each, a "**Contract Counterparty**"), setting forth a description of each Proposed Assumed Contract.  No later than ten (10) days after the date on which the Debtors serve an Assumption and Assignment Notice, the Debtors will file with the Court an order authorizing the assumption/assignment of the Assumed Contracts listed in the Assumption and Assignment Notice which provides (1) that the assumption of such Assumed Contracts are approved, final and effective, pursuant to Section 365 of the Bankruptcy Code and (2) the Successful Bidder provided adequate assurance of future performance under the applicable contract in accordance with Section 365(f)(2)(B).  For the avoidance of doubt, the assumption and assignment of and provision of adequate assurance of future performance under Assumed Contracts for which the non-debtor counterparty has been previously noticed pursuant to the Bidding Procedures Order is hereby approved without the need for further notice or hearing.

26.     Until a Contract is assumed and assigned as set forth herein, it shall not be considered to be either assumed or assigned and shall remain subject to designation in accordance with the Buyer Designation Rights.  During the Designation Period, the Debtors shall be responsible for all costs (and Cure Amounts if Assumed) with respect to all Contracts listed on Schedule 2.1 of the APA as of the Agreement Date until the later of (i) the Closing or (ii) when the Court enters an order rejecting such Contract.  Except with respect to Contracts discovered after the Agreement Date, with respect to Contracts that Buyer does not list on Schedule 2.1(c) on the Agreement Date, the Debtors shall not have any liability with respect to

NY\1671051.28

any Contract that is not listed on Schedule 2.1 of the APA as of the Agreement Date regardless of whether such Contract is an Assumed Contract, and during the Designation Period, the Buyer shall be responsible for all costs (and Cure Amounts if Assumed) with respect to all Contracts not listed on Schedule 2.1 of the APA as of the Agreement Date until the later of (i) the Closing or (ii) when the Court enters an order rejecting such Contract; provided, however, solely with respect to Contracts that Debtors do not provide notice of to Buyer prior to the Agreement Date, during the Designation Period, the Debtors shall be responsible for all costs (and Cure Amounts if Assumed) with respect to all Contracts not listed on Schedule 2.1 of the APA as of the Agreement Date until the later of (i) the Closing or (ii) when the Court enters an order rejecting such Contract.

27.    Upon the Closing and the payment of the relevant Cure Amounts by Debtors or Buyer as set forth in the APA, Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors shall be released, pursuant to Section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

28.    Each non-debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from asserting against Buyer, or its property (including without limitation the Acquired Assets), any default existing as of the date of the Sale Hearing, or any counterclaim, defense, setoff or other claim asserted or capable of being asserted against the Debtors.  Other than the Assumed Contracts, Buyer assumed none of the Debtors' other contracts and leases and shall have no liability whatsoever thereunder.

NY\1671051.28

29.     The assignments of each of the Assumed Contracts are made in good faith under Sections 363(b) and (m) of the Bankruptcy Code.

## Other Provisions

30.     Notwithstanding anything to the contrary in the Motion, if the APA is terminated prior to Closing and the Buyer is entitled to the Break-Up and Expense Reimbursement Amount pursuant to the APA, then, (i) the Debtors shall promptly return the Buyer's Deposit and (ii) the Debtors also shall pay to Buyer any portion of the Break-Up and Expense Reimbursement Amount owed to Buyer pursuant to the APA; provided, however, that, pending such payment, the Break-Up and Expense Reimbursement Amount shall constitute, and Buyer shall have, an allowed administrative expense claim for the amount of the Break-Up and Expense Reimbursement Amount pursuant to Bankruptcy Code sections 503(a) and (b) and 507(a)(2); and provided, further, that any party in interest reserves the right to argue that payment of the Break-Up Fee to Buyer is not authorized pursuant to the statements made on the record that were "So Ordered" by the Bankruptcy Court at the Bid Procedures Hearing to correct the Break-Up Fee set forth in the original APA (i.e., prior to APA Amendment No. 1).

31.     In connection with the Closing of the Transactions, the Purchase Price from the Sale shall be paid directly by the Successful Bidder to the First Lien Administrative Agent on the Closing Date for distribution to the First Lien Lenders, except that (i) an amount of the cash proceeds of the Sale sufficient to pay the success fee due and owing to JPM pursuant to that certain engagement letter, dated April 12, 2010, between EBG Holdings, LLC, Boston Generating, LLC and JPM (the "**JPM Success Fee**") shall be paid directly by the Successful Bidder to JPM on the Closing Date if permitted by the Court or, if not so permitted on the Closing Date deposited into a segregated interest bearing account (the "**JPM Account**") to be maintained at, and at all time under the control of, the First Lien Collateral Agent pending

26

approval by the Court for distribution to JPM, (ii) an amount of the gross cash proceeds of the

Sale equal to $10,000,000 (the "**Adjustment Escrow Amount**") shall be deposited into a

segregated interest bearing account (the "**Adjustment Escrow Account**") with the Escrow

Agent to be held and disbursed pursuant to the terms of the Adjustment Escrow Agreement,

which agreement shall be in form and substance reasonably acceptable to the First Lien

Collateral Agent and shall provide that (A) the liens of the First Lien Collateral Agent, for the

benefit of the First Lien Lenders and other secured creditors, if any, shall attach in the same

priority and to the same extent as existed prior to the consummation of the Sale to such account

and the funds contained therein and (B) any portion of such amount not distributed in accordance

with the Asset Purchase Agreement shall be paid to the First Lien Administrative Agent for

prompt distribution to the First Lien Lenders, (iii) an amount equal to two and one-half percent

(2.5%) of the gross cash proceeds of the Sale shall be funded into a segregated interest bearing

account to be maintained at, and at all time under the control of, the First Lien Collateral Agent

and the liens of the First Lien Collateral Agent, for the benefit of the First Lien Lenders and

other secured creditors, if any, shall attach in the same priority and to the same extent as existed

prior to the consummation of the Sale to such account and the funds contained therein and such

funds shall be paid to the First Lien Administrative Agent for prompt distribution to the First

Lien Lenders upon the earlier of the effective date of a plan of reorganization or liquidation in

the Chapter 11 Cases and June 18, 2011, and (iv) an amount of the cash proceeds of the Sale

equal to $45,000,000 minus any Cash Collateral on hand immediately prior to the Closing of the

Sale (or $0 if the amount of Cash Collateral on hand immediately prior to the Closing of the Sale

is greater than or equal to $45,000,000) shall be deposited into a separate interest bearing

account (the "**Shortfall Account**" and together with the JPM Account and the Adjustment

Escrow Account, the "**Reserve Accounts**" and any funds contained therein "**Reserve Funds**") to be maintained at the First Lien Collateral Agent for purposes of funding any shortfall with respect to (A) the Carve-Out and (B) solely to the extent a Carve-Out Trigger Notice has not been delivered or a plan of reorganization or liquidation in the Chapter 11 Cases is confirmed, distributions on account of allowed priority claims and allowed administrative claims (including, without limitation, claims arising under section 503(b)(9) of the Bankruptcy Code) not to exceed in the aggregate $4,000,000 (excluding any amounts approved under Section 330 of the Bankruptcy Code to the extent of the Carve-Out); provided, however, that nothing contained herein shall be construed as prohibiting the Debtors from paying any allowed priority claims and allowed administrative claims incurred in the ordinary course of business prior to delivery of a Carve-Out Trigger Notice.  Notwithstanding anything in the Cash Collateral Order to the contrary, during the month of the Closing of the Sale, the adequate protection interest payment required to be paid under the Cash Collateral Order for that period through and including the Closing Date shall be made from Sale proceeds and for the period commencing the day after the Closing Date through the end of such month and for all other subsequent periods, payments shall be made in accordance with subparagraph 4(c)(ii)(A)(II) of the Cash Collateral Order on the new principal balance. Notwithstanding anything in the Cash Collateral Order to the contrary, including any budget limiting the payment of professional fees, the reasonable fees and expenses of the professionals to the Special Committee to the Board of Managers of EBG Holdings LLC, Young Conaway Stargatt & Taylor, LLP and Berenson & Company, LLC (together, the "**Special Committee's Professionals**"), shall be paid from the Debtors' cash on hand (including Cash Collateral on hand), subject to the approval of such fees and expenses by the Court; and the Special Committee's Professionals shall be considered professionals retained by the Debtors for

purposes of determination and application of the Carve-Out; provided, however, that the fees of Berenson & Company, LLC shall not exceed a base fee of $750,000 without further order of the Court.

32.     Without limiting any provision hereunder, it is hereby acknowledged and agreed that the liens of the First Lien Collateral Agent, for the benefit of the First Lien Lenders and other secured creditors, if any, shall attach in the same priority and to the same extent as existed prior to the consummation of the transactions contemplated by the Asset Purchase Agreement to each of the Reserve Accounts and the Reserve Funds; it being understood that (a) distributions of the Reserve Funds in accordance with Paragraph 4(b) of the Sale Support Agreement and this Order shall be free and clear of any liens, claims, interests or encumbrances of the First Lien Collateral Agent, (b) any Reserve Funds (and any interest accruing thereon) remaining in any Reserve Account (i) after payment in full of the Debtors' professionals and Special Committee's Professionals in accordance with an order(s) of the Bankruptcy Court (including, without limitation, the JPM Success Fee), (ii) after payment in full of the Creditors' Committee's professionals in accordance with an order(s) of the Bankruptcy Court, (iii) after payment in full to the Office of the United States Trustee in accordance with the Bankruptcy Rules and any applicable guidelines and/or procedures of the Office of the United States Trustee, (iv) after the release of that portion of the Adjustment Escrow Amount required to be released in accordance with the Adjustment Escrow Agreement and (v) after payment in full of all priority claims and administrative claims (subject to the limitations described above), shall, in each case, be paid to the First Lien Administrative Agent for prompt distribution to the First Lien Lenders.

33.     The Debtors are authorized and directed pursuant to sections 105 and 363 of the Bankruptcy Code, to enter into and perform the Transition Services Agreement by and between

NY\1671051.28

the Debtors and Buyer.  The Debtors are authorized and directed to take all actions contemplated in the Transition Services Agreement.

34.    The requirements set forth in Rule 6003(b) of the Bankruptcy Rules are satisfied by the contents of the Motion or otherwise deemed waived.

35.    Buyer shall not be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document.  The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

36.    Notwithstanding anything to the contrary contained in the APA, the Acquired Assets shall not include any causes of action concerning directors' and officers' liability.  In addition to the foregoing, neither the APA, nor this Order shall transfer to the Buyer any avoidance claims or causes of action under the Bankruptcy Code or applicable law, including all such rights and avoidance actions of the Debtors' estates arising under chapter 5 of the Bankruptcy Code.  Schedule 2.1(a)-2 of the APA shall be amended to replace the existing contents of the Schedule with that certain leased property at The Schrafft Center, 529 Main Street, Suite 605, Charlestown, Massachusetts 02129 with John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust, as the property's lessor and Boston Generating, LLC as the property's lessee.  Schedule 2.1(c) of the APA shall be amended to add each of the executory contracts and unexpired leases that are included on Exhibit C attached hereto.  Section 2.2(h) of the APA shall be amended to exclude any insurance contracts included on Schedule 2.1(c) of the APA or Exhibit C attached hereto.  Section 8.1(e)(ii) of the APA shall be amended to replace the phrase "ninety-six (96) days" therein with the phrase "one hundred and two (102) days."

NY\1671051.28

37.     Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the transaction contemplated by the APA based upon any arrangement made by or on behalf of the Debtors.

38.     This Order is binding upon and inures to the benefit of any successors and assigns of the Debtors or Buyer, including any trustee appointed in any subsequent case of the Debtors under chapter 7 of the Bankruptcy Code.

39.     The provisions of this Order and the APA are non-severable and mutually dependent.

40.     The APA may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

41.     Nothing in this Order or any Asset Purchase Agreement entered into under this Order releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property from and after the  Closing.  Nothing in this Order or any Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals that would require government approval prior to such transfer without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

42.     Notwithstanding anything to the contrary contained in the APA, the Notice of Assumed Contracts, this Order or any other order of the Bankruptcy Court to the contrary

31

(including, without limitation, any other provision that purports to be preemptory or supervening or grants a release), pursuant to Section 365 of the Bankruptcy Code, if the Buyer shall assume the Underground Storage Tank Liability Policy (No. TSP G21833277 006) (the "**UST Policy**") issued by ACE American Insurance Company ("**ACE**") and Excess Insurance Policy Declarations/Excess Insurance Policy (No. G24023357) (the "**Excess Liability Policy**") issued by Westchester Fire Insurance Company ("**Westchester Fire**") then it shall be subject to all limits, deductibles, retentions, exclusions, terms and conditions, whether matured or unmatured as of this date, as more particularly described within the UST Policy and Excess Liability Policy. Nothing in the APA, the Notice of Assumed Contracts or this Order shall alter the rights and obligations of ACE, Westchester Fire, or the Buyer under the UST Policy or the Excess Liability Policy.

43.     Notwithstanding any other provision in the Sale Motion or this Order, no assignment of any rights and interests of the Debtors in any federal license issued by the Federal Communications Commission (the "**FCC**") shall take place prior to the issuance of FCC regulatory approval for such assignment pursuant to the Communications Act of 1934, as amended and the rules and regulations promulgated there under. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

44.     Nothing in this Order or any Asset Purchase Agreement entered into under this Order shall be deemed to modify the *Order Partially Resolving Wilmington Trust FSB's Cross-Motion for Adequate Protection* [Docket No. 334] (the "**Adequate Protection Escrow Order**").

NY\1671051.28

The LC Account (as defined in the Adequate Protection Escrow Order) shall be maintained in accordance with the Adequate Protection Escrow Order.

45.    Notwithstanding anything to the contrary contained in the APA or this Order, this Order does not approve the sale or transfer of the software (the "**Infor Software**") of Infor Global Solutions (Michigan), Inc. ("**Infor**"), or any rights to use the Infor Software, to Buyer and Buyer shall not receive any rights to use or otherwise benefit from the Infor Software from and after Closing as a result of entry of this Order except as such benefit may be contemplated in the Transition Services Agreement to be entered into as of Closing.  The Debtors do not seek to assume and assign any agreements with Infor (the "**Infor Agreements**") to the Buyer.  Prior to Closing, Buyer and Infor may agree to enter into a license for Buyer's temporary use of the Infor Software ("**Buyer-Infor Agreement**").  Unless and until Buyer and Infor have entered into a Buyer-Infor Agreement, Buyer shall not use the Infor Software, except that the Debtors may continue to use the Infor Software in connection with the Transition Services Agreement and subject to the terms of the Infor Agreements.  At the conclusion of any Buyer-Infor Agreement or the Transition Services Agreement, the Debtors or Buyer, as applicable, shall (i) purge all copies of the Infor Software and any portions thereof from the Acquired Assets on which the Infor Software is located and (ii) certify to Infor in writing, within ten (10) days of the later of the conclusion of (a) any Buyer-Infor Agreement or (b) the Transition Services Agreement, that the Debtors or the Buyer, as applicable, have complied with this obligation.

46.    Notwithstanding anything to the contrary contained in the APA, the Notice of Assumed Contracts, and this Order, the Objection of Mitsubishi Power Systems Americas, Inc. ("**Mitsubishi**") with respect to the assumption and assignment of (i) the Long Term Service Agreement between Mystic Development, LLC ("**Mystic**") and Mitsubishi dated as of

November 6, 2000 for service to the power-generating gas-fired turbines at the Mystic 8 and 9 plant (as amended, supplemented and assigned, the "**2000 Mystic LTSA**"),[4] (ii) the Long Term Service Agreement between Mystic and Mitsubishi dated as of  May 25, 2010 for the Mystic 8 and 9 plant (as amended, supplemented and assigned, the "**2010 Mystic LTSA**"); and (iii) the Long Term Service Agreement between Fore River Development, LLC and Mitsubishi dated as of December 8, 2000 for service to the power-generating gas-fired turbines at the Fore River generating plant (as amended, supplemented and assigned, the "**Fore River LTSA**" and together with the 2000 Mystic LTSA and 2010 Mystic LTSA, each an "**LTSA**" and collectively, the "**LTSAs**") to Buyer or an affiliate of Buyer shall be resolved as follows:

(a) The assumption and assignment of the 2000 Mystic LTSA to Buyer or an affiliate of Buyer shall include the assumption and assignment, to Buyer or an affiliate of Buyer, of any purchase order(s) issued, submitted or entered into in connection with and pursuant to the terms of the 2000 Mystic LTSA prior to the Closing Date;

(b) The assumption and assignment of the 2010 Mystic LTSA to Buyer or an affiliate of Buyer shall include the assumption and assignment, to Buyer or an affiliate of Buyer, of any purchase order(s), including, but not limited to, purchase order numbers: MYN-2010-00553 and MYN-2010-00554, issued, submitted or entered into in connection with and pursuant to the terms of the 2010 Mystic LTSA prior to the Closing Date; and

(c) The assumption and assignment of the Fore River LTSA to Buyer or an affiliate of Buyer shall include the assumption and assignment, to Buyer or an affiliate of Buyer of any purchase order(s) issued, submitted or entered into in connection with and pursuant to the terms of the Fore River LTSA prior to the Closing Date.

47.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments

---

[4]    The 2000 Mystic LTSA has been amended pursuant to (i) a First Amendment  to Long Term Service Agreement dated January 31, 2001 (the "First Amendment"), and (ii) a Second Amendment to Long Term Service Agreement dated May 27, 2009 (the "Second Amendment").

NY\1671051.28

thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Buyer and its assets, including the Acquired Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to Sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Assumed Contracts to Buyer.

48.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be effective immediately upon entry and the Debtors and Buyer are authorized to consummate the Transactions no earlier than fourteen (14) days after date of entry of this Order.

49.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

NY\1671051.28

50.     To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the APA or the Bidding Procedures Order, this Order shall govern and control, and to the extent the Motion conflicts with, or is otherwise inconsistent with, the terms and conditions of the APA, the terms and conditions of the APA shall govern and control.

51.     The Closing of the Transactions shall be subject to the approval by the Federal Energy Regulatory Commission pursuant to Section 203 of the Federal Power Act.

52.     The amount (the "**Second Lien Fee Escrow Amount**") that would be due to the Second Lien Collateral Agent and Second Lien Administrative Agent under Section 4.1 of the Intercreditor Agreement shall either be determined by agreement of the First Lien Administrative Agent and Second Lien Administrative Agent prior to the Closing of the Sale, or if such agreement cannot be reached prior to the Closing of the Sale shall be determined by the Court. The Second Lien Fee Escrow Amount shall be funded into a segregated interest bearing account to be maintained at, and at all time under the control of, the First Lien Collateral Agent and the liens of the First Lien Collateral Agent, for the benefit of the First Lien Lenders and the Second Lien Administrative Agent, if any, shall attach in the same priority and to the same extent as existed prior to the consummation of the Sale to such account and the funds contained therein and such funds shall be paid upon final determination of the Court either to the First Lien Administrative Agent for prompt distribution to the First Lien Lenders or to the Second Lien Administrative Agent for prompt distribution for the Second Lien Lenders.  For the avoidance of doubt, notwithstanding the foregoing, this Order shall be a final order.


New York, New York                              /s/Shelley C. Chapman
Date:  November 24, 2010                    United States Bankruptcy Judge

NY\1671051.28

37

## Schedule 1

**Opinion**

**[To follow and will be filed under separate cover]**

**<u>Exhibit A</u>**

**APA**

**Exhibit B**

**Contracts/Leases for Which Issues Relating to Assumption/Assignment Have Been Continued by Agreement of the Parties**

| Contract Counterparty | Debtor | Contract Date | Notice Address 1 | Notice Address 2 | Contract / Lease | Contract Description |
|---|---|---|---|---|---|---|
| NextEra Energy Resources, LLC | EBG Holdings LLC | May 11, 2010 | NextEra Energy Resources, LLC Attn: President or General Counsel 700 Universe Boulevard Juno Beach, FL 33408 | | Contract | Letter Agreement re: Confidentiality |
| NSTAR Services Company (formerly Boston Edison Company) | Fore River Development, LLC | May 11, 2000 | Boston Edison Company Attn: President or General Counsel 800 Boylston Street Boston, MA 02199 | Boston Edison Company c/o NSTAR Electric & Gas Company Attn: Lead Transmission Asset Management Liaison One NSTAR Way, NE240 Westwood, MA 02090-9003 | Contract | Irrevocable License Agreement for use and access of a tunnel  This Agreement was assigned by Sithe Edgar, LLC to Fore River Development, LLC. |

## Exhibit C

### Additional Executory Contracts and Unexpired Leases to Be Assigned to Buyer or an Affiliate of Buyer

| Contract Counterparties | Name of Contract | Contract Date | Notice Address | Brief Summary |
|---|---|---|---|---|
| Chubb Group of Insurance Companies<br><br>Boston Generating, LLC | Energy Industries Insurance Coverage for Boston Generating, LLC | September 1, 2009 | Chubb Group of Insurance Companies, Claim Service Center, 600 Independence Parkway, P.O. Box 4700, Chesapeake, Va. 23327-4700 | Energies Industries Insura Coverage (Liability Insura Energy Industries) -2.11.2 |
| Liberty Mutual Insurance Co.<br><br>Boston Generating, LLC | Business Auto Declarations/ Business Auto Coverage Form (missing title page) | September 1, 2009 | | Business Auto Insurance-2 |
| Liberty Mutual Group of Companies<br><br>Boston Generating LLC | Liberty Mutual Commercial Policy Workers' Compensation and Employers' Liability Policy For Boston Generating, LLC | September 1, 2009 | Presidential Service Team, Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, MA 02117 (for questions concerning Privacy Practice Disclosure Notice) | Workers' Compensation I 2.11.4 |
| Chubb Group of Insurance Companies<br><br>Boston Generating, LLC | Chubb Commercial Excess and Umbrella Insurance | September 1, 2009 | | Commercial Excess and U Insurance -2.11.5 |
| Great American Insurance Group | Commercial Excess Liability Declaration Page/ Excess Liability Coverage Form | September 1, 2009 | | Commercial Excess Liabil Insurance-2.11.6 |

2

| Contract Counterparties | Name of Contract | Contract Date | Notice Address | Brief Summary |
|---|---|---|---|---|
| Boston Generating, LLC | | | | |
| Westchester Fire Insurance Company<br><br>Boston Generating, LLC | Excess Insurance Policy Declarations/ Excess Insurance Policy | September 1, 2009 | ACE Westchester Claims- P.O. Box 25152, Lehigh Valley, PA 18002-5152 (Claims or Loss Notices) | Excess Insurance Policy Declarations -2.11.7 |
| RSUI Indemnity Company<br><br>Boston Generating, LLC | Commercial Excess Liability Policy | September 1, 2009 | 945 E. Paces Ferry Rd., St. 1800, Atlanta, GA 30326-1160 , Attn: Claims Department | Commercial Excess Liabil Insurance-2.11.8 |
| American International Group, Inc./ American International Specialty Lines Insurance Company<br><br>Boston Generating, LLC | Pollution Legal Liability Select Policy | June 1, 2009 | Manager, Pollution Insurance Products Dept., AIG Domestic Claims, Inc., Attn: CID, 101 Hudson Street, 31st Street, Jersey City, NJ 07302 | Environmental Liability In 2.11.9 |
| ACE American Insurance Company<br><br>Boston Generating, LLC | Underground Storage Tank Liability Policy | September 1, 2009 | | Underground Storage Tan Insurance Policy-2.11.10 |
| Factory Mutual Insurance Company<br><br>Boston Generating, LLC | Mutual Corporation Non-Assessable Policy | December 1, 2009 | | Covers all risks of physica damage to property/ Busin Interruption Insurance-2.1 |
| Lawyers Title Insurance Corporation | Commitment for Title Insurance Schedule A | October 18, 2006 | Lawyers Title Insurance Corporation, 150 Federal Street, Suite 200, Boston, MA 02110- | Commitment for Title Insu 4.8.12 |

3

| Contract Counterparties | Name of Contract | Contract Date | Notice Address | Brief Summary |
|---|---|---|---|---|
| Mystic Development LLC | | | 1775 | |
| John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust Boston Generating, LLC by assignment | The Flatley Company Standard Form of Commercial Lease-Lease | June 18, 1999 | The Flatley Company Fifty Braintree Hill Office Park Braintree, MA  02184-8754 | Assigned by Exelon New Holdings, LLC to Boston Generating, LLC |
| John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust Boston Generating, LLC by assignment | First Amendment to Lease | April 25, 2003 | The Flatley Company Attn:  President or General Counsel Fifty Braintree Hill Office Park Braintree, MA  02184-8754 | Assigned by Exelon New Holdings, LLC to Boston Generating, LLC |
| John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust Boston Generating, LLC | Second Amendment to Lease-Letter dated November 4, 2005 attaching the Second Amendment to the Lease | November 2, 2005 | The Flatley Company Attn:  President or General Counsel Fifty Braintree Hill Office Park Braintree, MA  02184-8754 | |
| John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust Boston Generating, LLC | Letter Agreement extending lease two months between Second and Third Lease Amendments. | Signed March 26, 2007 | The Flatley Company Attn:  President or General Counsel Fifty Braintree Hill Office Park Braintree, MA  02184-8754 | |
| John J. Flatley and Gregory D. Stoyle, Trustees of The Schrafft Nominee Trust Boston Generating, LLC | Third Amendment to Lease-Letter dated June 19, 2007 attaching the Third Amendment to the Lease | June 12, 2007 | The Flatley Company Attn:  President or General Counsel Fifty Braintree Hill Office Park Braintree, MA  02184-8754 | |
| Schrafft Center LLC | Fourth Amendment to Lease | January 24, 2008 | Schrafft Center LLC | |

NY\1671051.28

| Contract Counterparties | Name of Contract | Contract Date | Notice Address | Brief Summary |
|---|---|---|---|---|
| Boston Generating, LLC | | | Attn:  Commercial/Industrial Division<br>50 Braintree Hill Office Park<br>Braintree, MA  02184 | |
| Schrafft Center LLC<br><br>Boston Generating, LLC | Fifth Amendment to Lease-Extends Schrafft Center lease until June 30, 2015 | January 5, 2010 | Schrafft Center LLC<br>Attn:  Commercial/Industrial Division<br>50 Braintree Hill Office Park<br>Braintree, MA  02184 | |

NY\1671051.28