LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
D. J. Baker
Robert J. Rosenberg
Caroline A. Reckler (appearing *pro hac vice*)
Kimberly A. Posin (appearing *pro hac vice*)

Counsel to the Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Boston Generating, LLC, <u>et al</u>.,[1] | Case No. 10 -14419 (SCC) |
| Debtors. | Jointly Administered |

## JOINT PLAN OF LIQUIDATION OF
## BOSTON GENERATING, LLC, ET AL.

Dated: March 21, 2011

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (0640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

ARTICLE 1   DEFINITIONS, INTERPRETATION AND RULES OF
            CONSTRUCTION....................................................................................... 3

    A.    Scope of Definitions ...................................................................................... 3

    B.    Definitions...................................................................................................... 3
          1.1     363 Sale........................................................................................... 3
          1.2     Acquired Assets .............................................................................. 3
          1.3     Adjusted Cash Amount .................................................................... 3
          1.4     Additional Set Aside Account .......................................................... 4
          1.5     Adjustment Escrow Account ............................................................ 4
          1.6     Adjustment Escrow Agreement ....................................................... 4
          1.7     Administrative Expense Claim ........................................................ 4
          1.8     Administrative Expense Claims Bar Date ........................................ 5
          1.9     Allowed [      ] Claim or Allowed [     ] Interest.............................. 5
          1.10    Affiliate ........................................................................................... 5
          1.11    Allowed Claim or Allowed Interest .................................................. 5
          1.12    Asset Purchase Agreement ............................................................ 6
          1.13    Assets ............................................................................................. 6
          1.14    Assumed.......................................................................................... 6
          1.15    Assumed Liabilities ......................................................................... 6
          1.16    Assumption and Assignment Notice................................................ 6
          1.17    Assumption Schedule...................................................................... 6
          1.18    Available Cash ................................................................................ 6
          1.19    Avoidance Action ............................................................................ 7
          1.20    Avoidance Action Proceeds ............................................................ 7
          1.21    Bankruptcy Code ............................................................................ 7
          1.22    Bankruptcy Court............................................................................ 7
          1.23    Bankruptcy Rules ............................................................................ 7
          1.24    Bar Date .......................................................................................... 7
          1.25    Beneficiaries ................................................................................... 8
          1.26    Bid Procedures Order...................................................................... 8
          1.27    Budget ............................................................................................. 8
          1.28    Business Day................................................................................... 8
          1.29    Cash................................................................................................ 8
          1.30    Cash Collateral Order ..................................................................... 8
          1.31    Causes of Action ............................................................................ 9
          1.32    Causes of Action Proceeds............................................................. 9
          1.33    Chapter 11 Cases............................................................................ 9
          1.34    Claim............................................................................................... 9
          1.35    Class................................................................................................ 9
          1.36    Company ....................................................................................... 10
          1.37    Confirmation .................................................................................. 10
          1.38    Confirmation Date ......................................................................... 10
          1.39    Confirmation Hearing .................................................................... 10
          1.40    Confirmation Order........................................................................ 10

LA\2111370.27

1.41    Consenting First Lien Lenders ................................................................. 10
1.42    Creditor ............................................................................................ 10
1.43    Creditor Releasees .............................................................................. 10
1.44    Creditors' Committee............................................................................ 11
1.45    Debtor(s) .......................................................................................... 11
1.46    Debtor Releasees ................................................................................ 11
1.47    Deficiency Claims ............................................................................... 11
1.48    Disclosure Statement .......................................................................... 11
1.49    Disputed Available Cash ...................................................................... 12
1.50    Disputed Claim or Disputed Interest ...................................................... 12
1.51    Disputed Claims Reserve ..................................................................... 12
1.52    Effective Date .................................................................................... 13
1.53    Entity .............................................................................................. 13
1.54    Estate .............................................................................................. 13
1.55    Face Amount ..................................................................................... 13
1.56    Excluded Assets ................................................................................. 13
1.57    Federal Bankruptcy Rule(s) .................................................................. 13
1.58    File or Filed ...................................................................................... 14
1.59    Final Distribution ............................................................................... 14
1.60    Final Distribution Date ........................................................................ 14
1.61    Final Order ....................................................................................... 14
1.62    First Lien Credit Agreement ................................................................. 14
1.63    First Lien Facility Agent ...................................................................... 15
1.64    First Lien Facility Deficiency Claim ....................................................... 15
1.65    First Lien Facility Lenders ................................................................... 15
1.66    First Lien Facility Secured Claim .......................................................... 15
1.67    First Lien Facility Superpriority Claim.................................................... 15
1.68    General Unsecured Claims ................................................................... 15
1.69    Governmental Claims Bar Date ............................................................. 16
1.70    Governmental Unit.............................................................................. 16
1.71    Hedge Bank....................................................................................... 16
1.72    Hedge Termination Settlement Agreement .............................................. 16
1.73    Impaired ........................................................................................... 16
1.74    Indemnification Claims........................................................................ 16
1.75    Intercompany Claims .......................................................................... 16
1.76    Interim Compensation Order ................................................................ 17
1.77    Interest............................................................................................. 17
1.78    JPM Account ..................................................................................... 17
1.79    Lien ................................................................................................. 17
1.80    Liquidating Trust ............................................................................... 17
1.81    Liquidating Trust Agreement ................................................................ 17
1.82    Liquidating Trustee ............................................................................ 17
1.83    Liquidating Trustee Administrative Fees................................................. 18
1.84    Liquidating Trustee Fees...................................................................... 18
1.85    Net Avoidance Action Proceeds ............................................................ 18
1.86    Net Causes of Action Proceeds ............................................................. 18

LA\2111370.27

| 1.87 | Old Equity | 18 |
|---|---|---|
| 1.88 | Old Equity Rights | 18 |
| 1.89 | Order | 19 |
| 1.90 | Other Priority Claim | 19 |
| 1.91 | Other Secured Claim Liens | 19 |
| 1.92 | Other Secured Claims | 19 |
| 1.93 | Other Superpriority Proceeds | 20 |
| 1.94 | Partial Adequate Protection Order | 20 |
| 1.95 | Person | 20 |
| 1.96 | Petition Date | 20 |
| 1.97 | Plan | 20 |
| 1.98 | Plan Debtor(s) | 20 |
| 1.99 | Priority Tax Claim | 20 |
| 1.100 | Pro Rata | 20 |
| 1.101 | Professional | 21 |
| 1.102 | Professional Claim | 21 |
| 1.103 | Purchaser | 21 |
| 1.104 | Released Claims | 21 |
| 1.105 | Remaining Contracts | 21 |
| 1.106 | Sale Order | 21 |
| 1.107 | Scheduled | 22 |
| 1.108 | Schedules | 22 |
| 1.109 | Second Lien Credit Agreement | 22 |
| 1.110 | Second Lien Facility Agent | 22 |
| 1.111 | Second Lien Facility Deficiency Claim | 22 |
| 1.112 | Second Lien Facility Lenders | 22 |
| 1.113 | Secured Claim | 23 |
| 1.114 | Security | 23 |
| 1.115 | Special Committee | 23 |
| 1.116 | Tax Claims | 23 |
| 1.117 | Taxes | 23 |
| 1.118 | Trust Administrative Fund | 23 |
| 1.119 | Unimpaired | 23 |
| 1.120 | United States Trustee | 24 |
| 1.121 | Unsecured Claim | 24 |
| 1.122 | Waiver | 24 |

| C. | Rules of Interpretation | 24 |
|---|---|---|

| D. | Computation of Time | 26 |
|---|---|---|

| ARTICLE 2 | TREATMENT OF UNCLASSIFIED CLAIMS | 26 |
|---|---|---|

| 2.1 | First Lien Facility Superpriority Claim | 26 |
|---|---|---|
| 2.2 | Administrative Expense Claims | 27 |
| 2.3 | Statutory Fees | 28 |
| 2.4 | Professional Claims | 28 |

LA\2111370.27

| | | | |
|---|---|---|---|
| | 2.5 | Priority Tax Claims | 28 |
| | 2.6 | Deadline for Filing Administrative Expense Claims | 29 |
| | | 2.6.1 Administrative Expense Claims Other Than Tax Claims | 29 |
| | | 2.6.2 Tax Claims | 30 |

ARTICLE 3   CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........... 30

| | | | |
|---|---|---|---|
| A. | | General | 30 |
| B. | | Classification | 31 |
| | 3.1 | Class 1:  Other Priority Claims | 31 |
| | 3.2 | Class 2:  First Lien Facility Secured Claim | 31 |
| | 3.3 | Class 3: Other Secured Claims | 31 |
| | 3.4 | Class 4:  General Unsecured Claims | 31 |
| | 3.5 | Class 5:  Intercompany Claims | 32 |
| | 3.6 | Class 6:  Old Equity | 32 |
| | 3.7 | Class 7:  Old Equity Rights | 32 |

ARTICLE 4   IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN ........... 32

| | | | |
|---|---|---|---|
| | 4.1 | Unimpaired Classes of Claims and Interests | 32 |
| | 4.2 | Impaired Classes of Claims and Interests | 32 |

ARTICLE 5   PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS ........... 32

| | | | |
|---|---|---|---|
| | 5.1 | Class 1 (Other Priority Claims) | 32 |
| | 5.2 | Class 2 (First Lien Facility Secured Claim) | 33 |
| | 5.3 | Class 3 et seq. (Other Secured Claims) | 34 |
| | 5.4 | Class 4 (General Unsecured Claims) | 34 |
| | 5.5 | Class 5 (Intercompany Claims) | 35 |
| | 5.6 | Class 6 (Old Equity) | 35 |
| | 5.7 | Class 7 (Old Equity Rights) | 35 |

ARTICLE 6   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........... 36

| | | | |
|---|---|---|---|
| | 6.1 | Assumption, Assignment and Rejection Pursuant to the Sale Order | 36 |
| | 6.2 | Assumption and Assignment of Remaining Contracts | 36 |
| | 6.3 | Cure Payments; Assurance of Performance | 37 |
| | 6.4 | Objections To Assumption of Remaining Contracts | 37 |
| | 6.5 | Rejection | 38 |
| | 6.6 | Approval of Rejection; Rejection Damages Claims Bar Date | 39 |

ARTICLE 7   MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ...... 39

    7.1   Substantive Consolidation of Claims against Plan Debtors for Plan Purposes Only .......................................................................................... 39
    7.2   The Liquidating Trust ......................................................................... 40
        7.2.1   Establishment of the Liquidating Trust ................................ 40
        7.2.2   Purpose of Liquidating Trust ............................................... 40
        7.2.3   Contribution of Assets to the Liquidating Trust .................. 41
        7.2.4   Valuation of Trust Assets ..................................................... 41
        7.2.5   Certain Federal Income Tax Matters .................................... 41
    7.3   Post-confirmation Operations ............................................................. 42
    7.4   Post-confirmation Funding of Plan ..................................................... 42
    7.5   Post-Effective Date Funding of Operations ........................................ 43
    7.6   Dissolution of the Plan Debtors .......................................................... 43
    7.7   Closing of the Plan Debtors' Chapter 11 Cases .................................. 43
    7.8   Post-Effective Date Cause of Action Settlements ............................... 44
    7.9   Post-Effective Date Reporting ............................................................ 44
    7.10  Cancellation of Existing Securities and Agreements ........................... 45

ARTICLE 8   POST-CONFIRMATION LITIGATION .............................................. 45

    8.1   Transfer and Enforcement of Causes of Action ................................... 45
    8.2   Abandonment of Causes of Action and Other Assets of the Plan Debtors ................................................................................................. 46

ARTICLE 9   PROCEDURES FOR TREATING DISPUTED CLAIMS ................... 46

    9.1   Objections to Claims ........................................................................... 46
    9.2   Resolution of Disputed Claims ........................................................... 47
    9.3   Amendments to Claims ....................................................................... 47
    9.4   No Distributions Pending Allowance .................................................. 47

ARTICLE 10  DISTRIBUTIONS ................................................................................ 47

    10.1   No Duplicate Distributions ................................................................ 47
    10.2   Delivery of Distributions in General .................................................. 48
    10.3   Cash Payments ................................................................................... 48
    10.4   Interest on Claims .............................................................................. 48
    10.5   No De Minimis Distributions ............................................................. 49
    10.6   Face Amount ...................................................................................... 49
    10.7   Undeliverable Distributions ............................................................... 49
    10.8   Timing of Distributions ...................................................................... 50
    10.9   Disputed Claims Reserve ................................................................... 51
    10.10  Compliance with Tax Requirements ................................................... 51

ARTICLE 11  CONDITIONS PRECEDENT .............................................................. 52

    11.1   Conditions to Confirmation ................................................................ 52

| | 11.2 | Conditions to the Effective Date | 52 |
|---|---|---|---|
| | 11.3 | Termination of Plan for Failure To Become Effective | 53 |
| | 11.4 | Waiver of Conditions | 53 |
| | 11.5 | Notice of Effective Date | 53 |

| ARTICLE 12 | EFFECT OF CONFIRMATION | | 54 |
|---|---|---|---|
| | 12.1 | Jurisdiction of Court | 54 |
| | 12.2 | Binding Effect | 54 |
| | 12.3 | Term of Pre-Confirmation Injunctions or Stays | 54 |
| | 12.4 | Injunction Against Interference with Plan | 55 |
| | 12.5 | Exculpation | 55 |
| | 12.6 | Injunction | 57 |
| | 12.7 | Releases by Plan Debtors | 58 |
| | 12.8 | Releases by Holders of Claims and Interests | 58 |
| | 12.9 | Limitation of Liability | 59 |

| ARTICLE 13 | RETENTION OF JURISDICTION | | 60 |
|---|---|---|---|
| | 13.1 | Scope of Bankruptcy Court Jurisdiction | 60 |

| ARTICLE 14 | ACCEPTANCE OR REJECTION OF THE PLAN | | 62 |
|---|---|---|---|
| | 14.1 | Persons Entitled to Vote | 62 |
| | 14.2 | Acceptance by Impaired Classes | 63 |
| | 14.3 | Request for Non-Consensual Confirmation | 63 |

| ARTICLE 15 | MISCELLANEOUS PROVISIONS | | 63 |
|---|---|---|---|
| | 15.1 | Effectuating Documents and Further Transactions | 63 |
| | 15.2 | Corporate Action | 63 |
| | 15.3 | Payment of Statutory Fees | 64 |
| | 15.4 | Modification of the Plan | 64 |
| | 15.5 | Revocation of the Plan | 64 |
| | 15.6 | Governing Law | 64 |
| | 15.7 | No Admissions | 65 |
| | 15.8 | Severability of Plan Provisions | 65 |
| | 15.9 | Successors and Assigns | 66 |
| | 15.10 | Exemption from Certain Transfer Taxes | 66 |
| | 15.11 | Preservation of Rights of Setoffs | 66 |
| | 15.12 | Defenses with Respect to Unimpaired Claims | 66 |
| | 15.13 | No Injunctive Relief | 66 |
| | 15.14 | Saturday, Sunday or Legal Holiday | 67 |
| | 15.15 | Entire Agreement | 67 |
| | 15.16 | Dissolution of Creditors' Committee | 67 |
| | 15.17 | Notices | 67 |

## Exhibits

1.  List of Debtors
2.  Liquidating Trust Agreement
3.  Assumption Schedule

LA\2111370.27

# INTRODUCTION

Boston Generating, LLC ("BosGen"), a Delaware limited liability company, and its Affiliates and Subsidiaries listed on Exhibit 1 hereto (other than EBG (as defined herein)) (collectively with BosGen, the "Plan Debtors") propose the Joint Plan of Liquidation of Boston Generating, LLC, et al. (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Plan Debtors. The Plan Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code. All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Plan Debtors' remaining assets and a summary and analysis of the Plan and certain related matters.

This is a liquidating Plan pursuant to which all of the Plan Debtors' remaining Causes of Action are to be transferred to a Liquidating Trust (subject to existing Liens and encumbrances, to the extent specified in the Plan) which will liquidate such assets; as and when any funds are realized from the Causes of Action, such funds will be distributed to certain holders of Allowed Claims, whose claims against the Plan Debtors will be exchanged for beneficial interests in the Liquidating Trust.

The Plan is premised on the substantive consolidation of the Plan Debtors with respect to the voting of all Claims and Interests and the treatment of all Claims and Interests. In lieu of a separate motion, this Plan shall serve as the Debtors' request that the Chapter 11 Case of EBG Holdings LLC ("EBG") be dismissed. If the Plan cannot be confirmed as to some or all of the Plan Debtors, in the Plan Debtors' sole discretion after consultation with the First Lien

1

Facility Agent, (a) the Plan may be revoked as to all of the Plan Debtors, or (b) the Plan Debtors may revoke the Plan as to any Plan Debtor not satisfying the "cramdown" requirements of Section 1129(b) of the Bankruptcy Code (with any such Plan Debtors' Chapter 11 Case being converted to a chapter 7 liquidation, continued or dismissed in the Plan Debtors' sole discretion) and confirm the Plan as to the remaining Plan Debtors. A list of each Debtor and its corresponding Chapter 11 Case docket number is attached hereto as <u>Exhibit 1</u>. Each of the Debtors (other than EBG) is a proponent of the Plan.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of Claims and/or Interests until such time as the Disclosure Statement has been approved by the Bankruptcy Court. The Plan Debtors urge all holders of Claims entitled to vote on the Plan to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. To the extent, if any, that the Disclosure Statement is inconsistent with the Plan, the Plan will govern. No solicitation materials other than the Disclosure Statement and any schedules and exhibits attached thereto or referenced therein, or otherwise enclosed with the Disclosure Statement served by the Plan Debtors on interested parties, have been authorized by the Plan Debtors or the Bankruptcy Court for use in soliciting acceptances of the Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Federal Bankruptcy Rule 3019, the Plan Debtors expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ARTICLE 1**
**DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

**A.  Scope of Definitions.**  For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 1 of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Federal Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Federal Bankruptcy Rules, respectively.  Whenever the context requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.  Definitions.**  In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of the Plan.

   **1.1** **363 Sale** means the sale approved under the Sale Order and consummated on January 3, 2011.

   **1.2** **Acquired Assets** means "Acquired Assets," as defined in the Asset Purchase Agreement.

   **1.3** **Adjusted Cash Amount** means all Cash of the Plan Debtors (irrespective of whether restricted), plus the Cash in the Additional Set Aside Account, plus the Cash in the Adjustment Escrow Account, plus the Cash in the JPM Account, but excluding (i) $[12,262,000] on account of the aggregate amount of (a) all estimated Allowed Administrative Expense Claims (excluding the First Lien Facility Superpriority Claim and Allowed Professional Claims), (b) all estimated Allowed Priority Tax Claims, (c) all estimated Allowed Other Priority Claims, and (d) all estimated Allowed Professional Claims; and (ii) $100,000 deposited in the

Trust Administrative Fund to fund Liquidating Trustee Administrative Fees, in each case, as of the Effective Date.

**1.4** **Additional Set Aside Account** means the account into which $26,850,539.00, constituting two and one-half percent (2.5%) of the gross Cash proceeds of the 363 Sale, was deposited pursuant to paragraph 31(iii) of the Sale Order on January 3, 2011.

**1.5** **Adjustment Escrow Account** means the "Adjustment Escrow Account," as defined in the Sale Order, currently account number XXXXXX8377 at Wells Fargo Bank, N.A., into which approximately $10,000,000.00 was deposited on January 3, 2011.

**1.6** **Adjustment Escrow Agreement** means that certain Adjustment Escrow Agreement, dated as of January 3, 2011, between Debtor EBG Holdings LLC, the Purchaser and Wells Fargo Bank, National Association.

**1.7** **Administrative Expense Claim** means any right to payment for any cost or expense of administration (including Professional Claims and the First Lien Facility Superpriority Claim) of the Plan Debtors' Chapter 11 Cases asserted or arising under Sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including, any (i) actual and necessary cost or expense of preserving the Plan Debtors' Estates or operating the business of the Plan Debtors arising on or after the Petition Date, (ii) payment to be made under this Plan to cure a default on an executory contract or unexpired lease that has been assumed on or after the Petition Date (and prior to the occurrence of such default) pursuant to Section 365 of the Bankruptcy Code, (iii) cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Plan Debtors in the ordinary course of business arising on or after the Petition Date, (iv) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code,

and (v) fees or charges assessed against the Plan Debtors' Estates under Section 1930 of title 28 of the United States Code

**1.8** **Administrative Expense Claims Bar Date** means the first Business Day that is at least thirty-five (35) days following the Effective Date or such other date ordered by the Bankruptcy Court.

**1.9** **Allowed [        ] Claim or Allowed [        ] Interest** means an Allowed Claim or Allowed Interest in the particular category or Class identified.

**1.10** **Affiliate** shall have the meaning as set forth in Section 101(2) of the Bankruptcy Code.

**1.11** **Allowed Claim or Allowed Interest** means a Claim against or Interest in any of the Plan Debtors or any portion thereof (a) that has been allowed by a Final Order, (b) as to which, on or by the Effective Date, (i) no proof of Claim or Interest has been Filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim or Interest that is Scheduled at zero, in an unknown amount, or as disputed, (c) for which a proof of Claim or Interest in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code and as to which either (i) no objection to its allowance has been Filed within the applicable periods of limitation fixed by the Plan, the Bankruptcy Code, or by any Order of the Bankruptcy Court sought pursuant to Section 9.1 of the Plan or otherwise entered by the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in the Plan.

LA\2111370.27

**1.12**     **Asset Purchase Agreement** means the Asset Purchase Agreement dated as of August 7, 2010 between the Debtors, Purchaser and Constellation Energy Group, Inc. as amended, and all other documentation related thereto or contemplated thereby.

**1.13**     **Assets** means all legal or equitable pre-petition and post-petition interests of the Debtors or, to the extent transferred and assigned by the Plan Debtors to the Liquidating Trust pursuant to Section 7.2.3 below on the Effective Date, the Liquidating Trust, in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, net operating losses, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, Causes of Action (including, without limitation, Avoidance Actions), assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

**1.14**     **Assumed** (including the term "Assumption" and any variants and derivatives thereof) means assumed by the Purchaser pursuant to the Asset Purchase Agreement.

**1.15**     **Assumed Liabilities** means "Assumed Liabilities," as defined in the Asset Purchase Agreement.

**1.16**     **Assumption and Assignment Notice** means "Assumption and Assignment Notice," as defined in the Sale Order.

**1.17**     **Assumption Schedule** has the meaning given to such term in Section 6.2 of the Plan.

**1.18**     **Available Cash** means the aggregate amount of Cash available for distribution to Beneficiaries under the Liquidating Trust Agreement (including, without

6

limitation, Net Cause of Action Proceeds, the amount remaining in the Disputed Claims Reserve after the resolution of all disputed claims and the amount remaining in the Trust Administrative Fund after paying the Liquidating Trustee Administrative Fees), less the amount of Cash deposited in the Trust Administrative Fund and the Disputed Claims Reserve; it being understood that Available Cash shall include Net Avoidance Action Proceeds and Other Superpriority Proceeds.

       **1.19**    **Avoidance Action** means any avoidance or equitable subordination or recovery actions under Bankruptcy Code Sections 105, 502(d), 510, 542 through 551, and 553, excluding for the avoidance of doubt Released Claims.

       **1.20**    **Avoidance Action Proceeds** means the gross proceeds of any Avoidance Actions, whether obtained through litigation, settlement or otherwise.

       **1.21**    **Bankruptcy Code** means title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

       **1.22**    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York or any other court of the United States having jurisdiction over the Chapter 11 Cases.

       **1.23**    **Bankruptcy Rules** means the Federal Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York and the guidelines and requirements of the Office of the United States Trustee, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

       **1.24**    **Bar Date** means December 1, 2010, which was established by the Bankruptcy Court as the deadline for filing proofs of claims relating to pre-petition Claims against the Debtors.

LA\2111370.27

**1.25** **Beneficiaries** means the holders of Allowed Claims as may be determined from time to time in accordance with the Plan and the Liquidating Trust Agreement, each of whom shall receive beneficial interests in the Liquidating Trust.

**1.26** **Bid Procedures Order** means the Order Approving and Authorizing (A) Bidding Procedures in Connection with the Sale of Substantially All the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Form and Manner of Notice of the Sale Hearing and (D) Related Relief [Docket No. 268].

**1.27** **Budget** means the budget attached to the Waiver, as may be updated from time to time.

**1.28** **Business Day** means any day other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Federal Bankruptcy Rule 9006(a)(6)).

**1.29** **Cash** means (a) legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars, (b) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America (or any agency thereof to the extent such obligations are backed by the full faith and credit of the United States of America), (c) securities issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof, (d) commercial paper, (e) certificates of deposit, (f) time deposits, (g) banker's acceptances, (h) money market deposit accounts, (i) investments in money market funds and (j) repurchase agreements.

**1.30** **Cash Collateral Order** means the Final Order (I) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate

LA\2111370.27

Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362 and 363 [Docket No. 165].

1.31    **Causes of Action** means, without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights suits, damages, judgments, Claims and demands whatsoever owned by any of the Plan Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, through and including the Effective Date, excluding for the avoidance of doubt Released Claims.

1.32    **Causes of Action Proceeds** means the gross proceeds of any Causes of Action, whether obtained through litigation, settlement or otherwise.

1.33    **Chapter 11 Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court as set forth in Exhibit 1 hereto and as being jointly administered with one another under Case No. 10-14419 (SCC), and as to any Debtor individually, a Chapter 11 Case.

1.34    **Claim** means a right of a Creditor against the Plan Debtors, or any one of them, whether or not asserted or allowed, of the type described in Bankruptcy Code Section 101(5), as construed by Bankruptcy Code Section 102(2).

1.35    **Class** means a group of Claims or Interests as classified in a particular class under the Plan pursuant to Bankruptcy Code Section 1122.

**1.36** **Company** means all of the Debtors collectively in the Chapter 11 Cases.

**1.37** **Confirmation** means entry of the Confirmation Order by the Bankruptcy Court.

**1.38** **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Federal Bankruptcy Rules 5003 and 9021.

**1.39** **Confirmation Hearing** means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code Section 1128, including any continuances thereof.

**1.40** **Confirmation Order** means the Order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129 in form and substance reasonably acceptable to the Plan Debtors and the First Lien Facility Agent.

**1.41** **Consenting First Lien Lenders** means First Lien Facility Lenders holding a majority of the First Lien Facility Secured Claim and that have consented to the Debtors' use of cash collateral during the course of the Chapter 11 Cases in accordance with the terms of the Cash Collateral Order and Budget.

**1.42** **Creditor** means any Entity who holds a Claim against any of the Plan Debtors.

**1.43** **Creditor Releasees** means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or Affiliates of the Plan Debtors; (ii) the Liquidating Trustee; (iii) the First Lien Facility Agent and its agents, attorneys and other professionals acting in conjunction

10

with the Chapter 11 Cases; (iv) the First Lien Facility Lenders in their capacity as such; (v) the Hedge Bank in its capacity as such; (vi) the Special Committee and its professionals; and (vii) the Plan Debtors' Affiliates and their officers and directors.

**1.44    Creditors' Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Bankruptcy Code Section 1102.

**1.45    Debtor(s)** means, individually, Boston Generating, LLC, and each other Debtor listed on <u>Exhibit 1</u> hereto, and collectively all of them, including in their capacity as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**1.46    Debtor Releasees** means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or Affiliates of the Plan Debtors; (ii) the Liquidating Trustee; (iii) the First Lien Facility Agent and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases; (iv) the First Lien Facility Lenders in their capacity as such; (v) the Hedge Bank in its capacity as such; (vi) the Special Committee and its professionals; and (vii) the Plan Debtors' Affiliates and their officers and directors.

**1.47    Deficiency Claims** means with respect to any Claim secured by a Lien or security interest in any property of any Plan Debtor having a value of less than the amount of such Claim (after taking into account other Liens and security interests of higher priority in such property), the portion of such Claim equal to the difference between (a) the allowed amount of the Claim and (b) the allowed amount of the secured portion of such Claim (which allowed secured amount may be set pursuant to this Plan).

**1.48    Disclosure Statement** means that certain written disclosure statement that relates to this Plan as Filed in the Chapter 11 Cases by the Plan Debtors, including

LA\2111370.27

the schedules and exhibits attached thereto, as it may be amended, modified or supplemented from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.49    Disputed Available Cash** means Available Cash (other than Net Avoidance Action Proceeds and Other Superpriority Proceeds) reserved by the Liquidating Trustee in accordance with Section 10.9 of the Plan to pay Disputed Administrative Expense Claims, Disputed Priority Tax Claims and Disputed Other Priority Claims in the event any such Disputed Claim is ultimately Allowed.

**1.50    Disputed Claim or Disputed Interest** means a Claim or Interest, respectively, that is not an Allowed Claim or Allowed Interest, as applicable, and either (a) the Plan Debtors have Scheduled as "disputed," "contingent" or "unliquidated," or (b) as to which a proof of Claim or Interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Plan Debtors or any other party in interest entitled to do so, which objection, if timely Filed, has not been withdrawn or has not been overruled or denied by a Final Order.  For purposes of this definition, Disputed Claims shall include any actual or estimated Administrative Expense Claims (other than the First Lien Facility Superpriority Claim), Professional Claims, Priority Tax Claims or Other Priority Claims that have not been paid in full in Cash as of the Effective Date and any actual or estimated Other Secured Claims that have not been treated in accordance with Section 5.3 of this Plan as of the Effective Date.

**1.51    Disputed Claims Reserve** has the meaning given to such term in Section 10.9 of the Plan.

LA\2111370.27

**1.52** **Effective Date** means the date that is the first Business Day following the occurrence of the Confirmation Date on which conditions to the Effective Date set forth in Article 11 of the Plan have been satisfied or, if waivable, waived pursuant to Section 11.4 of the Plan.

**1.53** **Entity** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**1.54** **Estate** means, with regard to each Debtor, the estate that was created by the commencement by such Debtor of its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the Petition Date, or which such Estate acquired after the commencement of the Chapter 11 Case, whether by virtue of Sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. "Estates" has a correlative meaning.

**1.55** **Face Amount** has the meaning given to such term in Section 10.6 of the Plan.

**1.56** **Excluded Assets** means "Excluded Assets" as defined in the Asset Purchase Agreement.

**1.57** **Federal Bankruptcy Rule(s)** means, collectively, the Federal Rules of Bankruptcy Procedure, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases, and individually, a particular Federal Rule of Bankruptcy Procedure.

LA\2111370.27

**1.58** **File or Filed** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.59** **Final Distribution** has the meaning given to such term in Section 10.8.5 of the Plan.

**1.60** **Final Distribution Date** has the meaning given to such term in Section 10.8.6 of the Plan.

**1.61** **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, (i) that has not been reversed, stayed, modified or amended, (ii) as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or (iii) as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.62** **First Lien Credit Agreement** means that certain $1,450,000,000 First Lien Credit and Guaranty Agreement dated December 21, 2006 among BosGen and the guarantors listed therein, the First Lien Facility Lenders, Credit Suisse AG, Cayman Islands Branch (formerly known as Credit Suisse, Cayman Islands Branch), as administrative agent and

first lien collateral agent, and Credit Suisse Securities (USA) LLC and Goldman Sachs Credit Partners L.P., as co-syndication agents, co-documentation agents, joint lead arrangers and joint book running managers, as amended from time to time.

**1.63**    **First Lien Facility Agent** means Credit Suisse AG, Cayman Islands Branch, as administrative agent for the First Lien Facility Lenders under the First Lien Credit Agreement, or any successor thereto.

**1.64**    **First Lien Facility Deficiency Claim** means collectively, the Deficiency Claim of the First Lien Facility Agent on behalf of the First Lien Facility Lenders under the First Lien Credit Agreement and (ii) the Deficiency Claim of the Hedge Bank under the Hedge Termination Settlement Agreement, if any.  The First Lien Facility Deficiency Claim is Allowed in an amount equal $[•].

**1.65**    **First Lien Facility Lenders** means the "Lenders" as defined in the First Lien Credit Agreement.

**1.66**    **First Lien Facility Secured Claim** means collectively (i) the Secured Claims of the First Lien Facility Lenders under the First Lien Credit Agreement and (ii) the Secured Claim of the Hedge Bank under the Hedge Termination Settlement Agreement.  The First Lien Facility Secured Claim is Allowed in the aggregate amount of $[•].

**1.67**    **First Lien Facility Superpriority Claim** means collectively the Claims of the First Lien Facility Agent, First Lien Facility Lenders and Hedge Bank under Section 507(b) of the Bankruptcy Code and Section 4(b) of the Cash Collateral Order.  The First Lien Facility Superpriority Claim is Allowed in an amount equal to $[•].

**1.68**    **General Unsecured Claims** means all Unsecured Claims against the Plan Debtors, other than the Intercompany Claims and the Old Equity Rights.

**1.69** **Governmental Claims Bar Date** means February 14, 2011, which was established by the Bankruptcy Court as the deadline for filing proofs of claims relating to pre-petition Claims against the Debtors.

**1.70** **Governmental Unit** shall have the meaning ascribed to it in Section 101(27) of the Bankruptcy Code.

**1.71** **Hedge Bank** means Goldman Sachs Bank USA (as successor to Goldman Sachs Capital Markets, L.P.), as counterparty under the Agreement Documents (as defined in the Hedge Termination Settlement Agreement).

**1.72** **Hedge Termination Settlement Agreement** means the Settlement Agreement dated January 3, 2011 by and between Goldman Sachs Bank USA (as successor to Goldman Sachs Capital Markets, L.P.) and BosGen.

**1.73** **Impaired** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code when used with reference to a Claim or an Interest.

**1.74** **Indemnification Claims** means the obligations of the Plan Debtors, or any one of them, pursuant to their certificates of incorporation or other charter documents, bylaws, applicable law, any employment agreement or other express agreement operational as of the Petition Date to indemnify any of their current and former officers and directors, on the terms and subject to the limitations described therein.

**1.75** **Intercompany Claims** means the Claims of a Plan Debtor against any other Plan Debtor, and shall exclude any claims of a Plan Debtor against a non-Plan Debtor Affiliate.

**1.76** **Interim Compensation Order** means the Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 175].

**1.77** **Interest** means the legal, equitable contractual and other rights of the holders of Old Equity and Old Equity Rights.

**1.78** **JPM Account** means the "JPM Account," as defined in the Sale Order, currently account number XXXXX5-066 at US Bank National Association, into which $5,530,000 was deposited on January 3, 2011 and in which $23,960.04 remains as of the date hereof after payment in full of all fees and expenses of J.P. Morgan Securities, LLC in connection with the 363 Sale.

**1.79** **Lien** means with respect to any Asset, any mortgage, deed of trust, deed to secure debt, lien (statutory or otherwise), pledge, hypothecation, encumbrance, collateral assignments, charge or security interest in, on or of such Asset.

**1.80** **Liquidating Trust** means the liquidating trust established pursuant to the Liquidating Trust Agreement further described in Section 7.2 hereof, which shall act through the Liquidating Trustee.

**1.81** **Liquidating Trust Agreement** means the Liquidating Trust Agreement dated as of the Effective Date among the Plan Debtors and the Liquidating Trustee, a copy of which is attached hereto as <u>Exhibit 2</u> and incorporated herein by reference, and all supplements and amendments thereto.

**1.82** **Liquidating Trustee** means the Person appointed and serving from time to time as Liquidating Trustee under the Liquidating Trust Agreement, acting in his capacity as such on behalf of the Liquidating Trust. The initial Liquidating Trustee shall be [    ]

or such other Person identified by the Plan Debtors in writing no less than 10 days prior to the Confirmation Hearing and reasonably acceptable to the First Lien Facility Agent.

1.83 **Liquidating Trustee Administrative Fees** means Liquidating Trustee Fees unrelated to pursuing Causes of Action, in an aggregate amount not to exceed $100,000 unless otherwise agreed to by the First Lien Facility Agent.

1.84 **Liquidating Trustee Fees** means the reasonable fees and out-of-pocket expenses of the Liquidating Trustee and any attorneys or other professionals hired by the Liquidating Trustee, in each case, reasonably associated with the collection of Causes of Action Proceeds and payable in accordance with the terms and conditions of the Liquidating Trust Agreement solely from such Causes of Action Proceeds.

1.85 **Net Avoidance Action Proceeds** means the Avoidance Action Proceeds less the Liquidating Trustee Fees associated with the collection of the Avoidance Action Proceeds.

1.86 **Net Causes of Action Proceeds** means the Causes of Action Proceeds less the Liquidating Trustee Fees associated with the collection of the Causes of Action Proceeds.

1.87 **Old Equity** means any outstanding or retired ownership interests in any of the Plan Debtors, including interests evidenced by stock, membership interests or their equivalents, but excluding the Old Equity Rights.

1.88 **Old Equity Rights** means any calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common, preferred or other interests or any other agreement of any character related to Old Equity, obligating any of the Plan Debtors to issue, transfer, purchase, redeem, or sell any common,

18

preferred or other interests or securities, any rights under any equity incentive plans, voting agreements, investor agreements and registration rights agreements regarding common, preferred or other interests or equity securities of any of the Plan Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common, preferred, membership or other interests or equity securities (or any right, claim, or interest in and to any common, preferred, membership or other interests or equity securities) of any of the Plan Debtors, any claims for the payment of any distributions with respect to any common, preferred, membership or other interests or equity securities of any of the Plan Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of the outstanding common, preferred, membership or other interests or equity securities of any of the Plan Debtors.

**1.89** **Order** means an order of judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction.

**1.90** **Other Priority Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, of a Creditor to the extent such Claim is entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (4), (5), (6) or (7).

**1.91** **Other Secured Claim Liens** means the valid, perfected and enforceable Liens relating to the Allowed Other Secured Claims.

**1.92** **Other Secured Claims** means all Secured Claims against the Plan Debtors other than the First Lien Facility Secured Claim; *provided, however,* that any Secured Claim that is an Assumed Liability has been Assumed and shall be satisfied in accordance with the Asset Purchase Agreement and shall not receive distributions pursuant to this Plan.

**1.93   Other Superpriority Proceeds** means any net Cash or other proceeds realized upon the sale or other disposition of any of the Plan Debtors' Assets that are not subject to any Lien of the First Lien Facility Agent for the benefit of the First Lien Facility Lenders.

**1.94   Partial Adequate Protection Order** means the Order Partially Resolving Wilmington Trust FSB's Cross-Motion for Adequate Protection [Docket No. 334].

**1.95   Person** means an individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a Governmental Unit.

**1.96   Petition Date** means August 18, 2010.

**1.97   Plan** means this joint plan of liquidation of the Plan Debtors and all exhibits annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

**1.98   Plan Debtor(s)** means, individually, Boston Generating, LLC, and each other Debtor listed on <u>Exhibit 1</u> hereto (except EBG), and collectively all of them, including in their capacity as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

**1.99   Priority Tax Claim** means any Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.100   Pro Rata** means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all

Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim shall not exceed 100% of the amount of the Allowed Claim.

**1.101 Professional** means a Person employed in the Plan Debtors' Chapter 11 Cases pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code.

**1.102 Professional Claim** means a Claim of a Professional retained in the Plan Debtors' Chapter 11 Cases by the Plan Debtors or the Creditors' Committee pursuant to a Final Order in accordance with Sections 327 or 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code.

**1.103 Purchaser** means the purchaser of all or substantially all of the Debtors' Assets pursuant to the Sale Order.

**1.104 Released Claims** means any claims, rights or causes of action of any of the Plan Debtors or their Estates released pursuant to the Asset Purchase Agreement, the Sale Order, the Plan or the Confirmation Order.

**1.105 Remaining Contracts** has the meaning given to such term in Section 6.1 of the Plan.

**1.106 Sale Order** means the Order Authorizing (A) The Sale of Substantially All of the Assets of the Debtors Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances; (B) The Debtors to Enter Into and Perform Their

Obligations Under the Asset Purchase Agreement; (C) The Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; (D) Approving the Transition Services Agreement; and (E) Granting Related Relief [Docket No. 494] dated November 24, 2010.

**1.107 Scheduled** means as set forth on the Schedules.

**1.108 Schedules** means the Schedules of Assets and Liabilities Filed by the Plan Debtors in accordance with Bankruptcy Code Section 521 and Federal Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Federal Bankruptcy Rule 1009.

**1.109 Second Lien Credit Agreement** means that certain $350,000,000 Second Lien Credit and Guaranty Agreement dated as of December 21, 2006 among BosGen, the guarantors listed therein, Credit Suisse, Cayman Islands Branch (predecessor to the Second Lien Facility Agent), as administrative agent and second lien collateral agent, and Credit Suisse Securities (USA) LLC and Goldman Sachs Credit Partners L.P., as co-syndication agents, co-documentation agents, joint lead arrangers and joint book running managers, as amended from time to time.

**1.110 Second Lien Facility Agent** means Wilmington Trust FSB, as agent for the Second Lien Facility Lenders under the Second Lien Credit Agreement, or any successor thereto.

**1.111 Second Lien Facility Deficiency Claim** means the Deficiency Claim of the Second Lien Facility Agent on behalf of the Second Lien Facility Lenders under the Second Lien Credit Agreement.

**1.112 Second Lien Facility Lenders** means the "Lenders" as defined in the Second Lien Credit Agreement.

LA\2111370.27

**1.113** **Secured Claim** means any Claim of a Creditor, including for principal, interest and any other amounts, secured by a valid, perfected, and enforceable Lien on, security interest in or charge that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, against property of any of the Plan Debtors' Estates (or the proceeds of such property) or that is otherwise subject to setoff under Bankruptcy Code Section 553, to the extent of the value of such Creditor's interest in that Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Section 506(a).

**1.114** **Security** means any instrument issued by, or interest in, any of the Plan Debtors of the type described in Bankruptcy Code Section 101(49).

**1.115** **Special Committee** means the special committee of the Board of Managers of EBG Holdings LLC established on November 4, 2010, consisting of Howard Wolf.

**1.116** **Tax Claims** has the meaning given to such term in Section 2.6.2 of the Plan.

**1.117** **Taxes** means all income, franchise, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority on or from any of the Plan Debtors.

**1.118** **Trust Administrative Fund** shall have the meaning specified in Section 4.1 of the Liquidating Trust Agreement and shall be funded solely in accordance with Section 7.5 below.

**1.119** **Unimpaired** means any Claim that is not Impaired.

LA\2111370.27

**1.120  United States Trustee** means the United States Trustee appointed under Section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of New York.

**1.121  Unsecured Claim** means any Claim against the Plan Debtors, excluding Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the First Lien Facility Secured Claim, the First Lien Facility Superpriority Claim, and Other Secured Claims.  Unsecured Claims shall include (a) any Indemnification Claims arising from or attributable to actions prior to the Petition Date but only to the extent not covered by applicable directors and/or officers' insurance coverage and (b) all Deficiency Claims.  Any Claim that is an Assumed Liability has been Assumed and shall be satisfied in accordance with the Asset Purchase Agreement and shall not receive distributions pursuant to this Plan.

**1.122  Waiver** means the Limited Waiver, dated as of January 21, 2011, by and among the Debtors and certain of the First Lien Facility Lenders, attached as Exhibit A to the Notice of Filing Limited Waiver of Anticipated Defaults Under Existing Budget  [Docket No. 665] or any subsequent waiver agreed to by the Debtors and Filed with the Bankruptcy Court.

## C.  Rules of Interpretation

1.    In the event of an inconsistency:  (a) the provisions of the Plan shall control over the contents of the Disclosure Statement and (b) the provisions of the Confirmation Order shall control over the contents of the Plan.

2.    For the purposes of the Plan:

(a) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and

LA\2111370.27

conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without such party's consent unless such document expressly provides otherwise;

(b) any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or Plan schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c) unless otherwise specified, all references in the Plan to "Sections," "Articles," "Exhibits" and "Plan Schedules" are references to Sections, Articles, Exhibits and Plan Schedules of or to the Plan;

(d) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part or to affect interpretations of the Plan; and

(f) the word "including" means "including without limitation."

3.      Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as reasonably practicable thereafter.

4.      All Exhibits to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are Filed.

LA\2111370.27

5.    Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

6.    This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Plan Debtors, the First Lien Facility Agent and certain other creditors and constituencies.  Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentum*" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, any of the Plan Exhibits, or any contract, instrument, release, indenture, or other agreement or document generated in connection herewith.

**D.  Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Federal Bankruptcy Rule 9006(a) shall apply.

**ARTICLE 2**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1    First Lien Facility Superpriority Claim.**  The First Lien Facility Agent shall receive, for the benefit of the First Lien Facility Lenders and the Hedge Bank, in full satisfaction, settlement and release of and in exchange for any First Lien Facility Superpriority Claim (to the extent of the amount of the First Lien Facility Superpriority Claim), (a) the Net Avoidance Action Proceeds, (b) Other Superpriority Proceeds and (c) any Available Cash (other than Net Avoidance Action Proceeds and Other Superpriority Proceeds) remaining after payment

26

in full of the First Lien Facility Secured Claim.  The Plan Debtors do not anticipate that the Net Avoidance Action Proceeds and Other Superpriority Proceeds will be sufficient to pay the First Lien Facility Superpriority Claim in full or that there will be Available Cash (other than Net Avoidance Action Proceeds and Other Superpriority Proceeds) sufficient to pay the First Lien Facility Secured Claim in full such that Available Cash will also be available to satisfy the First Lien Facility Superpriority Claim.  Nonetheless, the First Lien Facility Agent and First Lien Facility Lenders have consented to the treatment set forth herein.

   **2.2** **Administrative Expense Claims.** Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims resolution process set forth herein, the holder of an Allowed Administrative Expense Claim (other than Administrative Expense Claims that are Assumed Liabilities, the First Lien Facility Superpriority Claim and Professional Claims) shall receive on account of such Allowed Administrative Expense Claim and in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Plan Debtors, or, if after the Effective Date, the Liquidating Trustee, and the holder of such Allowed Administrative Expense Claim have agreed upon in writing; provided, however, that (i) Administrative Expense Claims that are Assumed Liabilities have been Assumed and shall be satisfied in accordance with the Asset Purchase Agreement and shall not receive distributions pursuant to this Plan, (ii) the First Lien Facility Superpriority Claim shall be paid in accordance with Section 2.1 and (iii) Professional Claims shall be paid in accordance with Section 2.4.

LA\2111370.27

**2.3     Statutory Fees.**  On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in full, in Cash.

**2.4     Professional Claims**.  Immediately prior to the Effective Date, the Plan Debtors shall pay all amounts owing to the Professionals for all unpaid Professional Claims relating to prior periods and for the period ending on the Effective Date; provided, however, that the amount paid to each Professional immediately prior to the Effective Date shall not exceed the amount provided for in the Budget for such Professional (unless otherwise agreed in writing by the Consenting First Lien Lenders holding a majority of the First Lien Facility Secured Claim held by all Consenting First Lien Lenders).  The Professionals shall estimate Professional Claims due for periods that have not been billed as of the Effective Date.  On or prior to the Administrative Expense Claims Bar Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date.  Within ten (10) days after entry of a Final Order with respect to its final fee application, each Professional shall remit any overpayment to the First Lien Facility Agent for distribution to the First Lien Facility Lenders.  For the avoidance of doubt, consistent with the Budget, in no event shall the Creditors' Committee or its Professionals be entitled to receive during the course of the Chapter 11 Cases aggregate compensation in excess of $600,000.00 (unless otherwise agreed in writing by the Consenting First Lien Lenders holding a majority of the First Lien Facility Secured Claim held by all Consenting First Lien Lenders).

**2.5     Priority Tax Claims.**  With respect to each Allowed Priority Tax Claim, at the sole option of the Plan Debtors or, if after the Effective Date, the Liquidating Trustee, the holder of an Allowed Priority Tax Claim shall be entitled to receive on account of

28

such Allowed Priority Tax Claim, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim; or (b) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Plan Debtors or, if after the Effective Date, the Liquidating Trustee, provided such treatment is on more favorable terms to the Plan Debtors or the Liquidating Trustee, as the case may be, than the treatment set forth in subsection (a) hereof.

### 2.6 Deadline for Filing Administrative Expense Claims.

#### 2.6.1 <u>Administrative Expense Claims Other Than Tax Claims</u>.

Other than with respect to (i) Administrative Expense Claims for which the Bankruptcy Court previously has established a Bar Date, (ii) Professional Claims addressed in Section 2.4 above, (iii) the First Lien Facility Superpriority Claim addressed in Section 2.1 above and (iv) Tax Claims addressed in Section 2.6.2 below, any and all requests for payment or proofs of Administrative Expense Claims must be Filed and served on the Liquidating Trustee and its counsel no later than the Administrative Expense Claims Bar Date. Objections to any such Administrative Expense Claims must be Filed and served on the claimant no later than sixty (60) days after the Administrative Expense Claims Bar Date, which date may be extended by application to the Bankruptcy Court. The Liquidating Trustee shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Expense Claims. **Holders of Administrative Expense Claims that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting such Claims against the any of the Plan Debtors, their Estates, or the Liquidating Trust**.

29

**2.6.2** **Tax Claims.** All requests for payment of Claims pursuant to Section 503 of the Bankruptcy Code by a Governmental Unit for Taxes (and for interest and/or penalties or other amounts related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established ("Tax Claims"), must be Filed on or before the later of: (a) thirty (30) days following the Effective Date; or (b) to the extent applicable, sixty (60) days following the filing of a tax return for such Taxes (if such Taxes are assessed based on a tax return) for such tax year or period with the applicable Governmental Unit. Objections to any Tax Claims must be Filed within thirty (30) days after the later of the Administrative Expense Claims Bar Date or sixty (60) days following the filing of a tax return for such Taxes, which objection dates may be extended by application to the Bankruptcy Court. **Any holder of a Tax Claim that is required to File a request for payment of such Tax Claim and other amounts due related to such Taxes and which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against any of the Plan Debtors or any non-Debtor member of the Plan Debtors' consolidated tax group, the Plan Debtors' Estates, the Liquidating Trust or any other Entity, or their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no distribution under the Plan or otherwise on account of such Claim.**

### ARTICLE 3
### CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**A. General.** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims against and Interests in the Plan Debtors. A Claim or Interest is placed

in a particular Class only to the extent that such Claim or Interest falls within the description of that Class.  A Claim or Interest is also placed in a particular Class for purposes of receiving a distribution under the Plan, but only to the extent such Claim or Interest is an Allowed Claim or Interest and has not been paid, released, or otherwise settled prior to the Effective Date.  Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim or Allowed Interest shall not receive any payments, rights or distributions under this Plan.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims of the kinds specified in Section 507(a)(2) and (3) and Priority Tax Claims of the kinds specified in Section 507(a)(8) of the Bankruptcy Code have not been classified and are treated as set forth in Article 2 above.

**B.  Classification.**  As stated above, the Plan is premised on the substantive consolidation of the Plan Debtors with respect to the voting of all Claims and Interests and the treatment of all Claims and Interests.  The following summary is for the convenience of all interested parties and is superseded for all purposes by the classification, description and treatment of Claims and Interests in Articles 4 and 5 of the Plan.

   **3.1** **Class 1:  Other Priority Claims**.  Class 1 consists of all Other Priority Claims.

   **3.2** **Class 2:  First Lien Facility Secured Claim**.  Class 2 consists of the First Lien Facility Secured Claim.

   **3.3** **Class 3: Other Secured Claims**.  Class 3 consists of all Other Secured Claims.

   **3.4** **Class 4:  General Unsecured Claims**.  Class 4 consists of all General Unsecured Claims.

LA\2111370.27

**3.5** **Class 5: Intercompany Claims**. Class 5 consists of all Intercompany Claims.

**3.6** **Class 6: Old Equity**. Class 6 consists of all Interests arising from or relating to Old Equity.

**3.7** **Class 7: Old Equity Rights**. Class 7 consists of all Claims and Interests arising from or relating to Old Equity Rights.

## ARTICLE 4
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

**4.1** **Unimpaired Classes of Claims and Interests.** Class 1 Other Priority Claims and Class 3 Other Secured Claims are not Impaired by the Plan.

**4.2** **Impaired Classes of Claims and Interests.** Class 2 First Lien Facility Secured Claim, Class 4 General Unsecured Claims, Class 5 Intercompany Claims, Class 6 Old Equity and Class 7 Old Equity Rights are Impaired by the Plan.

## ARTICLE 5
## PROVISIONS FOR THE TREATMENT OF CLAIMS AND INTERESTS

**5.1** **Class 1 (Other Priority Claims).** On the Effective Date or as soon thereafter as is reasonably practicable in recognition of the applicable claims reconciliation process set forth herein, the holder of an Allowed Other Priority Claim shall receive on account of the Allowed Other Priority Claim and in full satisfaction, settlement and release of and in exchange for such Allowed Other Priority Claim, (a) Cash equal to the amount of such Allowed Other Priority Claim, or (b) such other treatment as to which the Plan Debtors and the holder of such Allowed Other Priority Claim have agreed upon in writing.

32

**5.2     Class 2 (First Lien Facility Secured Claim).**  On the Effective Date or, solely with respect to distributions of the Available Cash, as soon thereafter as is reasonably practicable in recognition of the applicable claims reconciliation process set forth herein, the First Lien Facility Agent shall receive, for the benefit of the First Lien Facility Lenders and the Hedge Bank, in full satisfaction, settlement and release of and in exchange for the First Lien Facility Secured Claim, (a) the Adjusted Cash Amount, plus (b) any Available Cash (other than any Net Avoidance Action Proceeds and Other Superpriority Proceeds) after payment in full of all Allowed Administrative Expense Claims (other than the First Lien Facility Superpriority Claim), Allowed Priority Tax Claims and Allowed Other Priority Claims.  Until the First Lien Facility Secured Claim is paid in full in Cash, the Liens securing the First Lien Facility Secured Claim shall remain on the Available Cash, provided the Plan Debtors and their Estates shall have no further liability therefor.  The First Lien Facility Deficiency Claim shall not constitute a Class 2 First Lien Facility Secured Claim and shall be treated as a Class 4 General Unsecured Claim hereunder.   Holders of the First Lien Facility Secured Claim shall be Beneficiaries; it being understood that distributions from the Liquidating Trust shall be exclusively governed in accordance with Section 10.8 below.  For the avoidance of doubt, the Plan contemplates that the First Lien Facility Agent, for the benefit of the First Lien Facility Lenders and Hedge Bank, shall receive all Cash of the Plan Debtors and their Estates on the Effective Date other than (a) the Cause of Action Proceeds; (b) $[12,262,000] on account of the aggregate amount of (i) all estimated Allowed Administrative Expense Claims (excluding the First Lien Facility Superpriority Claim and Allowed Professional Claims), (ii) all estimated Allowed Priority Tax Claims, (iii) all estimated Allowed Other Priority Claims, and (iv) all

estimated Allowed Professional Claims; and (c) $100,000 deposited in the Trust Administrative Fund to fund Liquidating Trustee Administrative Fees, in each case, as of the Effective Date.

**5.3** **Class 3 et seq. (Other Secured Claims)**. This Class is subdivided into subclasses designated by letters of the alphabet (Class 3A, Class 3B and so on), so that each holder of any Other Secured Claim is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class, and except for a precautionary class of otherwise unclassified Other Secured Claims. On the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims reconciliation process set forth herein, each holder of an Allowed Other Secured Claim that was not assumed by the Purchaser in connection with the 363 Sale shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Other Secured Claim, (i) the collateral securing any such Allowed Other Secured Claim (to the extent such collateral does not constitute collateral securing the First Lien Facility Secured Claim on a senior basis) or (ii) such other treatment that leaves such Allowed Other Secured Claim Unimpaired pursuant to Section 1124(2) of the Bankruptcy Code. The Other Secured Claim Liens shall be released and the Plan Debtors and their Estates shall have no further liability therefor; provided, however, that any Deficiency Claims of holders of Class 3 Other Secured Claims shall not constitute Class 3 Other Secured Claims and shall be treated as Class 4 General Unsecured Claims hereunder. For the avoidance of doubt, the Second Lien Facility Agent and Second Lien Facility Lenders have only a Second Lien Facility Deficiency Claim against the Plan Debtors and their Estates.

**5.4** **Class 4 (General Unsecured Claims).** On the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims reconciliation process set forth herein, the holders of Allowed General Unsecured Claims shall receive, in full satisfaction,

34

settlement and release of and in exchange for such Allowed Claims (a) any Net Avoidance Action Proceeds and Other Superpriority Proceeds after payment in full of the First Lien Facility Superpriority Claim, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims and (b) any Available Cash (other than any Net Avoidance Action Proceeds and Other Superpriority Proceeds) after payment in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, the First Lien Facility Secured Claim and the First Lien Facility Superpriority Claim.  Holders of Allowed General Unsecured Claims shall be Beneficiaries; it being understood that distributions from the Liquidating Trust shall be exclusively governed in accordance with Section 10.8 below.

5.5     **Class 5 (Intercompany Claims)**.  Holders of Intercompany Claims will not receive any distribution of property under the Plan on account of their Intercompany Claims and, on the Effective Date, the Intercompany Claims will be cancelled; <u>provided</u>, <u>however</u>, Class 5 shall exclude any claims of a Plan Debtor against a non-Plan Debtor Affiliate.

5.6     **Class 6 (Old Equity).**  Holders of Old Equity Interests will not receive and will not retain any property of the Plan Debtors under the Plan on account of such Interests and all Old Equity Interests will be cancelled as of the Effective Date.

5.7     **Class 7 (Old Equity Rights).**  Holders of any Claim or Interest arising from or relating to Old Equity Rights will not receive and will not retain any property of the Plan Debtors under the Plan on account of such Claim or Interest and all Old Equity Rights and any Interests or Claims arising from or relating thereto will be cancelled as of the Effective Date.

LA\2111370.27

## ARTICLE 6
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1    Assumption, Assignment and Rejection Pursuant to the Sale Order**.  Pursuant to the Bid Procedures Order and the Sale Order, the Bankruptcy Court established deadlines and procedures for the assumption and rejection of executory contracts and unexpired leases by the Debtors at the direction of the Purchaser and allocated responsibility for payment of cure amounts between the Debtors and the Purchaser.  Any executory contracts and unexpired leases of the Plan Debtors, including executory contracts and unexpired leases entered into after the Petition Date, not assumed and assigned to the Purchaser or rejected prior to the Effective Date or with respect to which the Plan Debtors have not Filed an Assumption and Assignment Notice (as defined in the Sale Order) prior to the Effective Date (the "Remaining Contracts") shall be rejected pursuant to Section 6.5 of this Plan unless assumed or assumed and assigned pursuant to Section 6.2 of this Plan.  Notwithstanding anything in this Article 6 to the contrary, to the extent the Plan Debtors have Filed an Assumption and Assignment Notice prior to the Effective Date with respect to an executory contract or unexpired lease to be assumed and assigned to the Purchaser, but the Bankruptcy Court has not yet entered an Order approving such assumption and assignment and fixing the cure amount therefor, any such cure amount shall be paid in full in Cash by the Purchaser, and neither the Plan Debtors nor the Liquidating Trust shall have any liability therefor.

**6.2    Assumption and Assignment of Remaining Contracts**.  As of the Effective Date, the Plan Debtors shall assume and assign to the Liquidating Trust, pursuant to Bankruptcy Code Section 365, each of the Remaining Contracts that are identified in <u>Exhibit 3</u> to this Plan (the "Assumption Schedule") that have not expired under their own terms prior to the Effective Date.  The Plan Debtors reserve the right to amend the Assumption Schedule not later

36

than twenty-eight (28) days prior to the Confirmation Hearing either to: (a) delete any executory contract or lease listed therein and provide for its rejection pursuant to Section 6.5 hereof; or (b) add any executory contract or lease to the Assumption Schedule, thus providing for its assumption and assignment pursuant to this Section 6.2. The Plan Debtors shall provide notice of any such amendment to the Assumption Schedule to the parties to the executory contract or lease affected thereby not later than twenty-eight (28) days prior to the Confirmation Hearing. The Confirmation Order shall constitute an Order of the Bankruptcy Court pursuant to Bankruptcy Code Section 365 approving all assumptions and assignments described in this Section 6.2 and the Assumption Schedule, as of the Effective Date.

**6.3     Cure Payments; Assurance of Performance**.   Any monetary defaults under each Remaining Contract to be assumed and assigned under the Plan shall be satisfied, pursuant to Bankruptcy Code Section 365(b)(1) by payment of the cure amount in Cash in full on the Effective Date by the Plan Debtors or the Purchaser pursuant to the Sale Order.  In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Plan Debtors, the Liquidating Trustee, or an assignee thereof to provide adequate assurance of future performance under the Remaining Contracts to be assumed or assumed and assigned, as applicable, or (iii) any other matter pertaining to assumption or assumption and assignment of the Remaining Contracts to be assumed, the Liquidating Trustee or the Purchaser, as applicable, shall pay all required cure amounts promptly following the entry of a Final Order resolving the dispute.

**6.4     Objections To Assumption of Remaining Contracts**.   To the extent that any party to a Remaining Contract identified for assumption and assignment asserts arrearages or damages pursuant to Bankruptcy Code Section 365(b)(1), or has any other

37

objection with respect to any proposed assumption, cure or assignment on the terms and conditions provided herein, all such arrearages, damages and objections must be Filed and served no later than twenty-one (21) days after such party is served with notice of such assumption and assignment.

Failure to assert such arrearages, damages or objections in the manner described above shall constitute consent to the proposed assumption, cure or assignment on the terms and conditions provided herein, including an acknowledgement that the proposed assumption and/or assignment provides adequate assurance of future performance and that the amount identified for "cure" in the Assumption Schedule is the amount necessary to cover any and all outstanding defaults under the Remaining Contract to be assumed, as well as an acknowledgement and agreement that no other defaults exist under such Remaining Contract.

If any assumption of a Remaining Contract proposed herein for any reason is not approved by the Bankruptcy Court, then the Plan Debtors shall be entitled, in their sole discretion, upon written notice to the applicable non-Debtor party to such Remaining Contract, to deem such Remaining Contract to have been rejected pursuant to the provisions of Section 6.5 below.

**6.5     Rejection.**  Except for those executory contracts and unexpired leases that (a) are assumed and assigned pursuant to this Plan, (b) have been previously assumed and assigned or rejected pursuant to previous Orders of the Bankruptcy Court, or (c) are the subject of a pending motion before the Bankruptcy Court with respect to the assumption and assignment of such executory contracts and unexpired leases, as of the Effective Date, all executory contracts and unexpired leases of the Plan Debtors shall be rejected pursuant to Section 365 of the Bankruptcy Code; provided, however, that neither the inclusion by the Plan

Debtors of a contract or lease on the Assumption Schedule nor anything contained in this Article 6 shall constitute an admission by any Plan Debtor that such contract or lease is an executory contract or unexpired lease or that any Plan Debtor or its successors and assigns, including, but not limited to, the Liquidating Trust, has any liability thereunder.

**6.6     Approval of Rejection; Rejection Damages Claims Bar Date**. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts and unexpired leases under Section 6.5 above pursuant to Bankruptcy Code Section 365 as of the Effective Date.  Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order, or such Claim shall receive no distribution under the Plan or otherwise on account of such Claim.  All Allowed Claims arising from the rejection of the Plan Debtors' executory contracts or unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with Section 5.4 of the Plan.

## ARTICLE 7
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1     Substantive Consolidation of Claims against Plan Debtors for Plan Purposes Only**.  The Plan is premised on the substantive consolidation of all of the Plan Debtors with respect to the treatment of all Claims and Interests.  This Plan shall serve as a request by the Plan Debtors, in lieu of a separate motion, to the Bankruptcy Court that it grant substantive consolidation with respect to the treatment of all Claims and Interests:  on the Effective Date, (a) all Class 5 Intercompany Claims will be eliminated (except to the extent such claims are by a Plan Debtor against a non-Plan Debtor Affiliate); (b) no distributions shall be made under the Plan on account of any equity interest held by a Plan Debtor in any other Plan

39

Debtor; (c) all Assets and liabilities of the Plan Debtors will be merged or treated as though they were merged; (d) all guarantees of the Plan Debtors of the obligations of any other Plan Debtor and any joint or several liability of any of the Plan Debtors shall be eliminated; and (e) each and every Claim or Interest against any Plan Debtor shall be deemed Filed against the consolidated Plan Debtors and all Claims Filed against more than one Plan Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Plan Debtors. In the event the Bankruptcy Court determines that such substantive consolidation of the Plan Debtors is not appropriate, the Plan Debtors may request that the Bankruptcy Court otherwise confirm the Plan and the treatment of the different Classes under the Plan on a Plan Debtor by Plan Debtor basis. This Plan shall also serve as a request by EBG, in lieu of a separate motion, to the Bankruptcy Court to dismiss EBG's Chapter 11 Case.

### 7.2 The Liquidating Trust

**7.2.1 Establishment of the Liquidating Trust**. On the Effective Date, the Plan Debtors, on their own behalf and on behalf of the Beneficiaries, shall execute the Liquidating Trust Agreement and take all steps necessary to establish the Liquidating Trust. The initial Liquidating Trustee shall be [•] or such other Person identified by the Plan Debtors in writing no less than 10 days before the Confirmation Hearing and reasonably acceptable to the First Lien Facility Agent.

**7.2.2 Purpose of Liquidating Trust**. The Liquidating Trust is being established for the sole purpose of liquidating the Plan Debtors' Assets and distributing the proceeds thereof to certain holders of Allowed Claims, in each case, as identified in and prescribed by this Plan. The Liquidating Trust shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating

purpose of the Liquidating Trust. Unless otherwise required by law, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

### 7.2.3  Contribution of the Plan Debtors' Assets to the Liquidating Trust

On the Effective Date of the Plan, each of the Plan Debtors shall transfer and assign all of its respective Assets to the Liquidating Trust free and clear of all Liens, Claims, interests and encumbrances (except for the Adjusted Cash Amount, which shall be distributed to the First Lien Facility Agent for the benefit of the First Lien Facility Lenders on account of the First Lien Facility Secured Claim on or about the Effective Date and as otherwise provided in Section 5.2 and 7.10 of the Plan).

### 7.2.4  Valuation of Trust Assets

As soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, the Liquidating Trustee, based upon his good faith determination after consultation with his counsel, shall inform the Beneficiaries in writing solely as to his estimate of the value of the assets transferred to the Liquidating Trust. The valuation shall be used consistently by all parties (including, without limitation, the Plan Debtors, the Liquidating Trustee, and the Beneficiaries) for all federal income tax purposes, and the parties shall file tax returns consistent with such valuation; provided, however, that such valuation shall not be binding on the Liquidating Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Assets, whether by disposition, liquidation, litigation, settlement, or otherwise

### 7.2.5  Certain Federal Income Tax Matters

For U.S. federal income tax purposes, the Plan Debtors, the Liquidating Trustee and the Beneficiaries will treat the transfer of assets to the Liquidating Trust as a transfer by the Plan Debtors of the Plan Debtors' Assets (net of any applicable liabilities) to the Beneficiaries (to the extent of the value of their

41

respective interests in the applicable Assets), followed by a transfer of such Assets (net of any applicable liabilities) by the Beneficiaries to the Liquidating Trust (to the extent of the value of their respective interests in the applicable Assets). For U.S. federal income tax purposes, the Liquidating Trust (except with respect to the Disputed Claims Reserve) will be treated as one or more grantor trusts, and the Beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

**7.3    Post-confirmation Operations.** Following Confirmation and prior to the occurrence of the Effective Date, the then-current officers and directors of each of the Plan Debtors shall continue in their respective capacities and the Plan Debtors shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in this Plan. On and after the Effective Date, all such officers and directors shall be deemed to have resigned.

**7.4    Post-confirmation Funding of Plan.** Payment of the First Lien Facility Superpriority Claim shall be funded from Net Avoidance Action Proceeds, Other Superpriority Proceeds and any Available Cash remaining after the payment in full of the First Lien Facility Secured Claim, Allowed Administrative Expense Claims (excluding the First Lien Facility Superpriority Claim), Allowed Priority Tax Claims and Allowed Other Priority Claims. Consistent with Article 5 above, payment of all other Allowed Claims shall be paid from Available Cash in accordance with the priorities set forth herein to the extent of the Available Cash. The Plan Debtors anticipate that there shall be sufficient Available Cash to pay all Allowed Administrative Expense Claims (other than the First Lien Facility Superpriority Claim), Allowed Priority Tax Claims and Allowed Other Priority Claims in full in Cash on the Effective Date.

LA\2111370.27

**7.5 Post-Effective Date Funding of Operations.** On the Effective Date, the Plan Debtors shall set aside Cash in the aggregate amount of $100,000.00 in the Trust Administrative Fund solely to fund the Liquidating Trustee Administrative Fees.

**7.6 Dissolution of the Plan Debtors.** As soon as practicable after the Effective Date, each of the Plan Debtors will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Debtors or payments to be made in connection therewith; provided, however, that pursuant to Section 1142(b) of the Bankruptcy Code, the Liquidating Trustee shall be authorized to file each Plan Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate records in each Plan Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or Board of Directors of any Plan Debtor. From and after the Effective Date, the Plan Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (ii) shall be deemed to have cancelled pursuant to this Plan all Interests and all Intercompany Claims, and (iii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

**7.7 Closing of the Plan Debtors' Chapter 11 Cases.** Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Plan Debtors' Chapter 11 Cases, when all Assets contributed to the Liquidating Trust in accordance with Section 7.2.3 above have been liquidated and converted into Cash (other than those Assets

43

abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Plan Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**7.8** **Post-Effective Date Cause of Action Settlements**.  On and after the Effective Date and until such time as the First Lien Facility Lenders are paid in full in Cash, in order to settle or abandon Causes of Action owned by the Liquidating Trustee, the Liquidating Trustee shall be required to obtain (a) the prior written consent of the First Lien Facility Agent or (b) an Order of the Bankruptcy Court approving such settlement or abandonment after notice and a hearing.  After the First Lien Facility Lenders are paid in full in Cash, except as otherwise set forth in this Plan, the Confirmation Order or the Liquidating Trust Agreement, the Liquidating Trustee shall not be required to obtain approval of the First Lien Facility Agent or the Bankruptcy Court to settle or abandon Causes of Action owned by the Liquidating Trustee.

**7.9** **Post-Effective Date Reporting**.  As promptly as practicable after the making of any distributions that are required under this Plan to be made on the Effective Date or as soon as practicable thereafter in recognition of the applicable claims reconciliation process, but in any event no later than ten (10) Business Days after the making of such distributions, the Liquidating Trustee shall File with the Bankruptcy Court and serve on the United States Trustee a report setting forth the amounts and timing of all such distributions and the recipients thereof. In addition, the Liquidating Trustee shall File with the Bankruptcy Court and serve on the United States Trustee quarterly reports summarizing the cash receipts and disbursements of the Liquidating Trust for the immediately preceding three-month period.  Each quarterly report shall also state the Liquidating Trust's cash balances as of the beginning and ending of each such

44

period.  Quarterly reports shall be provided no later than the fifteenth (15th) day of each January, April, July and October until all Final Distributions under this Plan have been made.

        **7.10**    **Cancellation of Existing Securities and Agreements.**  On the Effective Date, any document, agreement, or instrument evidencing any Claim or Interest against or in the Plan Debtors (including, but not limited to, the First Lien Credit Agreement and the Second Lien Credit Agreement) that has not been Assumed by the Purchaser shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the Plan Debtors shall have no further obligations under such documents, agreements or instruments.   Notwithstanding this Section 7.10 (and consistent with Section 5.2 above), the Liens on Available Cash securing the First Lien Facility Secured Claim shall remain on Available Cash until such time as such First Lien Facility Secured Claim is paid in full.

**ARTICLE 8**
**POST-CONFIRMATION LITIGATION**

        **8.1**    **Transfer and Enforcement of Causes of Action**.  Pursuant to Section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, after transfer of the Plan Debtors' Assets to the Liquidating Trust pursuant to Section 7.2.3 hereof, the Liquidating Trustee (and to the extent retained by the Liquidating Trust to perform such work, any other Person) will, subject to Section 7.8 above, have the exclusive right to enforce any and all Causes of Action against any Entity and rights of the Plan Debtors that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever, including but not limited to all avoidance powers granted to the Plan Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 506, 510, 541, 542, 543, 544,

545, 547 through 551 and 553 of the Bankruptcy Code, but excluding, for the avoidance of doubt, Released Claims.

**8.2** **Abandonment of Causes of Action and Other Assets of the Plan Debtors**. Subject to Section 7.8 above, the Liquidating Trustee shall have the right to abandon any Causes of Action or other Assets that the Liquidating Trustee deems appropriate without the approval of the Bankruptcy Court.

## ARTICLE 9
## PROCEDURES FOR TREATING DISPUTED CLAIMS

**9.1** **Objections to Claims**. Following the Effective Date, only the Liquidating Trustee shall be entitled to object to Claims not previously Allowed. No objection shall be required with respect to a proof of Claim Filed after the Bar Date, the Governmental Claims Bar Date or the Administrative Expense Claims Bar Date (as applicable), and any and all such Claims shall be deemed disallowed unless otherwise ordered by the Bankruptcy Court after notice and a hearing. Any objections to Administrative Expense Claims shall be Filed and served on the claimant no later than the later of (x) sixty (60) days after the Administrative Claims Bar Date, and (y) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, which later date may be fixed before or after the date specified in clause (x) above. Any objections to any Claim other than an Administrative Expense Claim shall be Filed and served on the claimant no later than the later of (x) forty-five (45) days after the date the Claim is Filed, (y) forty-five (45) days after the Effective Date and (z) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing.

46

**9.2     Resolution of Disputed Claims**.  After the Effective Date, the Liquidating Trustee shall have the exclusive authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims without approval of the Bankruptcy Court.

**9.3     Amendments to Claims**.  After the Confirmation Date, a proof of Claim for any Claim other than an Administrative Expense Claim may not be amended without the authorization of the Bankruptcy Court.  After the Administrative Expense Claims Bar Date, a proof of claim for an Administrative Expense Claim may not be amended without the authorization of the Bankruptcy Court.  Any such new proofs of Claim or proofs of claim for an Administrative Expense Claim amended after the Confirmation Date or the Administrative Expense Claims Bar Date (as applicable) shall be deemed disallowed in full and expunged without any action by the Plan Debtors or the Liquidating Trustee, unless the holder of the Claim or Administrative Expense Claim has obtained prior Bankruptcy Court authorization to File the amendment.

**9.4     No Distributions Pending Allowance**.  Notwithstanding any other provision hereof, if any portion of a Claim or Administrative Expense Claim is Disputed, no payment or distribution provided hereunder shall be required to be made on account of such Claim or Administrative Expense Claim unless and until such Disputed Claim or Disputed Administrative Expense Claim becomes Allowed in its entirety.

## ARTICLE 10
## DISTRIBUTIONS

**10.1     No Duplicate Distributions.**  In accordance with Section 7.1 of the Plan and unless otherwise expressly provided herein, to the extent more than one Plan Debtor is

liable for any Claim, such Claim shall be considered a single Claim and entitled only to the payment provided therefor under the applicable provisions of the Plan.

**10.2    Delivery of Distributions in General.**  Distributions to holders of Allowed Claims shall be made:  (a) at the addresses set forth in the proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Trustee after the date on which any related proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address.

**10.3    Cash Payments**.  Except as otherwise provided in the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Plan Debtors (with respect to Cash payments made on the Effective Date) and Liquidating Trustee (with respect to Cash payment made after the Effective Date).

**10.4    Interest on Claims**.  Except as required by applicable bankruptcy law or otherwise agreed by the Plan Debtors or the Liquidating Trustee, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.  To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim

48

first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

10.5     **No De Minimis Distributions**.  No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.  Such undistributed amount shall instead be made part of the Available Cash for distribution in accordance with this Plan.

10.6     **Face Amount**.  Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely Filed or deemed Filed, zero.

10.7     **Undeliverable Distributions.**  If the distribution check to any holder of an Allowed Claim is not cashed within 90 days after issuance by the Liquidating Trustee, the Liquidating Trustee may give a stop payment order with respect to the check and no further distributions shall be made to such holder on account of such Allowed Claim.  Such Allowed Claim shall be discharged and the holder of such Allowed Claim shall be forever barred from asserting such Claim against the Liquidating Trustee, the Plan Debtors, or the Liquidating Trust.  In such cases, any Cash held for distribution on account of such Claim shall (i) become the property of the Liquidating Trust, and (ii) be distributed to other Creditors in accordance with the terms of this Plan.

49

**10.8     Timing of Distributions.**

 **10.8.1** On the Effective Date, the First Lien Facility Agent shall receive, for the benefit of the First Lien Facility Lenders and Hedge Bank, on account of the First Lien Facility Secured Claim, the Adjusted Cash Amount.

 **10.8.2** On the Effective Date, or as soon thereafter as practicable in accordance with the claims resolution process set forth herein, the Liquidating Trustee shall distribute to the holders of Allowed Administrative Expense Claims (other than the First Lien Facility Superpriority Claim), Allowed Priority Tax Claims and Allowed Other Priority Claims the distributions as set forth in the Plan.

 **10.8.3** From time to time, but in no event less than once every three (3) months, the Liquidating Trustee shall distribute all Available Cash (other than Disputed Available Cash, Net Avoidance Action Proceeds and Other Superpriority Proceeds), if any, (a) to the First Lien Facility Agent for distribution to the First Lien Facility Lenders in satisfaction of the First Lien Facility Lien Facility Secured Claim, (b) after payment in full of the First Lien Facility Secured Claim, to the First Lien Facility Agent for distribution to the First Lien Facility Lenders in satisfaction of the First Lien Facility Superpriority Claim and (c) after payment in full of the First Lien Facility Secured Claim and First Lien Facility Superpriority Claim, Pro Rata to holders of Allowed General Unsecured Claims.

 **10.8.4** The Liquidating Trustee shall distribute any Net Avoidance Action Proceeds or Other Superpriority Proceeds, if any, to the First Lien Facility Agent for distribution to the First Lien Facility Lenders no later than two (2) Business Days after receipt thereof by the Liquidating Trustee.

LA\2111370.27

**10.8.5** From time to time, but in no event less than once every three (3) months, the Liquidating Trustee shall, after payment in full of the First Lien Facility Superpriority Claim, distribute any remaining Net Avoidance Action Proceeds or Other Superpriority Proceeds Pro Rata to holders of Allowed General Unsecured Claims.

**10.8.6** After (a) the liquidation into Cash of all Causes of Action (other than those Causes of Action abandoned by the Liquidating Trustee), (b) the collection of all remaining sums due or otherwise remitted or returned to the Plan Debtors' Estates, and (c) the resolution of all Disputed Claims, the Liquidating Trustee shall distribute any remaining Available Cash (including any remaining Disputed Available Cash, Net Avoidance Action Proceeds and Other Superpriority Proceeds) in accordance with this Plan (the "Final Distribution"). The date of the Final Distribution shall be the "Final Distribution Date."

**10.9 Disputed Claims Reserve**. On the Effective Date, the Liquidating Trustee shall establish a reserve (the "Disputed Claims Reserve") for the payment of Disputed Claims in accordance with the terms of the Liquidating Trust Agreement. Upon ultimate determination that any Disputed Claim is not Allowed, the Liquidating Trustee shall immediately release the portion of the Disputed Claim Reserve on account of such Claim and distribute such portion in accordance with the Plan.

**10.10 Compliance with Tax Requirements.** In connection with the Plan and the distributions made in accordance therewith, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any

and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE 11
## CONDITIONS PRECEDENT

**11.1    Conditions to Confirmation.**  The following are each conditions to entry of the Confirmation Order:

**11.1.1** The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Plan Debtors and the First Lien Facility Agent; and

**11.1.2**  The Confirmation Order shall be in form and substance reasonably satisfactory to the Plan Debtors and the First Lien Facility Agent.

**11.2    Conditions to the Effective Date.**  The Plan shall not become effective and the Effective Date shall not occur unless and until:

**11.2.1**  All conditions to Confirmation of this Plan set forth in Section 11.1 remain satisfied or have been waived;

**11.2.2**  The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Plan Debtors and the First Lien Facility Agent;

**11.2.3**  No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 11.2 are satisfied, or, if permitted, waived;

**11.2.4**  All documents, instruments and agreements, in form and substance reasonably satisfactory to the Plan Debtors and the First Lien Facility Agent provided for under this Plan or necessary to implement this Plan, including, without limitation, the Liquidating Trust

LA\2111370.27

Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

**11.2.5** The Plan Debtors shall have reasonably determined that there shall exist sufficient Available Cash to pay in full in Cash on the Effective Date all estimated Allowed Administrative Expense Claims (other than the First Lien Facility Superpriority Claim), Allowed Other Priority Claims and Allowed Priority Tax Claims.

**11.3 Termination of Plan for Failure To Become Effective.** If the Effective Date shall not have occurred on or prior to the date that is twenty (20) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section 11.3 are waived in writing by the Plan Debtors and the First Lien Facility Agent.

**11.4 Waiver of Conditions.** The Plan Debtors and the First Lien Facility Agent may each waive any or all of the conditions set forth in Sections 11.1 and/or 11.2 (other than, with respect to waiver by the Plan Debtors, the conditions set forth in Sections 11.2.1 and 11.2.5, and, with respect to waiver by the First Lien Facility Agent, the condition set forth in Section 11.2.1) of this Plan.

**11.5 Notice of Effective Date.** On the Effective Date, or as soon thereafter as is reasonably practicable, the Plan Debtors shall File with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Plan Debtors in their sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective; provided, however, that the Plan Debtors shall have no obligation to notify any Person of such fact. The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of

Effective Date may be sent by United States mail, postage prepaid (or at the Plan Debtors' option, by courier or facsimile) to those Persons who have Filed with the Bankruptcy Court requests for notices pursuant to Federal Bankruptcy Rule 2002 and the Master Service List established in the Chapter 11 Cases.

## ARTICLE 12
## EFFECT OF CONFIRMATION

**12.1    Jurisdiction of Court.**  Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan Debtors' Chapter 11 Cases and the Plan to the fullest extent permitted by law.

**12.2    Binding Effect.**  Except as otherwise provided in Section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind (i) any holder of a Claim against or Interest in the Plan Debtors and its respective successors and assigns (including the Liquidating Trust), whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan and (ii) the Liquidating Trustee.

**12.3    Term of Pre-Confirmation Injunctions or Stays**.    Unless otherwise provided in a separate Order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Plan Debtors' Chapter 11 Cases in accordance with Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Beneficiaries and creditors holding claims against the Plan Debtors, their Estates, the Plan Debtors' Assets, the Liquidating Trustee and the

54

Liquidating Trust until the Final Distribution Date or, if different, the date indicated in such applicable Order.

**12.4    Injunction Against Interference with Plan**.  Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former Affiliates, employees, agents, officers, directors, principals or advisors, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

**12.5    Exculpation.** *Except as otherwise specifically provided in this Plan, none of the Purchaser (in its capacity as a purchaser under the Asset Purchase Agreement), the Plan Debtors, the Special Committee, the Plan Debtors' Affiliates, the Liquidating Trustee, the First Lien Facility Agent, the First Lien Facility Lenders (in their capacity as such), the Hedge Bank (in its capacity as such), nor any of such parties' respective present members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or Affiliates, or any of such parties' successors and assigns, shall have or incur, and such parties are hereby released from, any Claim, obligation, cause of action in any form whatsoever or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Plan Debtors' Chapter 11 Cases, the negotiation and execution of this Plan, the Disclosure Statement, the Asset Purchase Agreement and the 363 Sale, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the*

LA\2111370.27

administration of this Plan, the Asset Purchase Agreement, the 363 Sale and the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except fraud, willful misconduct or gross negligence as determined by a Final Order. Nothing in this Section 12.5 shall: (i) be construed as a release of any Entity's fraud, gross negligence or willful misconduct with respect to matters set forth in this Section 12.5 or (ii) limit or abrogate the obligations of the Plan Debtors or the Purchaser and any of their respective Affiliates to one another under the Asset Purchase Agreement.  Any of the foregoing parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.

Notwithstanding any other provision of this Plan, neither any holder of a Claim or Interest, nor other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Purchaser (in its capacity as a purchaser under the Asset Purchase Agreement), the Plan Debtors, the Special Committee, the Plan Debtors' Affiliates, the Liquidating Trustee, the First Lien Facility Agent, the First Lien Facility Lenders (in their capacity as such), the Hedge Bank (in its capacity as such), nor any of such parties' respective present members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, related professionals, agents or Affiliates, or any of such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Plan Debtors' Chapter 11 Cases,

the negotiation and execution of this Plan, the Disclosure Statement, the Asset Purchase Agreement and the 363 Sale, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, the Asset Purchase Agreement, the 363 Sale and the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except fraud, willful misconduct or gross negligence as determined by a Final Order.

      **12.6**    **Injunction.** *Except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities or Persons who have held, hold or may hold claims, rights, causes of action, liabilities or any equity interests based upon any act or omission, transaction or other activity of any kind or nature related to the Plan Debtors, the Liquidating Trust or the Plan Debtors' Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such claims, rights, causes of action, liabilities or any equity interests and regardless of whether such Entity or Person has voted to accept the Plan, and any successors, assigns or representatives of such Entities or Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such claims, rights, causes of action, liabilities or any equity interests against the Plan Debtors, the Special Committee, the Liquidating Trustee, the Liquidating Trust or any assets of the Plan Debtors or the Liquidating Trust which such Entities or Persons possessed or may possess prior to the Effective Date, (b) the creation, perfection or enforcement of any*

LA\2111370.27

*encumbrance of any kind with respect to any such claims, rights, causes of action, liabilities or any equity interests against the Plan Debtors, the Special Committee, the Liquidating Trustee, the Liquidating Trust or any assets of the Plan Debtors or the Liquidating Trust which they possessed or may possess prior to the Effective Date, and (c) the assertion of any claims, rights, causes of action, liabilities or any equity interests that are released hereby.*

**12.7    Releases by Plan Debtors.** *Except as expressly provided in this Plan, upon the Effective Date, each of the Plan Debtors hereby (i) remises, acquits, waives, releases and forever discharges each of the Debtor Releasees, and (ii) covenants and agrees never to institute or cause to be instituted any suit or other form of action or proceeding of any kind or nature whatsoever against any of the Debtor Releasees based upon any claims, demands, indebtedness, agreements, promises, causes of action, obligations, damages or liabilities of any nature whatsoever (other than rights to enforce obligations of the Debtor Releasees under any Order of the Bankruptcy Court, the Plan and all contracts, instruments, releases and other agreements delivered in connection therewith), in law or in equity, whether or not known, suspected or claimed, that the Plan Debtors or their Estates ever had, claimed to have, has, or may have or claim to have against the Debtor Releasees, or any of them, by reason of any matter, cause, thing, act or omission of the Debtor Releasees, or any of them, in each case related to the Plan Debtors, their Chapter 11 Cases, the 363 Sale or the Plan against Debtor Releasees; provided, however, that nothing herein shall release any of the Debtor Releasees from any act or omission that constitutes fraud, willful misconduct or gross negligence as determined by a Final Order.*

**12.8    Releases by Holders of Claims and Interests.** *As of the Effective Date, to the fullest extent permitted under applicable law, in consideration for the obligations*

*under the Plan and the Cash, securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with the Plan, and the benefits provided by the Creditor Releasees in the Plan and in the Plan Debtors' Chapter 11 Cases, each present and former holder of a Claim or Interest who votes in favor of the Plan will be deemed to release forever, waive and discharge any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Plan Debtors' obligations under any Order of the Bankruptcy Court, the Asset Purchase Agreement, the Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Plan Debtors, their Chapter 11 Cases, the 363 Sale, or the Plan against Creditor Releasees; provided, however, that nothing herein shall release any of the Creditor Releasees from any act or omission that constitutes fraud, willful misconduct or gross negligence as determined by a Final Order.*

   **12.9**   **Limitation of Liability.** *Except as expressly set forth in the Plan or the Asset Purchase Agreement, following the Effective Date, none of the Plan Debtors, the Liquidating Trust, the Liquidating Trustee, the Special Committee, the Plan Debtors' Affiliates, the First Lien Facility Agent, the First Lien Facility Lenders (in their capacity as such), the Hedge Bank (in its capacity as such), nor any of their respective members, officers, directors, employees, advisors, attorneys, professionals, agents or Affiliates shall have or incur any liability to any holder of a Claim or Interest who votes in favor of the Plan for any act or*

59

*omission in connection with, related to, or arising out of, the Plan Debtors' Chapter 11 Cases,*

*the 363 Sale, the negotiation and pursuit of confirmation of the Plan, the consummation of the*

*Plan or any contract, instrument, release or other agreement or document created in connection*

*with the 363 Sale, this Plan, or the administration of the Plan or the property to be distributed*

*under the Plan, except for gross negligence or willful misconduct.*

## ARTICLE 13
## RETENTION OF JURISDICTION

**13.1    Scope of Bankruptcy Court Jurisdiction**.  Notwithstanding the

entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court

may retain jurisdiction over the Plan Debtors' Chapter 11 Cases after the Effective Date to the

fullest extent legally permissible, including jurisdiction to, among other things:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the

priority or secured or unsecured status of any Claim or Interest, including the resolution of (x)

any request for payment of any Administrative Expense Claim, (y) any Disputed Claims or

Interests and (z) any and all objections to the allowance or priority of any Claim or Interest;

(b)    To the extent not inconsistent with the Bankruptcy Code, hear and

determine any and all causes of action against any Person and rights of the Plan Debtors that

arose before or after the Petition Date, including, but not limited to, the rights and powers of a

trustee and debtor-in-possession, against any Person whatsoever, including, but not limited to, all

avoidance powers granted to the Plan Debtors under the Bankruptcy Code and all causes of

action and remedies granted pursuant to Sections 502, 506, 510, 541, 542, 543, 544, 545, 547

through 551 and 553 of the Bankruptcy Code;

(c)    Grant or deny any applications for allowance of compensation for

Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or

before the Effective Date;

60

(d)     Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Plan Debtor is a party or with respect to which any of the Plan Debtors may be liable, including, without limitation, the determination of whether such contract is executory for the purposes of Section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)     Enter Orders approving the Liquidating Trustee's post-Confirmation sale or other disposition of Assets of the Liquidating Trust;

(f)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

(g)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Plan Debtor or the Liquidating Trust that may be pending in the Plan Debtors' Chapter 11 Cases on the Effective Date;

(h)     Hear and determine matters concerning state, local or federal taxes in accordance with Sections 346, 505 or 1146 of the Bankruptcy Code;

(i)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreement, the Plan and the Confirmation Order;

(j)     Hear and determine any matters concerning the enforcement of the provisions of Article 12 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by this Plan;

(k)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order;

LA\2111370.27

(l)     Permit the Plan Debtors, to the extent authorized pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

(m)     Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order;

(n)     Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

(o)     Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(p)     Determine any other matters that may arise in connection with or relating to the Plan, the 363 Sale, the Asset Purchase Agreement or the Confirmation Order;

(q)     Enter any Orders in aid of prior Orders of the Bankruptcy Court; and

(r)     Enter a final decree closing the Plan Debtors' Chapter 11 Cases.


## ARTICLE 14
## ACCEPTANCE OR REJECTION OF THE PLAN

**14.1     Persons Entitled to Vote.**  Class 1 and Class 3 are not Impaired, and holders of Class 1 Claims and Class 3 Claims are deemed pursuant to Section 1126(f) of the Bankruptcy Code to have accepted the Plan.  Votes from holders of Class 1 Claims and Class 3 Claims will not be solicited.  Class 2 is Impaired and is expected to receive a distribution under the Plan.  Votes from holders of the Class 2 Claim will be solicited.  Class 4 Claims, Class 5 Claims, Class 6 Interests, and Class 7 Claims and Interests are Impaired and are not expected to

LA\2111370.27

receive any distributions pursuant to the Plan, and are deemed pursuant to Section 1126(g) of the Bankruptcy Code to have rejected the Plan. Votes from holders of Class 4 Claims, Class 5 Claims, Class 6 Interests and Class 7 Claims and Interests will not be solicited.

14.2     **Acceptance by Impaired Classes.**  An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

14.3     **Request for Non-Consensual Confirmation.**  Class 4, Class 5, Class 6, and Class 7 are not expected to receive any distribution on account of their Claims and Interests and are therefore deemed to have rejected the Plan.  The Plan Debtors therefore request that the Court confirm the Plan under the cramdown provisions of Section 1129(b) of the Bankruptcy Code with respect to Class 4, Class 5, Class 6, and Class 7.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

15.1     **Effectuating Documents and Further Transactions**.  Each of the Plan Debtors and the Liquidating Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any Securities issued pursuant to this Plan.

15.2     **Corporate Action**.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the stockholders, directors, members,

63

managers or partners of one or more of the Plan Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law or other applicable law of the states in which the Plan Debtors are organized, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Plan Debtors.

15.3 **Payment of Statutory Fees**.    After the Effective Date, the Liquidating Trustee shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code through the entry of a final decree closing the Plan Debtors' cases.

15.4 **Modification of the Plan.**    Subject to the restrictions on Plan modifications set forth in Section 1127 of the Bankruptcy Code and either (a) the prior written consent of the First Lien Facility Agent or (b) the approval of the Bankruptcy Court after notice and a hearing, the Plan Debtors reserve the right to alter, amend or modify the Plan before its substantial consummation.

15.5 **Revocation of the Plan.**    The Plan Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.    If the Plan Debtors revoke or withdraw the Plan, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Plan Debtors; (b) constitute an admission of any fact or legal conclusion by the Plan Debtors or any other Entity; or (c) prejudice in any manner the rights of the Plan Debtors in any further proceedings involving the Plan Debtors.

15.6 **Governing Law.**  Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice

of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

15.7 **No Admissions.**  If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by the Plan Debtors with respect to any matter set forth herein or therein including, without limitation, liability on any Claim or the propriety of any Claims classification.

15.8 **Severability of Plan Provisions.**  If prior to Confirmation any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Plan Debtors the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, Impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.9    Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**15.10  Exemption from Certain Transfer Taxes.**    Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset of the Plan Debtors or the Liquidating Trust occurring after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

**15.11  Preservation of Rights of Setoffs.**  The Plan Debtors may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Plan Debtors may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Debtors of any such claim that the Plan Debtors may have against such holder.

**15.12  Defenses with Respect to Unimpaired Claims.**    Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Plan Debtors with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**15.13  No Injunctive Relief.**  Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

LA\2111370.27

**15.14   Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**15.15   Entire Agreement.**  This Plan (together with the Liquidating Trust Agreement) sets forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents.  The Plan Debtors' Estates shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein.

**15.16   Dissolution of Creditors' Committee.**  The Creditors' Committee shall be dissolved on the Effective Date without need for a further Order of the Bankruptcy Court.

**15.17   Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

| Plan Debtors | Counsel to Debtors |
|---|---|
| Boston Generating, LLC<br>300 Atlantic Street, 5th Floor,<br>Stamford, CT 06901-3522,<br>Attn: Mark Sudbey, Chief Executive Officer; Jeff Hunter, Manager, Executive Vice President, and Chief Financial Officer | Latham & Watkins LLP<br>885 Third Avenue<br>New York NY 10022-4834<br>Attn: D. J. Baker, Esq. and Robert J. Rosenberg, Esq.<br>Email:  dj.baker@lw.com; robert.rosenberg@lw.com |
| **Counsel to the First Lien Facility Agent** | **United States Trustee** |
| Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York NY 10019<br>Attn: Scott K. Charles, Esq. and Michael S. Benn, Esq.<br>Email:  SKCharles@wlrk.com;<br>MSBenn@wlrk.com | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn:  Paul Schwartzberg<br>Email:  Paul.Schwartzberg@usdoj.gov |

LA\2111370.27

| Counsel to the Creditors' Committee | Counsel to the Second Lien Facility Agent |
|---|---|
| Jager Smith P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn: Bruce Smith, Esq.<br>Email: bsmith@jagersmith.com | Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>Attn: Allan S. Brilliant, Esq. and Craig P. Druehl, Esq.<br>Email: allan.brilliant@dechert.com;<br>craig.druehl@dechert.com |
| **Liquidating Trustee** | |
| [to come] | |

LA\2111370.27

Dated:  March 21, 2011

EBG Holdings LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President and
            Chief Financial Officer

Boston Generating, LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President and
            Chief Financial Officer

Fore River Development, LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President and
            Chief Financial Officer

Mystic I, LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President and
            Chief Financial Officer

Mystic Development, LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President and
            Chief Financial Officer

BG New England Power Services, Inc.

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President

BG Boston Services, LLC

By:     */s/ Jeff Hunter*_____
       Name:  Jeff Hunter
       Title:   Executive Vice President

69

## **Exhibit 1**

Debtors

The Debtors, along with their Chapter 11 Case Number, include:

1.      Boston Generating, LLC (0631): Case No. 10-14419 (SCC)

2.      EBG Holdings LLC (3635): Case No. 10-14417 (SCC)

3.      Fore River Development, LLC (7933): Case No. 10-14220 (SCC)

4.      Mystic I, LLC (0640): Case No. 10-14421 (SCC)

5.      Mystic Development, LLC (7940): Case No. 10-14422 (SCC)

6.      BG New England Power Services, Inc. (0476): Case No. 10-14423 (SCC)

7.      BG Boston Services, LLC (6921): Case No. 10-14424 (SCC)

LA\2111370.27

## Exhibit 2

Liquidating Trust Agreement


[to come]

**<u>Exhibit 3</u>**

Assumption Schedule

| | Contract Counterparty | Type of Contract | Contract Date | Notice Address | Brief Summary | Cure Amount |
|---|---|---|---|---|---|---|
| 1. | Merrill Communications LLC | Services Agreement | August 23, 2008 | Merrill Communications LLC Attn: General Counsel One Merrill Circle St. Paul, MN 55108 | Merrill DataSite-Amendment No. 1 to Services Agreement | $0 |
| 2. | Xerox Corporation acting through Xerox Litigation Services | Services Agreement | September 8, 2010 | 45 Glover Ave, Norwalk, CT 06856-4505  Attn: Andrew D Barrett | Services agreement for litigation support services | $0 |