Marc Kieselstein
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4665
marc.kieselstein@kirkland.com

James P. Gillespie, P.C.
Oreste P. McClung
Kirkland & Ellis LLP
655 15th ST NW
Washington, DC 20005
(202) 879-5000
james.gillespie@kirkland.com
oreste.mcclung@kirkland.com

Hearing Date:  May 24, 2012 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Boston Generating, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 10-14419 (SCC) |

**OBJECTION OF KIRKLAND & ELLIS LLP TO THIRD OMNIBUS
MOTION OF CRAIG R. JALBERT, LIQUIDATING TRUSTEE OF THE
BOSGEN LIQUIDATING TRUST, FOR ENTRY OF AN ORDER
AUTHORIZING EXAMINATIONS PURSUANT TO RULE 2004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Kirkland & Ellis LLP for its opposition ("Objection") to the motion (the "Motion") of Craig R. Jalbert, Liquidating Trustee ("Liquidating Trustee") of the BosGen Liquidating Trust ("Liquidating Trust"), for an entry of an Order authorizing examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, respectfully states as follows:

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, include: Boston Generating, LLC (0631); EBG Holdings, LLC (3635); Fore River Development, LLC (7933); Mystic I, LLC (3640); Mystic Development, LLC (7940); BG New England Power Services, Inc. (0476); and BG Boston Services, LLC (6921).

1.      Under the guise of a Rule 2004 examination procedure, the Liquidating Trustee improperly seeks to shift litigation costs that should be borne by him, or his contingency counsel, to the law firm of Kirkland & Ellis LLP ("K&E"), which served as pre-petition counsel to the Debtors.  The Liquidating Trustee's Motion ignores applicable New York law, which provides that a law firm is entitled to charge its former client for reasonable fees, based on the law firm's "customary fee schedule," associated with "assemblage and delivery of documents" requested by a former client. *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y. 2d 30, 38 (NY 1997).  K&E does not dispute that the Liquidating Trustee is the "successor-in-interest" to the Debtors and succeeds to the "evidentiary privileges and rights of the Debtors in connection with the [requested] documents."  (Mot. at 5, 7.)  Of course, it follows that the Liquidating Trustee, as the successor to K&E's former client, also should succeed to the associated obligations, including the requirement to compensate K&E for the production of documents that came into its possession as a result of its representation of the Debtors.

2.      Furthermore, while Rule 2004 typically allows for broad discovery, it is not without limits, and it is well within the Court's discretion to deny a Rule 2004 examination request. *See, e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (noting court's discretion and exercising such discretion to deny Rule 2004 motions); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) ("Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.").  Here, the balance of interests weighs in favor of a determination that K&E should not be forced to bear the costs of Rule 2004 examination because it is not a substantial or unique source of important information.  K&E did not represent the

Debtors in connection with the Recap Transaction, and the Liquidating Trustee through other sources already has access to responsive documents K&E may have in its possession.

3.  What is more, even if the Court were to determine that the Liquidating Trustee is entitled to receive the requested production without compensating K&E, the Motion should be denied because the scope of relief requested by the Liquidating Trustee is overly broad. The Liquidating Trustee seeks entry of a proposed order that would purport to authorize the Liquidating Trustee to issue examination subpoenas "as the Liquidating Trustee deems appropriate." (Mot. Ex. A at 2.) Such unfettered authority is unwarranted here, especially where the Liquidating Trustee is seeking to shift costs onto former counsel for the Debtors contrary to New York law.

**Background**

4.  In mid-February 2012, several months after confirmation of the Plan, the Liquidating Trustee contacted K&E, raising the possibility that K&E has in its possession documents constituting Liquidating Trust Assets by virtue of K&E's pre-petition representation of the Debtors. Thereafter, K&E and counsel for the Liquidating Trustee engaged in a dialogue concerning the scope of K&E's pre-petition representation of the Debtors and the circumstances under which certain documents that may qualify as Liquidating Trust Assets might be produced by K&E to the Liquidating Trustee.

5.  The Liquidating Trustee requested that K&E search for and produce documents comprising Liquidating Trust Assets that relate to three areas: (i) the Recap Transaction, (ii) agreements pursuant to which management services or other services relating to the Debtors' operations were provided to the Debtors, and (iii) the Debtors' pre-petition restructuring efforts. The Liquidating Trustee agreed that internal K&E communications were outside the scope of

3

documents constituting Liquidating Trust Assets, and, therefore, were not within the universe of requested documents. K&E informed the Liquidating Trustee that it was not a significant source of the requested documents, because, among other reasons, K&E did not represent the Debtors until well after the Recap Transaction. In addition, as counsel for the Liquidating Trustee conceded, to the extent K&E did have responsive documents, the Liquidating Trustee already has access to most of the requested documents through other sources -- most notably the files of the Debtors themselves.

6.   Notwithstanding the foregoing, K&E informed the Liquidating Trustee that it would search for and produce documents responsive to the categories identified; provided, however, that the Liquidating Trustee give K&E appropriate assurances that he would compensate K&E for the fees and costs associated with the search and production. K&E estimated that such fees and costs would range from $50,000 to $75,000. While counsel for the Liquidating Trustee agreed that this appeared to be a reasonable estimate of K&E fees and costs for this project, the Liquidating Trustee refused to agree to compensate K&E and instead filed the instant Rule 2004 motion.

## Argument

### I.   The Liquidating Trustee, Not K&E, Is Responsible For Fees And Costs Associated With The Requested Production.

7.   The Liquidating Trustee contends that, because he is the successor-in-interest to the evidentiary privileges and assets of the Debtors, he is entitled to the production of certain documents that have come into the possession of K&E by virtue of its prior representation of the Debtors. (Mot. at 4-5, 7.) K&E does not disagree. The Liquidating Trustee then further states, without citing any authority, that he "is not responsible for the costs associated with" K&E's efforts to comply with the Liquidating Trustee's request for documents. (Mot. at 7.) But New

York law, which governs here, is clear that the former client (here, the Liquidating Trustee stepping into the shoes of the Debtors), not the law firm (K&E), bears the expenses associated with the production of documents in possession of the law firm to its former client. *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y. 2d 30, 38 (N.Y. 1997) ("[U]nless a law firm has already been paid for assemblage and delivery of documents to the client, performing that function is properly chargeable to the client under customary fee schedules of the firm, or pursuant to the terms of any governing retainer agreement."); *see also* N.Y.S. Bar Ass'n Comm. on Prof'l Ethics, Ethics Op. 766 (Sept. 10, 2003) (following the *Sage Realty* rule that a lawyer may charge a former client reasonable fees for assembling and delivering documents related to the representation). Put simply, if the Liquidating Trustee is the successor-in-interest to the Debtors such that he should be entitled to documents in possession of the Debtors' former counsel, then he also should succeed to the obligation under New York law to compensate the Debtors' former counsel for the "assemblage and delivery" of such documents.

8. The Liquidating Trustee nevertheless seeks to avoid this obligation in an effort to shift to K&E the litigation costs that he or his contingency counsel should bear. In doing so, the Liquidating Trustee, again without citing authority, argues that costs related to "segregating" documents should not be passed on to him or his contingency counsel, (Mot. at 5), while at the same time the Liquidating Trustee has agreed that internal K&E communications are not within the scope of its request. But the costs associated with segregating such documents from the production are fairly charged to the Liquidating Trustee. For instance, ethics opinions of the Association of the Bar of the City of New York plainly explain that the *Sage Realty* rule extends to fees associated with the review and segregation of electronic documents, including reviews necessary to determine whether the documents are properly deliverable to the former client. *See*

5

N.Y.C. Bar Ass'n Comm. on Prof. and Judicial Ethics, Formal Op. 2008-1 ("The burden associated with retrieving and producing e-mails and other electronic documents is mitigated by the lawyer's ability, under *Sage Realty*, to charge the client based on the lawyer's 'customary fee schedules' for gathering and producing documents to a client… [W]e do not see any principled reason why a lawyer's fees may not reflect the reasonable costs of retrieving electronic documents from their storage media and reviewing those documents to determine the client's right of access."); N.Y.C. Bar Ass'n Comm. on Prof. and Judicial Ethics, Formal Op. 2010-1 (discussing disposition of client files at the end of an engagement and reiterating that a lawyer may charge the client customary fees "for gathering and producing records to a client"). In addition, further proceedings in the *Sage Realty* case itself confirm that the former client's obligation to pay extends to costs for "search and retrieval." *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 294 A.D.2d 190, 192 (N.Y. App. Div. 1st Dep't 2002).

9. Although the Liquidating Trustee ignores this entire body of New York law in his Motion, there is no doubt that it applies to this matter. *See, e.g.*, *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 346 n.2 (S.D.N.Y. 2011) (applying New York law (*Sage Realty*) to matter regarding the scope of documents to be produced by a law firm to the successor of its former clients); *Lippe v. Bairnco Corp.*, No. 96 Civ. 7600 DC, 1998 WL 901741, at *1 (S.D.N.Y. Dec. 28, 1998) (same). And the Liquidating Trustee and his contingency counsel should not receive "a windfall merely by reason of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979) (citation and quotations omitted) (holding that the determination of property rights in the assets of a bankrupt's estate generally is a question of state law) (superseded by statute on other grounds).

**II.    K&E Should Not Be Required To Bear The Costs Of A Rule 2004 Examination Where It Is Not A Unique And Substantial Source Of Important Information.**

10.    While Rule 2004 is a source of authority for requesting the production of certain documents relating to the Debtors, the Liquidating Trustee provides no support for the notion that the principles described above should be set aside such that he should be permitted to impose the costs of collection, searching, review and production on K&E. Indeed, despite the fact that Rule 2004 has been interpreted to be broad in nature, it does come with limitations that counsel in favor of the Court exercising its discretion to deny the Liquidating Trustee's Motion. *In re Enron Corp.*, 281 B.R. 836, 844 (Bankr. S.D.N.Y. 2002) (denying Rule 2004 motions).

11.    First, Rule 2004 requires that the Court "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). "That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production," *id.*, and there is no compelling necessity for K&E to incur the costs of producing the requested documents. K&E did not represent the Debtors until well after the Recap Transaction, so it is not a significant source of information relating to the principal issue that the Liquidating Trustee cites in his Motion as a basis for the need to conduct Rule 2004 examinations. In addition, as the Liquidating Trustee has conceded during communications with K&E, he has access to most of the information he would likely obtain from K&E. Indeed, the Liquidating Trustee's Motion fails to identify any category of information for which K&E is a significant, non-duplicative source. *Cf. In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (cautioning that Rule 2004 examination requests are "not limitless" and should not encompass matters that would be "unduly burdensome" and "duplicative"). This is for good reason; the Liquidating Trustee already has access to databases of documents from the

7

Debtors, their former parent, US Power Generating Company, and others. Documents that may be responsive to the Liquidating Trustee's requests in the possession of K&E, such as those related to pre-petition restructuring and management services agreements, would be duplicative of these sources. Moreover, the Liquidating Trustee already has been authorized to seek discovery from parties who were involved in the Recap Transaction. Further, as K&E has informed the Liquidating Trustee, it had minimal involvement in matters related to the other potential cause of action that the have been bandied about by the Liquidating Trustee such as those related to the management services agreements. These facts, combined with the law in New York that the former client should pay, easily tilt the balance of interests in favor of denying the Rule 2004 motion.

12. Second, compliance with Rule 2004 may be compelled in accordance with Rule 9016, which incorporates Federal Rule of Civil Procedure 45. Rule 45, in turn, contains provisions that protect targets of subpoenas from incurring improper fees and costs. According to Rule 45(c)(2)(B), an order compelling compliance with a document subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." In addition, Rule 45(c)(3)(A) authorizes a court to quash or modify a subpoena that "subjects a person to undue burden." Furthermore, Rule 45(c)(1) provides that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction -- which may include lost earnings and reasonable attorney's fess -- on a party or attorney who fails to comply." Thus, the sensitivity to costs and burdens articulated in Rule 45 further counsels in favor of denying the Liquidating Trustee's Motion and directing that he or his contingency counsel bear the fees and costs

associated with any production, especially where, as here, K&E is not a significant, non-duplicative source of documents. *See In re Commercial Financial Services, Inc.*, 247 B.R. 828, 842 (Bankr. N.D. Okla. 2000) (noting that "Rule 2004 refers to Bankruptcy Rule 9016, which makes Rule 45 of the Federal Rules of Civil Procedure applicable in bankruptcy cases," and stating that "the Court has authority in Rule 2004 discovery to make orders as justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); *Prescient Acquisition Group, Inc. v. MJ Publishing Trust*, No. 05 Civ. 6298 (PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006) (ordering, pursuant to Rule 45(c), a party serving a Rule 45 document subpoena to bear 100% of the actual expenses and 50% of the actual fees that the responding non-party incurred in complying with the subpoena, and awarding the responding non-party over $42,000).

### III.     The Requested Relief Should Be Denied As Overly Broad.

13.     Lastly, even if the Liquidating Trustee were entitled to receive the requested production without compensating K&E, the Motion should be denied because the scope of relief requested by the Liquidating Trustee is overly broad. The Liquidating Trustee seeks entry of a proposed order that would purport to authorize the Liquidating Trustee to take examinations under oath and issue document and/or examination subpoenas "as the Liquidating Trustee deems appropriate," rather than an order that compels the production of documents the Liquidating Trustee sought from K&E during the parties' communications. There is no justifiable reason for granting the Liquidating Trustee such unlimited authority, especially where the Liquidating Trustee is seeking to shift costs from his contingency counsel to former counsel for the Debtors contrary to New York law. Any document or examination subpoena should be narrowly tailored.

*See, e.g.*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516 (Bankr. E.D.N.Y. 1991) (limiting scope of Rule 2004 document requests).

14. In addition, because no examination subpoena has been issued to K&E and it therefore has not had an opportunity to evaluate and respond to such a subpoena, K&E should have the right to object to the examination subpoena on any valid grounds other than the fees and costs dispute presently before the Court. Furthermore, the parties should be permitted to apply to the Court for entry of a protective order governing circumstances under which any documents would be produced, including the treatment of confidential information. *E.g., In re Commercial Financial Services, Inc.*, 247 B.R. 828, 856 (Bankr. N.D. Okla. 2000) (granting in part motion for protective order).

## Conclusion

For the foregoing reasons, Kirkland & Ellis LLP respectfully requests that the Court deny the Liquidating Trustee's Motion.

Dated:  May 17, 2012                          KIRKLAND & ELLIS LLP

/s/ Oreste P. McClung

James P. Gillespie, P.C.
Oreste P. McClung
655 15th ST NW
Washington, DC 20005
(202) 879-5000
james.gillespie@kirkland.com
oreste.mcclung@kirkland.com

Marc Kieselstein, P.C.
601 Lexington Avenue
New York, NY 10022
(212) 446-4665
marc.kieselstein@kirkland.com